David M. Guess, Esq. (SBN 238241)
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: (949) 732-6500
Facsimile: (949) 732-6501
Email: guessd@gtlaw.com

Ari Newman, Esq. (admitted *pro hac vice*)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0868
Facsimile: (305) 579-0717
Email: newmanar@gtlaw.com

*Attorneys for Creditor XXIII Capital Limited*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>HOPLITE, INC., *et. al.*,<br><br>　　　Debtors and Debtors-in-Possession. | Lead Case No. 2:21-bk-12663-ER<br><br>Chapter 11<br><br>(Jointly Administered with:<br>Case No. 2:21-bk-12546-ER) |
| In re:<br><br>HOPLITE ENTERTAINMENT, INC.,<br><br>　　　Debtor and Debtor-in-Possession. | **XXIII CAPITAL LIMITED'S NOTICE OF MOTION AND MOTION FOR AN ORDER (I) CONVERTING THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, OR, IN THE ALTERNATIVE, (II) APPOINTING A CHAPTER 11 TRUSTEE** |
| Affects:<br><br>☐ ALL DEBTORS<br><br>☐ HOPLITE, INC.<br><br>☒ HOPLITE ENTERTAINMENT, INC., | <u>Hearing</u><br>Date:　　　June 2, 2021<br>Time:　　　10:00 a.m.<br>Place:　　　Courtroom 1568<br>　　　　　　255 E. Temple Street<br>　　　　　　Los Angeles, CA 90012 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 2, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1568 of the above-entitled Court, located at 255 E. Temple Street, Los Angeles, California 90012, secured creditor XXIII Capital Limited hereby moves for an order (i) converting the above-captioned Chapter 11 case of Hoplite Entertainment, Inc. to a case under Chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101 et seq., or, in the alternative, (ii) appointing a Chapter 11 trustee (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be in writing and filed and served no later than 14 days prior to the date of the hearing on the Motion.

DATED: May 7, 2021                          GREENBERG TRAURIG, LLP

                                            By: */s/ David M. Guess*
                                            DAVID M. GUESS
                                            ARI NEWMAN (admitted *pro hac vice*)
                                            *Attorneys for Creditor XXIII Capital Limited*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   JURISDICTION AND VENUE ............................................................... 3

III.  RELEVANT FACTUAL BACKGROUND............................................... 3

    A.    23 Capital Indebtedness ............................................................... 3

    B.    The Debtor Secures Other Indebtedness ...................................... 4

    C.    The Bay Point Receivership Action............................................. 5

    D.    The Bankruptcy Filings and Receivership Order......................... 6

    E.    Discrepancies Between Petitions, Schedules and Other Debtor-Related Information ....... 7

IV.   RELIEF REQUESTED......................................................................... 10

V.    MEMORANDUM OF LAW ............................................................... 10

    A.    Conversion of the Chapter 11 Case to a Case Under Chapter 7 is Necessary and Appropriate Under the Circumstances................................................ 10

        1.    The Debtor is Losing Money in Chapter 11 and Has No Reasonable Prospect of Rehabilitation................................................................. 11

            a.    The Debtor is Cash Flow Negative ......................................... 11

            b.    There is No Business to Rehabilitate ...................................... 12

        2.    The Debtor's Failure to Maintain Insurance Warrants Conversion to Chapter 7. 13

        3.    Conversion is Appropriate Because There is No Need for a Chapter 11 Plan Process. ................................................................... 14

        4.    Mr. Smith's Continued Disregard for the Rule of Law Further Supports the Displacement of Current Management and the Conversion of this Case. ............ 14

    B.    Should the Court Decide Not to Convert this Case to Chapter 7, a Chapter 11 Trustee Should be Appointed................................................ 15

    C.    Conversion to Chapter 7 or the Appointment of a Chapter 11 Trustee is Also Appropriate Because Mr. Smith is Conflicted. .................................. 18

VI.   CONCLUSION................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Federal Cases**

*In re Am. Capital Equip., LLC*,
    688 F.3d 145 (3d Cir. 2012).................................................................................................. 10

*In re Am. Res., Ltd.*,
    54 B.R. 245 (Bankr. D. Haw. 1985) ...................................................................................... 16

*In re BH S&B Holdings, LLC*,
    439 B.R. 342 (Bankr. S.D.N.Y. 2010) ............................................................................. 12, 13

*In re Blixseth*,
    No. 09-60452-11, 2009 Bankr. LEXIS 1628 (Bankr. D. Mont. May 29, 2009) ................. 13

*In re Creekside Senior Apartments, L.P.*,
    489 B.R. 51 (B.A.P. 6th Cir. 2013).......................................................................................11

*DCNC N. Carolina I, LLC v. Wachovia Bank, N.A.*,
    No. CIV.A. 09-3775, 2009 WL 3209728 (E.D. Pa. Oct. 5, 2009)........................................ 10

*In re Fiesta Homes of Georgia, Inc.*,
    125 B.R. 321 (Bankr. S.D. Ga. 1990) ................................................................................... 19

*In re Gateway Access Sols., Inc.*,
    374 B.R. 556 (Bankr. M.D. Pa. 2007) ...................................................................................11

*In re Hassen Imps. P'ship*,
    No. CC-13-1019-KiPaD, 2013 Bankr. LEXIS 3870 (B.A.P. 9th Cir. Aug. 19,. 2013).........11

*In re Intercat, Inc.*,
    247 B.R. 911 (Bankr. S.D. Ga. 2000) .............................................................................. 16, 18

*Loop Corp. v. U.S. Tr.*,
    379 F.3d 511 (8th Cir. 2004) .................................................................................................11

*In re Natrl Plants & Lands Mgmt. Co., Ltd.*,
    68 B.R. 394 (Bankr. S.D.N.Y. 1986) ..................................................................................... 13

*In re Nelco Ltd.*,
    210 B.R. 707 (Bankr. E.D. Va. 1997) .................................................................................... 13

*In re Original IFPC Shareholders, Inc.*,
    317 B.R. 738 (Bankr. N.D. Ill. 2004) ....................................................................................11

*Pryor v. U.S. Tr. (In re Pryor)*,
    No. CC-16-1049-McTaF, 2016 Bankr. LEXIS 4020 (B.A.P. 9th Cir. Nov. 18, 2016)......... 13

*In re PRS Ins. Grp., Inc.*,
    274 B.R. 381 (Bankr. D. Del. 2001) ...................................................................................... 18

*In re Reliant Energy Channelview LP*,
    594 F.3d 200 (3rd Cir. 2010) ................................................................................................. 19

*In re Ridgemour Meyer Props., LLC*,
    413 B.R. 101 (Bankr. S.D.N.Y. 2008) ................................................................................... 18

*In re Tracey Serv. Co., Inc.*,
  17 B.R. 405 (Bankr. E.D. Pa. 1982) ........................................................................... 12

*Tradex Corp. v. Morse*,
  339 B.R. 823 (D. Mass. 2006) ................................................................................... 16

*In re USA Commercial Mortg. Co.*,
  452 F. App'x 715 (9th Cir. 2011) .............................................................................. 12

*In re V Companies*,
  274 B.R. 721 (Bankr. N.D. Ohio 2002) ..................................................................... 11

*In re Westgate Props.*,
  432 B.R. 720 (Bankr. N.D. Ohio 2010) ..................................................................... 11

*Wolf v. Weinstein*,
  372 U.S. 633 (1963) ................................................................................................... 19

*In re Woodbrook Assocs.*,
  19 F.3d 312 (7th Cir. 1994) ....................................................................................... 10

**Statutes**

11 U.S.C. § 1104(a) ....................................................................................................... 16

11 U.S.C. § 1112(b) ................................................................................... 3, 10, 11, 14

28 U.S.C. § 1334(b) ......................................................................................................... 3

28 U.S.C. § 1408 .............................................................................................................. 3

28 U.S.C. § 1409 .............................................................................................................. 3

28 U.S.C. § 157(b) ............................................................................................................ 3

**Rules**

Fed R. Bankr. P. 1017 ...................................................................................................... 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Secured creditor, XXIII Capital Limited ("**23 Capital**"), respectfully submits this motion (the "**Motion**") seeking entry of an order (i) converting the Chapter 11 case of Hoplite Entertainment, Inc. (the "**Debtor**" or "**Hoplite Entertainment**") to a case under Chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"), or, in the alternative, (ii) appointing a Chapter 11 trustee.  In support of the Motion, 23 Capital relies on the accompanying Declarations of David O'Connor and Ari Newman, the other evidence attached hereto and thereto and states:

## I.  <u>PRELIMINARY STATEMENT</u>

The Debtor filed this Chapter 11 case on the eve of a final receivership hearing in federal district court to stave off the imminent appointment of a receiver over the Debtor after the district court concluded that the Debtor's principal, Jonathan Lee Smith ("**Mr. Smith**"), engaged in fraudulent conduct to induce a third party to make a business loan to the Debtor.  This case, however, does not belong in Chapter 11 given that the Debtor has no ongoing business operations, no cash, no accounts receivable, no employees and no reasonable prospect of reorganization.

While the Debtor has indicated a desire to sell its interest in various television productions (the "**TV Library**")—its principal asset of value—that objective can be accomplished in a more efficient and cost-effective manner in Chapter 7 by an experienced, independent fiduciary.  This is especially so where the Debtor has no active business operations, no funds available to run a Chapter 11 sale process, and the current management—which engaged in fraud and filed materially inaccurate bankruptcy schedules—lacks the support and confidence of creditors to run an honest, value-maximizing process.  If Mr. Smith (or any other insider) remains in control or is involved in any manner with the sale process, it is likely to be a contentious and litigious sale process that is hampered by continual creditor doubt and mistrust; these concerns will not be present with an independent Chapter 7 trustee.  Moreover, despite the fact that the TV Library is the Debtor's principal asset of value, the Debtor admits that the TV Library is not insured, which poses a significant risk to the estate and its creditors.

Given the concerns surrounding the Debtor's management—including recent findings of fraud and a failure to insure the Debtor's most valuable assets—an independent and trusted Chapter 7 trustee will be more capable of protecting the estate's assets and maximizing value for the benefit of creditors.

There is simply no need for existing management to remain in place or for the Debtor to incur the expense associated with remaining in Chapter 11.

In the alternative, the Court should appoint a Chapter 11 trustee over the Debtor given the fraud committed by Mr. Smith, which was established shortly before the commencement of this bankruptcy case in a receivership action pending in federal district court. District Judge Michael Brown found that the Debtor and Mr. Smith's fraud included, among other things, falsifying subordination agreements, loan documents, and licensing agreements in order to induce extensions of credit to the Debtor and noted that the "fraud issue is not a close call."[1] Judge Brown also expressed his surprise that there was not an active criminal investigation.[2] Indeed, Mr. Smith's own counsel in the receivership action remarked that Mr. Smith is worried about the prospect of a criminal investigation.[3] He should be. More pressing, though, for purposes of the relief sought herein, Mr. Smith (and any insiders affiliated with him) must be removed from control of the Debtor immediately in favor of an independent fiduciary.

Finally, cause also exists to convert the case or appoint a trustee because allowing Mr. Smith (and any insiders affiliated with him) to remain in control creates a conflict of interest that will impede the Debtor's administration of claims belonging to the estate relating to, without limitation (i) the pre-petition conduct of Mr. Smith and the Debtor's other officers and directors, and (ii) the Debtor's pre-petition transfer of assets to insiders and other persons affiliated with Mr. Smith. Leaving Mr. Smith in control is the proverbial "fox guarding the henhouse" and would significantly prejudice creditors.

Accordingly, the case should be converted to Chapter 7 or a Chapter 11 trustee should be appointed, so that an independent fiduciary can administer and monetize estate assets for the benefit of creditors, including 23 Capital.

---

[1] Transcript of February 10, 2021 Hearing in Receivership Action ("**Feb 10 Tr.**"), at 123:8 – 125:20.

[2] Transcript of March 24, 2021 Hearing in Receivership Action ("**March 24 Tr.**"), at 29:11-13 (Judge Brown inquired "[i]s there a criminal investigation?" When counsel responded "[n]ot that I am aware of, Your Honor," the judge remarked "I'm surprised by that").

[3] *Id.* at 45:22-25. Mr. Smith's counsel also seemed to justify his client's actions on the basis that "[Mr. Smith] was desperate." *Id.* at 46:9-12. Surely desperation does not excuse the commission of fraud.

## II. **JURISDICTION AND VENUE**

The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2).

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The predicates for the relief requested herein are section 1112(b) of the Bankruptcy Code and Rule 1017 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**").

## III.    **RELEVANT FACTUAL BACKGROUND**

**A.    23 Capital Indebtedness**

23 Capital, as lender, HLESPV, LLC ("**Borrower**"), Hoplite Entertainment, and Hoplite Studios, LLC ("**Studios**") entered into a Facility Agreement, dated December 9, 2016 (as amended, the "**Loan Agreement**") in the principal amount of $7,200,000 (the "**Loan**"). As security for the Loan, Borrower and various guarantors, including Hoplite Entertainment, Studios, and Mr. Smith (collectively, with various other guarantors, the "**Obligors**") entered into that certain Guaranty and Security Agreement in favor of 23 Capital dated December 9, 2016 (as amended, the "**Guaranty and Security Agreement**," and together with the Loan Agreement and other documents entered into in connection with the Loan, the "**Loan Documents**"). Under the Guaranty and Security Agreement, Hoplite Entertainment and the other Obligors granted 23 Capital broad "all asset" liens, which were perfected by timely-filed UCC-1 financing statements.

Following a series of payment defaults under the Loan Documents, 23 Capital entered into a forbearance agreement with the Obligors, including the Debtor, in connection with the indebtedness owing to 23 Capital. Hoplite Entertainment and Mr. Smith made representations to 23 Capital regarding the imminent repayment of the Loan from anticipated receivables, which 23 Capital relied upon in agreeing to multiple extensions of the forbearance. Among those representations were copies of two license agreements provided by Mr. Smith to 23 Capital that were purportedly entered into between (i) Hoplite Entertainment and Screen Media Ventures, LLC dated July 1, 2020, and (ii) Hoplite Entertainment and Big Media Holdings LLC dated June 18, 2020 (collectively, the "**License Agreements**"). 23 Capital discovered later that the License Agreements had been falsified and the amounts claimed to be due Hoplite Entertainment in them were not accurate.

Despite repeated promises of repayment from Mr. Smith and Hoplite Entertainment, the Loan was not repaid.  As of the date hereof, no less than $4,300,000.00 remains outstanding to 23 Capital under the Loan Agreement solely on account of principal and interest.

**B.**    **The Debtor Secures Other Indebtedness**

Unbeknownst to 23 Capital, without 23 Capital's consent, and in violation of the Loan Documents, in December 2019 and April 2020, the Debtor borrowed funds from, and granted a security interest to, Columbia State Bank (the "**Columbia Bank Loans**").[4]  The collateral pledged by the Debtor in connection with the Columbia Bank Loans was already subject to 23 Capital's security interest.

Unbeknownst to 23 Capital, without 23 Capital's consent, and in violation of the Loan Documents, at some time in 2020, the Debtor borrowed funds from, and granted a security interest to, BondIt Media Capital (the "**BondIt Loan**").  The collateral pledged by the Debtor in connection with the BondIt Loan was already subject to 23 Capital's security interest.

Unbeknownst to 23 Capital, without 23 Capital's consent, and in violation of the Loan Documents, in September 2020, the Debtor borrowed approximately $2 million from, and granted a security interest to, Bay Point (the "**Bay Point Loan**").  The collateral pledged by the Debtor in connection with the Bay Point Loan was already subject to 23 Capital's security interest.

Upon receipt of the Bay Point Loan, the Debtor made transfers directly or indirectly to, among others:[5] (i) Mr. Smith, (ii) Turpera Global,[6] (iii) Gary Danklefsen,[7] and (iv) Law Offices of James Pacitti.[8]  The Debtor also made a transfer of $1,000,000 to Lifeng Wang, which has yet to be explained.[9] Other bank statements of the Debtor also reflect transfers made to other insiders or entities affiliated with Mr. Smith.[10]

---

[4] *See* Claim No. 1-1 filed by Columbia State Bank.

[5] *See* Declaration of Marshall Glade dated March 23, 2021 ("**Glade Declaration**"), at ¶ 6.c.

[6] Mr. Ferre, a director of the Debtor, is the principal of this entity.

[7] A director of the Debtor and/or its affiliate Hoplite, Inc.  *See* Transcript of March 16, 2021 Deposition of Jonathan Lee Smith ("**March 16 Depo Tr.**"), at 13:18 – 14:1.

[8] Mr. Pacitti was general counsel to the Hoplite Entities.  *See* March 16 Depo Tr. at 10:21-25.

[9] *See* Glade Declaration, Exhibit C; *see also* March 16 Depo Tr. at 206:10 – 208:10.

[10] *See* Glade Declaration, Exhibit C.

Bank Statements of Hoplite Entertainment, Hoplite, Inc. (and together with Hoplite Entertainment, the "**Hoplite Entities**") and Mr. Smith also revealed transfers made to at least 19 other bank accounts affiliated with the Hoplite Entities or their affiliates.[11]    Bank Statements for those affiliated accounts have not been made available, making further tracing of the funds impossible.[12]

## C.    The Bay Point Receivership Action

On January 22, 2021, Bay Point commenced a receivership action against the Hoplite Entities and Mr. Smith (the "**Defendants**") in the United States District Court for the Northern District of Georgia, Atlanta Division (the "**District Court**"), styled as *Bay Point Capital Partners II, LP v. Hoplite, Inc., Hoplite Entertainment, Inc., and Jonathan Lee Smith*, Case No. 1:21-CV-00375-MLB (the "**Receivership Action**").[13]    In the Receivership Action, Bay Point asserted RICO violations, breach of contract, fraudulent misrepresentation, unjust enrichment, and sought the appointment of a receiver over the Hoplite Entities.[14]

On February 10, 2021, at an evidentiary hearing on Bay Point's Emergency Motion for Appointment of Receiver (the "**Receivership Motion**"), the District Court found that Bay Point had shown "lots of evidence of fraud" by Mr. Smith (and the Hoplite Entities) and noted that the fraud issue was not a "close call."[15]    On that basis, the District Court entered preliminary injunctive relief against Mr. Smith and the Hoplite Entities and set the receivership motion for further evidentiary hearing.[16]

On March 16, 2021, Bay Point conducted the deposition of Mr. Smith in the Receivership Action.    At the deposition, among other testimony, Mr. Smith testified that the Hoplite Entities have "zero employees,"[17] are "not in production on any content"[18] and no longer have a corporate office.[19] At the same deposition, Mr. Smith invoked his Fifth Amendment right against self-incrimination on more than 190 separate occasions in response to questions regarding, among other things: (i) loans made

---

[11] *See* Glade Declaration, at ¶ 6.a.
[12] *Id.*
[13] *See* copy of court docket in the Receivership Action.
[14] *See generally* Verified Amended Complaint filed in the Receivership Action.
[15] *See* Feb 10 Tr. at 123:8 – 125:20.
[16] *See* Order [Receivership Action, Docket No. 27] (the "**Injunction Order**").
[17] *See* March 16 Depo Tr. at 18:9-12.
[18] *Id.* at 30:15-25.
[19] *Id.* at 31:7-24.

to the Hoplite Entities; (ii) the existence and validity of various subordination agreements; (iii) inconsistences and discrepancies among the Hoplite Entities' financial statements; (iv) payments made by the Hoplite Entities to various corporate insiders, related parties and third parties; and (v) the status of the Hoplite Entities' contractual relationships with and payments expected from various licensees and other payors.[20]

Neither Hoplite Entertainment nor Mr. Smith disclosed to 23 Capital (until this bankruptcy filing) the existence of the Bay Point Loan, the Columbia Bank Loans, the BondIt Loan or the Receivership Action.

**D.    The Bankruptcy Filings and Receivership Order**

On March 30, 2021 (the "**Petition Date**"), on the eve of the continued hearing on the Receivership Motion, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Mr. Smith also filed a voluntary petition for relief under Chapter 7 on March 30, 2021.[21]  The bankruptcy filings stayed the receivership hearing as to Hoplite Entertainment and Mr. Smith, but not Hoplite, Inc.

The District Court proceeded with the receivership hearing on March 31, 2021 as to Hoplite, Inc., and entered an order appointing a receiver over that entity.  On April 1, 2021, Hoplite, Inc. filed its own petition before this Court for relief under Chapter 11,[22] which stayed the entirety of the Receivership Action.

The Debtor filed no traditional "first-day" motions other than a belated joint administration motion, and has not sought authority to use cash collateral or obtain financing.  The Debtor has also not filed any motion to sell assets or sought to retain any professional to assist with a sale process.

The Debtor's Schedules ("**Schedules**") and Statement of Financial Affairs ("**SOFA**") were executed under penalty of perjury by Mr. Smith, as President of the Debtor.  The Schedules reflect that the Debtor has no (i) cash or cash equivalents, (ii) accounts receivable, or (iii) inventory, furniture, fixtures or equipment.  In addition, according to the SOFA, the Debtor has (i) generated no revenue in

---

[20] *See id. generally*, at 93:21 – 249:22.
[21] Case No. 2:21-bk-12542-BR.
[22] Case No. 2:21-bk-12663-ER.

2021, (ii) no leases or executory contracts, (iii) made no payments to creditors within 90 days of the Petition Date, and (iii) made no payments to insiders within 1-year of the Petition Date.  The Schedules identify only four creditors, list the TV Library as the sole asset, and do not reflect any bank accounts or any entity(ies) in which the Debtor has an ownership interest.

The Debtor lists the value associated with the Debtor's portion of the TV Library as $38.5 million based on a valuation opinion prepared by Media Valuation Partners in May 2020 using the "income" method (the "**MVP Valuation**").[23]   In reaching its opinion of value, the MVP Valuation projects "Total Net Revenue" in 2021 from the Debtor's portion of the TV Library to be $6,000,000 and "Total Net Revenue" for the entire TV Library to be over $18 million.[24]   The Schedules, however, reflect no revenue generated by the Debtor for 2021 and Mr. Smith testified that revenue from the TV Library has been "very small" in 2021.[25]   Mr. Smith also testified that he believes the value of the Debtor's portion of the TV Library to be $10 million – $12 million[26] and that the TV Library is not insured.[27]

**E.    Discrepancies Between Petitions, Schedules and Other Debtor-Related Information**[28]

The Debtor's Schedules are inconsistent with other documents and testimony:

- The Schedules value the TV Library at $38.5 million, but the Chapter 11 petition filed by the Debtor reflects estimated assets of "$0 - $50,000" and the bankruptcy schedules filed in the Smith individual bankruptcy case reflect that Mr. Smith's equity interest in the Debtor has no value.[29]   Mr. Smith provided a personal financial statement to 23 Capital

---

[23] Schedule A/B, at § 60.
[24] *See* MVP Valuation, at p. 40.
[25] *See* Transcript of April 27, 2021 Section 341(a) Meeting of Creditors in *In re Jonathan Lee Smith*, Case No. 2:21-bk-12542-BR (the "**Smith 341 Tr.**"), at 24:22-24 (Q: "Does that mean that to date, in 2021, that they have not generated any revenue? A: Very small amounts of revenue to my knowledge corporately.").
[26] *See* Transcript of the Hoplite Entertainment April 29, 2021 Section 341(a) Meeting of Creditors ("**Debtor 341 Tr.**"), at 10:4-6.
[27] *See* Smith 341 Tr., at 31:14-18 ("Q: Mr. Smith, are these libraries, are they insured? A: No.  Q: So there's no insurance on these, the digital libraries or the hard drives, correct? A: Correct.").
[28] 23 Capital recognizes that many of the inconsistencies between the documents and testimony can be addressed by amending the Schedules and SOFA.  This does not change the fact, however, that the Schedules and SOFA were signed under penalty of perjury and are materially inaccurate.
[29] Case No. 2:21-bk-12542-BR, ECF No. 1, at p. 13 of 66, Part 19.

in December 2020 (the "**PFS**") in which he asserted that his stock interest in Hoplite Entertainment was worth $2.7 million.

- The SOFA reflects no transfers to insiders or non-insiders within the relevant 1-year or 90-day periods.  The Debtor made payments in the year prior to the bankruptcy filing to, among other insiders, Mr. Smith, Turpera Group Ltd. (whose principal, Pedro Ferre, is a director of the Debtor), Gary Danklefsen (a director or former director of the Debtor), One Light Media (whose principal is Gary Danklefsen), and Gregory Senner (a director or former director of the Debtor).[30]  The Debtor also made payments to other creditors within 90 days before the Petition Date.[31]  The PFS reflects that Mr. Smith received a salary from "Hoplite" of $285,000 in 2020.  Mr. Smith also acknowledged receiving at least some compensation and/or reimbursement from the Hoplite Entities in 2021.[32]

- The Schedules and SOFA do not reflect any cash or cash equivalents.  Mr. Smith testified that the Debtor is holding a cashier's check made payable to the Debtor representing the remaining funds that were in the Debtor's pre-petition bank account.[33]

- The Schedules reflect no revenue generated in 2021.  Mr. Smith testified that there have been some revenues in 2021.[34]

- The Debtor fails to disclose any licenses or internet domain names.  Mr. Smith testified that the Debtor's licenses are in order[35] and the Debtor's internet domain names remain active.[36]

- The Schedules reflect that the Debtor has no accounts receivable.  Mr. Smith testified that the Debtor anticipates generating income and has outstanding accounts receivables associated with the Debtor's portion of the TV Library.[37]

---

[30] *See* Glade Declaration, at ¶ 6.c & f; *see also* March 16 Depo Tr. at 240:2 – 245:3 & 247:23 – 248:16.
[31] *See* Debtor 341 Tr. at 38:14 – 41:3; *see also* Bank Account Statement of Hoplite Entertainment.
[32] *See* Smith 341 Tr., at 15:20 –16:4.
[33] *See* Debtor 341 Tr. at 31:9 – 32:7.
[34] *See* Smith 341 Tr., at 24:22-24; *see also* Debtor 341 Tr. at 24:23-25.
[35] *See* Debtor 341 Tr. at 11:24 – 12:3.
[36] *See* https://hoplitefilms.com/ and https://hoplitetvfilm.com/.
[37] *See* March 16 Depo Tr. at 50:11-21; 70:11-14; 123:3-15; 128:6-23; 131:24-25 – 132:4; 144:3 – 145:15.

- The Schedules reflect that the Debtor has no office furniture or fixtures. Mr. Smith testified at deposition that the Debtor was storing furniture at a storage facility, including "TVs, furniture, artwork."[38]

- The Debtor's Schedules and the bankruptcy schedules filed by affiliate Hoplite, Inc. list the exact same TV Library in Schedule A/B and reflect the same "current value of debtor's interest." The Debtor testified that the Hoplite Entities own different productions within the TV Library and the ownership of each production is clear.[39]

- The Debtor has admitted that the TV Library is owned by the Hoplite Entities and that no media content is held by any other entity.[40] Mr. Smith testified that media content is held by non-debtor HLESPV, LLC.[41]

- The Schedules do not identify any directors of the Debtor. At his deposition on March 16, 2020—two weeks before the Petition Date—Mr. Smith testified that Greg Senner, Robert Lee, Gary Danklefsen and Pedro Ferro were directors of the Debtor.[42] Further testimony elicited from Mr. Smith disclosed Greg Senner, Robert Lee and Pedro Ferre as the directors of the Debtor.[43]

- The Schedules reflect that the Debtor has no ownership interests in any businesses. Mr. Smith testified that Hoplite Entertainment has interests in various other entities, though they may not be active.[44]

---

[38] *See* March 16 Depo Tr. at 40:5 – 41:19.
[39] *See* Debtor 341 Tr. at 21:3–23.
[40] *See* Debtor 341 Tr. at 21:3-6.
[41] *See* March 16 Depo Tr. at 22; ll. 1-7.
[42] *Id.* at 13:18 – 14:1.
[43] *See* Debtor 341 Tr. at 19:20-23.
[44] *See* March 16 Depo Tr. 19:22 – 20:20; Debtor 341 Tr. at 20:2-10.

### IV. <u>RELIEF REQUESTED</u>

By this Motion, 23 Capital respectfully request that the Court enter an order (i) immediately converting this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or, in the alternative, (ii) appointing a Chapter 11 trustee.  Such relief is necessary and appropriate to protect the interests of the Debtor's estate, its creditors and its other stakeholders.

### V. <u>MEMORANDUM OF LAW</u>

**A.    <u>Conversion of the Chapter 11 Case to a Case Under Chapter 7 is Necessary and Appropriate Under the Circumstances.</u>**

Section 1112(b) of the Bankruptcy Code provides that, on request of a party in interest and after notice and a hearing, "the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1) (emphasis added).  Under Section 1112(b), conversion or dismissal is mandatory upon a finding of "cause," absent a finding of unusual circumstances.  11 U.S.C. § 1112(b).

Although "cause" is not defined in the Bankruptcy Code, Section 1112(b)(4) provides a non-exclusive list of sixteen "causes" for conversion.  11 U.S.C. § 1112(b)(4)(A)-(P); *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161-62 n.10 (3d Cir. 2012) ("the listed examples of cause are not exhaustive").  This Court has wide discretion to determine if cause exists, and how to ultimately dispose of this case, regardless of whether the factors ultimately relied upon are listed in Section 1112(b).

If the movant establishes any basis for "cause," the burden then shifts to the debtor to prove it falls within the Section 1112(b)(2) "unusual circumstances" exception to Section 1112(b)(1)'s mandatory conversion.  Courts, however, usually require the debtor do more than manifest unsubstantiated hopes for a successful chapter 11 plan process.  *See In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994) ("The very purpose of § 1112(b) is to cut short [the] plan and confirmation process where it is pointless.").

Grounds exist under Section 1112(b)(4) to support of conversion of these cases, including that there is (i) a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and (ii) a failure to maintain appropriate insurance that poses a risk to the

estate.  *See* 11 U.S.C. § 1112(b)(4)(A) & (C).  For these and other reasons set forth below, cause for conversion exists.

### 1.       The Debtor is Losing Money in Chapter 11 and Has No Reasonable Prospect of Rehabilitation.

Conversion is warranted where a debtor is suffering "substantial or continuing loss to or diminution of the estate" and there is no "reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  The inquiry under Section 1112(b)(4)(A) of the Bankruptcy Code is two-fold.  *In re Gateway Access Sols., Inc.*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007).  "First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains."  *Id.*  "The loss may be substantial or continuing.  It need not be both in order to constitute cause under § 1112(b)(4)(A)." *In re Hassen Imps. P'ship*, No. CC-13-1019-KiPaD, 2013 Bankr. LEXIS 3870, at *37 (B.A.P. 9th Cir. Aug. 19,. 2013) (quoting *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013)).  "Second, the Court must determine whether rehabilitation is likely given the evidence presented at hearing."  *In re Gateway Access Sols., Inc.*, 374 B.R. at 562.  "[R]ehabilitation . . . does not necessarily denote reorganization, which could involve liquidation.  Instead, rehabilitation signifies something more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis.'"  *In re Westgate Props.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010) (quoting *In re V Companies*, 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002)).

### a.       The Debtor is Cash Flow Negative

Where a debtor who has no ongoing business operations and is not generating any positive cash flow, "any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of the creditors.  This is enough to satisfy the first element of [continuing loss to or diminution of the estate]."  *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004); *see also In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 742 (Bankr. N.D. Ill. 2004) ("continuing loss" established where the debtor "continued to incur post-petition quarterly U.S. Trustee fees and administrative costs, primarily for legal representation in this bankruptcy case" and where the debtor "sells no goods or services to produce a cash flow").

The Debtor has no ongoing business operations from which to generate cash and has not identified any accounts receivable. The Debtor is and will, therefore, necessarily be cash-flow negative going forward and the costs of administrative of the Chapter 11 will be a tax on the creditors. *See In re USA Commercial Mortg. Co.*, 452 F. App'x 715, 724 (9th Cir. 2011) (affirming the district court's finding that there was no reasonable likelihood of rehabilitation where the debtor had a negative cash flow and could not reasonably depend on future income).

Furthermore, the Debtor is failing to maintain the TV Library in a commercially reasonable and secure manner, which could result in substantial diminution of the value of the estate.

**b.**    *There is No Business to Rehabilitate*

Second, there is no prospect for rehabilitation here. There is no viable business to reorganize or rehabilitate, nothing to stabilize, no employees to protect and no funding with which to even attempt a reorganization. *In re Tracey Serv. Co., Inc.*, 17 B.R. 405, 409 (Bankr. E.D. Pa. 1982) ("Without a reasonable amount of assets and a feasibly operating business, there is no logic in continuing under Chapter 11."). The Debtor has indicated an intent to sell the TV Library, but an intention to "liquidate (rather than rehabilitate), demonstrates that there is no likelihood of rehabilitation." *See In re BH S&B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010) ("[R]ehabilitation means to put back in good condition and reestablish on a sound basis."). This is especially so where the estate has no funds to run a sale process and the value of the TV Library remains elusive in light of, among other things, the Debtor's poor recordkeeping and certain productions being only partially completed.

An active Chapter 11 is not necessary to adequately market and sell the TV Library—non-operating media and intellectual property assets—in a manner that will maximize value for creditors. Instead, a Chapter 7 trustee can monetize the TV Library in a cost-effective and efficient manner that will generate value for creditors without the attendant expenses of Chapter 11. Moreover, given the lack of trust and confidence in current management, the creditors would benefit from having an individual not tarred with the prior, fraudulent acts of current management—such as an objective, independent Chapter 7 trustee—administer and liquidate the TV Library, including the collection of any receivables related to the TV Library.

An independent trustee would also investigate and pursue, if appropriate, claims against insiders and other parties connected to Mr. Smith, including for breach of fiduciary duties and fraudulent transfers, that the Debtor's current management would be unlikely pursue. *See In re Nelco Ltd.*, 210 B.R. 707, 709-10 (Bankr. E.D. Va. 1997) (converting a case because the debtor had liquidated its tangible assets, there was no chance of rehabilitation and the creditors were better served by an independent chapter 7 trustee to pursue insider claims).

Given the Debtor's current cash position, bleak prospects and lack of insurance on its most valuable assets, remaining in Chapter 11 will continue to diminish the potential recovery to creditors as administrative expenses accrue. Under the circumstances, the Court should convert the case to Chapter 7, so that a trustee may administer and monetize assets for the benefit of the creditors. *See BH S&B Holdings*, 439 B.R. at 348 (citing *In re Natrl Plants & Lands Mgmt. Co., Ltd*., 68 B.R. 394, 395 (Bankr. S.D.N.Y. 1986) (converting Chapter 11 case, in part, "because the debtor's proposed liquidating plan conceded that the business would be terminated, and the debtor was losing $60,000 per month in chapter 11.")).

## 2.    The Debtor's Failure to Maintain Insurance Warrants Conversion to Chapter 7.

Conversion is also appropriate because the Debtor has acknowledged that it is not maintaining insurance on the TV Library, the most valuable asset of the estate. *See* 11 U.S.C. § 1112(b)(4)(C). The lack of insurance is of grave concern to 23 Capital, as at least a portion of the TV Library comprises 23 Capital's collateral. Without insurance, that collateral is not being adequately protected and places 23 Capital at considerable risk of loss. Failure to maintain adequate insurance also poses a risk to the estate and its creditors and is an independent basis on which this Court should convert the case to Chapter 7. *Pryor v. U.S. Tr. (In re Pryor)*, No. CC-16-1049-McTaF, 2016 Bankr. LEXIS 4020, *3 (B.A.P. 9th Cir. Nov. 18, 2016) (affirming bankruptcy court's conversion to Chapter 7 due to lack of insurance); *In re Blixseth*, No. 09-60452-11, 2009 Bankr. LEXIS 1628, *13 (Bankr. D. Mont. May 29, 2009) (conversion appropriate where debtor's assets were not insured or woefully under-insured). Accordingly, conversion to Chapter 7 is appropriate on this basis alone.

**3.      Conversion is Appropriate Because There is No Need for a Chapter 11 Plan Process.**

Simply put, there is no need for a Chapter 11 plan process in this case.  The Chapter 11 plan process will add unnecessary administrative expenses to an already thin case and further dilute prospective recoveries to creditors and other constituents.  There is little that can be accomplished by what the Debtor might propose through a Chapter 11 plan that a Chapter 7 trustee could not accomplish more quickly, efficiently, and effectively, and with greater trust and support from creditors.

Moreover, the Debtor remaining in possession in Chapter 11 would enable current management, whose misconduct contributed to the demise of the Debtor, to continue control the Debtor, its estate and the trajectory of this case.  This scenario is untenable given the fraud perpetrated by the Debtor's management and should not be countenanced by this Court.

**4.      Mr. Smith's Continued Disregard for the Rule of Law Further Supports the Displacement of Current Management and the Conversion of this Case.**

Following the fraudulent conduct revealed in the Bay Point litigation, Mr. Smith is now taking, at a minimum, a cavalier approach to the Schedules and SOFA, which are materially inaccurate. Mr. Smith's disregard for documents filed with the Court under penalty of perjury exemplifies that he is not sincere about his fiduciary obligations in Chapter 11 and cannot remain as control person of the Debtor. Some of the materially inaccuracies and inconsistencies between the Schedules and SOFA and other testimony and filings of Mr. Smith, without limitation, include the following:

- The values given for the equity interests in the Debtor conflict.  The Schedules list potentially several million dollars of value based on the claimed value of the TV Library, the bankruptcy schedules filed in the Smith individual bankruptcy case list the value as $0, and the PFS provided to 23 Capital in December 2020 lists it at $2.7 million.

- The SOFA reflects no transfers to insiders or non-insiders during the relevant preference periods, which is inconsistent with documents and information produced by the Debtor and the testimony of Mr. Smith about pre-bankruptcy transfers.

- The Schedules do not reflect any revenue generated in 2021, but Mr. Smith testified that there have been minimal revenues in 2021.

- The Schedules reflect no assets other than the TV Library, but Mr. Smith testified about furniture and other assets of the Debtor and a cashier's check made payable to the Debtor representing the remaining funds that were in Debtor's pre-petition bank account.

- The Schedules reflect that the Debtor has no accounts receivable, but Mr. Smith testified that the Debtor has and may collect accounts receivables.

- The Debtor relies upon the MVP Valuation in the Schedules despite that valuation relying upon projected revenue of over $18 million in 2021 and the Debtor (along with Hoplite, Inc.) generating only minimal revenue from the TV Library in 2021.

- Mr. Smith executed Schedules asserting a $38.5 million for the Debtor's portion of the TV library, but testified that the value of the Debtor's portion of the TV Library is approximately $10-12 million.[45]

- The Schedules reflect no licenses or internet domain names, but Mr. Smith testified that the Debtor has all necessary licenses and the internet domain names remain active.

- The Schedules do not identify any directors of the Debtor, but Mr. Smith testified that Greg Senner, Robert Lee, Gary Danklefsen and Pedro Ferro were directors of the Debtor.

- The Hoplite Entities allege that they own the TV Library and that no media content is held by any other entity, but Mr. Smith testified that media content is held by non-debtor HLESPV, LLC.

The above examples support that Mr. Smith not only continues to mislead creditors, but views his obligation to testify truthfully under oath about the assets and liabilities and the financial affairs of the Debtor as optional.  This is yet another basis on which to remove Mr. Smith from control and to convert this case to Chapter 7.   Neither this Court nor creditors can trust him.

**B.**     **Should the Court Decide Not to Convert this Case to Chapter 7, a Chapter 11 Trustee Should be Appointed.**

While 23 Capital believes that conversion to Chapter 7 is in the best interest of creditors and appropriate for the reasons set forth herein, if the Court is not inclined to convert this case or if facts

---

[45] Mr. Smith's assertion of value is not supported by any credible evidence and 23 Capital does not believe it to be reliable, but it is materially inconsistent with his statement under oath in the Schedules.

1    come to light that support the Debtor remaining in Chapter 11, then, at minimum, the Court should

2    appoint a Chapter 11 trustee.

3          Pursuant to 11 U.S.C. § 1104(a), courts are directed to appoint a trustee upon the finding of

4    cause, or if the appointment is in the best interest of creditors and the estate.  11 U.S.C. § 1104(a)(1)-(2).

5    Under Section 1104, "cause" includes "fraud, dishonesty, incompetence, or gross mismanagement of the

6    affairs of the debtor by current management, either before or after the commencement of the case…."

7    11 U.S.C. § 1104(a)(1).  Cause under Section 1104 can also include (a) a lack of evenhandedness in

8    dealing with insiders or affiliated entities vis-à-vis other creditors or customers; (b) the existence of pre-

9    petition voidable preferences or fraudulent transfers; and (c) self-dealing by management or

10   waste/squandering of corporate assets.  *See In re Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D. Ga.

11   2000) (finding cause to appoint a trustee based on improper insider dealing).  23 Capital asserts both that

12   "cause" exists for the appointment of a Chapter 11 trustee and that the appointment of a Chapter 11

13   trustee is in the best interests of the Debtor's estate and creditors.

14         The appointment of a trustee is mandated if this Court determines that the allegations by the

15   movant have a "substantial basis in the facts."  *In re Am. Res., Ltd.*, 54 B.R. 245, 247 (Bankr. D. Haw.

16   1985); *see also Tradex Corp. v. Morse*, 339 B.R. 823, 834-36 (D. Mass. 2006) (finding that bankruptcy

17   court properly ordered appointment of trustee based on credible, though disputed, allegations against

18   debtor that were the subject of a grand jury proceeding).  Unlike many other cases, in which allegations

19   of fraud and gross mismanagement have been asserted but are not yet established, the filing of this case

20   comes on the heels of Mr. Smith pleading the Fifth Amendment repeatedly when questioned under oath

21   about the assets, liabilities, and financial affairs of the Debtor, and the District Court in the Receivership

22   Action determining that Mr. Smith committed fraud.  In pertinent part, Judge Brown concluded:

23           I think there's lots of evidence of fraud. From what I've heard, I think this

24           witness was very credible in what he said. I think there was the
             representations that were made in O, Exhibit O, particularly in regards to

25           Big Media and Screen Media having an obligation at that time to pay were
             fraudulent.

26

27           We know that's the case with Mr. Needle, because of what we see in the
             email in which he explains that Paragraph 2(c) was not even part of the

28

agreement, or when he provides the agreement, it does not have that, so I think there's clear evidence of fraud right there by Mr. Smith.

The sort of allegation, the overarching allegation, that they're owed about $3.4 million from three different companies and that that payment was fairly imminent, 30 to 60 days, I think is what the witness explained, I think that was a misrepresentation, a fraudulent misrepresentation, given the other things that I'll say.

The false document I've already mentioned in Exhibit C provides a reason to find that there is fraud here. The false ACH transfers that were provided in J and K provide reason to believe that there was fraud here. The misleading document provided by Columbia State Bank, allegedly subrogating their claim, when you compare that to -- I think that's M and if you compare it to V, and you listen to what Ms. Godfrey said in her email and today, that it just simply was not signed by their people, yet it was presented by the defendant, I believe it was the defendant that provided that, right?...

So if you could address those issues for me, particularly the delta between what apparently Mr. Smith said and what actually wound up being true, I'd like to clear that issue first before we move on to what I think are more difficult issues. I don't think the fraud issue is a close call here.

I suspect if your client was here, he might be taking the fifth, I don't know. But I suspect if he was on the witness stand, he might be doing that.[46]

In short, the District Court found that Mr. Smith provided false loan and other documents and made various false representations to induce a loan from Bay Point. Among those documents, were falsified copies of a subordination agreement and loan agreement that Mr. Smith and the Debtor represented were executed by 23 Capital. 23 Capital did not execute (or authorize the execution of) a subordination agreement and the form of purported 23 Capital loan agreement provided to Bay Point was completely fabricated. Mr. Smith also provided 23 Capital with falsified copies of license agreements reflecting significant anticipated payments due to Hoplite Entertainment that were not real to fraudulently induce 23 Capital to extend its forbearance.

Given Mr. Smith's recent history of fraudulent misconduct, permitting current management to continue in control of the Debtor may invite yet further wrongdoing and could result in the dissipation or further concealment of estate assets to the detriment of creditors and other stakeholders.

---

[46] Feb. 10 Tr. at 123:8 – 125:20.

For these reasons, among others, the appointment of a Chapter 11 trustee is appropriate as it will (a) relieve current management where fraud has been established, (b) provide for the impartial liquidation of the Debtor, and (c) increase the prospect of the Debtor's estate being maximized for the benefit of all creditors.

**C.    Conversion to Chapter 7 or the Appointment of a Chapter 11 Trustee is Also Appropriate Because Mr. Smith is Conflicted.**

Conversion to Chapter 7 or the appointment of a Chapter 11 trustee is also appropriate because Mr. Smith is hopelessly conflicted.  Mr. Smith suffers from material conflicts of interest and cannot be trusted to administer the estate for the benefit of creditors.  *See, e.g., In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008) ("An independent trustee should be appointed under § 1104(a)(2) when they suffer from material conflicts of interest, and cannot be counted on to conduct independent investigations of questionable transactions in which they were involved."); *In re PRS Ins. Grp., Inc.*, 274 B.R. 381, 389 (Bankr. D. Del. 2001) (appointment of trustee appropriate under section 1104(a)(2) where causes of action against insiders are a significant asset of the estate).

"[D]ebtors-in-possession have a fiduciary duty to maximize the value of the estate."  *In re Reliant Energy Channelview LP*, 594 F.3d 200, 210 (3rd Cir. 2010).  Whether a debtor remains in possession hinges "upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee."  *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963). That duty includes making "impartial investigations and decisions in pursuing claims on behalf of the estate."  *In re Fiesta Homes of Georgia, Inc.*, 125 B.R. 321, 326 (Bankr. S.D. Ga. 1990) (internal citations omitted).  Courts have recognized that "[c]onflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor" constitute sufficient cause to appoint a trustee.  *In re Intercat, Inc*., 247 B. R. at 921.

Cause exists here to appoint a trustee because current management suffers from conflicts of interest that impede the Debtor's ability and willingness to fulfill its fiduciary obligation to the estate and its creditors.  Mr. Smith engaged in fraud to the detriment of the Debtor.  As a result, the estate may have claims against Mr. Smith (and other insiders) for, among other claims, breach of fiduciary duties. In addition, following its receipt of the proceeds of the Bay Point Loan, the Debtor, through Mr. Smith,

made transfers to insiders and other parties as directed by Mr. Smith. These same insiders cannot be trusted to honestly and independently carry out their fiduciary duties and investigate those potential claims. It is, therefore, essential that the Court appoint an independent fiduciary—through conversion to Chapter 7 or the appointment of a Chapter 11 trustee—to preserve the integrity of the bankruptcy process and assure the estate's creditors that the fiduciary duties owed to them will be carried out.

## VI.    **CONCLUSION**

WHEREFORE, 23 Capital respectfully requests entry of an Order (i) either (a) converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, or, in the alternative, (b) appointing a Chapter 11 trustee; and (ii) granting such other and further relief as is just and proper.

DATED: May 7, 2021                    GREENBERG TRAURIG, LLP

                                      By: */s/ David M. Guess*
                                      DAVID M. GUESS
                                      ARI NEWMAN (admitted *pro hac vice*)
                                      *Attorneys for Creditor XXIII Capital Limited*