# EXHIBIT L



Deposition of:

# Jonathan Lee Smith

*March 16, 2021*

In the Matter of:

# Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Veritext Legal Solutions

800.808.4958 | calendar-atl@veritext.com | 770.343.9696

**EXHIBIT L
PAGE 468**

Jonathan Lee Smith                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 1

1            THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
2                   ATLANTA DIVISION
3
4    BAY POINT CAPITAL PARTNERS
     II, LP,
5
            Plaintiff,
6                                    CIVIL ACTION NO.:
     vs.                             1:21-cv-00375-MLB
7
     HOPLITE, INC., HOPLITE
8    ENTERTAINMENT, INC., and
     JONATHAN LEE SMITH,
9
            Defendants.
10
11
12
13    REMOTE VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
14                 JONATHAN LEE SMITH
15                  March 16, 2021
16         11:00 a.m. Eastern Standard Time
17                 Atlanta, Georgia
18
19     Carolyn M. Carboni, RPR, RMR, CCR-B-878
20          Bryan Robinson, Videographer
21
22
23
24
25

EXHIBIT L
PAGE 469

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 2

1                          INDEX TO EXHIBITS

2        EXHIBIT                   DESCRIPTION                    PAGE

3        For the Plaintiff:

4        Exhibit 1  Amended notice of deposition             11

5        Exhibit 2  Hoplite, Inc.'s 11/30/20 statement

6                   of assets, liabilities and

7                   equity-tax basis                          36

8        Exhibit 3  Hoplite, Inc.'s 7/31/20 statement

9                   of assets, liabilities and

10                  equity-tax basis                         104

11       Exhibit 4  Hoplite Entertainment's 11/30/20

12                  statement of assets, liabilities

13                  and equity-tax basis                     112

14       Exhibit 5  Hoplite Entertainment's 7/31/20

15                  statement of assets, liabilities

16                  and equity-tax basis                     139

17       Exhibit 6  Loan and security agreement              153

18       Exhibit 7  License agreement, Screen Media

19                  Ventures                                 159

20       Exhibit 8  License agreement, Big Media

21                  Holdings                                 163

22       Exhibit 9  FCW acquisition agreement                167

23       Exhibit 10 Order of the Court                       173

24       Exhibit 11 Wells Fargo Simple Business

25                  Checking, Hoplite LBE                    176

Veritext Legal Solutions

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 3

1                INDEX TO EXHIBITS (Continued)

2    EXHIBIT              DESCRIPTION              PAGE

3    Exhibit 12 Wells Fargo Simple Business

4               Checking, Hoplite, Inc.          180

5    Exhibit 13 Wells Fargo Business Choice

6               Checking, Hoplite Entertainment   182

7    Exhibit 14 Wells Fargo Everyday Checking,

8               Jonathan Smith                   188

9    Exhibit 15 Secretary of State Articles of

10              Incorporation, FCW-Los Angeles    196

11   Exhibit 16 Copy of cashier's check written

12              to Lifeng Wang                   206

13   Exhibit 17 Two Wells Fargo checks written

14              to Law Office of James Pacitti    214

15   Exhibit 18 PPP borrower application form     220

16   Exhibit 19 Account detail, Bates D218-225    237

17                      -  -  -

18                INDEX TO EXAMINATION

19   EXAMINATION                                 PAGE

20   By Ms. Peurach                               7

21                      -  -  -

22

23

24

25

Jonathan Lee Smith                                                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 4

1    APPEARANCES OF COUNSEL:

2    On behalf of the Plaintiff:

3            (Via videoconference)

4            ALEXANDRA S. PEURACH, ESQUIRE

5            CHRISTOPHER J. KELLEHER, ESQUIRE

6            Troutman Pepper Hamilton Sanders LLP

7            600 Peachtree Street, Suite 3000

8            Atlanta, Georgia   30308

9            404.885.3000

10           alexandra.peurach@troutman.com

11   On behalf of the Defendants:

12           (Via videoconference)

13           LOUIS R. COHAN, ESQUIRE

14           EMILY COHAN, ESQUIRE

15           Cohan Law Group

16           3340 Peachtree Road, Suite 2570

17           Atlanta, Georgia   30326

18           404.891.1770

19           lcohan@cohanlawgroup.com

20

21           (Pursuant to Article 10(B) of the Rules

22   and Regulations of the Georgia of Court Reporting,

23   a written disclosure statement was submitted by the

24   court reporter to all counsel present at the

25   proceeding.)

EXHIBIT L
PAGE 472

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 5

1                P R O C E E D I N G S

2            THE VIDEOGRAPHER:  We are on the record.

3    The time is 11 a.m. on March 16th, 2021.  And this

4    is the beginning of the video deposition for

5    Jonathan Lee Smith.

6            Would counsel present please identify

7    themselves for the record.

8            MS. PEURACH:  Good morning.  You have Alex

9    Peurach and Chris Kelleher from Troutman Pepper for

10   Bay Point Capital Partners.

11           MR. COHAN:  And Louis Cohan with Cohan Law

12   Group for the defendants.

13           THE VIDEOGRAPHER:  Thank you, counsel.

14           MS. PEURACH:  Good morning.  Do you need

15   to swear the witness?

16           THE VIDEOGRAPHER:  Yes.

17           THE REPORTER:  I do.

18           MR. COHAN:  And also, we have an

19   associate, Emily Cohan, who is on as well.

20           THE VIDEOGRAPHER:  All right.  And Louis,

21   you -- because you don't have your microphone on,

22   it is kind of low, so just be aware of that, to

23   speak up if you don't mind.  I'm sorry.

24           MR. COHAN:  I just -- if I'm -- if I'm

25   going to be making an objection, will you be able

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 6

1    to know that I'm making an objection or do I need

2    to sort of yell?

3              THE REPORTER:  You do need --

4              THE VIDEOGRAPHER:  Carolyn, are you good

5    with that?

6              THE REPORTER:  You do -- as you're

7    speaking now, I can hear you fine.  Earlier I

8    couldn't, so you will have to speak up.

9              MR. COHAN:  All right.  I will.  Thank

10   you.

11                   JONATHAN LEE SMITH,

12   being first duly sworn, was examined and deposed as

13   follows:

14                        -   -   -

15             MR. COHAN:  We'll reserve all -- we'll

16   reserve all objections except as to the form of the

17   question and responsiveness of the answer until the

18   first use of the deposition.

19             THE REPORTER:  Excuse me.  I heard the

20   objection, but I didn't hear what you said after

21   that.

22             MR. COHAN:  Until the first use of the

23   deposition.

24             THE REPORTER:  Thank you.

25             MS. PEURACH:  And I'm sorry to do this

EXHIBIT L
PAGE 474

Jonathan Lee Smith                                           March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 7

1    already, but can we jump off the record?  I have to

2    fix this screen layout.

3             THE VIDEOGRAPHER:  Off record at 11:02.

4             (Off-the-record discussion.)

5             THE VIDEOGRAPHER:  Back on the record at

6    11:04.

7                       EXAMINATION

8    BY MS. PEURACH:

9        Q    Good morning, Mr. Smith.  As I mentioned,

10   my name is Alex Peurach.  I'm with the law firm of

11   Troutman Pepper in Atlanta and here on behalf of

12   Bay Point Capital Partners.

13            Could you please state your name for the

14   record?

15       A    Jonathan Lee Smith.

16       Q    Mr. Smith, do you understand we're here

17   for purposes of taking your deposition today?

18       A    Yes.

19       Q    And you understand that we're taking your

20   deposition in connection with a lawsuit filed by

21   Bay Point against you, Hoplite, Inc., and Hoplite

22   Entertainment?

23       A    Yes.

24       Q    So if I refer to "the lawsuit" today or

25   "the litigation," you'll understand that the

**EXHIBIT L**
**PAGE 475**

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 8

1    litigation I'm referring to is the litigation by

2    Bay Point against you and the Hoplite entities; is

3    that fair?

4         A    Yes.

5         Q    All right.  And you understand that you're

6    under oath today?

7         A    Yes.

8         Q    And do you understand that oath is just as

9    binding as it would be as if you were sitting in

10   front of a jury?

11        A    Yes.

12        Q    Is there any reason you cannot give full,

13   complete and accurate testimony today?

14        A    No.

15        Q    Have you ever been deposed before?

16        A    No.

17        Q    All right.  So let me give you just a

18   little bit of background.  Your lawyer might have

19   already given you some ideas of what to expect

20   today.  But I'm just going go over what we call

21   ground rules which will hopefully make things go

22   more smoothly and for both of our benefits then

23   also more quickly.

24             So as you probably are aware, this is a

25   question-and-answer format.  I'll be asking you

EXHIBIT L
PAGE 476

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 9

1    questions and you will be giving me answers.  The

2    court reporter is taking down my questions and your

3    answers.  And for that reason, I would ask that we

4    try not to speak over each other.  So please let me

5    finish my question before you begin to start your

6    answer, and I will extend you the same courtesy as

7    well.  Is that fair?

8         A    Yes.

9         Q    It's also important that you give your

10   answers verbally, so avoid shaking of the head or

11   giving an uh-huh or an huh-uh answer so that the

12   court reporter can get your testimony down fully.

13   Is that fair?

14        A    Yeah.

15        Q    If you don't understand a question, please

16   let me know.  If you answer a question, I'm going

17   to assume that you did understand it.  Is that

18   fair?

19        A    Yes.

20        Q    And finally, if you want to take a break

21   at any time, just let me know.  No problem at all.

22   The only thing I would ask is that if a question is

23   pending when you ask to take a break, that you

24   answer the question first and then we can go off

25   the record.  All right?

EXHIBIT L
PAGE 477

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 10

```
 1      A    Okay.

 2      Q    And so right now, you are in the same room

 3   as Mr. Cohan, right?

 4      A    Yes.

 5      Q    And he has an associate with him as well?

 6      A    Not --

 7           MR. COHAN:  Yes, but she is not in the

 8   room.

 9      A    Yes.

10   BY MS. PEURACH:

11      Q    Okay.  Is there anyone else in the room

12   with you?

13      A    No.

14      Q    Okay.  Mr. Smith, what did you do to

15   prepare for your deposition today?

16      A    I spoke with Louis and had a good night's

17   sleep.

18      Q    Okay.  Did you talk with anyone else in

19   preparation for your deposition?

20      A    Our general counsel in Los Angeles.

21      Q    Okay.  And who is your general counsel?

22      A    James Pacitti.

23      Q    James Pacitti.  And is he the general

24   counsel of Hoplite and Hoplite Entertainment?

25      A    Yes.
```

EXHIBIT L
PAGE 478

Jonathan Lee Smith                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                              Page 11

1        Q    Okay.  Did you speak with anybody else in
2    preparation for your deposition today?
3        A    No.
4        Q    Did you review any documents in
5    preparation for your deposition today?
6        A    No.
7        Q    I'm going to show you what we'll mark as
8    Exhibit 1 to your deposition, which is the notice
9    of your deposition today.
10            (Exhibit 1 marked.)
11   BY MS. PEURACH:
12       Q    And it should be up on the screen.  Do you
13   see that?
14       A    Yes.
15            MR. COHAN:  For the record, we can only
16   see a small portion of the document.
17   BY MS. PEURACH:
18       Q    That's fair.  Let me show you -- we can
19   just scroll through the whole thing real quick.
20   There you go.
21            Have you seen this document before?
22       A    Can you just scroll to the bottom if you
23   don't mind?
24       Q    Sure.
25       A    Yes.  Yeah.

**EXHIBIT L**
**PAGE 479**

Jonathan Lee Smith                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 12

1     Q     And do you understand that that's the

2  notice of deposition that we served on your

3  attorney in regards to your deposition today?

4     A     Yes.

5     Q     And so you're appearing for your

6  deposition today in connection with that notice; is

7  that right?

8     A     Correct.

9     Q     Okay.  Thank you.  Mr. Smith, I was hoping

10 to start with just a little bit of background on

11 the Hoplite entities.  If you could begin by

12 telling me what is Hoplite, Inc.?

13    A     A production service company in Los

14 Angeles.

15    Q     What do you mean a production service

16 company?

17    A     We make television shows.

18    Q     And what is Hoplite Entertainment?

19    A     Also a production service company that

20 makes television shows.

21    Q     How are they different, if at all?

22    A     Two different libraries, meaning two

23 different sets of shows.

24    Q     Are the sets of shows that are in the

25 different libraries of Hoplite and Hoplite

EXHIBIT L
PAGE 480

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 13

1    Entertainment divided categorically in any way?

2         A    No.

3         Q    What is your role at Hoplite, Inc.?

4         A    Currently my role is the head of

5    production.

6         Q    Do you have the same role with Hoplite

7    Entertainment?

8         A    Yes.

9         Q    Are you also the president and CEO of

10   Hoplite, Inc., and Hoplite Entertainment?

11        A    No.

12        Q    Who occupies the role of president and CEO

13   of Hoplite, Inc.?

14        A    The board hasn't decided yet.

15        Q    And is this -- that the same answer for

16   Hoplite Entertainment?

17        A    Yes, it is.

18        Q    Who comprises the board of Hoplite, Inc.?

19        A    Four individuals since I've been -- was --

20   resigned.  Are you asking for names?

21        Q    Yes, please.

22        A    Greg Senner, Robert Lee, Gary Danklefsen

23   and Pedro Ferre.

24        Q    Do those same individuals occupy the board

25   for Hoplite Entertainment?

EXHIBIT L
PAGE 481

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 14

1       A      Yes.

2       Q      When did you resign as CEO and president

3    of Hoplite, Inc., and Hoplite Entertainment?

4       A      Beginning of February.

5       Q      Is that February of 2021?

6       A      Yes.

7       Q      Why did you resign?

8       A      I was asked to by the board so they could

9    restructure.

10      Q      Did they tell you anything else as to the

11   reason that they were seeking your resignation from

12   Hoplite and Hoplite Entertainment as CEO and

13   president?

14      A      No.

15      Q      Are you still a shareholder of Hoplite,

16   Inc.?

17      A      Yes.

18      Q      What percentage of shares of Hoplite,

19   Inc., do you own?

20      A      100.

21      Q      How about Hoplite Entertainment, are you a

22   shareholder of that entity?

23      A      Yes.

24      Q      What percentage of Hoplite Entertainment

25   do you own?

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 15

1      A      72.

2      Q      Who are the other shareholders of Hoplite

3  Entertainment?

4      A      Tony Lord, Robert Lee, Jenna Lee Reyes,

5  Jonathan Perkins.

6            THE REPORTER:  What was the last name of

7  Jonathan?

8            THE WITNESS:  Jonathan Perkins.

9  BY MS. PEURACH:

10     Q      How long have you been a 72 percent

11  shareholder of Hoplite Entertainment?

12     A      A few years.

13     Q      More than two years?

14     A      Yes.

15     Q      More than five years?

16     A      No.

17     Q      You mentioned four other individuals who

18  are shareholders of Hoplite Entertainment.  Do any

19  of those individuals have a day-to-day role in the

20  operation of the company?

21     A      No.

22     Q      Going back to the board of directors of

23  Hoplite, Inc., and Hoplite Entertainment, do any of

24  those individuals have a role in the day-to-day

25  operations of the company?

EXHIBIT L
PAGE 483

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 16

1     A     No.

2     Q     What's your -- what are your

3     responsibilities now as head of the production for

4     the Hoplite entities?

5          And when I refer to the Hoplite entities,

6     it's purely to streamline, so please understand I'm

7     referring to Hoplite, Inc., and Hoplite

8     Entertainment at this point.  Is that fair?

9     A     Yes.

10    Q     So just so we have a clean question for

11    the record, what are your responsibilities as head

12    of production for the Hoplite entities?

13    A     Overseeing physical production of new

14    projects.

15    Q     So you said that you're seeing --

16    overseeing production of new projects.  What is

17    your role, if any, with respect to the production

18    of projects that were initiated prior to February

19    of 2021?

20    A     It would be effectively as the acting head

21    of production, a show runner over those projects.

22    Q     And what does that mean, to be a show

23    runner?

24    A     A conductor to make sure all the music

25    fits together.

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 17

1      Q    Are you coordinating the different pieces

2   to make sure everything is running smoothly; is

3   that fair?

4      A    Correct, yes.

5      Q    Okay.  Are there any other individuals

6   involved in overseeing the production of the TV

7   shows that are in the library of Hoplite, Inc., and

8   Hoplite Entertainment?

9      A    I don't understand the question exactly.

10  If you would --

11     Q    Sure, sure.  And as I said it, it was a

12  bad one, so I'm happy to rephrase.

13         Is there anyone else involved in

14  overseeing the production of the TV shows in

15  Hoplite and Hoplite Entertainment's library?

16     A    Yes.

17     Q    Who else is involved?

18     A    Several people.  It's on a show-by-show

19  basis.

20     Q    Are any of those people Hoplite employees?

21     A    Yes.

22     Q    Which individuals are Hoplite employees?

23     A    Julie Daniels, Sarah Snow.  That would

24  actually be it.  Everybody else is project to

25  project.

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 485**

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 18

1       Q    Okay.  So are Julie Daniels and Sarah Snow
2    full-time employees of Hoplite?
3       A    They were.  They've been furloughed.
4       Q    When were they furloughed?
5       A    A few months ago.  So it was probably the
6    very end -- Q4 of last year.
7       Q    Of 2020?
8       A    Yes.
9       Q    How many employees does Hoplite -- do the
10   Hoplite entities have currently sitting here today?
11      A    Currently today, zero employees.
12   Everybody is contract based.
13      Q    For how long have -- has it been the
14   Hoplite entities' employees have been on a contract
15   basis?
16      A    Since inception.
17      Q    Are you the only full-time employee of
18   Hoplite currently?
19      A    Yes.
20      Q    And you say since inception.  What is the
21   date of inception for Hoplite, Inc.?
22      A    Hoplite, Inc., around the end of 2016.
23      Q    How about for Hoplite Entertainment?
24      A    It was around the middle or end of 2013.
25      Q    Okay.  And so just so I'm clear, so since

Veritext Legal Solutions

EXHIBIT L
PAGE 486

Jonathan Lee Smith                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 19

1    2013, Hoplite Entertainment has not had any

2    full-time employees, is that right, aside from

3    yourself?

4         A    Correct.

5         Q    Okay.  And then since the inception of

6    Hoplite, Inc., around the end of 2016, it has not

7    had any full-time employees aside from yourself; is

8    that right?

9         A    Yes.

10        Q    Okay.  And just to make sure I understand

11   the corporate structure, have either Hoplite, Inc.,

12   or Hoplite Entertainment had any part-time

13   employees since their respective inception dates?

14        A    Yes, but always as independent contractors

15   or loan-outs.

16        Q    What do you mean by a "loan-out"?

17        A    Loan-out is a company that people have an

18   LLC, it's very common in entertainment, and they

19   get paid through their LLC for either tax purposes

20   or, you know, whatever the reason is that their tax

21   adviser advises.

22        Q    Are there any other entities that are

23   affiliated with Hoplite, Inc., and Hoplite

24   Entertainment?

25        A    Yes.

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 20

1      Q     What are those entities?

2      A     All of them are production LLCs.

3      Q     Can you tell me the name of those

4    production LLCs?

5      A     Don't remember all of them because there's

6    been a lot over the last eight years.

7      Q     Okay.

8      A     There's -- gosh, there's been a lot.  I

9    would say Bo Di-Hoplite, Hoplite LBE, HLE-SPV.

10     Q     One other that I've seen is Bay Hop SPV.

11   Does that ring a bell?

12     A     Yes.

13     Q     Is that another production LLC affiliated

14   with the Hoplite entities?

15     A     It was, yeah, or is, I guess.

16     Q     Can you remember any others right now?

17     A     Stable Wars, LLC.  In our entire -- names

18   are usually correlated with a series is why I can't

19   remember all of them because they're never the same

20   name and series.

21   BY MS. PEURACH:

22     Q     That's fine.  And we might come across

23   some documents today that refresh your

24   recollection, and feel free to let me know if they

25   do so.  And it's not a memory test.  So if you've

Veritext Legal Solutions

EXHIBIT L
PAGE 488

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 21

1   told me what you remember, then that's all you can

2   do.  I appreciate it.

3          Bo Di-Hoplite, is that still an active

4   production LLC?

5      A    Yes.

6      Q    What's it do?

7      A    Produces content in China.

8      Q    What about Hoplite LBE?

9      A    Still active.

10     Q    And what does Hoplite LBE do?

11     A    Location-based entertainment.

12     Q    What does location-based entertainment

13  mean?

14     A    Theme parks.

15     Q    So does it oversee providing content or

16  media at theme parks or to theme parks?

17     A    More service and art direction.

18     Q    Can you explain that a little bit more to

19  me?

20     A    Consulting services for companies like

21  Universal Studios.

22     Q    For how they would deliver production or

23  media entertainment at a park?

24     A    Live entertainment, yeah.  It has nothing

25  to do with media or TV production.

EXHIBIT L
PAGE 489

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 22

1      Q    Okay.  How about HLE-SPV, what -- is that

2   still active?

3      A    Yes.

4      Q    And what does the HLE-SPV do?

5      A    It's essentially just a holding company.

6      Q    What does it hold?

7      A    Content, some of the Hoplite Entertainment

8   library.

9      Q    And does HLE-SPV stand for Hoplite

10  Entertainment special purchase vehicle or special

11  purpose vehicle?

12     A    Yes.

13     Q    You mentioned -- or I mentioned and you

14  confirmed, Bay Hop SPV, LLC.  Is that LLC still

15  active?

16     A    As far as I know.

17     Q    What was the purpose or is the purpose of

18  that production LLC?

19     A    It was set up to do a slate with Bay

20  Point.

21     Q    And when you say set up to do a slate with

22  Bay Point, what do you mean?

23     A    A slate of television shows.

24     Q    And are those the television shows that

25  were subject to the license agreements that served

**EXHIBIT L**
**PAGE 490**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 23

1   as specified collateral in the loan between Hoplite

2   and Bay Point?

3       A    No.

4       Q    What were those shows?

5       A    They were separate shows that were yet to

6   be made.

7       Q    What's the current status of those shows?

8       A    We pulled the plug on them, so they're not

9   being made.

10      Q    And then you mentioned Stable Wars, LLC.

11  Is that production LLC active?

12      A    I don't believe so.

13      Q    What was its function when it was active?

14      A    Producing a television show for Fox.

15      Q    Do you recall when it was last active?

16      A    I do not.

17      Q    Do you recall the name of the show that

18  was subject to production?

19      A    Stable Wars.

20      Q    One other entity that I've seen is Hoplite

21  Channel, Inc.  What's that?

22      A    That was originally set up as a channel,

23  but nothing ever happened with it.

24      Q    Does the Hoplite Channel, Inc., entity

25  have any active purpose sitting here today?

EXHIBIT L
PAGE 491

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                        Page 24

1        A     No.

2        Q     You said that the channel never got set

3    up.  So did the Hoplite Channel, Inc., entity, was

4    that ever active?

5        A     Are you -- I don't understand the

6    question.  Are you asking if the LLC was active?

7        Q     Did it ever perform any business --

8        A     No.

9        Q     -- once it was created?

10       A     No.

11       Q     All right.  I want to go back real quick

12   to the individuals who are on the board of

13   directors for the two Hoplite entities.  How long

14   has that board of directors existed?

15       A     As it is now?

16       Q     Yes.

17       A     Since the fall of last year.

18       Q     Prior to the fall of 2020, how is the

19   composition of the board of directors different

20   than it is today?

21       A     Different members.

22       Q     Who was on the board previously that is no

23   longer today?

24       A     Jenna Lee Reyes, Jonathan Perkins and Tony

25   Lord.

Veritext Legal Solutions

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 25

1      Q    And who sits on the board today who did

2   not before the fall of 2020?

3      A    The other three individuals, Gary

4   Danklefsen, Greg Senner and Pedro Ferre.

5      Q    How did it come to be that the board of

6   directors composition changed in the fall of 2020?

7      A    Restructuring.

8      Q    Did you initiate the restructuring?

9      A    Along with the current board at the time.

10     Q    Aside from serving as a board member for

11  the Hoplite entities, does Greg Senner have any

12  other relationship with the Hoplite entities?

13     A    Yes.

14     Q    What is that?

15     A    He's a general manager for entities and

16  projects.

17     Q    And what are his responsibilities as

18  general managers -- general manager?

19     A    The different contractors that we have all

20  report in to him to try to help oversee operations

21  on a project basis.

22     Q    And has he held that role since joining

23  the board in the fall of 2020?

24     A    Prior.

25     Q    When did he first begin to hold that

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 26

1   position?

2        A      About a year and a half ago.

3        Q      How about Robert Lee, does he have any

4   connection to the Hoplite entities aside from

5   serving as a member of the board of directors?

6        A      And an owner.

7        Q      Anything else?

8        A      Not currently.

9        Q      The next name was Gary -- I think it's

10  Danklefsen?

11       A      Uh-huh.

12       Q      Does Mr. Danklefsen have any role in

13  connection with the Hoplite entities other than

14  serving as a board of -- member of the board of

15  directors?

16       A      No.

17       Q      And then you mentioned Pedro Ferre?

18       A      Ferre.

19       Q      Ferre.  Does Mr. Ferre have any role with

20  respect to the Hoplite entities other than serving

21  as a member of the board?

22       A      He's a co-chair of the executive

23  committee.

24       Q      Who is the other chair of the executive

25  committee?

Jonathan Lee Smith                                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 27

1        A     Gary Danklefsen.

2        Q     So just so the record is clear, Mr. Ferre

3    and Mr. Danklefsen are co-chairs of the executive

4    committee for Hoplite and Hoplite Entertainment?

5        A     Correct.

6        Q     Are there any other members of the

7    executive committee?

8        A     No.

9        Q     What are their responsibilities as

10   co-chairs of the executive committee of the Hoplite

11   entities?

12       A     Primarily helping in restructuring.

13       Q     How long has the executive committee of

14   the Hoplite entities been in place?

15       A     Since the end of last year.

16       Q     How did it come to be that a executive

17   committee was created?

18       A     The board.

19       Q     Were you involved in that decision?

20       A     No.

21       Q     Are you aware of the efforts that

22   Mr. Danklefsen and Mr. Ferre are undertaking as

23   co-chairs of the executive committee to restructure

24   the Hoplite entities?

25       A     Yes.

EXHIBIT L
PAGE 495

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 28

1      Q     What are they doing?

2      A     Trying to change the way that content is

3   both sold and made.

4      Q     In what way?  What changes do they want to

5   make?

6      A     I'm not fully aware of all of those.

7      Q     Are you aware of any of it?

8      A     A little bit.  They're trying to change

9   the way -- instead of Hoplite trying to finance

10  projects, Hoplite working on projects that are

11  fully funded as a service provider, period.

12     Q     Are you aware of the executive committee

13  trying to make any other restructuring changes to

14  the Hoplite entities?

15     A     Yes and no.  I'm aware that they're trying

16  to change financing and controls and I'm aware a

17  CFO is overseeing everything from a finance

18  standpoint, so I'm hands-off.  They're still

19  keeping the independent contractor model because it

20  works.  And I know they're trying to find larger

21  distribution deals.

22     Q     Do the Hoplite entities have a CFO in

23  place currently?

24     A     No.

25     Q     Have the Hoplite entities ever had a CFO

Veritext Legal Solutions

EXHIBIT L
PAGE 496

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 29

1    in place?

2         A     No.

3         Q     You mentioned Mr. -- is it Pacitti; is

4    that correct?

5         A     Yes.

6         Q     -- as the general counsel of the Hoplite

7    entities.  How long has he been in that position?

8         A     Since around inception.

9         Q     Do you have an org chart that reflects the

10   corporate structure of the Hoplite entities?

11        A     I don't believe so.

12        Q     You mentioned that two of Hoplite

13   entities' independent contractors were furloughed

14   last year.  Was that related to the COVID pandemic?

15        A     Yes.  All of our furloughs last year were

16   a direct result of COVID.

17        Q     How many furloughs did you have to put in

18   place as a result of the pandemic?

19        A     Over 100 people.

20        Q     Did this happen all at once or over time

21   after the pandemic took hold in March?

22        A     Some very early on in March, others over

23   the course of the last year.

24        Q     Do you recall the latest point in time in

25   which you had to furlough an independent contractor

**EXHIBIT L
PAGE 497**

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 30

1    involved in the Hoplite entities?

2         A    In January 2021.

3         Q    And so just so I understand it, so all

4    independent contractors associated with the Hoplite

5    entities are currently furloughed; is that right?

6         A    Yes, other than project by project.

7         Q    Do you know how many project-by-project

8    independent contractors are currently working for

9    the Hoplite entities?

10        A    I don't know an exact number, but I would

11   guesstimate around four.

12        Q    Do you know what projects they're working

13   on?

14        A    Sales.

15        Q    Are they working on the production of any

16   media content?

17        A    Not currently.  We're not in production on

18   any content.

19        Q    And so when you say "sales," is that in

20   connection with the Hoplite entities' efforts to

21   sell previously produced content?

22        A    Yes.

23        Q    But the Hoplite entities are not currently

24   in production on any new content; is that right?

25        A    Correct.

EXHIBIT L
PAGE 498

Jonathan Lee Smith                         March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 31

1      Q      Did the Hoplite entities previously

2    maintain an office at 6725 West Sunset Boulevard in

3    Los Angeles?

4      A      Yes.

5      Q      Was that property leased or owned?

6      A      Leased.

7      Q      And are the Hoplite entities still leasing

8    that property --

9      A      No.

10     Q      -- for office space?

11            When did the Hoplite entities stop leasing

12   the office space at 6725 West Sunset?

13     A      In December of 2020.

14     Q      Why?

15     A      The lease expired.

16     Q      Did the Hoplite entities give Bay Point

17   notice that it was closing the office at the 6725

18   West Sunset location?

19     A      No.

20     Q      Where do you currently conduct

21   Hoplite-related business from?

22     A      Home.

23     Q      And where is that?

24     A      In Los Angeles.

25     Q      Do you store the Hoplite entities' files,

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                          Page 32

1    corporate files, in your home now?

2        A    No.

3        Q    Where are they stored?

4        A    The few corporate files we have to keep we

5    store digitally.

6        Q    So do the Hoplite entities store any

7    corporate files in hard copy?

8        A    Not traditionally.

9        Q    I understand that perhaps that's not

10   traditionally what the Hoplite entities do, but are

11   there any hard copy files stored for the Hoplite

12   entities at all?

13       A    No.

14       Q    Do you edit and create content -- please

15   strike that.

16            Have the Hoplite entities edited or

17   created any content since closing the Sunset

18   Boulevard office?

19       A    If you could rephrase so I understand your

20   question.  Are you -- I don't understand what

21   you're asking.

22       Q    Sure.  I'm trying to understand whether

23   the Hoplite entities have been making any new

24   content, any new media content, since closing the

25   office in December of 2020.  So I guess an initial

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 500**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 33

1    question which might help us here is:  Have the

2    Hoplite entities been involved in the creating,

3    editing of new media content since closing its

4    office in December of last year?

5        A    Yes.

6        Q    And so where has that effort taken place

7    if the office has been closed?

8        A    Most of it can actually still be done

9    remotely, so it's been from people's homes.

10       Q    Is there some sort of software that's used

11   to do the editing and creation remotely?

12       A    Premiere.

13       Q    Pardon me?

14       A    Premiere.

15       Q    Who's been involved in the remote creation

16   of content for the Hoplite entities since December

17   of 2020?

18       A    Several people both domestically and

19   abroad.

20       Q    Do you remember any of their names?

21       A    Greg Senner, Levina Negi, Inverleigh.

22       Q    Is that Inverleigh Media?

23       A    Yes.

24       Q    What content have these individuals been

25   working on, creating or editing, since the Hoplite

EXHIBIT L
PAGE 501

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                        Page 34

1    entities closed the office in December of last

2    year?

3        A    They've been finishing shows we had in

4    postproduction.

5        Q    What shows are those?

6        A    I don't know if I remember all of them off

7    the top of my head.  But We Bought a Vineyard,

8    Guitar Hunters, Midnight Snack.  And maybe a few

9    others.  I can't remember.  Those three are on my

10   mind.

11       Q    Have you all completed the postproduction

12   process for those three shows?

13       A    No.

14       Q    When do you anticipate completing

15   postproduction?

16       A    Within the next few months.

17       Q    Do the Hoplite entities have any

18   production equipment that might need to be stored

19   somewhere?

20       A    Other than hard drives, no.

21       Q    And the hard drives, are those stored in

22   your home?

23       A    They're stored in multiple locations, so

24   they're not in one place, at different people's

25   homes.

EXHIBIT L
PAGE 502

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 35

1     Q     And how would you decide which hard drive

2     would be stored in which individual's home?

3     A     We don't.  It's just a space issue.

4     Q     Is it -- strike that.

5           Explain to me what you mean it's a space

6     issue, hard drives.

7     A     Well, obviously, I'm assuming you know

8     what a hard drive is.  So with the hard drives,

9     instead of stacking them at one person's house,

10    which isn't ideally safe since it's content, they

11    get stored digitally and then at different people's

12    homes within the company.  And some of them are at

13    a actual facility that is storing hard drives.

14    Q     Who is storing the hard drives with the

15    Hoplite entities' content on it?

16    A     Myself, a company called Walla just

17    received some, Greg Senner, Inverleigh in

18    Australia, Story Productions in Brazil.

19    Q     I'm sorry, Story Productions?

20    A     Yes.

21    Q     Can you think of anyone else right now?

22    A     IneoMedia.

23    Q     Ineo?

24    A     Yes.

25    Q     Anywhere else that the Hoplite entities

EXHIBIT L
PAGE 503

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 36

1   are storing hard drives with their content?

2       A    Not off the top of my head, no.

3       Q    And then are there any other mechanisms

4   that you use to store the content for shows

5   produced by Hoplite?

6       A    No.

7            (Exhibit 2 marked.)

8   BY MS. PEURACH:

9       Q    Okay.  I'm going to show you what we'll

10  mark as Exhibit 2 to your deposition, which is the

11  balance sheet produced for Hoplite, Inc., in this

12  case as of November of 2020.  And just give us a

13  second, we'll get it up on the screen for you.

14           And if you'd like, I'll direct your

15  attention, Mr. Smith, to various portions of this

16  document as we walk through it, but my first

17  question for you will be:  Do you recognize this

18  document, Exhibit 2?  And so if you would like us

19  to scroll through it, we're happy to do so, just

20  let us know.

21           MR. COHAN:  Objection.  Only a portion of

22  the document is visible.  You need to tell us how

23  long it is.

24       A    Okay.

25  BY MS. PEURACH:

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 37

1      Q     So Mr. Smith, as you saw from the screen,

2    this is a document labeled Hoplite, Inc., a

3    Statement of Assets, Liabilities and Equity-Tax

4    Basis as of November 30th, 2020.  And it has a

5    Bates label in the bottom right corner, which I can

6    show you, D1307 to 1308.  Do you see that?

7      A     I'm sorry.  I don't understand when you

8    say D107, what are you -- oh, I see it.

9      Q     Do you see on --

10     A     On the bottom corner.

11     Q     The bottom right.  So your attorney

12   provided this to us in the litigation.  And in

13   litigation, we label the documents on the bottom

14   right-hand corner with what are called Bates labels

15   so that we can track them and speak about them in a

16   deposition in a way where the record is clear.

17     A     Okay.

18     Q     So I'm directing you to the first page,

19   which is D1307, and then the second page of this

20   document is D1308.  Do you see that?

21     A     Yes.

22     Q     Okay.  And do you recognize this document?

23     A     Yes.

24     Q     And is this a true and accurate copy of

25   Hoplite, Inc.'s balance sheet as of November 30th,

EXHIBIT L
PAGE 505

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 38

1    2020?

2        A    I believe so.

3        Q    Okay.  Do you know who prepared this

4    document?

5        A    Ruslan Magidov.

6        Q    Is that Hoplite entities' accountant?

7        A    It's a third-party CPA firm.

8        Q    Is that the CPA firm that the Hoplite

9    entities uses to prepare its books and records and

10   other tax-related documents?

11       A    Correct.

12       Q    I just want to walk through some of these

13   entries with you to just better understand them.

14   So we can start from the top, under the assets

15   heading, the first section is labeled current

16   assets and then checking and savings.  And then

17   there are a list of seven checking and savings

18   accounts.  Do you see that?

19       A    Yes.

20       Q    Are -- let me strike that.

21            Are the first six checking or savings

22   account reflected on Exhibit 2 checkings and

23   savings accounts associated with particular shows

24   or content?

25       A    Some of them were, yes.

EXHIBIT L
PAGE 506

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 39

1      Q      Which one are not?

2      A      I believe Formula Dreams and T on Stage.

3   And the ███ was a general account, not a show

4   account.

5      Q      All right.  So the Formula Dreams account,

6   what's that for?

7      A      It was for a series that ended up not

8   getting made.

9      Q      What's this T on Stage account for?

10     A      The same.

11     Q      And then the Wells Fargo ███, is that

12  Hoplite, Inc.'s Wells Fargo checking account?

13     A      Correct.

14     Q      All right.  The next entry says loan

15  receivable, shareholder, Jon.  What's that?

16     A      I believe that was loans that I put into

17  Hoplite, Inc., that were still owed.

18     Q      Do you recall when you made the loan to

19  Hoplite, Inc.?

20     A      No.

21     Q      Do you recall the original balance of that

22  loan?

23     A      No.

24     Q      Do you know the current balance of that

25  loan?

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 40

1      A    No.

2      Q    Is it more or less than the amount

3   reflected on Exhibit 2?

4      A    I don't know.

5      Q    Let's look next -- the next heading under

6   assets is fixed assets.  There is accumulated

7   depreciation, computer and TV.  Where are these

8   fixed assets located?

9      A    Storage.

10     Q    Is that a storage facility in Los Angeles?

11     A    Yes.

12     Q    Does the storage facility belong to the

13  Hoplite entities?

14     A    No.

15     Q    Does it belong to you?

16     A    No.

17     Q    Who does it belong to?

18     A    It's a third-party company.  I can't

19  remember the name of it.

20     Q    What's your relationship, if any, to the

21  third party company that's storing the Hoplite

22  fixed assets?

23     A    None.  Just renting.

24     Q    So that's what I'm trying to understand.

25  The storage facility that's being used to house

EXHIBIT L
PAGE 508

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 41

1    these assets right now, who's renting it?

2         A    Hoplite.

3         Q    And so what else is Hoplite storing in

4    that facility currently?

5         A    Furniture.

6         Q    Is that furniture from the Sunset

7    Boulevard office?

8         A    Correct.

9         Q    Anything else?

10        A    Everything that was in that office, so

11   TVs, furniture, artwork.

12        Q    Anything else you can think of?

13        A    (Witness shakes head.)

14        Q    No?

15        A    I'm sorry?

16        Q    Is that a no?  Just for the record.

17        A    Yeah.  No, all it is just office

18   equipment, but there's no cameras or anything like

19   that.

20        Q    The next category of assets is entitled

21   show assets.  And so I just want to walk through

22   these shows and understand them a little bit.

23             So let's start at the top.  The first one

24   Atlantic Jellyman/Jelly Ballers, what is that?

25        A    A TV series.

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 42

1      Q     And what is Hoplite's involvement in that
2  TV series?

3      A     Co-ownership and production.

4      Q     Is that TV series in production currently
5  or is it -- is production completed?

6      A     Completed.

7      Q     Is it generating any income currently?

8      A     Yes.

9      Q     When was the last income received from the
10 Atlantic Jellyman/Jelly Ballers show?

11     A     Sometime last year.

12     Q     Do you remember if it was in the first
13 half or the second half of 2020?

14     A     I do not.  I would think towards the first
15 half.

16     Q     Do you recall the amount of income that
17 was received?

18     A     No.

19     Q     When is the next income from the Atlantic
20 Jellyman/Jelly Ballers show expected?

21     A     Before the end of Q2 of this year.

22     Q     What amount is Hoplite expecting from that
23 show before the end of Q2?

24     A     I don't know offhand.

25     Q     Is it more than $10,000?

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 43

1      A      Yeah.

2      Q      Is it more than $100,000?

3      A      I believe so.

4      Q      Is it more than $150,000?

5      A      Don't know.

6      Q      Who is Hoplite's partner in that show?

7      A      Bo Di.

8      Q      And that's another Hoplite entity, right?

9      A      No.  That's a Chinese company.

10     Q      Okay.  So that's not Bo Di-Hoplite?

11     A      Bo Di-Hoplite is both entities that own

12  it.

13     Q      Understood.  Okay.  So is Bo Di-Hoplite

14  the production LLC for the Atlantic Jellyman/Jelly

15  Ballers show?

16     A      Yes.

17     Q      And that means that it's being produced

18  jointly by Bo Di and Hoplite; is that right?

19     A      Correct.

20     Q      Okay.  Is the show licensed out to a

21  distributor?

22     A      No.

23     Q      Is Hoplite's interests in this show

24  liquid?

25     A      Rephrase the question.  I don't know if I

**EXHIBIT L**
**PAGE 511**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 44

1   understand it.

2       Q     Sure.  I'm trying to understand, can

3   Hoplite sell its interests in this -- in the

4   Atlantic Jellyman/Jelly Ballers show?

5       A     Yes.

6       Q     And what would the value of that interest

7   be?

8       A     Hard to say with television.

9       Q     What do you estimate it to be?

10      A     I wouldn't know how to do that on any of

11  the shows on this list because unscripted values

12  are -- can go from 200,000 up to 20 million.

13      Q     Do you peg the value of this show anywhere

14  in that spectrum?

15      A     Yes.

16      Q     Where?

17      A     Take a guess?

18      Q     Your best estimate.

19      A     I don't know how to do that.  I'm not the

20  sales guy on the individual titles.

21      Q     Okay.  Let's look at the next show, Back

22  in the Game, what's that show?

23      A     A basketball series.

24      Q     And what's Hoplite's involvement in that

25  show?

Veritext Legal Solutions

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 45

1        A     Co-producer.

2        Q     Who is the other co-producer?

3        A     Inverleigh.

4        Q     What's the status of Back in the Game?

5        A     It's been furloughed.

6        Q     Is production complete on the show?

7        A     No.

8        Q     Is it generating any income currently?

9        A     No.

10       Q     Has it ever generated any income?

11       A     No.

12       Q     Are you anticipating any income from the

13   Back in the Game show in the future?

14       A     If it gets made, yes.

15       Q     Are there any concrete plans in place to

16   complete production of Back in the Game?

17       A     Due to COVID, no.

18       Q     Is Hoplite in a position to sell its

19   interests in Back in the Game?

20       A     It could, yes.

21       Q     The next entry is Capitalized Production

22   Cost-Var.  Does that refer to a show?

23       A     I'm not sure.

24       Q     Does it ring a bell as the name of a show

25   that Hoplite is involved in the production of?

EXHIBIT L
PAGE 513

Jonathan Lee Smith                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                              Page 46

1        A     No.

2        Q     Charged and Disbarred SE2 is the next show

3    asset listed on Exhibit 2.   What's that?

4        A     A television series.

5        Q     What's that television series?

6        A     About attorneys that screw their clients

7    and then get disbarred.

8        Q     What's Hoplite's involvement in that show?

9        A     They're the lead producer and owner.

10       Q     Is Hoplite the sole owner?

11       A     Of Charged and Disbarred?

12       Q     Yes.

13       A     Yes.

14       Q     And what's the status of Charged and

15   Disbarred SE2?

16       A     The last few episodes are being finished.

17       Q     Has Hoplite ever received any income for

18   Charged and Disbarred SE2?

19       A     No.

20       Q     Is Hoplite expecting any income from

21   Charged and Disbarred SE2 now that the last few

22   shows are being finished?

23       A     When it's done, yes.

24       Q     What income is Hoplite expecting from

25   Charged and Disbarred SE2?

EXHIBIT L
PAGE 514

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 47

1      A     Don't know.

2      Q     More than $100,000?

3      A     Yes, more than $100,000, but wouldn't know

4   a gauge beyond that.  That would be a salesperson

5   question.

6      Q     When is Hoplite expecting to complete the

7   shows for Charged and Disbarred SE2?

8      A     This calendar year.

9      Q     The first or second half?

10     A     We're not sure because that comes down to

11  a post schedule.

12     Q     When you say "post," do you mean

13  postproduction?

14     A     Right.

15     Q     When is Hoplite expecting to see income

16  from Charged and Disbarred SE2?

17     A     Hopefully as soon as possible, by the end

18  of this year.

19     Q     Is that show licensed out to a

20  distributor?

21     A     Currently, no.

22     Q     Can Hoplite sell its interests in the

23  Charged and Disbarred SE2 show?

24     A     Yes.

25     Q     How about the next entry and show assets

EXHIBIT L
PAGE 515

Jonathan Lee Smith                                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 48

1   on Exhibit 2 which is Charged and Disbarred SE3,

2   what's that?

3       A    Same show.

4       Q    What's the difference between SE2 and SE3?

5       A    Signifies the season, season 2, season 3.

6       Q    Is SE3 season 3?

7       A    Right.

8       Q    What's the status of -- please strike

9   that.

10          Is Hoplite's involvement with Charged and

11  Disbarred SE3 the same as it is for SE2?

12      A    Yes.

13      Q    And what's the status of Charged and

14  Disbarred Season 3?

15      A    Change in the title, but it's not even in

16  preproduction.

17      Q    What did you change the title to?

18      A    American Legal.

19      Q    So I take it that Hoplite has not yet

20  received any income from Charged and Disbarred

21  Season 3 or American Legal?

22      A    Correct.

23      Q    Is there a point at time in which Hoplite

24  expects to see income from Charged and Disbarred

25  Season 3?

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 49

1        A      Unsure.

2        Q      Is the point in time in which production

3   of Charged and Disbarred Season 3 will be

4   completed -- strike that.

5               Do you know when production of Charged and

6   Disbarred Season 3 will be completed?

7        A      No.

8        Q      Is that season of Charged and Disbarred

9   licensed to a distributor?

10       A      No.

11       Q      Can Hoplite sell its interests in that

12  season of Charged and Disbarred?

13       A      Sure.

14       Q      Theoretically, right?

15       A      Theoretically, yes.

16       Q      Okay.  All right.  The next show listed on

17  Exhibit 2 is Culinary Escapes.  What's that?

18       A      TV series.

19       Q      And what's Hoplite's involvement in

20  Culinary Escapes?

21       A      We own it.

22       Q      Are there any other owners of Culinary

23  Escapes?

24       A      No.

25       Q      And what's the status of Culinary Escapes?

EXHIBIT L
PAGE 517

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 50

1        A      Finished.

2        Q      Is Culinary Escapes generating any income

3    currently?

4        A      Starting to.

5        Q      Has Hoplite ever received income from

6    Culinary Escapes?

7        A      I'm not sure.

8        Q      Do you know when Hoplite expects to next

9    receive income from Culinary Escapes?

10       A      Hopefully in the next few months.

11       Q      Do you know the amount of income Hoplite

12   is expecting to see in the next few months from

13   Culinary Escapes?

14       A      Hoping over a million.

15       Q      Is that show licensed out to a

16   distributor?

17       A      It's licensed to different buyers, yes.

18       Q      Which buyers is it licensed to?

19       A      It's an array of buyers.  I don't know off

20   the top of my head.  But from China to here in the

21   States, several.

22       Q      Is the Culinary Escapes show licensed to

23   buyers based on geographic distribution?

24       A      Yes.

25       Q      Do you know how many buyers it's licensed

EXHIBIT L
PAGE 518

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 51

1    to currently?

2          A    No.

3          Q    Can Hoplite sell its interests in the

4    Culinary Escapes show?

5          A    Yes.

6          Q    The next show on Exhibit 2 under show

7    assets is FFC Superstars-SPV.  Do you know what

8    that is?

9          A    Yes, it's a fight series.

10         Q    A fight series?

11         A    Yes.

12         Q    What's Hoplite's involvement in the FFC

13   Superstars fight series?

14         A    We were the lead producers on it.

15         Q    Are there any other producers involved?

16         A    Yes.

17         Q    Who else?

18         A    The FFC and another group, but I don't

19   remember their name.

20         Q    What's the status of the FFC Superstars

21   fight series show?

22         A    Completed.

23         Q    Pardon me?  You said completed?

24         A    Yes.

25         Q    Has it been licensed out to a distributor?

EXHIBIT L
PAGE 519

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 52

1      A    I believe a few, yes.

2      Q    Do you know the names of any sitting here

3  right now?

4      A    Off the top of my head, I think it's been

5  licensed to Amazon.  I believe the FCW has it as

6  well.

7      Q    What's FCW?

8      A    Fight Channel World.

9      Q    Is the FFC Superstars fight series

10  currently generating any income for Hoplite?

11     A    No.

12     Q    Has Hoplite ever received income from the

13  FFC Superstars fight series?

14     A    No.

15     Q    Is Hoplite expecting to see income from

16  the FFC Superstars fight series?

17     A    Yes.

18     Q    When?

19     A    I'm not sure.

20     Q    In the next six months?

21     A    The next calendar year.

22     Q    When you say "in the next calendar year,"

23  do you mean in 2022?

24     A    Between now and then, yes.

25     Q    Between now and the beginning of 2022?

Veritext Legal Solutions

EXHIBIT L
PAGE 520

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 53

1      A      Unsure.

2      Q      Between now and the end of 2022?

3      A      Still would say unsure.

4      Q      How much income would you estimate that

5   Hoplite's expecting from the FFC Superstars fight

6   series when it receives it?

7      A      More than 100,000, but unsure what that

8   amount would be.

9      Q      And can Hoplite sell its interests in that

10  show asset?

11     A      Yes.

12     Q      The next show asset listed on Exhibit 2 is

13  Formula Dreams-SPV.  What is that?

14     A      It's a television series.

15     Q      And what's Hoplite's involvement in that

16  television series?

17     A      Currently none.

18     Q      What was its previous involvement?

19     A      Co-producing.

20     Q      Who was the other co-producer?

21     A      A producer in Brazil.

22     Q      What happened such that Hoplite no longer

23  has a producing role on the Formula Dreams series?

24     A      We couldn't finish the financing.

25     Q      Do you know the status of that show?

800.808.4958                                                  770.343.9696

**EXHIBIT L**
**PAGE 521**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 54

1       A    No.

2       Q    Did Hoplite ever receive any income from

3   the Formula Dreams series?

4       A    I believe there was co-production income,

5   but other than that, no.

6       Q    And given that Hoplite is no longer a

7   co-producer, is Hoplite expecting any income in the

8   future from the Formula Dream series?

9       A    No.

10      Q    Hoplite no longer has an interest in

11  that -- in the show; is that right?

12      A    Correct.

13      Q    The next show listed on Exhibit 2 is the

14  Frederick Brunch Show.  Do you see that?

15      A    Yes.

16      Q    What's the Frederick Brunch Show?

17      A    It's a series about brunch.

18      Q    Sounds fun.  What is Hoplite's involvement

19  in the Frederick Brunch Show?

20      A    We own it.

21      Q    Are there any other owners?

22      A    Minorities, yes.

23      Q    What's Hoplite's percentage ownership of

24  the Frederick Brunch Show?

25      A    75.

**EXHIBIT L
PAGE 522**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                        Page 55

1       Q     What's the status of the Frederick Brunch

2    Show?

3       A     It needs to be finished.

4       Q     Is it in postproduction?

5       A     Postproduction was paused due to the

6    pandemic.

7       Q     Are there any concrete plans to resume

8    postproduction to finish the Frederick Brunch Show?

9       A     No.

10      Q     Has Hoplite ever received any income from

11   the Frederick Brunch Show?

12      A     No.

13      Q     I take it the Frederick Brunch Show is not

14   currently generating any income for Hoplite; is

15   that right?

16      A     Right.

17      Q     And is there a point in time at which --

18   in which Hoplite expects to receive income from the

19   Frederick Brunch Show?

20      A     When it's finished, yes.

21      Q     But you don't know when that will be; is

22   that right?

23      A     Right.

24      Q     Can Hoplite sell its interests in the

25   Frederick Brunch Show?

EXHIBIT L
PAGE 523

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 56

1        A     Yes.

2        Q     The next show listed on Exhibit 2 is the

3    Frederick Paranormal Show.  What is that?

4        A     A paranormal show.

5        Q     What's Hoplite's involvement in the

6    Frederick Paranormal Show?

7        A     Lead producer and owner.

8        Q     Are there any co-producers and co-owners

9    of the paranormal show?

10       A     All minorities, yes.

11       Q     What's Hoplites percentage ownership of

12   the paranormal show?

13       A     I believe 75.

14       Q     And can you recall the name of any of the

15   co-producers?

16       A     Not offhand, no.

17       Q     What's the status of the paranormal show?

18       A     Also postponed due to the pandemic in

19   post.

20       Q     In postproduction?

21       A     Yes.

22       Q     Is the Frederick Paranormal Show -- strike

23   that.

24             Are there any concrete plans to resume

25   postproduction and complete production of the

                    Veritext Legal Solutions

EXHIBIT L
PAGE 524

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 57

1    Frederick Paranormal Show?

2        A    Not currently.

3        Q    Did the Frederick Paranormal Show ever

4    generate any income for Hoplite?

5        A    No.

6        Q    Has the Frederick -- strike that.

7             Is the Frederick Paranormal Show expected

8    to generate any income for Hoplite in the future?

9        A    When it's completed, yes.

10       Q    And can you provide any estimate of the

11   amount of income that Hoplite would expect upon

12   completion?

13       A    More than 100,000.

14       Q    Can Hoplite sell its interests in the

15   Frederick Paranormal Show?

16       A    Yes.

17       Q    Okay.  The next show listed is -- on

18   Exhibit 2 is Geared Up.  What's Geared Up?

19       A    Television series.

20       Q    About what?

21       A    Cars.

22       Q    What's Hoplite's involvement in the Geared

23   Up show?

24       A    We produced it and own it.

25       Q    Are there any other producers or owners in

Veritext Legal Solutions

800.808.4958                                          770.343.9696

EXHIBIT L
PAGE 525

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 58

1    that show?

2         A     A very small minority.

3         Q     Do you know Hoplite's percentage ownership

4    of Geared Up?

5         A     Not off the top of my head, but I know

6    we're the majority.

7         Q     Is it closer to 50 percent or 75 percent?

8         A     Closer to 75.

9         Q     What's the status of the Geared Up show?

10        A     Completed.

11        Q     Is the Geared Up show generating any

12   income currently?

13        A     No.

14        Q     Has Hoplite ever received income from the

15   Geared Up show?

16        A     Yes.

17        Q     When was the last point in time in which

18   Hoplite received income from Geared Up?

19        A     Middle of last year.

20        Q     So you mean of 2020, right?

21        A     Yes.

22        Q     Is Hoplite expecting to receive income

23   from Geared Up in the future?

24        A     Yes.

25        Q     When?

**EXHIBIT L
PAGE 526**

Jonathan Lee Smith                                           March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 59

1      A     Sometime this year.

2      Q     Can you estimate whether it's the first or

3  second half of 2021?

4      A     Not realistically, no, but sometime in

5  2021.

6      Q     Can you estimate the amount of income that

7  Hoplite is expecting to receive in 2021 from the

8  Geared Up show?

9      A     More than $100,000.

10     Q     More than $500,000?

11     A     Unsure.

12     Q     Is that show, the Geared Up show, licensed

13 out to a distributor currently?

14     A     No.  Actually, it is in Germany.

15     Q     But nowhere else?

16     A     Correct.

17     Q     Do you know the name of the German

18 distributor?

19     A     Autentic.

20     Q     Can Hoplite sell its interests in the

21 Geared Up show?

22     A     Yes.

23     Q     Next on Exhibit 2 under show assets is

24 GH-SPV.  What is that?

25     A     It's a TV series.

Veritext Legal Solutions

EXHIBIT L
PAGE 527

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                      Page 60

1        Q    What's the TV series?

2        A    The one right underneath it, Guitar

3   Hunters, was originally set up as an SPV that was

4   going to help fund the series, and then it became

5   something we totally took over.

6        Q    Okay.  So is GH-SPV different from Guitar

7   Hunter?

8        A    It was at the time, but now it's the same

9   thing.

10       Q    So was GH-SPV a separate entity in terms

11  of production of the Guitar Hunter show at one

12  point in time?

13       A    Correct.

14       Q    And now the Guitar Hunter show, is that --

15  strike that.

16            What entity is producing the Guitar Hunter

17  show currently?

18       A    Hoplite.

19       Q    What role is GH-SPV playing currently in

20  production of Guitar Hunter?

21       A    Currently, nothing.

22       Q    Is GH-SPV currently inactive?

23       A    Unsure.

24       Q    So if I were going to ask you about the

25  show reflected in GH-SPV, would that be the same as

                    Veritext Legal Solutions

800.808.4958                                        770.343.9696

**EXHIBIT L**
**PAGE 528**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 61

1    me asking you about the Guitar Hunter show, it's

2    the same thing?

3         A    Correct.

4         Q    Do you know why there are two separate

5    entities -- or two separate entries listed under

6    Show Assets for the same show?

7         A    At the time, I believe Ruslan did that

8    because they were -- it was separate.  So it's his

9    way of keeping them separate before they merged

10   together, if that makes sense.

11        Q    And now that they've merged, the surviving

12   entity or show is Guitar Hunter, would be reflected

13   as Guitar Hunter?

14        A    Right.

15        Q    What's the Guitar Hunter show?

16        A    It's a series about guys hunting for

17   guitars across the United States.

18        Q    And what's Hoplite's involvement in that

19   series?

20        A    We produced it and own it.

21        Q    Is Hoplite the majority producer in this

22   show?

23        A    Yes.

24        Q    Did you say yes?

25        A    Yes.

EXHIBIT L
PAGE 529

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 62

1      Q     Is its ownership percentage closer to

2   75 percent or 50 percent?

3      A     Closer to 75.

4      Q     Do you know its exact ownership percentage

5   in this -- in this show?

6      A     Not off the top of my head.

7      Q     What's the status of Guitar Hunter

8   currently?

9      A     Postproduction.

10     Q     When is production expected to be

11  completed?

12     A     Unsure because of the pandemic.

13     Q     Is Guitar Hunter a show in which the

14  production was put on hold?

15     A     Postproduction was put on hold.

16     Q     Does Hoplite have any concrete plans to

17  resume the postproduction and completion of Guitar

18  Hero -- or Guitar Hunter?

19     A     Yes.

20     Q     What are those plans?

21     A     We're in the process of negotiating with

22  the postproduction house to finish it and

23  potentially give them a piece of the ownership to

24  finish it so we can sell it.

25     Q     Who's the postproduction house?

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 63

1      A     Inverleigh.

2      Q     Under that deal, when would postproduction

3   of Guitar Hunter be completed?

4      A     Sometime this calendar year of 2021.

5      Q     But that deal has not been fully executed

6   yet; is that right?

7      A     Right.

8      Q     Okay.  Has Guitar Hunter generated any

9   income for Hoplite to date?

10     A     No.

11     Q     If the deal with Inverleigh goes through,

12  does Hoplite anticipate receiving income from the

13  Guitar Hunter show?

14     A     Yes.

15     Q     Do you know the amount of income that

16  Hoplite would expect to receive from Guitar Hunter?

17     A     Over $100,000.

18     Q     Can you tell me if it's over $500,000?

19     A     Unsure.

20     Q     Can you tell me when Hoplite would expect

21  to receive that income from the Guitar Hunter show?

22     A     Within six months of it being finished.

23     Q     Is the show, the Guitar Hunter show,

24  currently licensed out to a distributor?

25     A     No.

EXHIBIT L
PAGE 531

Jonathan Lee Smith                                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 64

1      Q    And can Hoplite sell its interests in the

2    Guitar Hunter show?

3      A    Yes.

4      Q    The next entry under show assets in

5    Exhibit 2 is Hollywood Legal.  What's Hollywood

6    Legal?

7      A    A television series.

8      Q    And that's different from American Legal?

9      A    Yes.

10     Q    How so?

11     A    It focuses on the Hollywood cases, since

12    the birth of Hollywood in the 1930s.

13     Q    What's Hoplite's involvement in Hollywood

14    Legal?

15     A    Lead producer.

16     Q    What's -- or strike that.

17          Is Hoplite an owner of the Hollywood Legal

18    show?

19     A    Yes.

20     Q    What percentage does it own?

21     A    Majority, closer to 75.

22     Q    Do you know the names of the co-producers

23    of Hollywood Legal?

24     A    Not off the top of my head.

25     Q    Do you know the names of the co-owners?

EXHIBIT L
PAGE 532

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 65

1      A     Kyle Anderson and Gary Danklefsen.

2      Q     What's the status of Hollywood Legal?

3      A     It's been paused due to the pandemic.

4      Q     Was it paused in postproduction?

5      A     No.  It was paused before it started

6   shooting.

7      Q     Are there any plans to resume shooting of

8   Hollywood Legal?

9      A     No.

10     Q     Has Hoplite ever received any income from

11  Hollywood Legal?

12     A     No.

13     Q     Is Hoplite expecting to receive any income

14  from Hollywood Legal?

15     A     Yes.

16     Q     Can you estimate a point in time in which

17  Hoplite is expecting to receive that income?

18     A     Once the show is finished.  Sometime in

19  the next calendar two years.

20     Q     So right now, as we sit here today, the

21  plan is to complete the Hollywood Legal show in the

22  next one to two years?

23     A     Right.

24     Q     At that point in time, after completion of

25  the Hollywood Legal show, Hoplite would expect to

Veritext Legal Solutions

EXHIBIT L
PAGE 533

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                     Page 66

1    receive some form of income; is that right?

2        A    Yes.

3        Q    Can you estimate at this point the amount

4    of income that Hoplite would expect?

5        A    Over $100,000.

6        Q    That show, Hollywood Legal, hasn't been

7    licensed to a distributor yet, has it?

8        A    Correct, right.

9        Q    Can Hoplite sell its interests in the

10   Hollywood Legal show?

11       A    Yes.

12       Q    The next show listed on Exhibit 2 is Hot

13   Spots.   What's Hot Spots?

14       A    It's a television series about hot spots

15   around the world.

16       Q    What's Hoplite's involvement in that show?

17       A    Co-owner.

18       Q    What percentage does Hoplite own?

19       A    Don't know off the top of my head.

20       Q    Do you believe it's more than 50?

21       A    I believe so, yes.

22       Q    Do you know the co-owners of Hot Spots?

23       A    Bo Di.

24       Q    What's the status of Hot Spots?

25       A    Post.

EXHIBIT L
PAGE 534

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 67

```
 1      Q     Was postproduction paused because of the

 2   pandemic?

 3      A     Correct.

 4      Q     Are there any plans to resume

 5   postproduction of Hot Spots?

 6      A     Concrete, no.

 7      Q     Has Hot Spots ever generated any income

 8   for Hoplite?

 9      A     No.

10      Q     Is there a point in time in which Hoplite

11   is expecting to receive income from Hot Spots?

12      A     Yes, sometime in the next two years once

13   it's finished.

14      Q     And so just to make sure I understand, so

15   there are plans -- strike that.

16            Hoplite intends to complete production of

17   Hot Spots, right?

18      A     At some point, yes.

19      Q     But you can't tell me sitting here today

20   at what point that will be; is that right?

21      A     Correct.

22      Q     You do expect the production of Hot Spots

23   will be completed in the next one to two years, but

24   there are no concrete plans to do so, right?

25      A     Correct.
```

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 68

1      Q     Okay.  At whatever point in time

2   production of Hot Spots is completed, Hoplite

3   expects to receive income?

4      A     Correct.

5      Q     Is that estimate also over $100,000?

6      A     Yes.

7      Q     I assume given the status of the show,

8   it's not been licensed to a distributor; is that

9   right?

10     A     Correct.

11     Q     Can Hoplite sell its interests in the Hot

12  Spots show?

13     A     Yes.

14     Q     The next show listed on Exhibit 2 is Ink

15  Therapy SE2.  What's that?

16     A     It's a television series about tattoos,

17  second season.

18     Q     What's the status of the second season of

19  Ink Therapy?

20     A     Postproduction.

21     Q     And has postproduction been paused because

22  of the pandemic?

23     A     No.

24     Q     Is it in the middle of postproduction

25  currently?

**EXHIBIT L**
**PAGE 536**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 69

1      A      No.

2      Q      So tell me the status with postproduction.

3      A      We're waiting for finishing funds for that

4  series.

5      Q      Has postproduction begun?

6      A      Yes.

7      Q      Is there a time in which postproduction is

8  expected to be completed?

9      A      Based on sales, we're hoping in the next

10 calendar 12 months.

11     Q      What's Hoplite's involvement in Ink

12 Therapy?

13     A      We own it.

14     Q      Is Hoplite the 100 percent owner?

15     A      I believe there might be one small

16 minority on the first season.

17     Q      But not season 2?

18     A      Correct.

19     Q      Is Ink Therapy currently generating any

20 income?

21     A      Yes.

22     Q      What's the amount of income that it's

23 currently generating?

24     A      I'm unsure.

25     Q      When did Hoplite last receive income from

EXHIBIT L
PAGE 537

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 70

1    Ink Therapy?

2         A    I don't remember.  That would be a sales

3    team question.

4         Q    Do you know if it was in the last six

5    months?

6         A    I don't believe anything has come in in

7    the last six months, no.

8         Q    When Hoplite did receive income from Ink

9    Therapy, do you know the amount?

10        A    No.

11        Q    Do you know the point in time when the

12   next income from Ink Therapy is expected to be --

13   or Hoplite is expecting to receive?

14        A    Within the next six months.

15        Q    And do you have an estimate for that

16   amount?

17        A    No.

18        Q    Is the Ink Therapy show licensed to a

19   distributor?

20        A    No.

21        Q    Can Hoplite sell its interests in the Ink

22   Therapy show?

23        A    Yes.

24        Q    The next show asset listed on Exhibit 2 is

25   LOL.  What's that?

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 538**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 71

1      A    It's a television series about autistic

2   children.

3      Q    And what's Hoplite's involvement in LOL?

4      A    We own it.

5      Q    Are there any other owners?

6      A    I don't believe so.  If there is, it would

7   be a small minority.

8      Q    What's the status of LOL?

9      A    Completed.

10      Q    Is LOL currently generating any income for

11   Hoplite?

12      A    No.

13      Q    When did Hoplite last receive income from

14   LOL?

15      A    None to date.

16      Q    When does Hoplite expect to receive any

17   income from LOL?

18      A    This calendar year, more than 100,000.

19      Q    Is the show LOL licensed to a distributor?

20      A    No.

21      Q    Can Hoplite sell its interests in the LOL

22   show?

23      A    Yes.

24      Q    The next show listed on Exhibit 2 is

25   Master of Disaster.  What's that?

EXHIBIT L
PAGE 539

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                          Page 72

1       A       Television series about home remodeling.

2       Q       What's Hoplite's involvement in the

3   home -- or in the home remodeling show?

4       A       We own it.

5       Q       Is Hoplite the only owner?

6       A       Yes.

7       Q       What's the status of Master of Disaster?

8       A       Completed.

9       Q       Is it currently generating any income?

10      A       No.

11      Q       Has it ever generated any income for

12  Hoplite?

13      A       No.

14      Q       Is Hoplite expecting any income from the

15  Master of Disaster show?

16      A       Yes.

17      Q       When?

18      A       Sometime in the next calendar 12 months,

19  more than 100,000.

20      Q       Is the show currently licensed to a

21  distributor?

22      A       No.

23      Q       Can Hoplite sell its interests in the

24  show?

25      A       Yes.

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 73

1        Q    The next show on Exhibit 2 is Midnight

2    Snack.   What's Midnight Snack?

3        A    A series about food in China.

4             (Siri interruption.)

5             (Off-the-record discussion.)

6    BY MS. PEURACH:

7        Q    Okay.

8        A    Midnight Snack is a television series

9    about late night food in China.

10       Q    And what's Hoplite's involvement in that

11   show?

12       A    Co-owner.

13       Q    Who are the other owners of Midnight

14   Snack?

15       A    Bo Di.

16       Q    What's the status of Midnight Snack?

17       A    Postproduction.

18       Q    What's the status of postproduction

19   currently?

20       A    I'm sorry.  Can you rephrase the question?

21       Q    Sure.  Is postproduction on hold or is

22   there a time in which you're expecting it to be

23   completed?

24       A    We're expecting it to be completed this

25   year.

Veritext Legal Solutions

EXHIBIT L
PAGE 541

Jonathan Lee Smith                           March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 74

1        Q      In the next three months?

2        A      Six months.

3        Q      Is Midnight Snack currently generating any

4    income?

5        A      No.

6        Q      When production -- or strike that.

7               Has Midnight Snack ever generated any

8    income for Hoplite?

9        A      Yes, in fees.

10       Q      What fees?

11       A      Co-production fees.

12       Q      What amount of co-production fees has

13   Hoplite received to date?

14       A      A small number, less than 40,000.

15       Q      Do you recall when Hoplite received those

16   fees?

17       A      Sometime in 2019.

18       Q      When production of Midnight Snack is

19   completed, is Hoplite expecting to receive income?

20       A      Yes.  More than 100,000 over the course of

21   the first 12 months from its delivery.

22       Q      And Hoplite is estimating the delivery of

23   Midnight Snack to be within the next six months; is

24   that right?

25       A      Correct.

EXHIBIT L
PAGE 542

Jonathan Lee Smith                                   March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 75

1       Q      Is Midnight Snack licensed to a

2   distributor?

3       A      No.

4       Q      Can Hoplite sell its interests in Midnight

5   Snack?

6       A      Yes.

7       Q      What's the Proof show, which is listed

8   next under show assets on Exhibit 2?

9       A      It's a television series about paranormal.

10      Q      And what's Hoplite's involvement with

11  Proof?

12      A      The producer.

13      Q      Is Hoplite the only producer?

14      A      There were several.

15      Q      Do you know the names of any of the other

16  producers?

17      A      Not off the top of my head because it's a

18  lot.

19      Q      Is Hoplite an owner of Proof?

20      A      Partially.

21      Q      Do you know the percentage it owns?

22      A      I believe around 50.

23      Q      Do you know the names of any of the

24  co-owners of Proof?

25      A      Not off the top of my head.

EXHIBIT L
PAGE 543

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 76

1       Q     What's the status of Proof?

2       A     I believe it's completed.

3       Q     Is it generating any income for Hoplite?

4       A     No.

5       Q     Has Hoplite ever received income from

6    Proof?

7       A     No.

8       Q     Is there a point in time in which

9    Hoplite's expecting to receive income from Proof?

10      A     Yes.

11      Q     When is that?

12      A     After the show has recouped its budget,

13   then we get to share in revenue.

14      Q     Is there a point in time in which you're

15   estimating that Proof will have recouped its

16   budget?

17      A     Sometime before 2022.

18      Q     Is Proof currently licensed to a

19   distributor?

20      A     Not that I'm aware of.

21      Q     And can Hoplite sell its interests in

22   Proof?

23      A     Yes.

24      Q     Turning to Exhibit 2 again, the next show

25   asset listed is RPM Geared Up-SPV.  What's that?

                    Veritext Legal Solutions

EXHIBIT L
PAGE 544

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 77

1      A    That was originally before Geared Up was

2   made, a single purpose vehicle financing series.

3      Q    And so now that Geared Up has been made,

4   does the Geared Up entry on Exhibit 2 reflect that

5   show?

6      A    Yes.

7      Q    Like we saw with, where was it, yeah, the

8   GH-SPV that was later taken over by Guitar Hunter,

9   is that the same situation here where Geared Up

10  took over from the Geared Up-SPV?

11     A    Correct.

12     Q    The next entry is Slope Slap.  What is

13  that?

14     A    A competition series.  It takes place on

15  the side of a mountain.

16     Q    What's Hoplite's involvement in the Slope

17  Slap series?

18     A    We own the format, and we have a position

19  of ownership in the series.

20     Q    What's your position of ownership in the

21  series?

22     A    I believe around 50 percent.

23     Q    Do you know the names of the co-owners?

24     A    Not off the top of my head because, again,

25  there's a lot.

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 78

1          Q     What do you mean you own the format?

2          A     I'm not too sure I understand your

3     question.   What are you asking me?

4          Q     So you told me you own the format of Slope

5     Slap, and so I'm just trying to understand what

6     that means.

7          A     Format is the localized version of a

8     production and we own the format rights to the

9     show.

10         Q     Has Hoplite -- let me strike that.

11               What's the status of Slope Slap?

12         A     Completed.

13         Q     Is Slope slap currently generating any

14    income?

15         A     Not for Hoplite, no.

16         Q     Has Hoplite ever received income from

17    Slope Slap?

18         A     No.

19         Q     Is Hoplite expecting to receive income

20    from that show?

21         A     At some point in the next calendar year,

22    yes.   More than 100,000.

23         Q     At what point -- is there some event that

24    needs to take place in order to trigger Hoplite's

25    right to receive income in that show?   What would

EXHIBIT L
PAGE 546

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 79

1    be the point in time?

2        A    The final recoupment of the original

3    budget.

4        Q    And you're expecting that to happen at

5    some point in the next calendar year?

6        A    Correct.

7        Q    And by that, do you mean by the end of

8    2021?

9        A    Yes.

10       Q    Is Slope Slap currently licensed to a

11   distributor?

12       A    Not that I'm aware of.

13       Q    And can Hoplite sell its interests in that

14   show?

15       A    Yes.

16       Q    Okay.  We're almost there.  The next show

17   asset on Exhibit 2 is Social Etiquette.  What's

18   Social Etiquette?

19       A    Was a series about social media etiquette.

20       Q    What's Hoplite's involvement in that

21   series?

22       A    We were the owners and producers.

23       Q    What percentage ownership?

24       A    100.

25       Q    Did Hoplite have any co-producers on the

Veritext Legal Solutions

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 80

1    Social Etiquette show?

2        A    Talent.

3        Q    The talent involved in the show were also

4    producers?

5        A    Right.

6        Q    What's the status of the Social Etiquette

7    show?

8        A    It was canceled.

9        Q    Did the Social Etiquette show ever

10   generate any income for Hoplite?

11       A    No.

12       Q    Does Hoplite expect to receive any income

13   from the Social Etiquette show?

14       A    No.

15       Q    Are there any plans to revive the Social

16   Etiquette show?

17       A    Not currently.

18       Q    And can Hoplite sell its interests in the

19   Social Etiquette show?

20       A    Theoretically, I guess.

21       Q    When was it canceled?

22       A    Sometime in 2019.

23       Q    The next show listed on Exhibit 2 is

24   T on Stage-SPV.  What is that?

25       A    That was originally, if I remember

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 81

1    correctly, Living Out Loud, the LOL show.

2         Q    And so again here, does the LOL show --

3    did that --

4         A    They're now the same thing.  That was the

5    SPV set up for it, and then the SPV went away, and

6    now it's just LOL.

7         Q    Got it.  The next entry is The Seven-SPV.

8         A    It was a paranormal series that then went

9    on to become Proof.

10        Q    Okay.  And so we have the same situation

11   where Proof took over for the SPV; is that right?

12        A    Yeah.

13        Q    The next show asset is This is ESports.

14   What's that?

15        A    It's a TV series about ESports.

16        Q    What's Hoplite's involvement in that

17   series?

18        A    Co-owner.

19        Q    What percentage does it own?

20        A    I believe 50.

21        Q    Do you know the other owners?

22        A    Inverleigh.

23        Q    Anybody else?

24        A    There's some minorites that have revenue

25   participation, but not ownership, and I do not

EXHIBIT L
PAGE 549

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                        Page 82

1    remember those names.

2         Q    Did Hoplite have any role in the

3    production of This is ESports?

4         A    Yes.

5         Q    What was that role?

6         A    We co-produced the series.

7         Q    Did you co-produce with Inverleigh?

8         A    Yes.

9         Q    What's the status of This is ESports?

10        A    Being finished and post.

11        Q    Are there plans to finish -- actually,

12   strike that.

13             Is postproduction ongoing as we sit here

14   today?

15        A    Yes.

16        Q    When is postproduction expected to be

17   completed of This is ESports?

18        A    Within the next six months.

19        Q    Has This is ESports ever produced any

20   income for Hoplite?

21        A    No.

22        Q    When is income next expected for This is

23   ESports?

24        A    Shortly after delivery.

25        Q    And what amount of income is expected?

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 83

1      A    Over 100,000.

2      Q    And when you say "delivery," are you

3   talking about that point in time within six months

4   that you expect production to be completed?

5      A    Correct.

6      Q    Okay.  So it's Hoplite's expectation that

7   within six months, it will receive around $100,000,

8   if not more, from This is ESports; is that right?

9      A    Yes.

10     Q    It just depends on the timing of

11  completion and delivery, right?

12     A    Correct.

13     Q    Okay.  The second-to-last entry under show

14  assets on Exhibit 2 is We Bought a Vineyard.  Do

15  you see that?

16     A    Yes.

17     Q    What is that?

18     A    It's a TV series about a couple that

19  bought a vineyard.

20     Q    And what's Hoplite's involvement in the

21  We Bought a Vineyard show?

22     A    Co-producers.

23     Q    Who is the other -- who are the other

24  co-producers?

25     A    Inverleigh.

**EXHIBIT L**
**PAGE 551**

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 84

1      Q     Anybody else?

2      A     No.

3      Q     Does Hoplite have an ownership stake in

4    We Bought a Vineyard?

5      A     Yes.

6      Q     What's its ownership percentage?

7      A     Around 50.

8      Q     What's the status of We Bought a Vineyard?

9      A     Postproduction.

10     Q     Is postproduction ongoing as we sit here

11   today?

12     A     Yes.

13     Q     When is postproduction expected to be

14   completed?

15     A     Sometime in the next six months.

16     Q     Has We Bought a Vineyard ever generated

17   any income for Hoplite?

18     A     No.

19     Q     Is Hoplite expecting income upon the

20   completion of the postproduction?

21     A     Yes, within a calendar year.  Over

22   $100,000.

23     Q     And within a calendar year from the date

24   of completion from postproduction?

25     A     Correct.

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 85

1     Q    All right.  And can Hoplite sell its

2    interests in the We Bought a Vineyard show?

3     A    Yes.

4     Q    And I don't know that I asked this.  Can

5    Hoplite also sell its interests in the This is

6    ESports show?

7     A    Yes.

8     Q    All right.  And the last show asset listed

9    on Exhibit 2 is You've Been Had.  What is that?

10    A    Prank television series.

11    Q    What's Hoplite's involvement in the

12   You've Been Had series?

13    A    Co-owner and producer.

14    Q    What is the percentage of ownership

15   interest?

16    A    I don't remember because that one has a

17   lot of owners.

18    Q    Do you know if it's more or less than

19   50 percent?

20    A    I believe it's less.

21    Q    Do you know if it's more or less than

22   25 percent?

23    A    I honestly don't remember.

24    Q    Okay.  Do you know the names of the other

25   owners of the You've Been Had show?

Veritext Legal Solutions

EXHIBIT L
PAGE 553

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 86

1    A    There's several, and I don't actually

2    remember all the names because I believe it's with

3    both entities and individuals that the ownership on

4    that one is always kind of a mess.

5    Q    How about the co-producers?

6    A    Johnny Fratto.  That's the only name I can

7    think of off the top of my head.

8    Q    What's the status of You've Been Had?

9    A    Completed.

10   Q    Is it generating any income currently?

11   A    Not that I'm aware of.

12   Q    Has it ever generated any income for

13   Hoplite?

14   A    No.

15   Q    Is there a point in time in which Hoplite

16   is expecting income from the You've Been Had show?

17   A    Hopefully in the next calendar to 12

18   months from us doing this deposition.

19   Q    And is there any event in time that needs

20   to occur in order for Hoplite to start receiving

21   income from that show?

22   A    Yes.  The series budget needs to be

23   recouped first.

24   Q    And upon recoupment of the You've Been Had

25   budget, is Hoplite expecting to receive income from

EXHIBIT L
PAGE 554

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 87

1    that show?

2        A    Yes, something north of $100,000.

3        Q    How far away from recoupment of its budget

4    is the You've Been Had show in terms of dollars, do

5    you know?

6        A    No.

7        Q    Is the You've Been Had show licensed out

8    to a distributor?

9        A    Not that I'm aware of.

10       Q    And can Hoplite sell its interests in that

11   show?

12       A    Yes.

13       Q    And I don't know if I asked you this, the

14   We Bought a Vineyard show, is that licensed out to

15   a distributor?

16       A    No.

17            MS. PEURACH:  All right.  I think this

18   would be a good time to take a break.  We've been

19   going for quite a while.

20            THE VIDEOGRAPHER:  Off the record at

21   12:45.

22            (Recess from 12:45 to 1:00 p.m.)

23            THE VIDEOGRAPHER:  We're back on the

24   record at 1:00.

25   BY MS. PEURACH:

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 88

1     Q    Okay.  Mr. Smith, before we took a break,

2   we were looking at Exhibit 2.  I'm going to put it

3   back up on the screen for you.  This is Hoplite's

4   balance sheet as of November 30, 2020.  And we just

5   marched through the show assets listed on the first

6   page of Exhibit 2.

7          Are there any other show assets that are

8   not listed on Hoplite's balance sheet reflected in

9   Exhibit 2?

10    A    Not that I can think of off the top of my

11  head.

12    Q    If we go to the next page of Exhibit 2, it

13  reflects liabilities and equity.  Do you see that?

14    A    Yes.

15    Q    And I'd like to direct your attention to

16  under current liabilities, there are loans payable

17  and notes payable.  Are the difference between

18  those the length of the debt instruments?

19    A    Unsure.

20    Q    Let's look at the loans payable first.

21  The first loan reflected is a loan from Fifth Third

22  Bank, in parentheses, it's lender lender.  What is

23  that loan?

24    A    That is a payroll loan.

25    Q    From Fifth Third Bank to Hoplite, Inc.?

Veritext Legal Solutions

EXHIBIT L
PAGE 556

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 89

1      A     Correct.

2      Q     Do you recall the principal amount of that

3   loan?

4      A     No.

5      Q     Do you remember when it was entered?

6      A     Sometime at the beginning of 2020.

7      Q     Do you remember when the due date was or

8   is?

9      A     No.

10      Q     Is it past due?

11      A     I believe so.

12      Q     Has Hoplite repaid the indebtedness?

13      A     Not all of it.

14      Q     What's Hoplite's status under the loan

15   with Fifth Third Bank?

16      A     I believe that it's being negotiated to

17   settle.

18      Q     Is the -- is Hoplite in default over this

19   loan with Fifth Third Bank?

20      A     I believe so, yes.

21      Q     Did Hoplite put up any collateral in

22   connection with entering the loan with Fifth Third

23   Bank?

24      A     I don't remember.

25      Q     Did Hoplite enter a loan agreement with

EXHIBIT L
PAGE 557

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 90

1    Fifth Third Bank?

2         A    Yes.

3         Q    Did you provide a loan agreement to your

4    attorney to produce in this litigation?

5         A    I believe so, yes.

6         Q    Is that a loan agreement something that

7    you have in your electronic files?

8         A    Yes.

9         Q    Did Hoplite request that Fifth Third Bank

10   subordinate its security interest in any collateral

11   it received when it entered the loan with Bay

12   Point?

13            MR. COHAN:  Can you ask that again,

14   please?

15            MS. PEURACH:  Sure.  And I should restate

16   it.  So strike that.

17   BY MS. PEURACH:

18        Q    When entering the loan with Bay Point, did

19   Hoplite request Fifth Third Bank to subordinate any

20   security interest that Fifth Third Bank had in any

21   collateral that it received from Hoplite?

22            MR. COHAN:  Object to the form.

23        A    No.

24   BY MS. PEURACH:

25        Q    So in other words, is there a

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 558**

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 91

1    subordination agreement from Fifth Third Bank as it

2    relates to the Bay Point loan?

3        A    No.

4        Q    And had Hoplite entered the loan with

5    Fifth Third Bank prior to entering the loan with

6    Bay Point?

7        A    Yes.

8        Q    You said that the loan from Fifth Third

9    Bank was for payroll.  Is this payroll for the

10   independent contractors that Bay Point utilizes --

11   or strike that.

12           Is that payroll payroll for the

13   independent contractors that Hoplite utilizes?

14       A    Correct.

15       Q    The next loan is a loan payable to

16   Bo Di-Hoplite.  What's that?

17       A    Don't know.

18       Q    The next loan is a loan from OZE Capital

19   Fund.  What's that loan?

20       A    A loan against a television series.

21       Q    What television series?

22       A    I believe Living Out Loud.

23       Q    Is that the LOL show?

24       A    Yes.

25       Q    Do you recall the principal amount of that

800.808.4958                                          770.343.9696

**EXHIBIT L**
**PAGE 559**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                      Page 92

1    loan?

2        A    I don't remember the exact amount, no.

3        Q    Do you recall when Hoplite entered the

4    loan with OZE Capital Fund?

5             THE REPORTER:  I'm sorry.  What was the

6    answer?  Mr. Smith, what was your answer?

7             THE WITNESS:  Sometime in 2019.

8             THE REPORTER:  Thank you.

9    BY MS. PEURACH:

10       Q    What was the loan for?

11       A    Television series.

12       Q    So that Hoplite could produce the LOL

13   show?

14       A    Correct.

15       Q    What's the current status of the OZE

16   Capital Fund loan?

17       A    Could you please rephrase the question?

18       Q    Has Hoplite repaid the OZE Capital Fund

19   loan?

20       A    No.

21       Q    Has Hoplite made any payments on the OZE

22   Capital Fund loan?

23       A    Yes.

24       Q    When was the last time Hoplite made a

25   payment to OZE Capital Fund?

EXHIBIT L
PAGE 560

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 93

1      A      Sometime in 2020.

2      Q      Do you recall whether it was in the first

3  or second half of 2020?

4      A      It would be both halves.

5      Q      Do you recall approximately what month

6  Hoplite last made a payment to OZE Capital Fund?

7      A      No, I do not.

8      Q      Has the due date for the loan passed?

9      A      Yes.

10     Q      Is Hoplite currently in default under its

11 loan agreement with OZE Capital Fund?

12     A      Yes.

13     Q      Did Hoplite put up any collateral in

14 connection with entering the loan with OZE Capital

15 Fund?

16     A      Yes.

17     Q      What collateral?

18     A      The show itself.

19     Q      Anything else?

20     A      I don't remember off the top of my head.

21     Q      Had Hoplite entered the loan with OZE

22 Capital Fund prior to entering the loan with Bay

23 Point?

24     A      Yes.

25     Q      Did Hoplite request that OZE Capital Fund

EXHIBIT L
PAGE 561

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 94

1    subordinate its security interests in its

2    collateral to Bay Point?

3            MR. COHAN:  I'm going to instruct

4    Mr. Smith not to answer, and we're going to assert

5    his Fifth Amendment privilege.

6    BY MS. PEURACH:

7        Q    Are you following your attorney's

8    instruction?

9        A    Yes.

10       Q    Did you provide the loan agreement with

11   OZE Capital Fund to your attorney to produce in

12   this litigation?

13       A    Yes.

14       Q    Did you provide any subordination

15   agreement from OZE Capital Fund to your attorney to

16   produce in this litigation?

17           MR. COHAN:  Fifth Amendment.

18           THE REPORTER:  I didn't hear the

19   objection.

20           MR. COHAN:  Fifth Amendment.  Don't

21   answer.

22   BY MS. PEURACH:

23       Q    Are you following your attorney's

24   instruction?

25       A    Yes.

Veritext Legal Solutions

EXHIBIT L
PAGE 562

Jonathan Lee Smith                           March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 95

1     Q    The next loan listed on Exhibit 2 is

2    Partners, LLC.  What is that loan?

3     A    Don't know.

4     Q    Do you recall whether the loan existed

5    prior to entering the loan with Bay Point?

6     A    I would assume.

7     Q    But you don't know one way or the other?

8     A    (Witness shakes head.)

9     Q    Okay.  After the loans payable on

10   Exhibit 2 are three notes payable.  The first is

11   from BondIt, LLC.  Do you see that?

12    A    Yes.

13    Q    Are you familiar with the BondIt loan?

14         MR. COHAN:  Don't answer.  Fifth

15   Amendment.

16   BY MS. PEURACH:

17    Q    Are you following your attorney's

18   instruction?

19    A    Yes.

20    Q    Do you recall when you entered the BondIt

21   loan?

22         MR. COHAN:  Don't answer.  Fifth

23   Amendment.

24   BY MS. PEURACH:

25    Q    Are you following your attorney's

**EXHIBIT L**
**PAGE 563**

Jonathan Lee Smith                                   March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                              Page 96

1    instruction?

2         A     Yes.

3         Q     Do you recall what the BondIt loan was

4    for?

5               MR. COHAN:  Don't answer.  Fifth

6    Amendment.

7    BY MS. PEURACH:

8         Q     Are you following your attorney's

9    instruction?

10        A     Yes.

11        Q     Do you know the current status of the

12   BondIt loan?

13              MR. COHAN:  Don't answer.  Fifth

14   Amendment.

15   BY MS. PEURACH:

16        Q     Are you following your attorney's

17   instruction?

18        A     Yes.

19        Q     Did Hoplite put up any collateral in

20   connection with entering a loan with BondIt?

21              MR. COHAN:  Don't answer.  Fifth

22   Amendment.

23   BY MS. PEURACH:

24        Q     Are you following your attorney's

25   instruction?

EXHIBIT L
PAGE 564

Jonathan Lee Smith                               March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                              Page 97

1        A     Yes.

2        Q     Did you provide the loan agreement with

3   BondIt to your attorney to produce in this

4   litigation?

5              MR. COHAN:  Don't answer.  Fifth

6   Amendment.

7   BY MS. PEURACH:

8        Q     Are you following your attorney's

9   instruction?

10       A     Yes.

11       Q     Did you receive a subordination agreement

12  from BondIt when entering the loan with Bay Point?

13             MR. COHAN:  Don't answer.  Fifth

14  Amendment.

15  BY MS. PEURACH:

16       Q     Are you following your attorney's

17  instruction?

18       A     Yes.

19       Q     Did you provide a subordination agreement

20  from BondIt to your counsel to produce in this

21  litigation?

22             MR. COHAN:  Don't answer.  Fifth

23  Amendment.

24  BY MS. PEURACH:

25       Q     Are you following your attorney's

EXHIBIT L
PAGE 565

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 98

1    instruction?

2         A     Yes.

3         Q     Okay.   Looking back at Exhibit 2,

4    Mr. Smith, are two notes payable from Columbia

5    State Bank.   One has an asterisk next to it.   Do

6    you know why?

7              MR. COHAN:  Don't answer.   Fifth

8    Amendment.

9    BY MS. PEURACH:

10        Q     Are you following your attorney's

11   instruction?

12        A     Yes.

13        Q     Are you familiar with the two Columbia

14   State Bank loans listed on Exhibit 2?

15             MR. COHAN:  Don't answer.   Fifth

16   Amendment.

17   BY MS. PEURACH:

18        Q     Are you following your attorney's

19   instruction?

20        A     Yes.

21        Q     Do you know when you entered the two loans

22   with Columbia State Bank?

23             MR. COHAN:  Don't answer.   Fifth

24   Amendment.

25   BY MS. PEURACH:

EXHIBIT L
PAGE 566

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 99

1        Q     Are you following your attorney's

2    instruction?

3        A     Yes.

4        Q     Do you know when the Columbia State Bank

5    loans are due?

6              MR. COHAN:  Don't answer.  Fifth

7    Amendment.

8    BY MS. PEURACH:

9        Q     Are you following your attorney's

10   instruction?

11       A     Yes.

12       Q     Do you know whether Hoplite is in default

13   of the Columbia State Bank loans?

14             MR. COHAN:  Don't answer.  Fifth

15   Amendment.

16   BY MS. PEURACH:

17       Q     Are you following your attorney's

18   instruction?

19       A     Yes.

20       Q     Did Hoplite put up any collateral in

21   connection with entering the Columbia State Bank

22   loans?

23             MR. COHAN:  Don't answer.  Fifth

24   Amendment.

25   BY MS. PEURACH:

EXHIBIT L
PAGE 567

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 100

1       Q    Are you following your attorney's

2    instruction?

3       A    Yes.

4       Q    Did Hoplite request that Columbia State

5    Bank subordinate any security interest in any

6    collateral when it entered the loan with Bay Point?

7            MR. COHAN:  Don't answer.  Fifth

8    Amendment.

9    BY MS. PEURACH:

10      Q    Are you following your attorney's

11   instruction?

12      A    Yes.

13      Q    Did you provide Hoplite's loan agreements

14   with Columbia State Bank to your attorney to

15   produce in this litigation?

16           MR. COHAN:  Don't answer.  Fifth

17   Amendment.

18   BY MS. PEURACH:

19      Q    Are you following your attorney's

20   instruction?

21      A    Yes.

22      Q    Did you provide any subordination

23   agreement from Columbia State Bank to your attorney

24   to produce in this litigation?

25           MR. COHAN:  Don't answer.  Fifth

EXHIBIT L
PAGE 568

Jonathan Lee Smith                                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 101

1    Amendment.

2    BY MS. PEURACH:

3        Q    Are you following your attorney's

4    instruction?

5        A    Yes.

6        Q    One other question I think I neglected to

7    ask on the BondIt loan, is Hoplite in default of

8    the BondIt loan?

9            MR. COHAN:  Don't answer.  Fifth

10   Amendment.

11   BY MS. PEURACH:

12       Q    Are you following your attorney's

13   instruction?

14       A    Yes.

15       Q    Further down on Exhibit 2 is an entry that

16   says payroll liability, extreme reach.  What is

17   that in reference to?

18           MR. COHAN:  Don't answer.  Fifth

19   Amendment.

20   BY MS. PEURACH:

21       Q    Are you following your attorney's

22   instruction?

23       A    Yes.

24       Q    Further down on Exhibit 2, under the

25   liabilities heading are long-term liabilities.  The

EXHIBIT L
PAGE 569

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                        Page 102

1    first is a Cross River PPP loan payable.  Are you

2    familiar with that entry?

3            MR. COHAN:  Don't answer.  Fifth

4    Amendment.

5    BY MS. PEURACH:

6       Q    Are you following your attorney's

7    instruction?

8       A    Yes.

9       Q    How about the SBA EIDL loan, are you

10   familiar with that loan?

11           MR. COHAN:  Don't answer.  Fifth

12   Amendment.

13   BY MS. PEURACH:

14      Q    Are you following your attorney's

15   instruction?

16      A    Yes.

17      Q    And then it says shareholder loan, Jon.

18   Are you familiar with that?

19           MR. COHAN:  Don't answer.  Fifth

20   Amendment.

21   BY MS. PEURACH:

22      Q    Are you following your attorney's

23   instruction?

24      A    Yes.

25      Q    I note the balance sheet reflected on

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 103

1    Exhibit 2 is dated as of November 30th, 2020.  Why

2    isn't the Bay Point loan which Hoplite entered on

3    September 30th, 2020, reflected on Exhibit 2?

4              MR. COHAN:  First, we can't see the

5    date --

6              THE REPORTER:  I can't hear the objection.

7              MR. COHAN:  First, we can't see the date

8    that is clear on the exhibit.  We can't see the

9    whole document.  If you want to show it to him...

10   BY MS. PEURACH:

11       Q    We can start from the top of the document,

12   as you'll see, it's as of November 30th, 2020.  Do

13   you see that, Mr. Smith?

14       A    I see that, yes.

15       Q    Okay.  If you go to the second page, we

16   just looked, is liabilities and equity, and there's

17   a list of the liabilities for Hoplite, Inc.  And my

18   question to you is, if this is Hoplite, Inc.'s

19   liabilities as of November 30th, 2020, why is the

20   Bay Point loan not reflected?

21             MR. COHAN:  Don't answer.  Fifth

22   Amendment.

23   BY MS. PEURACH:

24       Q    Are you following your attorney's

25   instruction?

Veritext Legal Solutions

EXHIBIT L
PAGE 571

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 104

1     A     Yes.

2     Q     Are there -- strike that.

3           As of the date of this document, November

4   30th, 2020, did Hoplite have any other liabilities

5   that are not reflected on this balance sheet,

6   Exhibit 2?

7           MR. COHAN:  Don't answer.  Fifth

8   Amendment.

9   BY MS. PEURACH:

10    Q     Are you following your attorney's

11  instructions?

12    A     Yes.

13    Q     All right.  Mr. Smith, I'd like to direct

14  your attention -- go to tab 15 -- to what I'm going

15  to mark as Exhibit 3 to your deposition.

16          (Exhibit 3 marked.)

17  BY MS. PEURACH:

18    Q     This is -- and I'm happy to scroll through

19  the document, but it's labeled at the top, Hoplite,

20  Inc., Statement of Assets, Liabilities and

21  Equity-Tax Basis as of July 31st, 2020.

22          You'll see the document's Bates stamped

23  D756 to 761, was produced to us in this litigation,

24  included in addition to -- yeah, let's go to the

25  first -- is the whole thing -- right, the first two

**EXHIBIT L**
**PAGE 572**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 105

1   pages, as you'll see, and we'll go back through

2   them slow, there we go, is the statement -- the

3   balance sheet produced to us as of July 31st, 2020.

4   Do you recognize that document?

5       A    Yes.

6       Q    And then the second piece of the document

7   beginning on D758 is a Statement of Revenues,

8   Expenses and Retained Earnings through July 2020.

9   Do you recognize that document?  And we'll scroll

10  through the whole thing for you.

11      A    Yes.

12      Q    And is Exhibit 3 a true and accurate copy

13  of the financial statements for Hoplite as of

14  July 31st, 2020, that were prepared for the

15  company?

16          MR. COHAN:  Don't answer.  Fifth

17  Amendment.

18  BY MS. PEURACH:

19      Q    Are you following your counsel's

20  instruction?

21      A    Yes.

22      Q    I'd like to direct your attention to

23  page 4 of this document, which is right here.

24  Well, let's start -- let me direct your attention

25  first to D758, which is the header of the Statement

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 106

1   of Revenues, Expenses and Retained Earnings.  And

2   I'd like to then direct your attention to the page

3   with the liabilities on it.

4            I apologize.  My numbering was messed up.

5   So this is page 2 of Exhibit 3, Mr. Smith, the

6   balance sheet, which -- and I'm directing your

7   attention to the liabilities section at the top

8   half of that page, which again, like the November

9   balance sheet, includes loan payables and notes

10  payable.

11           We talked about these same entities in the

12  loans payable section of this July balance sheet

13  when we looked at the November balance sheet.  The

14  July balance sheet includes a number of notes

15  payable that were not reflected on the November

16  balance sheet.

17           Are the notes payable that appear here on

18  Exhibit 3, as of July 31st, 2020, were they paid

19  down by Hoplite before we saw November of 2020

20  which -- strike that.

21           Are the loans payable that are reflected

22  on Exhibit 3 that are not reflected on Hoplite's

23  November 2020 balance sheet, have those been paid

24  down?

25           MR. COHAN:  Don't answer.  Fifth

**EXHIBIT L
PAGE 574**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 107

1   Amendment.

2   BY MS. PEURACH:

3       Q    Are you following your counsel's

4   instruction?

5       A    Yes.

6       Q    The first note payable is from Alpine

7   Productions, LLC.  What was that loan for?

8            MR. COHAN:  Don't answer.  Fifth

9   Amendment.

10  BY MS. PEURACH:

11      Q    Are you following your counsel's

12  instruction?

13      A    Yes.

14      Q    Has Hoplite paid off the loan to Alpine

15  Productions, LLC?

16           MR. COHAN:  Don't answer.  Fifth

17  Amendment.

18  BY MS. PEURACH:

19      Q    Are you following your counsel's

20  instruction?

21      A    Yes.

22      Q    Did Hoplite put up any collateral in

23  connection with entering the loan with Alpine

24  Productions?

25           MR. COHAN:  Don't answer.  Fifth

EXHIBIT L
PAGE 575

Jonathan Lee Smith                                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 108

1    Amendment.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's

4    instruction?

5        A    Yes.

6        Q    When Hoplite entered its loan with Bay

7    Point, did it request Alpine Productions'

8    subordinate its interests in any collateral

9    provided by Hoplite?

10           MR. COHAN:  Don't answer.  Fifth

11   Amendment.

12   BY MS. PEURACH:

13       Q    Are you following your counsel's

14   instruction?

15       A    Yes.

16       Q    Did you provide Hoplite's loan agreement

17   to Alpine Productions -- with Alpine Productions to

18   your attorney to produce in this litigation?

19           MR. COHAN:  Don't answer.  Fifth

20   Amendment.

21   BY MS. PEURACH:

22       Q    Are you following your counsel's

23   instruction?

24       A    Yes.

25       Q    Did you provide a subordination agreement

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 109

1    from Alpine Productions to your attorney to produce

2    in this litigation?

3            MR. COHAN:  Don't answer.  Fifth

4    Amendment.

5    BY MS. PEURACH:

6        Q    Are you following your counsel's

7    instruction?

8        A    Yes.

9        Q    There's a loan reflected or a note payable

10   reflected from Gary Danklefsen in Exhibit 3.  Is

11   Mr. Danklefsen the Mr. Danklefsen you identified

12   earlier as a member of Hoplite's board of

13   directors?

14       A    Yes.

15       Q    What was the purpose of the loan from

16   Mr. Danklefsen?

17           MR. COHAN:  Don't answer.  Fifth

18   Amendment.

19   BY MS. PEURACH:

20       Q    Are you following your counsel's

21   instruction?

22       A    Yes.

23       Q    What was the principal amount of that

24   loan?

25           MR. COHAN:  Don't answer.  Fifth

800.808.4958                                          770.343.9696

**EXHIBIT L
PAGE 577**

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 110

1    Amendment.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's

4    instruction?

5        A    Yes.

6        Q    Has Hoplite repaid the loan to

7    Mr. Danklefsen?

8            MR. COHAN:  Don't answer.  Fifth

9    Amendment.

10   BY MS. PEURACH:

11       Q    Are you following your counsel's

12   instruction?

13       A    Yes.

14       Q    Did Hoplite put up any collateral in

15   connection with entering the loan with

16   Mr. Danklefsen?

17           MR. COHAN:  Don't answer.  Fifth

18   Amendment.

19   BY MS. PEURACH:

20       Q    Are you following your counsel's

21   instruction?

22       A    Yes.

23       Q    Did Hoplite request that Mr. Danklefsen

24   subordinate any security interest in its collateral

25   when it entered the loan with Bay Point?

**EXHIBIT L
PAGE 578**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 111

1          MR. COHAN:  Don't answer.  Fifth

2     Amendment.

3     BY MS. PEURACH:

4          Q    Are you following your counsel's

5     instruction?

6          A    Yes.

7          Q    Did you provide the loan agreement with

8     Mr. Danklefsen to your attorney to produce in this

9     litigation?

10          MR. COHAN:  Don't answer.  Fifth

11     Amendment.

12     BY MS. PEURACH:

13          Q    Are you going to follow your counsel's

14     instruction?

15          A    Yes.

16          Q    Did you provide a subordination agreement

17     for Mr. Danklefsen to your attorney to produce in

18     this litigation?

19          MR. COHAN:  Don't answer.  Fifth

20     Amendment.

21     BY MS. PEURACH:

22          Q    Are you following your counsel's

23     instruction?

24          A    Yes.

25          Q    Mr. Smith, there are eight more loans

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 112

1    under the notes payable column in Exhibit 3.  Is it

2    your intention to plead the Fifth Amendment in

3    connection with my questions regarding your

4    knowledge of those loan agreements?

5            MR. COHAN:  Mr. Smith will be asserting

6    the same Fifth Amendment privilege as to the same

7    questions as he just did.

8    BY MS. PEURACH:

9        Q    And will you be following your counsel's

10   instruction?

11       A    Yes.

12       Q    Mr. Smith, I'd like to direct your

13   attention to the Hoplite Entertainment balance

14   sheet as of November 2020.  So bear with us while

15   we get it on the screen.  We'll mark this as

16   Exhibit 4.

17           (Exhibit 4 marked.)

18   BY MS. PEURACH:

19       Q    And we'll give you an opportunity to take

20   a look at that whole document.

21           Mr. Smith, do you recognize this

22   November 30th, 2020, balance sheet for Hoplite

23   Entertainment?

24       A    Yes.

25       Q    And this balance sheet, Exhibit 4, is

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 113

1    Bates labeled D1293 to 94.  Was this also prepared

2    by Hoplite's outside CPA firm?

3         MR. COHAN:  Don't answer.  Fifth

4    Amendment.

5    BY MS. PEURACH:

6         Q    Are you following your counsel's

7    instruction?

8         A    Yes.

9         Q    I'd like to direct your attention under

10   assets of the checkings and savings accounts

11   listed, there is a WF checking ███ account, is

12   that Hoplite Entertainment's Wells Fargo checking

13   account?

14        A    Yes.

15        Q    There's also a bank account listed for

16   HLE-SPV, LLC.  What is the purpose of that account?

17        A    That's a collection account against the

18   library -- the older library related to Hoplite

19   Entertainment.

20        Q    Is that checking account still active?

21        A    Yes.

22        Q    It's still used to collect proceeds from

23   Hoplite's older library?

24        A    Yes.

25        Q    And do you have access to that account?

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 114

1        A     Yes.

2        Q     Does anyone else have access to that

3    account?

4        A     Yes.

5        Q     Who else?

6        A     Robert Lee.

7        Q     And he's member of the Hoplite board of

8    directors, right?

9        A     Yes.

10       Q     If you draw your attention down a few

11   lines, there's a line for prepaid interest, Pearl

12   Capital.  What that's a reference to?

13            MR. COHAN:  Don't answer.  Fifth

14   Amendment.

15   BY MS. PEURACH:

16       Q     Are you following your counsel's

17   instruction?

18       A     Yes.

19       Q     Under fixed assets, there is an entry for

20   capitalized loan fees.  Do you know what that is a

21   reference to?

22            MR. COHAN:  Don't answer.  Fifth

23   Amendment.

24   BY MS. PEURACH:

25       Q     Are you following your counsel's

EXHIBIT L
PAGE 582

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 115

1    instruction?

2        A     Yes.

3        Q     The next heading about halfway down on

4    Exhibit 4 is show assets.  I know we looked at a

5    lot of show assets on Hoplite's November 2020

6    balance sheet.  And so I'm going to march through

7    some of these briefly.  But my question for you

8    will simply be whether the shows are the same or if

9    it's a show that we hadn't talked about.

10            So the Atlantic Jellyman/Jelly Ballers

11   show, is that the same show we discussed in

12   connection with Hoplite?

13            MR. COHAN:  Hold on one second.  We need

14   to take a short break.

15            THE VIDEOGRAPHER:  Go off the record?

16            All right.  Off the record at 1:30.

17            (Off-the-record discussion.)

18            (Recess from 1:30 to 1:31 p.m.)

19            MR. COHAN:  We're ready when you are.

20            MS. PEURACH:  Sure.  Thanks.

21            MR. COHAN:  If you'll repeat the question.

22            THE VIDEOGRAPHER:  One moment.  Let's go

23   back on the record.  Stand by.  Back on the record

24   at 1:31.

25   BY MS. PEURACH:

EXHIBIT L
PAGE 583

Jonathan Lee Smith                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 116

1      Q    So Mr. Smith, we're looking at Exhibit 4,

2    Hoplite Entertainment's balance sheet.  And I was

3    directing your attention to the show assets listed

4    on Exhibit 4.  And the first show asset is Atlantic

5    Jellyman/Jelly Ballers.  And so I just want to

6    know, is that the same show we talked about earlier

7    in connection with Hoplite?

8            MR. COHAN:  So objections are lack of

9    personal knowledge and accountant-client privilege

10   and --

11           THE REPORTER:  Lack of -- I'm sorry.  I'm

12   very sorry, Mr. Cohan.  Objections are lack of

13   personal knowledge and attorney-client privilege?

14           MR. COHAN:  Accountant-client privilege.

15           MS. PEURACH:  Are you instructing him not

16   to answer?

17           MR. COHAN:  I'm instructing Mr. Smith not

18   to answer.

19           I don't know what you see on your end.  We

20   can't see what's going on.  We can't see the court

21   reporter or the video --

22           MS. PEURACH:  You can't see me?

23           MR. COHAN:  No.

24           THE WITNESS:  I can.

25           (Off-the-record discussion.)

EXHIBIT L
PAGE 584

Jonathan Lee Smith                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 117

1          MS. PEURACH:  Louis, do you want to take

2     another break or are we okay to proceed?

3          MR. COHAN:  Can't do anything different

4     during a break that I know of, so I'd say just

5     proceed.  I'm just telling you so you understand

6     that we're hampered on this end.

7          MS. PEURACH:  Understood.

8     BY MS. PEURACH:

9      Q    Mr. Smith, there are shows listed -- show

10    assets listed on Exhibit 4 that have the same names

11    as the show assets listed on Exhibit 2.

12         If I ask you if those are the same shows,

13    are you going to decline to answer on the basis of

14    the attorney -- accountant-client privilege?

15         MR. COHAN:  Same two objections and same

16    instructions.

17    BY MS. PEURACH:

18     Q    And so just so I understand, so to the

19    extent a show asset appears on both Hoplite

20    Entertainment's November 30th, 2020, balance and

21    Hoplite, Inc.'s November 30th, 2020, balance sheet,

22    you are declining to answer those questions as to

23    whether the shows are the same; is that right?

24         MR. COHAN:  Same two objections.  Same

25    instructions.

EXHIBIT L
PAGE 585

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 118

1    BY MS. PEURACH:

2         Q    Are you following your attorney's

3    instructions?

4         A    Yes.

5         Q    If you look at the show assets on

6    Exhibit 4, the fourth one down is called Cash

7    Floor.  Are you familiar with that show?

8              MR. COHAN:  Same objections.  Same

9    instructions.

10   BY MS. PEURACH:

11        Q    Are you following your counsel's

12   instruction?

13        A    Yes.

14        Q    There's also a show listed, Drone Wars,

15   who I haven't heard you talk about today.  Are you

16   familiar with the Drone Wars show?

17        A    Yes.

18        Q    What is it?

19        A    A series about drones.

20        Q    And what was Hoplite Entertainment's

21   involvement in Drone Wars?

22        A    Owner and producer.

23        Q    What's the percentage of ownership?

24        A    The majority, I believe, closer to 75.

25        Q    Do you know who the other owners are?

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 586**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 119

1      A      Not off the top of my head.

2      Q      Do you know who the other producers are,

3   if any?

4      A      Several, but not off the top of my head.

5      Q      What's the status of the Drone Wars show?

6      A      Completed.

7      Q      And has the Drone Wars show generated any

8   income for Hoplite Entertainment?

9      A      Yes.

10     Q      How much?

11     A      Over a million.

12     Q      When was the last time that Hoplite

13   Entertainment received income from Drone Wars?

14     A      2019.

15     Q      Is there a point in time in which Hoplite

16   Entertainment expects to receive additional income

17   from Drone Wars?

18     A      Yes.

19     Q      When is that?

20     A      Between now and the end of 2021.

21     Q      What amount of income is Hoplite

22   Entertainment expecting in that time period from

23   Drone Wars?

24     A      Over 100,000.

25     Q      Is the Drone Wars show licensed to a

EXHIBIT L
PAGE 587

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                          Page 120

1    distributor?

2         A    Currently, no.

3         Q    Are there any plans to license the Drone

4    Wars show to a distributor?

5         A    No.

6         Q    Can Hoplite Entertainment sell its

7    interests in the Drone Wars show?

8         A    Yes.

9         Q    The next entry on Exhibit 4 under show

10   assets is FCW Super/FFC Ring of Champions.  What is

11   that show?

12        A    The same FFC Superstars.

13        Q    That we talked about with Hoplite?

14        A    Correct.

15        Q    Do you know why they're listed -- the show

16   is listed on both Hoplite and Hoplite

17   Entertainment's balance sheets?

18        A    That would be an accountant question.  I

19   don't know the answer to that.

20        Q    Are both Hoplite and Hoplite Entertainment

21   producers of that show?

22        A    Rephrase the question for me.

23        Q    I'm trying to understand if Hoplite, Inc.,

24   and Hoplite Entertainment are producers of the FFC

25   show.

**EXHIBIT L**
**PAGE 588**

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 121

1      A      Yes, yes.

2      Q      They both are.  Foxy Ladies is another

3  show asset listed on Exhibit 4.  What is Foxy

4  Ladies?

5      A      About a coffee shop in Seattle.

6      Q      And what is the status of the Foxy Ladies

7  show?

8      A      Completed.

9      Q      What was Hoplite's -- or what is Hoplite's

10  involvement in the Foxy Ladies show?

11      A      Owns the series.

12      Q      Is the Hoplite Entertainment the complete

13  owner of the series?

14      A      Majority.

15      Q      Do you know who the other owners are?

16      A      Not off the top of my head.

17      Q      Does Hoplite Entertainment have a role in

18  the production of Foxy Ladies?

19      A      Yes.

20      Q      Were there any other producers?

21      A      Several.

22      Q      Do you know the names of any of them?

23      A      Not off the top of my head.

24      Q      Has Foxy Ladies ever generated any income

25  for Hoplite Entertainment?

EXHIBIT L
PAGE 589

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 122

1       A     Yes.

2       Q     How much?

3       A     Over a million dollars.

4       Q     When was the last time Hoplite

5    Entertainment received income from Foxy Ladies?

6       A     Between 2019 and now.

7       Q     Can you tell me if it was in the first or

8    second half of 2020?

9       A     Possibly first half of 2020 and

10   intermittently throughout 2019.

11      Q     And is it in that time period that Hoplite

12   Entertainment received a million dollars in income

13   about?

14      A     No.

15      Q     Was there additional time periods in which

16   Hoplite Entertainment received income from Foxy

17   Ladies that amounted to a million dollars?

18      A     Correct.  Over a million dollars over the

19   course of the last four or five years.

20      Q     And can you estimate the last point in

21   time in which you received income from the Foxy

22   Ladies show?

23      A     Sometime between Q4 and Q -- Q4 of 2020

24   and Q -- actually, I'm sorry, Q4 of 2019 and Q1 of

25   2020.

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 123

1      Q     Do you recall what that amount was?

2      A     I do not.

3      Q     Is there a point in time in which Hoplite

4    Entertainment's expecting to receive additional

5    income from the Foxy Ladies show?

6      A     Yes.

7      Q     When is that?

8      A     Over the course of the rest of 2021.

9      Q     When are you expecting Hoplite

10   Entertainment to first begin receiving income in

11   2021 from the Foxy Ladies show?

12     A     In the next six months.

13     Q     And what amount of income are you

14   expecting?

15     A     Around 100,000 or more.

16     Q     Is the Foxy Ladies show licensed to a

17   distributor?

18     A     Not currently, no.

19     Q     And can Hoplite Entertainment sell its

20   interests in that show?

21     A     Yes.

22     Q     The Misguided Tours show, which is on --

23   continued on the next page under show assets, the

24   page marked D1294, what is the Misguided Tours

25   show?

EXHIBIT L
PAGE 591

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 124

1       A    It's a show about tour guides that

2    misguide their guests.

3       Q    What is Hoplite's involvement in -- strike

4    that.

5            What's Hoplite Entertainment's involvement

6    in Misguided Tours?

7       A    Producer.

8       Q    Does it have an ownership stake?

9       A    Yes.

10      Q    What's the ownership stake?

11      A    I believe 50 percent shared with Bo Di.

12      Q    Did it also share production roles with

13   Bo Di?

14      A    Kind of.

15      Q    What do you mean?

16      A    Kind of in that we physically do the

17   production; they fund it.

18      Q    Were there any other entities involved in

19   the production of Misguided Tours?

20      A    No.

21      Q    What's the status of Misguided Tours?

22      A    It's paused due to the pandemic.

23      Q    Was it paused in postproduction?

24      A    No, preproduction.

25      Q    What -- preproduction, okay.

EXHIBIT L
PAGE 592

Jonathan Lee Smith                                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 125

1          Has Hoplite Entertainment ever received

2     any income from Misguided Tours?

3          A    No.

4          Q    Is there a point in time in which Hoplite

5     Entertainment is expecting income from Misguided

6     Tours?

7          A    Yes.

8          Q    When is that?

9          A    When the series is delivered.

10         Q    When -- strike that.

11              What plans exist to deliver the Misguided

12    Tours series?

13         A    Nothing concrete.

14         Q    So is there a point in time that you can

15    specify in which Hoplite Entertainment expects

16    income from Misguided Tours or are the plans too

17    incomplete as we sit here today to nail down a time

18    period?

19              MR. COHAN:  Object to the form.

20         A    Within about 12 months.

21    BY MS. PEURACH:

22         Q    Within about 12 months what?

23              MR. COHAN:  Object to the form.

24         A    If you can repeat your initial question.

25    BY MS. PEURACH:

EXHIBIT L
PAGE 593

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 126

1      Q     Sure.  So you told me that production of

2    Misguided Tours had stopped.  And yet you've also

3    told me that you're expecting income from Misguided

4    Tours.

5            So what are the plans for the production

6    of Misguided Tours that have Hoplite Entertainment

7    expecting income in the future?

8      A     We're trying to attach a tourism board to

9    finish the financing on the show so it can be shot

10   and then delivered and then generate revenue.

11     Q     And if all of those plans work out,

12   Hoplite Entertainment is expecting revenue would be

13   generated, I think you said, in the next 12 months?

14     A     Correct.

15     Q     And what's the amount of that revenue that

16   you would expect?

17     A     Over 100,000.

18     Q     Is that show Misguided Tours currently

19   licensed to a distributor?

20     A     No.

21     Q     Can Hoplite Entertainment sell its

22   interests in that show?

23     A     Yes.

24     Q     On Exhibit 4, the next -- another show

25   asset listed is Recipe Hunters.  What is that show?

Veritext Legal Solutions

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 127

1      A     It's a cooking series.

2      Q     What's Hoplite Entertainment's involvement

3   in Recipe Hunters?

4      A     Produce the show.

5      Q     Is Hoplite Entertainment also an owner of

6   the show?

7      A     Yes.

8      Q     What's the percentage of its ownership

9   interest?

10     A     We own it with only a rev share of the

11  third party -- the third parties.

12     Q     So you own the show 100 percent, yet share

13  some of the revenue with third parties?

14     A     Yes.

15     Q     What third parties do you share the

16  revenue with?

17     A     Several individual producers.

18     Q     Do you know any of their names?

19     A     Not off the top of my head.

20     Q     Has Recipe Hunters -- strike that.

21           What's the status of Recipe Hunters?

22     A     Complete.

23     Q     Is it generating any income currently?

24     A     No.

25     Q     Has Recipe Hunters ever generated income

EXHIBIT L
PAGE 595

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 128

1    for Hoplite Entertainment?

2        A    Yes.

3        Q    How much?

4        A    I don't remember off the top of my head,

5    but over a half million.

6        Q    Can you remember the last point in time in

7    which Hoplite Entertainment received income from

8    the Recipe Hunters show?

9        A    I believe in 2018.

10       Q    Sitting here today, is there a point in

11   time in which Hoplite Entertainment is expecting

12   additional income from the Recipe Hunters show?

13       A    Yes.

14       Q    When?

15       A    Within the next 90 days.

16       Q    Why?

17       A    A sale into Turkey.

18       Q    How much income is Hoplite Entertainment

19   expecting as a result of the sale of Recipe Hunters

20   into Turkey?

21       A    Over $100,000.

22       Q    Has the sale been completed?

23       A    Yes.

24       Q    Who is the entity in Turkey that purchased

25   Recipe Hunters?

**EXHIBIT L
PAGE 596**

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

```
                                            Page 129

 1       A     Lucid Entertainment and Trip 2 Media.

 2       Q     When you say that there was a sale to

 3    those two entities -- strike that.

 4             Has the Recipe Hunters show been licensed

 5    to a distributor?

 6       A     No.

 7       Q     Can Hoplite Entertainment sell its

 8    interests in the Recipe Hunters show?

 9       A     Yes.

10       Q     Exhibit 4 reflects Screaming Eagles as a

11    show asset.  What is Screaming Eagles?

12       A     A series about the U.S. rugby team.

13       Q     And what is Hoplite Entertainment's

14    involvement in the Screaming Eagles show?

15       A     Owns the series.

16       Q     Does it own it completely?

17       A     We own it with Inverleigh.

18       Q     Do you recall Hoplite Entertainment's

19    percentage of ownership?

20       A     Around half.

21       Q     Does Hoplite Entertainment also produce

22    Screaming Eagles?

23       A     Yes.

24       Q     Any other producers?

25       A     Inverleigh.
```

**EXHIBIT L
PAGE 597**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 130

1      Q      What's the status of the Screaming Eagles

2    show?

3      A      Postponed due to COVID.

4      Q      At what stage was it postponed?

5      A      Preproduction.

6      Q      Has Screaming Eagles ever generated any

7    income for Hoplite Entertainment?

8      A      No.

9      Q      Sitting here today, is there a point in

10   time in which Hoplite Entertainment expects to

11   receive income from the Screaming Eagles show?

12     A      When the series is complete, but that's

13   unknown due to COVID.

14     Q      Are there any concrete plans sitting here

15   today to complete the Screaming Eagles series?

16     A      Unknown due to COVID.

17     Q      Has Screaming Eagles been licensed to a

18   distributor?

19     A      No.

20     Q      Can Hoplite Entertainment sell its

21   interests in the Screaming Eagles show?

22     A      Yes.

23     Q      Stable Wars is listed as a show asset on

24   Exhibit 4.   What is Stable Wars?

25     A      It's a series about horseracing.

EXHIBIT L
PAGE 598

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 131

1    Q    What is Hoplite Entertainment's

2  involvement in Stable Wars?

3    A    We produced it and we own it.

4    Q    Are there any co-producers?

5    A    There were, yes.

6    Q    Who were they?

7    A    Don't remember.

8    Q    Are there any co-owners?

9    A    No.

10   Q    What's the status of Stable Wars?

11   A    Complete.

12   Q    Has Stable Wars generated income for

13  Hoplite Entertainment?

14   A    Yes.

15   Q    When was the last point in time that

16  Hoplite Entertainment received income from Stable

17  Wars?

18   A    I believe in December of last year.

19   Q    December of 2020?

20   A    Yes.

21   Q    Do you recall how much income was

22  received?

23   A    Very small amount, less than $10,000.

24   Q    Sitting here today, is there a point in

25  time in which Hoplite Entertainment expects

Veritext Legal Solutions
800.808.4958                                      770.343.9696

**EXHIBIT L**
**PAGE 599**

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 132

1    additional income from Stable Wars?

2        A    Yes.

3        Q    When is that?

4        A    Over $100,000 this calendar year.

5        Q    Is that show licensed to a distributor?

6        A    Not currently, no.

7        Q    Can Hoplite Entertainment sell its

8    interests in the Stable Wars show?

9        A    Yes.

10       Q    What's In My Pocket is a show listed on --

11   a show asset listed on Exhibit 4.  Do you see that?

12       A    Yes.

13       Q    Do you see there are two entries, What's

14   In My Pocket S1 and What's In My Pocket-Other?

15       A    Yes.

16       Q    Do you know what the difference in those

17   entries is?

18       A    That would be an accounting question.  I

19   do not.

20       Q    So it's just one show; is that right?

21       A    Correct.

22       Q    What is the What's In My Pocket show?

23       A    A dating game show.

24       Q    What's Hoplite Entertainment's

25   involvement?

EXHIBIT L
PAGE 600

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 133

1        A      Hoplite owns the show.

2        Q      Is it the sole owner?

3        A      Yes.

4        Q      Does Hoplite Entertainment also have a

5    production role with that show?

6        A      Yes, it produced the series.

7        Q      Is it the sole producer?

8        A      There were several.

9        Q      Do you recall the others?

10       A      Not off the top of my head.

11       Q      What's the status of the What's In My

12   Pocket show?

13       A      Completed.

14       Q      Is it generating any income currently?

15       A      No.

16       Q      Has it ever generated any income for

17   Hoplite Entertainment?

18       A      Yes.

19       Q      How much?

20       A      I believe over a half million dollars.

21       Q      At what point in time did the What's In My

22   Pocket show generate income for Hoplite

23   Entertainment?

24       A      I believe in 2018.

25       Q      When -- strike that.

Veritext Legal Solutions

**EXHIBIT L
PAGE 601**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 134

1          Sitting here today, is there a point in

2     time in which Hoplite Entertainment is expecting

3     additional income from the What's In My Pocket

4     show?

5          A     Yes.

6          Q     When is that?

7          A     This calendar year.

8          Q     And how much?

9          A     Over $100,000.

10         Q     What's the triggering event or reason that

11     you're expecting income from What's In My Pocket in

12     2021?

13         A     Multiple negotiations in place for that

14     series and its format.

15         Q     Are any of those -- have any of those

16     negotiations finalized into a final agreement?

17         A     Not currently, no.

18         Q     Is the show currently licensed to a

19     distributor?

20         A     No.

21         Q     Can Hoplite Entertainment sell its

22     interests in the What's In My Pocket show?

23         A     Yes.

24         Q     Wrecking Plan is a show asset listed on

25     Exhibit 4.   What is that?

EXHIBIT L
PAGE 602

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 135

1      A    It's a series about a group of people that

2    dismantle planes in the desert.

3      Q    What's Hoplite Entertainment's involvement

4    in that show?

5      A    It produced the series.

6      Q    Is Hoplite Entertainment also an owner of

7    the series?

8      A    Yes.

9      Q    What's the status -- strike that.

10         Are there any other owners of the Wrecking

11   Plan show?

12     A    No.

13     Q    Were there any other producers?

14     A    Yes.

15     Q    Who are they?

16     A    There were several of them.  I can't

17   remember all the names.

18     Q    Can you remember anybody sitting here?

19     A    Talaat Captan.

20         THE REPORTER:  I'm sorry.  Can you repeat

21   that?

22         THE WITNESS:  Talaat Captan.

23   BY MS. PEURACH:

24     Q    Can you remember anyone else?

25     A    Long list.  I can't remember all the other

800.808.4958                                      770.343.9696

EXHIBIT L
PAGE 603

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 136

1    names, no.

2        Q     What's the status of the Wrecking Plan

3    show?

4        A     Completed.

5        Q     Has the Wrecking Plan show ever generated

6    any income for Hoplite Entertainment?

7        A     Yes.

8        Q     How much?

9        A     Over one and a half million.

10       Q     When was the last point in time that

11   Hoplite Entertainment received income from the

12   Wrecking Plan show?

13       A     I believe early 2019.

14       Q     Sitting here today, is there a point in

15   time in which Hoplite Entertainment is expecting

16   additional income from the Wrecking Plan show?

17       A     Yes.

18       Q     When is that?

19       A     This calendar year, over $100,000.

20       Q     And for -- what's the triggering event for

21   which Hoplite Entertainment is expecting to see

22   that level of income in 2021?

23       A     Additional sales.

24       Q     Have any of those sales finalized?

25       A     No.

EXHIBIT L
PAGE 604

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                        Page 137

1       Q    Is the Wrecking Plan show licensed to a

2    distributor currently?

3       A    No.

4       Q    Can Hoplite Entertainment sell its

5    interests in the Wrecking Plan show?

6       A    Yes.

7       Q    Mr. Smith, if I could draw your attention

8    further down on this page D1294 of Exhibit 4, a

9    list of liabilities, the first liability listed

10   under current liabilities is Pearl Capital Funding.

11   Are you familiar with that liability?

12           MR. COHAN:  Don't answer.  Fifth

13   Amendment.

14   BY MS. PEURACH:

15      Q    Are you following your counsel's

16   instruction?

17      A    Yes.

18      Q    If you look down to long-term liabilities,

19   there is an entry for loan from Hoplite Studios.

20   Are you familiar with that loan?

21           MR. COHAN:  Don't answer.  Fifth

22   Amendment.

23   BY MS. PEURACH:

24      Q    Are you following your counsel's

25   instruction?

EXHIBIT L
PAGE 605

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 138

1        A     Yes.

2        Q     The next entry is a shareholder loan, Jon.

3    Are you familiar with that entry?

4              MR. COHAN:  Don't answer.  Fifth

5    Amendment.

6    BY MS. PEURACH:

7        Q     Are you following your counsel's

8    instruction?

9        A     Yes.

10       Q     The next entry is Wells Fargo PPP loan

11   payable.  Are you familiar with that loan?

12             MR. COHAN:  Don't answer.  Fifth

13   Amendment.

14   BY MS. PEURACH:

15       Q     Are you following your counsel's

16   instruction?

17       A     Yes.

18       Q     Looking at the liabilities on Exhibit 4,

19   as of November 30th, 2020, why isn't the Bay Point

20   loan listed?

21             MR. COHAN:  Objection.  Lack of personal

22   knowledge and accountant-client privilege.  Don't

23   answer.

24   BY MS. PEURACH:

25       Q     Are you following your counsel's

Veritext Legal Solutions

EXHIBIT L
PAGE 606

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                             Page 139

 1   instruction?

 2       A    Yes.

 3       Q    Are you aware of any liabilities as of

 4   November 30th, 2020, for Hoplite Entertainment not

 5   reflected on Exhibit 4?

 6            MR. COHAN:  Objection.  Lack of personal

 7   knowledge.  Accountant-client privilege.  And Fifth

 8   Amendment.  Don't answer.

 9   BY MS. PEURACH:

10       Q    Are you following your counsel's

11   instruction?

12       A    Yes.

13       Q    Mr. Smith, I'm going to show you what I'll

14   mark as Exhibit 5 to your deposition, which is

15   Hoplite Entertainment, Statement of Assets,

16   Liabilities and Equity-Tax basis as of July 31st,

17   2020.

18            (Exhibit 5 marked.)

19   BY MS. PEURACH:

20       Q    And the Bates range for this document is

21   D749 to 752.  I'll just scroll through it.  It's

22   just four pages.  Are you familiar with this

23   document?

24       A    Yes.

25       Q    All right.  I just want to direct your

EXHIBIT L
PAGE 607

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 140

1    attention -- actually, strike that.

2            Was Exhibit 5 also prepared by Hoplite

3    Entertainment's outside CPA firm?

4            MR. COHAN:  Don't answer.  Fifth

5    Amendment.

6    BY MS. PEURACH:

7        Q    Are you following your counsel's

8    instruction?

9        A    Yes.

10           MS. PEURACH:  Could we pull up both

11   Exhibit 4 and 5.?

12           MR. KELLEHER:  Like side by side?

13           (Off-the-record discussion.)

14           THE WITNESS:  Do you guys mind if we take

15   a break.

16           MS. PEURACH:  No, that's just fine.  Thank

17   you.

18           THE VIDEOGRAPHER:  Off the record at 2:01.

19           (Recess from 2:01 to 2:07 p.m.)

20           THE VIDEOGRAPHER:  Back on the record at

21   2:07.

22   BY MS. PEURACH:

23       Q    Mr. Smith, I'd like to show you Exhibits 4

24   and 5.  We looked at both of them previously.  I'm

25   going to put them back on the screen just side by

**EXHIBIT L
PAGE 608**

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 141

1    side real quick.

2            So can you see both of those documents,

3    the Hoplite Entertainment balance sheet as of

4    July 31st, 2020, and the Hoplite Entertainment

5    balance sheet as of November 30 -- 30th, 2020.  Do

6    you see both of those documents?

7        A    Yes, I can see both.

8        Q    Okay.  On Exhibit 4, the November 30th,

9    2020, balance sheet, on the page marked D1294 is an

10   entry for shareholder loan, Jon, and it states

11   $790,908.82.  Do you see that?

12       A    Yes, I can see that.

13       Q    On Exhibit 5, Hoplite Entertainment's

14   July 31st, 2020, balance sheet, on the page marked

15   D750 is an entry for shareholder loans, Jon, and

16   it's for $2,020,895.65.  Do you see that?

17       A    Yes.

18       Q    Between July 31st, 2020, and

19   November 30th, 2020, did Hoplite Entertainment pay

20   down over a million dollars of the shareholder loan

21   from Jon?

22            MR. COHAN:  Don't answer.  Fifth

23   Amendment.

24   BY MS. PEURACH:

25       Q    Are you following your counsel's

EXHIBIT L
PAGE 609

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 142

1    instruction?

2         A    Yes.

3         Q    Are you the Jon referenced in both of

4    those entries?

5              MR. COHAN:   Don't answer.   Fifth

6    Amendment.   Accountant-client privilege.

7    BY MS. PEURACH:

8         Q    Are you following your counsel's

9    instruction?

10        A    Yes.

11        Q    You can take that down.

12             So Mr. Smith, we've been through some of

13   Hoplite, Inc.'s and Hoplite Entertainment's

14   financial documents from 2020.   I'd like to shift

15   gears to 2021.   What has been Hoplite's sources of

16   revenue from January 1st, 2021, to the present?

17        A    Currently, sales only.

18        Q    And what do you mean "sales only"?

19        A    Due to the pandemic, we still can't start

20   productions, so we're selling existing content.

21        Q    All right.   So the Hoplite entities have

22   been unable to start new productions since

23   January 1st, 2021; is that right?

24        A    Correct.

25        Q    So Hoplite's revenue source has been from

800.808.4958                                            770.343.9696

**EXHIBIT L
PAGE 610**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 143

1    the sales of preexisting productions; is that

2    what --

3         A    Correct.

4         Q    -- you're telling me?

5         A    Yes.

6         Q    What productions has Hoplite sold since

7    January 1st, 2021?

8         A    None, but we're currently under contract

9    for a few that are being negotiated.

10        Q    Which are you under contract for?

11        A    Several shows, different groups.

12        Q    Okay.  Which shows?

13        A    Excuse me.  I don't know off the top of my

14   head because most of these are deals anywhere from

15   6 to 12 shows at a time.

16        Q    Which groups are you in discussions with

17   regarding the sales of those shows?

18        A    A 4K channel outside of China.  Pluto TV

19   here in the United States.  Lobo in Brazil.  Walla

20   here in the United States.  And a few others, but

21   again, that would be something my sales team would

22   have to chime in on.

23        Q    And who are the members of your sales team

24   who would have knowledge of these sales efforts?

25        A    Levina Negi, and she has a team underneath

EXHIBIT L
PAGE 611

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 144

1    her of consultants that work on commission

2    structures.

3         Q    Has Hoplite, Inc., or Hoplite

4    Entertainment received any income from January 1st,

5    2021, to present?

6         A    Yes.

7         Q    What are the sources of that income?

8         A    A contract that was signed, I believe

9    beginning of January, that licensed old shows here

10   in the United States.

11        Q    Who was that contract entered into with?

12        A    HollyGold.

13        Q    Pardon me?

14        A    HollyGold.

15        Q    And what's the amount of income that

16   Hoplite has received from January 1st, 2021, to

17   present as a result?

18        A    I believe around 160,000.

19        Q    All right.  And sitting here today, how

20   much revenue is Hoplite expecting to receive

21   through the licensing of the old shows pursuant to

22   that agreement?

23        A    Over a million dollars in the next six

24   months.

25        Q    Is there some sort of payment structure

EXHIBIT L
PAGE 612

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 145

1   that allows you to anticipate how much revenue you

2   will receive at various points in time?

3        A    Loosely, yes.

4        Q    What is that revenue structure?

5        A    It's advertising sales against content

6   within the hours across syndicated networks in the

7   United States.

8        Q    At what points in time are you paid under

9   this agreement?

10       A    Quarterly.

11       Q    So is Hoplite expecting another payment at

12  the end of March 2021 under the agreement licensing

13  old shows?

14       A    No, but it will be a payment sometime in

15  Q2.

16       Q    Why not at the end of March?

17       A    Because they already paid for the quarter.

18       Q    When did they pay for the quarter?

19       A    In January or February, I believe.  I

20  don't remember the exact date.

21       Q    Is Hoplite working on any -- the

22  production of any series other than the shows we've

23  talked about already today?

24       A    Yes.

25       Q    Which ones?

EXHIBIT L
PAGE 613

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 146

1      A     Several.

2      Q     What are they?

3      A     Off the top of my head, I don't remember

4    all of the names just because I usually am not

5    involved in that piece of it.  But several shows

6    that are being shot both overseas and domestically.

7      Q     Can you think of the name of any of them?

8      A     Lambo Kito.  Some of the shows you've

9    already addressed like American Legal and the

10   second -- or the third season of Charged.  We're

11   trying to focus on clip-based content based on

12   COVID shoots.

13     Q     What is clip-based content for those of us

14   not in the industry?

15     A     It's footage and talking heads.  It's --

16   if you're watching a show like, I don't know,

17   Unsolved Mysteries, you're seeing footage and then

18   you're seeing interviews with experts, so focusing

19   on that kind of content.

20     Q     Is that because it reduces some of the

21   COVID contagious concerns?

22     A     Correct.  It reduces the production

23   footprint, so it's easier to do.  And they're very

24   cheap shows.

25     Q     Got it.  So we talked about the agreement

EXHIBIT L
PAGE 614

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 147

1    in which Hoplite licensed old shows and you're

2    expecting over a million dollars to come in.

3            Are there any other sources of income that

4    Hoplite anticipates receiving in the next six

5    months?

6        A    Yes.  All of the pending deals that I

7    referenced a minute ago, all of those have

8    different dollar amounts attached to them.

9        Q    Are there any anticipated sources of

10   income from deals that have been finalized other

11   than the licensing of the old shows that we talked

12   about?

13       A    Will you rephrase the question?

14       Q    Sure.  So sitting here today, looking out

15   six months, I'm trying to understand what sources

16   of revenue Hoplite is anticipating.  You mentioned

17   a few deals that have not been finalized.  And then

18   you mentioned a license agreement for old shows

19   through which you are receiving revenue, right?

20       A    Uh-huh.

21       Q    So I want to know, sitting here today, if

22   there are any sources of revenue that Hoplite is

23   anticipating other than the finalized agreement to

24   license old shows where the agreement has been

25   finalized, where it's not simply we hope something

**EXHIBIT L
PAGE 615**

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 148

1    will be executed.  So let me ask a clean question

2    because that's a long, long wind-up.

3          So sitting here today, does Hoplite

4    anticipate any sources of income from finalized

5    agreements other than the sources -- the income

6    from the license of the old shows that you

7    testified to?

8      A    Yes.

9          MR. COHAN:  Object to the form.

10   BY MS. PEURACH:

11     Q    What are those finalized agreements that

12   you're expecting revenue from?

13     A    Preexisting agreements for years, but

14   ongoingly kick-off revenue.

15     Q    Can you tell me what those are?

16     A    We have an agreement with Amazon for the

17   series Stable Wars and Foxy Ladies.  Our This is

18   ESport series has a distributor, which is Dick

19   Clark Productions, when that gets delivered.

20   They're selling it here in the domestic United

21   States and then also selling it internationally.

22          There's several other grandfathered

23   contracts internationally on shows, everything from

24   Jellymen to Stable Wars to Culinary Escapes.  A lot

25   of content that are being negotiated for both

EXHIBIT L
PAGE 616

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                Page 149

1    format and take.  Since 2020 was so bleak for

2    production, everybody is looking for finished

3    content.

4        Q    Okay.  But those aren't finalized

5    agreements, right?

6        A    No, some of these are.  What I'm referring

7    to is stuff that is signed, aside from stuff that's

8    being negotiated.  There are several agreements

9    that are already in place that will and continue to

10   generate revenue.

11       Q    So sitting here today, how much revenue is

12   Hoplite anticipating in the next six months?

13       A    North of 3 million.

14       Q    And is that all from agreements that we

15   talked about that are finalized?

16       A    Yes.

17       Q    Now, we -- you told me about the revenue

18   of about $160,000 from January 1st, 2021, to

19   present that Hoplite received for the license with

20   the old shows.

21            Does that also cover the amount of revenue

22   that Hoplite Entertainment has received from

23   January 1st, 2021, to present?

24       A    Yes.

25       Q    Is there any additional revenue that

Veritext Legal Solutions

EXHIBIT L
PAGE 617

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 150

1    Hoplite Entertainment is expecting in the next six

2    months that we haven't talked about?

3        A    Both entities are expecting revenue in the

4    next six months.  Again, it comes down to the

5    library rights.  They get very commingled based on

6    distributor contracts.

7        Q    That's what -- I assumed your answers

8    related to expectation for both entities, but I

9    just wanted to make sure there wasn't an additional

10   source for Hoplite Entertainment that you hadn't

11   testified to when we talk about Hoplite generally.

12   Is that the case?

13       A    Your assumption is correct based on if I

14   understand it correctly.

15       Q    Yeah, okay.  Mr. Smith, switching gears, I

16   want to talk a little bit about the loan with Bay

17   Point.  Hoplite and Hoplite Entertainment entered a

18   loan with Bay Point on September 30th of 2020,

19   right?

20       A    I believe so.

21       Q    How did the opportunity -- strike that.

22            Do you -- do you know if Hoplite and

23   Hoplite Entertainment entered the loan with Bay

24   Point on September 30th, 2020, or not?

25       A    I just don't remember the exact date.

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                     Page 151

1       Q    So Hoplite and Hoplite Entertainment

2    entered a loan with Bay Point in 2020; is that --

3    that's right?

4       A    Yes.

5       Q    That's not in dispute, is it?

6       A    No.

7       Q    How did the opportunity to enter -- to get

8    a loan from Bay Point come to your attention?

9       A    Through a finance broker out of Los

10   Angeles.

11      Q    Is that Walter Josten?

12      A    Yes.

13      Q    What's your relationship with Walter

14   Josten?

15      A    Professional only.

16      Q    And what's the professional relationship?

17      A    I met him three weeks before I met Bay

18   Point.

19      Q    And was his role introducing you to Bay

20   Point?

21      A    Yes.

22      Q    Do you know Max Musina?

23      A    Yes.

24      Q    Who is that?

25      A    I believe Walter's partner.

EXHIBIT L
PAGE 619

Jonathan Lee Smith                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                            Page 152

1       Q      When did you first meet Max Musina?

2       A      Four or five years ago.

3       Q      And what's your relationship with him?

4       A      Prior to this, he was just a work

5    colleague.

6       Q      What work had you done with him,

7    Mr. Musina?

8       A      Work colleague, not I had worked with him.

9    I just knew him in professional circles.

10      Q      Had you done any business with Mr. Musina

11   prior to the Bay Point loan?

12      A      No.

13      Q      And did Mr. Musina play a role in bringing

14   the potential loan from Bay Point to your attention

15   as well?

16      A      Yes.

17      Q      Mr. Smith, I have in front of you on the

18   screen the loan and security agreement between

19   Hoplite, Hoplite Entertainment and Bay Point,

20   entered as of September 30, 2020.  I realize it's

21   just the top half of the first page, but do you see

22   what I'm referring to?  I just want to make sure we

23   see the same thing.

24      A      I see the top half of the first page,

25   yeah.

EXHIBIT L
PAGE 620

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 153

1      Q     Okay.  All right.  You recognize the top

2   half of that page --

3      A     Yes.

4      Q     -- of Exhibit 6?

5            (Exhibit 6 marked.)

6   BY MS. PEURACH:

7      Q     All right.  I'm going to direct your

8   attention to page 8 of Exhibit 6, which defines

9   third-party loans.  Do you see that?  We can make

10  it a little bigger if you need it.

11     A     I can see it.

12     Q     All right.  Page 8 of Exhibit 5 [sic] is a

13  definition for third-party loans, and it's defined

14  to include four different loan agreements.  Do you

15  see that?

16     A     Yes.

17     Q     Are you familiar with the four loan

18  agreements defined as third-party loan in

19  Exhibit 5?

20     A     Yes.

21     Q     And did you inform Bay Point of the

22  existence of these third-party loans prior to

23  entering the loan with Bay Point?

24     A     Yes.

25     Q     What was the loan from the Turpera Group

**EXHIBIT L**
**PAGE 621**

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                        Page 154

1    to the borrowers reflected on page 8 of Exhibit 5?

2            MR. COHAN:  Don't answer.  Fifth

3    Amendment.

4    BY MS. PEURACH:

5        Q    Are you following your counsel's

6    instruction?

7        A    Yes.

8        Q    Third-party loan, the second loan in the

9    definition is a loan from the Entrust Group, Inc.,

10   for the benefit of Gary Danklefsen to Hoplite

11   pursuant to a loan agreement dated July 3rd, 2019.

12   Are you familiar with that loan agreement?

13           MR. COHAN:  Don't answer.  Fifth

14   Amendment.

15   BY MS. PEURACH:

16       Q    Are you following your counsel's

17   instruction?

18       A    Yes.

19       Q    The third loan references a third-party

20   loan definition as a loan from XXIII Capital

21   Limited to Entertainment pursuant to a loan

22   agreement dated as of November 18th, 2016.  Are you

23   familiar with that loan agreement?

24           MR. COHAN:  Don't answer.  Fifth

25   Amendment.

**EXHIBIT L
PAGE 622**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                        Page 155

1    BY MS. PEURACH:

2        Q    Are you following your counsel's

3    instruction?

4        A    Yes.

5        Q    The fourth loan defined under third-party

6    loans is from Porta Pellex, LLC, to Hoplite

7    pursuant to a loan agreement dated March 22nd,

8    2020.  Are you familiar with that loan agreement?

9            MR. COHAN:  Don't answer.  Fifth

10   Amendment.

11   BY MS. PEURACH:

12       Q    Are you following your counsel's

13   instructions?

14       A    Yes.

15       Q    Looking back to page 7 of Exhibit 5 is the

16   definition SBA lender and SBA loan.  Do you see

17   those definitions on your screen?

18       A    Yes.

19       Q    Okay.  And it states, "SBA lender shall

20   mean Columbia State Bank."

21            Do you see that?

22       A    Yes.

23       Q    And it says, "SBA loan shall mean that

24   certain loan in the principal of $750,000 made by

25   SBA lender to borrower."

EXHIBIT L
PAGE 623

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 156

1          Do you see that?

2     A    Yes.

3     Q    Are you familiar with the SBA loan?

4          MR. COHAN:  Don't answer.  Fifth

5    Amendment.

6    BY MS. PEURACH:

7     Q    Are you following your counsel's

8    instruction?

9     A    Yes.

10    Q    Turning back to page 8 of Exhibit 5 is the

11   definition of third-party subordination agreement.

12   Do you see that definition?

13    A    Yes.

14    Q    And it references four standby creditors'

15   agreements.  Do you see that?

16    A    Yes.

17    Q    Are you familiar with the standby

18   creditor's agreement referenced on page 8 of

19   Exhibit 5, the loan agreement with Bay Point?

20          MR. COHAN:  Don't answer.  Fifth

21   Amendment.

22   BY MS. PEURACH:

23    Q    Are you following your counsel's

24   instruction?

25    A    Yes.

Veritext Legal Solutions

EXHIBIT L
PAGE 624

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 157

1      Q    Did you provide Bay Point with the standby

2    creditors' agreements referenced on exhibit -- on

3    page 8 of Exhibit 5?

4           MR. COHAN:  Don't answer.  Fifth

5    Amendment.

6    BY MS. PEURACH:

7      Q    Are you following your counsel's

8    instruction?

9      A    Yes.

10      Q    Mr. Smith, going back up a little bit to

11    page 7 of Exhibit 5, you will see the definition of

12    specified collateral.  Do you see that?

13      A    Yes.

14      Q    And specified collateral is defined as all

15    accounts receivable, rights to payment and other

16    rights arising from, and then it lists three

17    separate agreements.  Do you see that?

18      A    Yes.

19      Q    And is the specified collateral -- strike

20    that.

21           Are you familiar with the three agreements

22    listed under the definition of specified collateral

23    in Exhibit 5?

24           MR. COHAN:  Don't answer.  Fifth

25    Amendment.

**EXHIBIT L
PAGE 625**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                             Page 158

1    BY MS. PEURACH:

2        Q    Are you following your counsel's

3    instruction?

4        A    Yes.

5        Q    Did you provide Bay Point with the three

6    agreements referenced in the definition of

7    specified collateral in Exhibit 5?

8            MR. COHAN:  Don't answer.  Fifth

9    Amendment.

10   BY MS. PEURACH:

11       Q    Are you following your counsel's

12   instruction?

13       A    Yes.

14           MS. PEURACH:  And -- strike that.  Sorry.

15   For the record, I've been referring to the loan

16   agreement as Exhibit 5.  It's actually Exhibit 6.

17   So my questions regarding the loan agreement that

18   referred to Exhibit 5 for the record should state

19   Exhibit 6.

20   BY MS. PEURACH:

21       Q    Mr. Smith, I'd like to show you what I'm

22   going to mark as Exhibit 7 to your deposition,

23   which is the license agreement between Screen Media

24   Ventures, LLC, and Hoplite, Inc., Bates labeled

25   D762 to 765.  I'll give you a chance to just see

EXHIBIT L
PAGE 626

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 159

1    this complete document.  And as you'll see, this

2    has Bates stamps on it.  These are the numbers that

3    were associated with the document as provided to us

4    by your counsel in this litigation.

5            Do you recognize this document?

6        A    Yes.

7            (Exhibit 7 marked.)

8    BY MS. PEURACH:

9        Q    And turning to the page marked D764, is

10   that your signature on behalf of the licensor?

11           MR. COHAN:  Don't answer.  Fifth

12   Amendment.

13   BY MS. PEURACH:

14       Q    Are you following your counsel's

15   instruction?

16       A    Yes.

17       Q    Did you provide this document to your

18   counsel to produce to Bay Point in this litigation?

19           MR. COHAN:  Don't answer.  Fifth

20   Amendment.

21   BY MS. PEURACH:

22       Q    Are you following your counsel's

23   instruction?

24       A    Yes.

25       Q    What was your understanding of the purpose

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 627**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                        Page 160

1    of the license agreement between Screen Media and

2    Hoplite?

3              MR. COHAN:  Don't answer.  Fifth

4    Amendment.

5    BY MS. PEURACH:

6       Q    Are you following your counsel's

7    instruction?

8       A    Yes.

9       Q    Turning your attention to the page labeled

10   D765 of Exhibit 7, it lists eight programs.  Are

11   those the programs subject to the license agreement

12   between Hoplite Entertainment and Screen Media

13   Ventures?

14             MR. COHAN:  Don't answer.  Fifth

15   Amendment.

16   BY MS. PEURACH:

17      Q    Are you following your counsel's

18   instruction?

19      A    Yes.

20      Q    Has Hoplite received any funds from Screen

21   Media pursuant to this license agreement?

22             MR. COHAN:  Don't answer.  Fifth

23   Amendment.

24   BY MS. PEURACH:

25      Q    Are you following your counsel's

Veritext Legal Solutions
800.808.4958                                      770.343.9696

**EXHIBIT L**
**PAGE 628**

Jonathan Lee Smith                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 161

1    instruction?

2         A    Yes.

3         Q    Does Hoplite anticipate any future

4    payments from Screen Media pursuant to the license

5    agreement?

6              MR. COHAN:  Don't answer.  Fifth

7    Amendment.

8    BY MS. PEURACH:

9         Q    Are you following your counsel's

10   instruction?

11        A    Yes.

12        Q    Does Hoplite or any of its affiliates have

13   any other agreements with Screen Media other than

14   the license agreement reflected in Exhibit 7?

15             MR. COHAN:  Don't answer.  Fifth

16   Amendment.

17   BY MS. PEURACH:

18        Q    Are you following your counsel's

19   instructions?

20        A    Yes.

21        Q    What's the current status of your

22   discussions, if any, with Screen Media?

23             MR. COHAN:  Don't answer.  Fifth

24   Amendment.

25   BY MS. PEURACH:

Veritext Legal Solutions

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 162

1      Q     Are you following your counsel's

2    instructions?

3      A     Yes.

4      Q     Have you received any notice of breach

5    from Screen Media?

6            MR. COHAN:  Don't answer.  Fifth

7    Amendment.

8    BY MS. PEURACH:

9      Q     Are you following your counsel's

10   instruction?

11     A     Yes.

12     Q     Has Screen Media indicated an intent to

13   terminate the license agreement with Hoplite?

14           MR. COHAN:  Don't answer.  Fifth

15   Amendment.

16   BY MS. PEURACH:

17     Q     Are you following your counsel's

18   instructions?

19     A     Yes.

20     Q     Are the shows reflected on Exhibit A --

21   strike that.  To the extent we've already discussed

22   the shows reflected on Exhibit A of Exhibit 7 in

23   your deposition today -- strike that.

24           Are any of the programs listed on Exhibit

25   A programs that we have not yet discussed today?

**EXHIBIT L
PAGE 630**

Jonathan Lee Smith                                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 163

1        A     No.

2              (Exhibit 163 marked.)

3    BY MS. PEURACH:

4        Q     Mr. Smith, I'm going to show you what

5    we'll mark as Exhibit 8 to your deposition, which

6    is a license agreement between Big Media Holdings

7    and Hoplite Entertainment provided to Bay Point.

8    And we'll just -- it's a short document, so we'll

9    scroll through it briefly so you can see the whole

10   thing.  Do you recognize this document?

11       A     Yes.

12       Q     What is it?

13             MR. COHAN:  Don't answer.  Fifth

14   Amendment.

15   BY MS. PEURACH:

16       Q     Are you following your counsel's

17   instruction?

18       A     Yes.

19       Q     Is that your signature on the last page of

20   Exhibit 8?

21             MR. COHAN:  Don't answer.  Fifth

22   Amendment.

23   BY MS. PEURACH:

24       Q     Are you following your counsel's

25   instructions?

EXHIBIT L
PAGE 631

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 164

1       A     Yes.

2       Q     Is that the signature of Danny Wilk on

3    Exhibit 8?

4           MR. COHAN:  Don't answer.  Fifth

5    Amendment.

6    BY MS. PEURACH:

7       Q     Are you following your counsel's

8    instructions?

9       A     Yes.

10      Q     What's your understanding of the purpose

11   of the license agreement between Big Media and

12   Hoplite Entertainment?

13          MR. COHAN:  Don't answer.  Fifth

14   Amendment.

15   BY MS. PEURACH:

16      Q     Are you following your counsel's

17   instructions?

18      A     Yes.

19      Q     If you look to section 5 on the first page

20   of Exhibit 8, it lists the programs Culinary

21   Escapes and Recipe Hunters.  Do you see that?

22      A     Yes.

23      Q     Have those programs been delivered to Big

24   Media Holdings?

25          MR. COHAN:  Don't answer.  Fifth

EXHIBIT L
PAGE 632

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 165

1    Amendment.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's

4    instructions?

5        A    Yes.

6        Q    Has Hoplite received any funds from Big

7    Media pursuant to its license agreement with top --

8    or with -- pursuant to its license agreement?

9            MR. COHAN:  Don't answer.  Fifth

10   Amendment.

11   BY MS. PEURACH:

12       Q    Are you following your counsel's

13   instructions?

14       A    Yes.

15       Q    Does Hoplite Entertainment currently

16   anticipate receiving any funds from Big Media

17   pursuant to this license agreement?

18           MR. COHAN:  Don't answer.  Fifth

19   Amendment.

20   BY MS. PEURACH:

21       Q    Are you following your counsel's

22   instructions?

23       A    Yes.

24       Q    Does Hoplite or any of its affiliates have

25   any other agreements with Big Media?

EXHIBIT L
PAGE 633

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 166

1           MR. COHAN:  Don't answer.  Fifth

2    Amendment.

3    BY MS. PEURACH:

4        Q    Are you following your counsel's

5    instructions?

6        A    Yes.

7        Q    What's the current status of your

8    discussions with Big Media, if any?

9           MR. COHAN:  Don't answer.  Fifth

10   Amendment.

11   BY MS. PEURACH:

12       Q    Are you following your counsel's

13   instructions?

14       A    Yes.

15       Q    Have you received a notice of breach from

16   Big Media?

17          MR. COHAN:  Don't answer.  Fifth

18   Amendment.

19   BY MS. PEURACH:

20       Q    Are you following your counsel's

21   instructions?

22       A    Yes.

23       Q    Has Big Media indicated an intent to

24   terminate the license agreement?

25          MR. COHAN:  Don't answer.  Fifth

Veritext Legal Solutions

EXHIBIT L
PAGE 634

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 167

1    Amendment.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's

4    instructions?

5        A    Yes.

6        Q    Okay.  Mr. Smith, I'm going to show you

7    what will be marked as Exhibit 9 to your

8    deposition.  It is labeled Fight Channel World

9    Acquisition Agreement.  And this one is a little

10   bit longer, but we'll go through all the pages just

11   for completeness.  It's 16 pages total.

12            (Exhibit 9 marked.)

13   BY MS. PEURACH:

14       Q    Do you recognize that document, Mr. Smith?

15       A    Yes.

16       Q    What is it?

17            MR. COHAN:  Don't answer.  Fifth

18   Amendment.

19   BY MS. PEURACH:

20       Q    Are you following your counsel's

21   instructions?

22       A    Yes.

23       Q    Did you provide Bay Point with this

24   document in connection with entering the loan?

25            MR. COHAN:  Don't answer.  Fifth

800.808.4958                                         770.343.9696

**EXHIBIT L**
**PAGE 635**

Jonathan Lee Smith                                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 168

1    Amendment.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's

4    instructions?

5        A    Yes.

6        Q    Okay.  Have you provided the license or

7    the agreement with Fight Channel World and Hoplite,

8    Inc., to your attorney to produce in this

9    litigation?

10            MR. COHAN:  Don't answer.  Fifth

11   Amendment.

12   BY MS. PEURACH:

13       Q    Are you following your counsel's

14   instructions?

15       A    Yes.

16       Q    Is that your signature on page 16 of

17   Exhibit 9?

18            MR. COHAN:  Don't answer.  Fifth

19   Amendment.

20   BY MS. PEURACH:

21       Q    Are you following your counsel's

22   instructions?

23       A    Yes.

24       Q    Is that Mr. Zovko's signature on page 16

25   of Exhibit 9?

EXHIBIT L
PAGE 636

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 169

1              MR. COHAN:  Don't answer.  Fifth

2     Amendment.

3     BY MS. PEURACH:

4         Q    Are you following your counsel's

5     instructions?

6         A    Yes.

7         Q    Mr. Smith, going back to the first page of

8     Exhibit 9, I'm going to direct your attention to

9     section 1, Series.  It says, "As used herein, the

10    series are the following:  Therapy Dogs, Season 2,

11    working title."

12             Do you see that?

13        A    Yes.

14        Q    I don't believe we've talked about Therapy

15    Dogs yet today unless it goes by a different name.

16    So is Therapy Dogs a series that we've discussed in

17    your deposition yet today?

18             MR. COHAN:  Don't answer.  Fifth

19    Amendment.

20    BY MS. PEURACH:

21        Q    Are you following your counsel's

22    instruction?

23        A    Yes.

24        Q    What's your understanding of the purpose

25    of this agreement in Exhibit 9?

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 637**

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 170

1            MR. COHAN:  Don't answer.  Fifth

2    Amendment.

3    BY MS. PEURACH:

4        Q    Are you following your counsel's

5    instructions?

6        A    Yes.

7        Q    Has Hoplite received any funds from Fight

8    Channel pursuant to the acquisition agreement in

9    Exhibit 9?

10           MR. COHAN:  Don't answer.  Fifth

11   Amendment.

12   BY MS. PEURACH:

13       Q    Are you following your counsel's

14   instructions?

15       A    Yes.

16       Q    Is Hoplite anticipating any future payment

17   from Fight Channel pursuant to the agreement in

18   Exhibit 9?

19           MR. COHAN:  Don't answer.  Fifth

20   Amendment.

21   BY MS. PEURACH:

22       Q    Are you following your counsel's

23   instructions?

24       A    Yes.

25       Q    Does Hoplite or any of its affiliates have

EXHIBIT L
PAGE 638

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 171

1    any other agreements with Fight Channel?

2            MR. COHAN:  Don't answer.  Fifth

3    Amendment.

4    BY MS. PEURACH:

5        Q    Are you following your counsel's

6    instructions?

7        A    Yes.

8        Q    What's the current status of any

9    discussions between you and Fight Channel?

10           MR. COHAN:  Don't answer.  Fifth

11   Amendment.

12   BY MS. PEURACH:

13       Q    Are you following your counsel's

14   instructions?

15       A    Yes.

16       Q    What's your relationship with Orsat Zovko?

17           MR. COHAN:  Don't answer.  Fifth

18   Amendment.

19   BY MS. PEURACH:

20       Q    Are you following your counsel's

21   instructions?

22       A    Yes.

23       Q    Have you received any notice of breach

24   under this agreement in Exhibit 9?

25           MR. COHAN:  Don't answer.  Fifth

EXHIBIT L
PAGE 639

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 172

1    Amendment.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's

4    instructions?

5        A    Yes.

6        Q    Has Fight Channel indicated an intent to

7    terminate the agreement in Exhibit 9?

8            MR. COHAN:  Don't answer.  Fifth

9    Amendment.

10   BY MS. PEURACH:

11       Q    Are you following your counsel's

12   instructions?

13       A    Yes.

14       Q    Now we can take that down.

15           Mr. Smith, are you aware that the Court in

16   this litigation entered an order in early February

17   that temporarily restrained you, Hoplite and

18   Hoplite Entertainment from certain conduct?

19           MR. COHAN:  Don't answer.  Fifth

20   Amendment.  And attorney-client privilege.

21   BY MS. PEURACH:

22       Q    Are you following your counsel's

23   instructions?

24       A    Yes.

25       Q    Mr. Smith, I'm showing you what we'll mark

**EXHIBIT L**
**PAGE 640**

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 173

1    as Exhibit 10 to your deposition, which is an order

2    in the Bay Point Capital Partners versus Hoplite,

3    et al., case, dated February 11th, 2021.  And it's

4    14 pages.  So we'll scroll through quickly so you

5    can see the entirety of the content.

6              (Exhibit 10 marked.)

7              MR. COHAN:  Hold on a second as you're

8    scrolling through these documents.

9    BY MS. PEURACH:

10       Q    All right.  Mr. Smith, have you seen this

11   document, Exhibit 10, before?

12             MR. COHAN:  Don't answer.  Fifth Amendment

13   and attorney-client privilege.

14             THE REPORTER:  I'm sorry.  Was that don't

15   answer, attorney-client privilege?

16             MR. COHAN:  Fifth Amendment and

17   attorney-client privilege.

18   BY MS. PEURACH:

19       Q    Are you following your counsel's

20   instructions?

21       A    Yes.

22       Q    Are you aware that this order instructed

23   yourself, Hoplite, Inc., and Hoplite Entertainment

24   to produce certain documents in the litigation?

25             MR. COHAN:  Don't answer.  Fifth Amendment

EXHIBIT L
PAGE 641

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 174

1   and attorney-client privilege.

2   BY MS. PEURACH:

3       Q    Are you following your counsel's

4   instructions?

5       A    Yes.

6       Q    Mr. Smith, have you taken any steps to

7   collect documents to produce in this litigation?

8       A    Yes.

9       Q    What have you done?

10      A    Everything from gathering loan documents

11  and contracts to helping procure credit card

12  statements, bank statements, et cetera, et cetera.

13      Q    Following -- or strike that.

14           When was the last time you undertook

15  efforts to collect documents to produce in this

16  litigation?

17      A    Within the last few weeks.

18      Q    Are you aware that the Court's order

19  requires you to supplement your production on the

20  15th day of every month?

21           MR. COHAN:  Same objections.  Same

22  instructions.

23  BY MS. PEURACH:

24      Q    Are you following your counsel's

25  instruction?

**EXHIBIT L
PAGE 642**

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 175

1        A     Yes.

2              MR. COHAN:  For the record, I want to be

3     clear that if you think there's anything you're

4     entitled to that you haven't received, please just

5     let me know and we will --

6              THE REPORTER:  I didn't get the last part

7     of that.  I want to be clear if there's anything

8     that you think you're entitled to that we haven't

9     received.

10             MR. COHAN:  That we haven't produced,

11    please let us know.

12             Can you hear me?

13             MS. PEURACH:  I heard you and I appreciate

14    it.  Thank you.

15             MR. COHAN:  It doesn't look like

16    Ms. Carboni hears me.

17             THE REPORTER:  No, I didn't hear you.

18    Thank you.

19             MR. COHAN:  Okay.

20    BY MS. PEURACH:

21       Q     So Mr. Smith, I understand that you did

22    produce certain bank statements in connection with

23    this litigation, and I just want to walk through

24    what we've received from you in that regard.

25             So I'll show you what we'll mark as

Veritext Legal Solutions

EXHIBIT L
PAGE 643

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 176

1    Exhibit 11 to your deposition, which is a document

2    Bates labeled D487 to D529.  Let me -- I don't need

3    to scroll through all of this.  These are

4    represented by -- or strike that.

5            Looking at the first page of the document

6    marked D487, it states "Hoplite LBE, Inc., Wells

7    Fargo Simple Business Checking."  Do you see that?

8            MR. COHAN:  Objection to the form.  It's

9    not really what that says.

10           (Exhibit 11 marked.)

11   BY MS. PEURACH:

12       Q    You can still answer unless your counsel

13   instructs you otherwise.

14           Go up to the top, please.

15           MR. COHAN:  The document speaks for

16   itself.

17       A    Yes, I can see that it says Wells Fargo

18   simple checking and an address.

19   BY MS. PEURACH:

20       Q    What do you understand this to reflect?

21       A    A bank account --

22           MR. COHAN:  Don't answer.  Fifth

23   Amendment.

24   BY MS. PEURACH:

25       Q    Are you following your counsel's

800.808.4958                                         770.343.9696

**EXHIBIT L
PAGE 644**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 177

1    instructions?

2        A    Yes.

3            MR. COHAN:  And for the record, by the

4    way, this document is 43 pages long, and you're

5    showing him one page.

6            MS. PEURACH:  I'm sorry, Louis, I cannot

7    hear you.

8            MR. COHAN:  This document appears to be 43

9    pages long, and we can only see a third of the

10   first page.

11           MS. PEURACH:  I'm just asking what he sees

12   on that third of the first page.  He pulled the

13   document and produced it in this litigation.  What

14   did he provide us?  What is it?  What is reflected

15   on the page marked D487?

16           MR. COHAN:  Well, I move to strike your

17   comment.  The document speaks for itself.  And he

18   answered your question about the words on the first

19   page.

20           MS. PEURACH:  Are you instructing him not

21   to answer?

22           MR. COHAN:  I don't know what the question

23   is at this point.

24   BY MS. PEURACH:

25       Q    Mr. Smith, is this a document that you

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 645**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 178

1    collected to provide -- strike that.

2            Let's look -- let's zoom out and look at

3    the whole first page.  Do you recognize the page

4    marked as D487 on Exhibit 11?

5            MR. COHAN:  Object to the form.

6            Can you see that?  I can't see it.

7       A    I can kind of see it, yeah.

8    BY MS. PEURACH:

9       Q    I'll show you the account number.  It says

10   account ██████, Hoplite LBE, Inc.  Is that

11   Hoplite LBE, Inc.'s Wells Fargo simple business

12   checking account?

13           MR. COHAN:  Object to the form.

14      A    I believe so.

15   BY MS. PEURACH:

16      Q    What is Hoplite LBE, Inc., again?

17      A    Location-based entertainment.

18      Q    The address on here is a Florida address.

19   Is that a business address?

20      A    It's the business address associated with

21   LBE, yes.

22      Q    And is that business address still

23   operational?

24      A    No.

25      Q    Has Hoplite notified Wells Fargo of a

Veritext Legal Solutions

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 179

1    change in business address?

2        A    No.

3        Q    But it's your testimony Hoplite LBE is not

4    conducting business from the 3584 Gretchen Drive

5    address reflected on the first page of Exhibit 11;

6    is that right?

7        A    It's still conducting business, but it's

8    not a business address.

9        Q    What is that address?

10       A    That's a house.

11       Q    Whose house is it?

12       A    Greg Senner.

13       Q    He's one of the individuals on the Hoplite

14   board, right?

15       A    Correct.

16       Q    Why are the Hoplite LBE -- strike that.

17            Why does the Hoplite LBE, Inc., address

18   reflect Greg Senner's home address?

19       A    So we wouldn't have to change it.

20       Q    Change it from what?

21       A    That entity moves around from office to

22   office to office.  So instead of having to update

23   the banking every time, it was keeping it in one

24   address.

25       Q    What's the purpose of Hoplite LBE, Inc.'s

Veritext Legal Solutions

**EXHIBIT L
PAGE 647**

Jonathan Lee Smith                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 180

1    account with Wells Fargo?

2            MR. COHAN:  Object to the form.

3        A    To run the location-based entertainment

4    division of the company.

5    BY MS. PEURACH:

6        Q    So is Hoplite LBE, Inc.'s account with

7    Wells Fargo, account number ███████, its

8    business checking account?

9        A    Correct.

10       Q    Are there any other purposes for this

11   account?

12           MR. COHAN:  Object to the form.

13       A    No.

14   BY MS. PEURACH:

15       Q    All right.  Mr. Smith, I'm going to show

16   you a document I'm going to mark as Exhibit 12

17   produced to us in the litigation with the Bates

18   labels D226 through D309.  The cover sheet states

19   "Wells Fargo Simple Business Checking, Hoplite,

20   Inc.," with an account number ending in ████.  Do

21   you see that?

22       A    Yes.

23           (Exhibit 12 marked.)

24   BY MS. PEURACH:

25       Q    And I believe earlier when we were looking

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 181

1    at Hoplite's balance sheet, you told me that its

2    account ending in ████ with Wells Fargo is its

3    business checking account; is that right?

4        A    Correct.

5        Q    And what's the purpose of Hoplite, Inc.'s

6    account ending ████ with Wells Fargo?

7            MR. COHAN:  Object to the form.

8        A    It's the general operating account.

9    BY MS. PEURACH:

10       Q    For Hoplite, Inc.'s business?

11       A    Yes.

12       Q    Does the account have any other purposes?

13           MR. COHAN:  Object to the form.

14       A    No.

15   BY MS. PEURACH:

16       Q    Has Hoplite, Inc., changed the address of

17   record from the 6725 West Sunset Boulevard address

18   since ceasing to lease office space from that

19   location?

20       A    We have started to, but based on the

21   pandemic in Los Angeles, it's taking a little bit

22   longer than normal.

23       Q    Okay.  Mr. Smith, I'm going to show you a

24   document I'm going to mark as Exhibit 13 to your

25   deposition, which is labeled in your production as

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                  Page 182

1    D152 through D217.

2              (Exhibit 13 marked.)

3    BY MS. PEURACH:

4       Q    Looking at the first page, it states,

5    "Wells Fargo Business Choice Checking, Hoplite

6    Entertainment, LLC," with an account number ending

7    ███.  Do you see that?

8       A    Yes.

9       Q    And again, earlier when we were looking at

10   Hoplite Entertainment's balance sheet, I believe

11   you testified that its account ending in ███ was a

12   Wells Fargo checking account; is that right?

13      A    Yes.

14      Q    What's the purpose of Hoplite

15   Entertainment's checking account with Wells Fargo

16   ending ███?

17             MR. COHAN:  Object to the form.

18      A    Also, it's the general operating account.

19   BY MS. PEURACH:

20      Q    For Hoplite Entertainment?

21      A    Yes.

22             MR. COHAN:  Object to the form.

23   BY MS. PEURACH:

24      Q    Does the account have any other purpose

25   for Hoplite Entertainment aside from general

**EXHIBIT L
PAGE 650**

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 183

1    operating account?

2              MR. COHAN:  Object to the form.

3        A    No.

4    BY MS. PEURACH:

5        Q    I'm going to direct your attention to a

6    page marked D207 of Exhibit 13.  Actually, let's

7    start at 206.

8              So looking at page D206 of Exhibit 13,

9    it's labeled Wells Fargo business choice checking,

10   November 30th, 2020, Hoplite Entertainment, LLC,

11   account number ending in ███.  Do you see that?

12             MR. COHAN:  Object to the form.  For the

13   record, we can't see the Bates number.  It looks

14   like it's page sixty-something or

15   seventy-something.

16   BY MS. PEURACH:

17       Q    It's page marked D206.  Do you need to see

18   any other piece of page D206 to answer my question,

19   Mr. Smith?  Because we're happy to move it around.

20             MR. COHAN:  We see the bottom third.

21             MS. PEURACH:  I can't hear you, Mr. Cohan.

22             MR. COHAN:  We can only see the bottom --

23   he can only see the bottom third of one page.  I

24   think we can now see the middle.

25             MS. PEURACH:  I'm trying to make it large

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 184

1    enough for you to see, Louis and Mr. Smith, so we

2    started at the top and then moved to the bottom of

3    D206.  I'm happy to enlarge any piece you need so

4    that you can see what I'm referring to.

5              MR. COHAN:  I'm sorry.  It's just a

6    real -- it is a struggle our way of handling the

7    exhibits.  It might have been easier if you had let

8    us know in advance or emailed them to us so we

9    could have had them available.  We can't control

10   them and we can only see the little slice that

11   you're showing us at a time.

12             MS. PEURACH:  Which is why, again,

13   Mr. Smith, if you need me to enlarge any piece,

14   please let me know.

15             MR. COHAN:  Yeah, but it's not possible.

16   This is a 71-page exhibit.  You can't see it.

17   There's no practical way to see it.

18   BY MS. PEURACH:

19       Q    Right now I'm directing your attention to

20   the page labeled D206.  Zoom in on that.  That page

21   right there.  Then I will scroll up and show you

22   that it is labeled Wells Fargo business choice

23   checking, November 30th, 2020, Hoplite

24   Entertainment, LLC.  Do you see that?

25       A    Yes.

Veritext Legal Solutions

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                             Page 185

1      Q    Scrolling to the next page of the

2    document, page 2 of 4, as you can see on the top,

3    at the top there, it says, "Transaction History."

4    We will zoom into that for you so that you can see

5    it a bit better.

6          MR. COHAN:  We're not seeing 204.  Oh, 2

7    of 4.  Sorry.

8          MS. PEURACH:  At the very top of the

9    screen, do you see it says November 30th, 2020,

10   page 2 of 4?

11         MR. COHAN:  2 of 4, yes.

12   BY MS. PEURACH:

13     Q    Okay.  So under transaction history,

14   there's dated -- two entries dated November 10th.

15   Do you see those?

16     A    Yes.

17     Q    The first is an online transfer from Bo

18   Di-Hoplite, LLC, business checking, ███.  Do you

19   see that?

20     A    Yes.

21     Q    Are you familiar with that business

22   checking account?

23     A    Yes.

24     Q    What is it?

25     A    It's a Wells Fargo business checking

                    Veritext Legal Solutions

EXHIBIT L
PAGE 653

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 186

1    account with the Chinese partner.

2        Q    Bo Di?

3        A    Yes.

4        Q    And Hoplite?

5        A    Yes.

6        Q    And do you have access to that Wells Fargo

7    account?

8        A    Yes.

9        Q    And do you use that Wells Fargo account to

10   conduct business related to Bo Di-Hoplite?

11       A    Not since the shows were done.  But yes,

12   if there was more business, it would be used for

13   that.

14       Q    And when was the last time you accessed

15   the Bo Di-Hoplite account?

16       A    Sometime in 2020.

17       Q    So this reflects a transaction on

18   November 10th, 2020.  Do you know who initiated

19   that online transfer?

20       A    No.

21       Q    When you say the last time you accessed

22   the Bo Di-Hoplite account was sometime in 2020, can

23   you estimate what time period in 2020?

24       A    Not with any degree of certainty.

25       Q    Do you know if it was in the first or

EXHIBIT L
PAGE 654

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                              Page 187

 1   second half?

 2        A    I would assume the second half.

 3        Q    Do you know if it was after this date of

 4   November 10, 2020?

 5        A    I don't believe so.

 6        Q    The next entry is on November 10th.  It's

 7   an online transfer from Hoplite Channel, Inc.,

 8   business checking ████.  Do you see that?

 9        A    Yes.

10        Q    Are you familiar with that business

11   checking account?

12        A    Yes.

13        Q    What is that business checking account?

14        A    That was originally set up for the channel

15   that doesn't exist.

16        Q    Why was there an online transfer from the

17   Hoplite Channel business checking account on

18   November 10th, 2020?

19        A    Might have been just paying back Hoplite.

20        Q    For what?

21        A    When the account was initially opened, if

22   I remember correctly, Hoplite put money into that

23   account originally to open the account.

24        Q    When was the last -- or strike that.

25             Do you have access to the Hoplite Channel

EXHIBIT L
PAGE 655

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 188

1    business checking account?

2        A    Yes.

3        Q    When was the last time you accessed it?

4        A    Within the last six months.

5        Q    Did you initiate the online transfer from

6    Hoplite Channel business checking on November 10th,

7    2020?

8        A    I don't remember.

9        Q    Okay.  Did you provide statements from

10   either the Bo Di-Hoplite business checking account

11   or Hoplite Channel business checking account to

12   your counsel to produce in this case?

13           MR. COHAN:  Attorney-client privilege and

14   Fifth Amendment.  Don't answer.

15   BY MS. PEURACH:

16       Q    Are you following your counsel's

17   instruction?

18       A    Yes.

19           (Exhibit 14 marked.)

20   BY MS. PEURACH:

21       Q    Mr. Smith, I'm putting on the screen a

22   document I'll mark as Exhibit 14 to your

23   deposition, which are bank statements Bates stamped

24   D570 through D642.

25           I'll show you the first page of Exhibit

Jonathan Lee Smith                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 189

1   14, which is on the screen.  We'll zoom in on the

2   Bates stamp for you so you can see that, which is

3   D570, and then we'll go to the top of D570.  And

4   it's -- to show you, it says, "Wells Fargo Everyday

5   Checking, Jonathan L. Smith."  Let's go down a

6   little bit.  Account number ending in ████.  Do you

7   see that?

8       A    Yes.

9       Q    What's this account?

10      A    My personal account.

11      Q    And I notice the address is a West

12   Hollywood address.  Is that your home address?

13      A    Apparently, yes.

14      Q    Okay.  Not your business address?

15      A    No.

16      Q    And your everyday checking -- strike that.

17           So you -- you've testified that this is --

18   this account ending in ████ with Wells Fargo is

19   your personal account, right?

20      A    Correct.

21      Q    Do you use your personal account ending

22   5546 for any Hoplite-related business?

23      A    Yes.

24      Q    Mr. Smith, we've now looked at four

25   different bank account numbers with Wells Fargo;

**EXHIBIT L
PAGE 657**

Jonathan Lee Smith                                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 190

1    one for Hoplite LBE, one for Hoplite, Inc., one for

2    Hoplite Entertainment, and one for yourself.  Are

3    there any other bank accounts that you use to

4    conduct Hoplite-related business?

5         A    Yes.

6         Q    And what are those?

7         A    The Bo Di-Hoplite one you just referenced,

8    and then the Hoplite Channel, and other accounts,

9    most of which don't exist any more, that have been

10   opened for various productions on a show-by-show

11   basis.

12        Q    Is one of those accounts the HLE-SPV, LLC,

13   bank account in Georgia?

14        A    Correct.

15        Q    Is that account through Wells Fargo also?

16        A    No.

17        Q    Who is that account through?

18        A    Liberty First Bank.

19             MS. PEURACH:  Okay.  Let me -- let's take

20   a quick break and just organize where we are.

21   We'll be more efficient that way.

22             THE VIDEOGRAPHER:  Off the record at 3:13.

23             (Recess from 3:13 to 3:22 p.m.)

24             THE VIDEOGRAPHER:  We're back on the

25   record.  The time is 3:22.

EXHIBIT L
PAGE 658

Jonathan Lee Smith                         March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 191

```
 1          (Telephone interruption.)
 2     A    Sorry about that.
 3  BY MS. PEURACH:
 4     Q    It's okay.
 5          Mr. Smith, are you familiar with
 6  individuals named Shain Wray and I think it's Eang
 7  Ear?
 8     A    Yes.
 9     Q    Who are they?
10     A    It's a married couple that is based in
11  Seattle.
12     Q    And do you have a personal or business
13  relationship with them?
14     A    Business.
15     Q    And what is the nature of your business
16  with Mr. Ear and -- is it Mr. Ear and Ms. Wray or
17  vice versa?
18     A    Vice versa.
19     Q    Okay.  Mrs. Ear and Mr. Wray?
20     A    They did working capital loans.
21     Q    To Hoplite?
22     A    Correct.
23     Q    When -- or strike that.
24          How many loans have Mrs. Ear and Mr. Wray
25  made to Hoplite?
```

**EXHIBIT L**
**PAGE 659**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 192

1          MR. COHAN:  Fifth Amendment.  Don't

2     answer.

3     BY MS. PEURACH:

4         Q    Are you following your counsel's

5     instruction?

6         A    Yes.

7         Q    Did Mrs. Ear and Mr. Wray loan Hoplite

8     $300,000 on or around February 4th of 2020?

9          MR. COHAN:  Fifth Amendment.  Don't

10    answer.

11    BY MS. PEURACH:

12        Q    Are you following your counsel's

13    instruction?

14        A    Yes.

15        Q    Had Hoplite -- strike that.

16         Did Hoplite have any indebtedness to

17    Mrs. Ear and Mr. Wray at the time it entered the

18    loan with Bay Point?

19         MR. COHAN:  Fifth amendment.  Don't

20    answer.

21    BY MS. PEURACH:

22        Q    Are you following your counsel's

23    instruction?

24        A    Yes.

25        Q    Did Hoplite give any collateral to

Jonathan Lee Smith                                           March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 193

1    Mrs. Ear and Mr. Wray in connection with the loan

2    for $300,000 in February of 2020?

3            MR. COHAN:  Fifth Amendment.  Don't

4    answer.

5    BY MS. PEURACH:

6        Q    Are you following your counsel's

7    instruction?

8        A    Yes.

9        Q    At the time Hoplite entered the loan with

10   Bay Point, did it obtain a subordination agreement

11   from Mrs. Ear or Mr. Wray?

12           MR. COHAN:  Fifth amendment.  Don't

13   answer.

14   BY MS. PEURACH:

15       Q    Are you following your counsel's

16   instruction?

17       A    Yes.

18       Q    Did you provide a copy of the loan

19   agreement from Mrs. Ear and Mr. Wray to Hoplite on

20   or around February 2020 to your counsel in this

21   case to produce in this litigation?

22           MR. COHAN:  Attorney-client privilege.

23   Objection to form.  Fifth Amendment.  Don't answer.

24   BY MS. PEURACH:

25       Q    Are you following your counsel's

EXHIBIT L
PAGE 661

Jonathan Lee Smith                           March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 194

1    instructions?

2        A    Yes.

3        Q    Is Hoplite in default of any loan

4    agreements with Mrs. Ear and Mr. Wray?

5             MR. COHAN:  Fifth Amendment.  Don't

6    answer.

7    BY MS. PEURACH:

8        Q    Are you following your counsel's

9    instructions?

10       A    Yes.

11       Q    You talked earlier about Inverleigh Media.

12   That's a production company in Australia; is that

13   right?

14       A    Correct.

15       Q    And having looked at some of the bank

16   account statements that Hoplite produced in the

17   litigation, it appears that Inverleigh paid Hoplite

18   and Hoplite Entertainment at least $265,000 in

19   2020.

20            What was the purpose of any funds paid

21   from Inverleigh to Hoplite or Hoplite Entertainment

22   in 2020?

23            MR. COHAN:  Fifth Amendment.  Don't

24   answer.

25   BY MS. PEURACH:

**EXHIBIT L
PAGE 662**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 195

1      Q      Are you following your counsel's

2   instructions?

3      A      Yes.

4      Q      What's Principal Media?

5      A      A distribution company.

6      Q      What do they distribute?

7      A      They had done a deal on the series Geared

8   Up.

9      Q      And did Hoplite receive income from

10  Principal Media as a result of that deal in 2020?

11     A      Yes.

12     Q      Do you recall approximately how much?

13     A      Not off the top of my head, no.

14     Q      Is there any other reason that Principal

15  Media would be making payments to Hoplite

16  Entertainment in 2020 other than as a result of the

17  Geared Up deal?

18     A      Not that I'm aware of.

19     Q      Are the payments from Principal Media to

20  Hoplite Entertainment related to Geared Up paid in

21  any sort of installment fashion or pursuant to a

22  schedule?

23     A      Yes.

24     Q      What is that?

25     A      I don't remember specifically, but I

EXHIBIT L
PAGE 663

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 196

1   believe it was over a 12-month period from when the

2   show aired in the United States.

3        Q    And are they paid -- is Hoplite paid

4   monthly?

5        A    Quarterly.

6        Q    Oh, I see a reference to an FCW-Los

7   Angeles.  What is that?

8        A    That was the FCW's, I guess, LA division.

9        Q    So when you say FCW's LA division, is that

10  Fight Channel World?

11       A    Yes.

12       Q    All right.  And so does FCW-Los Angeles

13  have any relation to the Fight Channel World

14  Network that was party to an acquisition agreement

15  with Hoplite?

16       A    Yes.

17       Q    What's the relationship?

18       A    It's part of FCW.

19       Q    Do you have any role with FCW-Los Angeles?

20       A    No.

21       Q    Mr. Smith, I'm showing you what I'll mark

22  as Exhibit 15 to your deposition.

23            (Exhibit 15 marked.)

24  BY MS. PEURACH:

25       Q    Note this is a single-page document and

**EXHIBIT L
PAGE 664**

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 197

1    I'm happy to zoom in or out as needed so that you

2    can see it.  It's labeled Secretary of State

3    Articles of Organization, Limited Liability

4    Company.  And if you look at number 1, it says,

5    FCW-Los Angeles, LLC.

6          Have you ever seen this document before?

7    Here, let's zoom out first, and I can zoom in

8    wherever you need.

9      A    I'm sorry.  Can you ask that again?  I

10   didn't hear what you said, ma'am.

11     Q    I'm asking if you've seen the document

12   before.  And if you need me to zoom in anywhere to

13   help you answer that question, I'm happy to do it.

14     A    I've seen it before.

15     Q    Okay.  What is it?

16     A    The Secretary of State articles of

17   incorporation.

18     Q    For FCW-Los Angeles?

19     A    Correct.

20     Q    And it's dated or filed September 27,

21   2018.  Do you see that?

22     A    Yes.

23     Q    You are listed as the signer on behalf of

24   the organization.  Do you see that?

25          MR. COHAN:  Fifth Amendment.  Don't

EXHIBIT L
PAGE 665

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 198

1    answer.

2    BY MS. PEURACH:

3         Q    Are you following your counsel's

4    instruction?

5         A    Yes.

6         Q    Is that your signature on Exhibit 15?

7              MR. COHAN:  Fifth Amendment.  Don't

8    answer.

9    BY MS. PEURACH:

10        Q    Are you following your counsel's

11   instruction?

12        A    Yes.

13        Q    Under section 3, service of process, it

14   lists the name of the California agent for FCW-Los

15   Angeles.  Do you see that on Exhibit 15?

16             MR. COHAN:  Objection.  Don't answer.

17   Fifth Amendment.

18   BY MS. PEURACH:

19        Q    Are you following your counsel's

20   instruction?

21        A    Yes.

22        Q    What's your relationship with Orsat Zovko?

23             MR. COHAN:  Fifth Amendment.  Don't

24   answer.

25   BY MS. PEURACH:

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 199

1      Q    Are you following your counsel's

2   instructions?

3      A    Yes.

4      Q    Okay.  We can take that down.

5           Did Hoplite, Inc., do any business with

6   FCW-Los Angeles in 2020?

7      A    I don't remember.

8      Q    Do you have access to any FCW-Los Angeles

9   bank accounts?

10          MR. COHAN:  Fifth Amendment.  Don't

11  answer.

12  BY MS. PEURACH:

13     Q    Are you following your counsel's

14  instruction?

15     A    Yes.

16     Q    Okay.  Mr. Smith, I'm going back to

17  Exhibit 12 which I showed you earlier, the Hoplite,

18  Inc., checking account statements for account

19  ending ████, Bates labeled D226 through D309, that

20  were produced in this litigation.

21          I'd like to direct your attention to a

22  specific page Bates labeled D257.  Just give us a

23  second to get there.  There are a lot of statements

24  provided.

25          Okay.  And this is -- I'll zoom out so you

EXHIBIT L
PAGE 667

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 200

1    can see this whole page Bates labeled D257.  Do you

2    see the bottom corner?  I'm happy to zoom in if you

3    need it.

4         A    Zoom in --

5         Q    Yeah, sure.

6         A    -- just a little bit if you don't mind.

7         Q    Sure.  No problem.

8         A    Okay.

9         Q    D257, go up to the top of that single

10   page, Wells Fargo Simple Business Checking,

11   May 31st, page 1 of 7, Hoplite, Inc.  Do you see

12   that?

13        A    Yes.

14        Q    If we go a little bit farther down this

15   same page, D257, account number ending ████.  Do

16   you see that as well?

17        A    Yes.

18        Q    Okay.  So that was page 1 of 7.  I'm going

19   to show you -- oh, shoot, you know what, that was a

20   total waste of time.  Strike all that on page 257

21   because I want to show you a different statement.

22             So I'll show you something else.  Here we

23   go, D247, okay, so we'll go through the same drill.

24   Let me show you D247.

25        A    Okay.

Veritext Legal Solutions
800.808.4958                                              770.343.9696

EXHIBIT L
PAGE 668

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 201

1      Q    That's the Bates label.  Wells Fargo

2   Simple Business Checking, April 30th, 2020,

3   Hoplite, Inc.  We'll go down, account number ending

4   ████.  Do you see that?

5      A    Yes.

6      Q    Okay.

7           MS. PEURACH:  And go back up on this page

8   real quick, Chris, of 247.

9   BY MS. PEURACH:

10     Q    It says page 1 of 10.  It's on D247.

11  We're going to go down to page 5 of 10.  And I'm

12  just going to direct your attention to an entry --

13  we'll zoom in because I see -- I realize this is

14  hard on the eyes.

15          I'm going to direct your attention to an

16  entry on 423, online transfer to FCW-Los Angeles

17  business checking, 8546, for $200,000.  Do you see

18  that?

19          MR. COHAN:  Don't answer.  Fifth

20  Amendment.

21  BY MS. PEURACH:

22     Q    Are you following your counsel's

23  instruction?

24     A    Yes.

25     Q    Do you know what that payment was for?

Veritext Legal Solutions

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 202

1        MR. COHAN:  Don't answer.  Fifth
2    Amendment.
3    BY MS. PEURACH:
4        Q    Are you following your counsel's
5    instructions?
6        A    Yes.
7        Q    All right.  If you go down just a few
8    lines, there's an entry on April 24th that states
9    online transfer from FCW-Los Angeles, LLC, business
10   checking, $850,000.  So an incoming transfer from
11   FCW-Los Angeles.  What was that payment for?
12       MR. COHAN:  Fifth Amendment.  Don't
13   answer.
14   BY MS. PEURACH:
15       Q    Are you following your counsel's
16   instructions?
17       A    Yes.
18       Q    Apologies.  I'm just going right back up
19   on that page for one second, Mr. Smith, while I'm
20   here.  So we're just looking at this 423 and 424
21   transaction.
22            If we go to the next page, which will be
23   page 6 of 10 marked D252, there's an entry on 424,
24   the sixth one down, to OZE Lending I, LLC,
25   withdrawal of $250,000.  What was that payment for?

EXHIBIT L
PAGE 670

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 203

1          MR. COHAN:  Fifth Amendment.  Don't

2     answer.

3     BY MS. PEURACH:

4        Q    Are you following your counsel's

5     instructions?

6        A    Yes.

7        Q    If you go down a few entries from there, I

8     think it's one, two -- three entries from there,

9     there's a payment to Lifeng Wang in the amount of

10    $30,000.  Do you see that?

11       A    Yes.

12       Q    What was that payment for?

13         MR. COHAN:  Fifth Amendment.  Don't

14    answer.

15    BY MS. PEURACH:

16       Q    Are you following your counsel's

17    instructions?

18       A    Yes.

19       Q    Okay.  If you go down two more entries

20    from there, on 424, there is a transfer of

21    $200,000, it says Eang Ear.  What was that payment

22    for?

23         MR. COHAN:  Fifth Amendment.  Don't

24    answer.

25    BY MS. PEURACH:

EXHIBIT L
PAGE 671

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 204

1      Q    Are you following your counsel's

2    instructions?

3      A    Yes.

4      Q    If you go down one, two -- three more from

5    the Eang Ear entry is a payment with a reference to

6    Christopher A. Larson in the amount of $5,000.

7    Who's Christopher Larson?

8           MR. COHAN:  Fifth Amendment.  Don't

9    answer.

10   BY MS. PEURACH:

11     Q    Are you following your counsel's

12   instruction?

13     A    Yes.

14     Q    What was that $5,000 payment on 424 with a

15   reference to Christopher Larson for?

16          MR. COHAN:  Fifth Amendment.  Don't

17   answer.

18   BY MS. PEURACH:

19     Q    Are you following your counsel's

20   instructions?

21     A    Yes.

22     Q    Okay.  We can put that to the side for

23   now.  Thank you.

24          Mr. Smith, did you obtain -- strike that.

25          Did you or the Hoplite entities obtain a

EXHIBIT L
PAGE 672

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 205

1    loan from an individual or an entity named Lifeng

2    Wang?

3              MR. COHAN:  Fifth Amendment.  Don't

4    answer.

5    BY MS. PEURACH:

6        Q    Are you going to follow your counsel's

7    instructions?

8        A    Yes.

9        Q    Okay.  At the time Hoplite entered the

10   loan with Bay Point, did it have an outstanding

11   indebtedness to Lifeng Wang?

12             MR. COHAN:  Fifth Amendment.  Don't

13   answer.

14   BY MS. PEURACH:

15       Q    Are you following your counsel's

16   instructions?

17       A    Yes.

18       Q    At the time Hoplite entered the loan from

19   Bay Point, did it obtain any form of subordination

20   agreement from Lifeng Wang?

21             MR. COHAN:  Fifth Amendment.  Don't

22   answer.

23   BY MS. PEURACH:

24       Q    Are you following your counsel's

25   instructions?

EXHIBIT L
PAGE 673

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 206

1        A     Yes.

2        Q     Is Hoplite currently indebted in any way

3    to Lifeng Wang?

4              MR. COHAN:  Fifth Amendment.  Don't

5    answer.

6    BY MS. PEURACH:

7        Q     Are you following your counsel's

8    instructions?

9        A     Yes.

10       Q     Mr. Smith, I'm going to show you what

11   we'll mark as Exhibit 16 to your deposition, which

12   has been Bates labeled D1292.  This is a one-page

13   document.  I'll show you the Bates label first.

14   D1292, do you see that?

15       A     Yes.

16             (Exhibit 16 marked.)

17   BY MS. PEURACH:

18       Q     Okay.  I'll scroll up so you can see the

19   remainder of this document, which appears to be a

20   printout of a cashier's check that was produced to

21   us.  And I'll zoom in on the cashier's check so

22   that you can see it.  It says, "Pay to the order of

23   Lifeng Wang, $1 million."  Do you see that?

24             MR. COHAN:  Don't answer.  Fifth

25   Amendment.

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 207

1   BY MS. PEURACH:

2       Q    Are you following your counsel's

3   instructions?

4       A    Yes.

5       Q    If you look in the top left, it says,

6   "Remitter, Jonathan Smith."

7            Did you obtain a cashier's check to pay

8   Lifeng Wang $1 million on September 30th, 2020?

9            MR. COHAN:  Fifth Amendment.  Don't

10  answer.

11  BY MS. PEURACH:

12      Q    Are you following your counsel's

13  instructions?

14      A    Yes.

15      Q    September 30th is the same day that

16  Hoplite entered the loan with Bay Point, isn't it?

17           MR. COHAN:  Fifth Amendment.  Don't

18  answer.

19  BY MS. PEURACH:

20      Q    Are you following your counsel's

21  instructions?

22      A    Yes.

23      Q    Did Hoplite use the loan -- strike that.

24  Did Hoplite use a portion of the loan proceeds --

25  or strike that again.

EXHIBIT L
PAGE 675

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                  Page 208

1           Did you or Hoplite use a portion of the

2     loan proceeds from Bay Point to repay Lifeng Wang?

3           MR. COHAN:  Fifth Amendment.  Don't

4     answer.

5     BY MS. PEURACH:

6       Q    Are you going to follow your counsel's

7     instructions?

8       A    Yes.

9       Q    Did you say yes?

10      A    Yes.

11      Q    You can put that down.  Mr. Smith, what's

12    Alpine Productions?

13      A    It's a production partner.

14      Q    Of Hoplite's?

15      A    Yes.

16      Q    What have you -- what has Hoplite

17    partnered with Alpine Productions on?

18      A    Our ESport series.

19      Q    ESports, you said?

20      A    Yes.

21      Q    And I apologize if you testified to this

22    earlier when we talked about ESports, but it's hard

23    to remember all of the series here that we've

24    discussed.

25           Did Hoplite receive any income from Alpine

Veritext Legal Solutions

EXHIBIT L
PAGE 676

Jonathan Lee Smith                                        March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 209

1    Productions in 2020 for the ESport series?

2        A    No.

3        Q    Did Hoplite receive any funds from Alpine

4    Productions in 2020?

5        A    It may have received some that are

6    supposed to be finishing the production as it still

7    owes money against that show.

8        Q    Tell me what you mean by that.

9        A    They signed an agreement to finance the

10   series and didn't fulfill the full agreement

11   because they ran out of cash, so they're trying to

12   make slow payments against it to finish it.

13       Q    And so there's an agreement between

14   Hoplite and Alpine Productions for Alpine

15   Productions to finance the ESport series; is that

16   right?

17       A    Correct.

18       Q    Okay.  What's the amount that Alpine

19   Productions was supposed to pay to finance the

20   ESport series?

21       A    I don't remember the exact amount, but it

22   was more than 800,000.

23       Q    Has Alpine Productions paid that full

24   amount as we sit here today?

25       A    No.

**EXHIBIT L**
**PAGE 677**

Jonathan Lee Smith                                   March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 210

1      Q    How much money is remaining to be paid by

2   Alpine Productions to finance the ESport series?

3      A    I don't remember.  It was more than

4   300,000.

5      Q    And does Alpine Productions owe that money

6   to Hoplite directly?

7      A    Yes, if I remember correctly.

8      Q    And did you provide the agreement with

9   Alpine Productions and Hoplite to your counsel to

10  produce in this litigation?

11         MR. COHAN:  Don't answer.  Attorney-client

12  privilege.  Fifth Amendment.

13         MS. PEURACH:  Can you restate your

14  objections, Louis?  I couldn't hear them.

15         MR. COHAN:  Attorney-client privilege and

16  Fifth Amendment.  And I'm instructing the witness

17  not to answer.

18  BY MS. PEURACH:

19     Q    Okay.  Are you following your counsel's

20  instructions?

21     A    Yes.

22     Q    Has Hoplite ever received a loan from

23  Alpine Productions?

24         MR. COHAN:  Don't answer.  Fifth

25  Amendment.

EXHIBIT L
PAGE 678

Jonathan Lee Smith                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 211

1    BY MS. PEURACH:

2         Q     Are you following your counsel's

3    instructions?

4         A     Yes.

5         Q     Sitting here today, is Hoplite indebted

6    pursuant to any form of loan agreement to Alpine

7    Productions?

8              MR. COHAN:  Fifth Amendment.  Don't

9    answer.

10   BY MS. PEURACH:

11        Q     Are you following your counsel's

12   instructions?

13        A     Yes.

14        Q     What's OZE Lending?

15             MR. COHAN:  Fifth Amendment.  Don't

16   answer.

17   BY MS. PEURACH:

18        Q     Are you following your counsel's

19   instructions?

20        A     Yes.

21        Q     What's OZE Capital Fund?

22             MR. COHAN:  Fifth Amendment.  Don't

23   answer.

24   BY MS. PEURACH:

25        Q     Are you following your counsel's

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                        Page 212

1    instructions?

2        A    Yes.

3        Q    Has Hoplite obtained a loan from OZE

4    Lending?

5            MR. COHAN:  Is that a question?

6    BY MR. COHAN:

7        Q    Yeah.  I said, has Hoplite obtained a loan

8    from OZE Lending?

9            MR. COHAN:  Fifth Amendment.  Don't

10   answer.

11   BY MS. PEURACH:

12       Q    Are you going to follow your counsel's

13   instructions?

14       A    Yes.

15       Q    And has Hoplite obtained a loan from OZE

16   Capital Fund?

17           MR. COHAN:  Fifth Amendment.  Don't

18   answer.

19   BY MS. PEURACH:

20       Q    Are you going to follow your counsel's

21   instructions?

22       A    Yes.

23       Q    All right.  Okay.  Mr. Smith, switching

24   gears a little, we talked earlier about James

25   Pacitti, your general counsel.  Was he involved in

                                                    EXHIBIT L
                                                    PAGE 680

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 213

1    the Bay Point loan?

2        A    Yes.

3        Q    Did you hear?

4            Okay.  What was Mr. Pacitti's involvement

5    in the Bay Point loan?

6            MR. COHAN:  Don't answer.  Fifth

7    Amendment.  Attorney-client privilege.

8    BY MS. PEURACH:

9        Q    Are you following your counsel's

10   instruction?

11       A    Yes.

12       Q    Okay.  Was Mr. Pacitti involved in

13   negotiating the terms of the loan agreement between

14   Hoplite and Bay Point?

15           MR. COHAN:  Don't answer.  Fifth Amendment

16   and attorney-client privilege.

17   BY MS. PEURACH:

18       Q    Are you following your counsel's

19   instructions?

20       A    Yes.

21       Q    Was Mr. Pacitti involved in obtaining any

22   subordination agreements in connection with the

23   Hoplite loan from Bay Point?

24           MR. COHAN:  Don't answer.  Fifth

25   Amendment.  Attorney-client privilege.

EXHIBIT L
PAGE 681

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 214

```
 1   BY MS. PEURACH:
 2        Q    Are you following your counsel's
 3   instruction?
 4        A    Yes.
 5        Q    Was Mr. Pacitti involved in obtaining any
 6   nondisturbance agreements from Big Media, Screen
 7   Media or Fight Channel?
 8             MR. COHAN:  Don't answer.  Fifth Amendment
 9   and attorney-client privilege.
10   BY MS. PEURACH:
11        Q    Are you following your counsel's
12   instructions?
13        A    Yes.
14        Q    Was Mr. Pacitti involved in the loans that
15   Hoplite identified as third-party loans in the Bay
16   Point loan agreement?
17             MR. COHAN:  Don't answer.  Fifth Amendment
18   and attorney-client privilege.
19   BY MS. PEURACH:
20        Q    Are you following your counsel's
21   instructions?
22        A    Yes.
23        Q    Okay.  Mr. Smith, I'm just getting Exhibit
24   17 up for you.
25             (Exhibit 17 marked.)
```

Veritext Legal Solutions

**EXHIBIT L**
**PAGE 682**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 215

1    BY MS. PEURACH:

2        Q    And there we go.  So on the screen,

3    Mr. Smith, are two documents -- or two pages of

4    documents produced to us in litigation, Bates

5    labeled D1446 and D1447.

6            I will show you the Bates labels first and

7    then we can zoom in since I recognize it's --

8    things get small.  So there's page D1446, and then

9    the second page of Exhibit 17 is D1447.  Do you see

10   that?

11       A    Yes.

12       Q    Okay.  Looking at page D1446 of Exhibit

13   17, it states that there are check details for

14   check number 1516.  And the date posted is 9/30/20

15   in an amount of $55,000.  Do you see that?

16           MR. COHAN:  Hold on.  Where did these come

17   from?

18           MS. PEURACH:  The production from -- we

19   can go off the record if you'd like.

20           MR. COHAN:  I don't see any Bates numbers,

21   and I don't know why they're produced.

22           MS. PEURACH:  Let's go off the record.

23           THE VIDEOGRAPHER:  Off record at 3:55.

24           (Off-the-record discussion.)

25           THE VIDEOGRAPHER:  We're back on the

800.808.4958                                          770.343.9696

EXHIBIT L
PAGE 683

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 216

1    record at 3:57.

2    BY MS. PEURACH:

3        Q    Mr. Smith, before we took a break, we were

4    looking at Exhibit 17, which is Bates labeled D1446

5    to 1447, so just two check details.

6             Looking at the first check detail on

7    D1446, for check number 1516, appears to be a check

8    to Mr. Pacitti of $55,000 on 9/30/20, which is the

9    date that the Bay Point loan closed.  And so my

10   question is:  What was this $55,000 for?

11            MR. COHAN:  Fifth Amendment and

12   attorney-client privilege.  Don't answer.

13   BY MS. PEURACH:

14       Q    Are you following your counsel's

15   instruction?

16       A    Yes.

17       Q    Okay.  Looking at the next page of Exhibit

18   17, D1447, another check from Hoplite to

19   Mr. Pacitti on 9/30/20, the date the Bay Point loan

20   closed, this check is for $20,000, check 1517.

21   What was this check to Mr. Pacitti for?

22            MR. COHAN:  Fifth Amendment and

23   attorney-client privilege.  Don't answer.

24   BY MS. PEURACH:

25       Q    Are you following your counsel's

EXHIBIT L
PAGE 684

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 217

1    instruction?

2        A    Yes.

3        Q    Okay.  Mr. Smith, did Hoplite

4    Entertainment obtain a loan from BondIt, an entity

5    called BondIt?

6            MR. COHAN:  Fifth Amendment.  Don't

7    answer.

8    BY MS. PEURACH:

9        Q    Are you following your counsel's

10   instruction?

11       A    Yes.

12       Q    What's BondIt?

13           MR. COHAN:  Fifth Amendment.  Don't

14   answer.

15   BY MS. PEURACH:

16       Q    Are you following your counsel's

17   instruction?

18       A    Yes.

19       Q    What was the principal of Hoplite's loan

20   from BondIt?

21           MR. COHAN:  Fifth Amendment.  Don't

22   answer.

23   BY MS. PEURACH:

24       Q    Are you following your counsel's

25   instructions?

EXHIBIT L
PAGE 685

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 218

1      A    Yes.

2      Q    At the time Hoplite entered the loan with

3   Bay Point, did it obtain any subordination

4   agreement from BondIt?

5           MR. COHAN:  Fifth Amendment.  Don't

6   answer.

7   BY MS. PEURACH:

8      Q    Are you following your counsel's

9   instructions?

10     A    Yes.

11     Q    Has Hoplite repaid the loan from BondIt?

12          MR. COHAN:  Fifth Amendment.  Don't

13  answer.

14  BY MS. PEURACH:

15     Q    Are you following your counsel's

16  instructions?

17     A    Yes.

18     Q    Is Hoplite in default of the loan from

19  BondIt?

20          MR. COHAN:  Fifth Amendment.  Don't

21  answer.

22  BY MS. PEURACH:

23     Q    Are you following your counsel's

24  instructions?

25     A    Yes.

Veritext Legal Solutions

EXHIBIT L
PAGE 686

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 219

1      Q    Okay.  Mr. Smith, did Hoplite obtain a PPP

2    loan from Cross River Bank?

3           MR. COHAN:  Fifth Amendment.  Don't

4    answer.

5    BY MS. PEURACH:

6      Q    Are you going to follow your counsel's

7    instructions?

8      A    Yes.

9      Q    Did you complete an application on behalf

10   of Hoplite to obtain a PPP loan from Cross River

11   Bank?

12          MR. COHAN:  Fifth Amendment.  Don't

13   answer.

14   BY MS. PEURACH:

15     Q    Are you going to follow your counsel's

16   instructions?

17     A    Yes.

18     Q    Mr. Smith, I'm showing you what I'm going

19   to mark as Exhibit 18 to your deposition, which is

20   Bates labeled D1663 to 1 --

21          MS. PEURACH:  You know what, y'all, let me

22   take a minute off the record.  I'm going to

23   condense this exhibit.  It's easiest for us to get

24   it into the record.  Just give me a minute, please.

25          THE VIDEOGRAPHER:  Off the record at 4:02.

**EXHIBIT L**
**PAGE 687**

Jonathan Lee Smith                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 220

1              (Off-the-record discussion.)

2              THE VIDEOGRAPHER:  And we're back on the

3      record at 4:04.

4              (Exhibit 18 marked.)

5      BY MS. PEURACH:

6         Q    Okay.  Mr. Smith, I'm going to show you a

7      document marked as Exhibit 18, which is Bates

8      stamped D1663 to D1666.  It's a four-page document

9      with the heading Paycheck Protection Program,

10     Borrower Application Form.

11             We'll go through it at a high level.

12     We'll show you all four pages, and then I'll direct

13     your attention to just a few pieces on -- places on

14     the document.  So let's just show him all four

15     pages.  There's 1663, 1664, 1665, 1666.

16             Do you recognize the document in

17     Exhibit 18?

18             MR. COHAN:  Don't answer.  Fifth

19     Amendment.

20     BY MS. PEURACH:

21        Q    Are you following your counsel's

22     instructions?

23        A    Yes.

24        Q    Did you complete the paycheck protection

25     program application on behalf of Hoplite, Inc.,

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 221

1    that's reflected on Exhibit 18?

2            MR. COHAN:  Fifth Amendment.  Don't

3    answer.

4    BY MS. PEURACH:

5        Q    Are you following your counsel's

6    instructions?

7        A    Yes.

8        Q    There are initials reflected throughout

9    pages D1663 and 1664 of Exhibit 18, JS.  Are those

10   your initials?

11           MR. COHAN:  Fifth Amendment.  Don't

12   answer.

13   BY MS. PEURACH:

14       Q    Are you following your counsel's

15   instruction?

16       A    Yes.

17       Q    There is a signature on the second page of

18   Exhibit 18.  Is that your signature through

19   DocuSign?

20           MR. COHAN:  Fifth Amendment.  Don't

21   answer.

22   BY MS. PEURACH:

23       Q    Are you following your counsel's

24   instructions?

25       A    Yes.

**EXHIBIT L
PAGE 689**

Jonathan Lee Smith                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                        Page 222

1      Q     Did Hoplite receive a PPP loan from Cross

2   River Bank?

3           MR. COHAN:  Fifth Amendment.  Don't

4   answer.

5   BY MS. PEURACH:

6      Q     Are you going to follow your counsel's

7   instructions?

8      A     Yes.

9      Q     Did Hoplite use any PPP loan proceeds that

10  it received from Cross River Bank?

11          MR. COHAN:  Fifth Amendment.  Don't

12  answer.

13  BY MS. PEURACH:

14     Q     Are you going to follow your counsel's

15  instructions?

16     A     Yes.

17     Q     Did you provide any documentation in

18  support of obtaining a PPP loan?

19          MR. COHAN:  Fifth Amendment.  Don't

20  answer.

21  BY MS. PEURACH:

22     Q     Are you going to follow your counsel's

23  instructions?

24     A     Yes.

25     Q     Okay.  Let's put this to the side.  Did

EXHIBIT L
PAGE 690

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 223

1    Hoplite Entertainment obtain a PPP loan as well?

2              MR. COHAN:  Fifth Amendment.  Don't

3    answer.

4    BY MS. PEURACH:

5        Q    Are you going to follow your counsel's

6    instructions?

7        A    Yes.

8        Q    All right.  Did Hoplite obtain PPP loan

9    proceeds from Wells Fargo?

10             MR. COHAN:  Fifth Amendment.  Don't

11   answer.

12   BY MS. PEURACH:

13       Q    Are you going to follow your counsel's

14   instructions?

15       A    Yes.

16       Q    What was the stated purpose of Hoplite

17   Entertainment's PPP loan?

18             MR. COHAN:  Fifth Amendment.  Don't

19   answer.

20   BY MS. PEURACH:

21       Q    Are you going to follow your counsel's

22   instructions?

23       A    Yes.

24       Q    Has Hoplite Entertainment used any PPP

25   loan proceeds?

EXHIBIT L
PAGE 691

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                      Page 224

1           MR. COHAN:  Fifth Amendment.  Don't

2     answer.

3     BY MS. PEURACH:

4        Q    Are you going to follow your counsel's

5     instructions?

6        A    Yes.

7        Q    Did Hoplite -- or strike that.

8           Did you locate Hoplite Entertainment's PPP

9     loan application for production in this litigation?

10          MR. COHAN:  Fifth Amendment.  Don't

11    answer.

12    BY MS. PEURACH:

13       Q    Are you going to follow your counsel's

14    instructions?

15       A    Yes.

16       Q    Did Hoplite Entertainment provide any

17    documentation in support of obtaining a PPP loan?

18          MR. COHAN:  Fifth Amendment.  Don't

19    answer.

20    BY MS. PEURACH:

21       Q    Are you going to follow your counsel's

22    instructions?

23       A    Yes.

24       Q    Mr. Smith, I believe you already told me

25    earlier about Lucid Dream is another production

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 225

1    company, right?

2         A    A sales agent.

3         Q    A sales agent.  Can you -- what's the show

4    that Lucid Dream is involved with?

5         A    They try to sell everything in our

6    library.

7         Q    Oh, they do?  Okay.  Okay.  Do they

8    receive a commission for doing so?

9         A    That's right.

10        Q    What's Missionary Media Consultancy?

11        A    That is a loan-out for one of the sales

12   agents.

13        Q    Is that a consultant that you were

14   providing to a sales agent to try to sell media in

15   your library?

16        A    Sorry, no.  That's one of our -- our

17   consultants that runs our sales, Levina Negi,

18   that's her loan-out company.

19        Q    Okay.  So mission -- Missionary Media

20   Consultancy is Levina Negi's company?

21        A    Correct.

22        Q    So you're paying Levina Negi.  Do you pay

23   her directly or do you pay Missionary Media

24   Consulting?

25        A    Typically, it pays Missionary Media, but

**EXHIBIT L**
**PAGE 693**

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 226

1    there have been a few times where she's paid

2    directly.  That's usually depending on what the

3    Ruslan, the CPA, is -- how he's paying it, based on

4    what show.

5         Q    And her role on that respective show, I

6    assume?

7         A    Well, she's sales on everything.

8         Q    And is that a decision you're involved in,

9    whether to pay her in her individual capacity or to

10   pay her consulting company?

11        A    No.

12        Q    What's One Light Media?

13        A    Consulting company.

14        Q    And what's your relationship with One

15   Light Media?

16        A    They are executive producers.  They

17   consult on a show-by-show basis.

18        Q    Did they provide any consulting services

19   to Hoplite in 2020?

20        A    Yes.

21        Q    On what shows?

22        A    Across our library, they provide

23   consulting services on almost every title, whether

24   it's post or in production or in sales.

25        Q    Okay.  Do you have -- do you pay them by

**EXHIBIT L
PAGE 694**

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 227

1  series that they consult on or do you pay them a

2  monthly fee?  What's the payment structure?

3      A    They get paid on a show-by-show basis.  So

4  it's not really a monthly fee as much as a payment

5  structure of what shows they're involved with

6  consulting on.

7      Q    Who are the individuals involved in One

8  Light Media?

9      A    Scott Duncan and Gary Danklefsen.

10      Q    What's Tangible Global?

11      A    It's a law firm.

12      Q    Is that Mr. Pacitti's law firm?

13      A    No.

14      Q    This is another one.  Apologies if you

15  already told me about it.  What is Next Level

16  Agency?

17      A    I don't remember whose that is.  I think

18  that's a client that owed money.

19      Q    To Hoplite?

20      A    I believe so.  I don't actually remember.

21      Q    Are you familiar with the -- an LLC or

22  loan-out called MBO Northwest?

23      A    Yes.

24      Q    What's that?

25      A    That is a group that was financing an

**EXHIBIT L
PAGE 695**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                               Page 228

1    individual show.

2        Q    Which show were they financing?

3        A    Back in the Game.

4        Q    What's Back in the Game?  I don't recall

5    that one.

6        A    It was a basketball series I believe we

7    touched on earlier.

8        Q    And what's the status of that show?

9        A    It's indefinitely postponed due to COVID.

10       Q    Okay.  Sarah Snow I think you identified

11   earlier is one of the consultants that -- or

12   contractors -- strike that.

13            Is Sarah Snow one of the contractors that

14   works for Hoplite?

15       A    Yes.

16       Q    What's her role?

17       A    She was the head of production.

18       Q    All right.  Is she still?

19       A    No.

20       Q    Oh, she's been furloughed, right?

21       A    Correct.

22       Q    Okay.  How about Julie Daniels?

23       A    She was a producer.

24       Q    Also furloughed?

25       A    Yes, but still trying to work as best as

Veritext Legal Solutions

EXHIBIT L
PAGE 696

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 229

1    she can during the furlough.

2        Q    What about Camille Rawdin?

3        A    That was a production manager.

4        Q    Has she been furloughed, too?

5        A    Yes.

6        Q    Okay.  And Victoria -- is it Vegte?

7        A    That's a really good attempt there.  She

8    was a sales agent here in the U.S.

9        Q    And is she furloughed?

10       A    Yes.

11       Q    All right.  And then Martine Jean?

12       A    Global head of production.

13       Q    Is she currently furloughed?

14       A    Yes.

15       Q    What's EBF Partners, LLC?

16       A    I don't know off the top of my head.

17       Q    Who's Johnny Fratto?

18       A    We've mentioned his name a couple of times

19   today.  He's a producer on a couple of different

20   series attached to Hoplite.

21       Q    Which series is he a producer on?

22       A    I don't remember all of them off the top

23   of my head, but I know on Foxy Ladies, I believe.

24   I think on Drone Wars.  I think in total, it was

25   five different shows, including Geared Up.  He's on

EXHIBIT L
PAGE 697

Jonathan Lee Smith                            March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 230

1    Geared Up as well.

2         Q    Are you familiar with an entity NXLVE

3    Agency?

4         A    Not off the top of my head as far as what

5    that would belong to.

6         Q    Okay.  Who's Dan Greenberger?

7         A    My landlord.

8         Q    For your West Hollywood home?

9         A    Yes.

10             MS. PEURACH:  Okay.  Let me go off the

11   record and try to clean up a few of my remaining

12   questions and hopefully we'll be close.

13             THE VIDEOGRAPHER:  Off the record at 4:20.

14             (Recess from 4:20 to 4:36 p.m.)

15             THE VIDEOGRAPHER:  Back on the record at

16   4:36.

17   BY MS. PEURACH:

18        Q    All right.  Mr. Smith, I want to go back

19   to an exhibit we already looked at earlier.  It's

20   Exhibit 13.  It's a compilation of the Hoplite

21   Entertainment checking statements, D152 through

22   217.  I will orient you as best I can, but I'm just

23   going to pinpoint a few transactions in here that I

24   have a question about and see what you can tell me.

25             So I'd like to first go to the page marked

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 231

1    D194 on Exhibit 13.  And you'll see that is --

2    states "Wells Fargo Business Choice Checking,

3    September 30, 2020, page 1 of 7, for Hoplite

4    Entertainment, LLC."  And then if you go down a

5    little bit, it says account number ending ▮▮▮.

6              Do you see that on D194?

7       A    Yes.

8       Q    Okay.  So next I'm going to just take you

9    to page -- actually, I'm going to take you to

10   page 2 of 7, D195.  About halfway down, there's a

11   entry from -- on 9/17 from Principal Media, LLC,

12   for $52,500.

13             Is that one of the quarterly payments that

14   you were referring to from Principal Media to

15   Hoplite?

16      A    Yes.

17      Q    And then if we go to D196, which is page 3

18   of 7, I'd like -- can you see that?  And I can show

19   you the Bates stamp on the bottom.  Let's show him

20   that first.  So there's the Bates stamp, D196.

21             So if we go back up a little bit toward

22   the top of this page, page 3 of 7, you will see the

23   third entry dated 9/30 is labeled Big Media

24   Holdings, LLC, and it's a deposit of $6,500.  Do

25   you see that?

EXHIBIT L
PAGE 699

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 232

1        A     Yes.

2        Q     What was the deposit from Big Media

3    Holdings for?

4        A     I don't remember.

5        Q     Is the deposit from Big Media Holdings

6    related to the license agreement that Hoplite

7    provided to Bay Point in connection with entering

8    the loan?

9        A     I honestly don't remember.

10       Q     How many agreements does -- license

11   agreements does Hoplite have with Big Media

12   Holdings?

13       A     Currently a few.  I don't remember the

14   exact amount, but there are a few across different

15   shows and different territories.

16       Q     And do you know what --

17       A     I apologize.  I've got a frog in my

18   throat.

19       Q     That's okay.

20             Do you know which show this relates to or

21   territory?

22       A     I do not.

23       Q     The next entry on 9/30 is for

24   $1,951,416.80.  Do you see that?

25       A     Yes.

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 233

1       Q    From a SunTrust Bank account.  Do you see
2    that?
3       A    Yes.
4       Q    Do you understand that to be the proceeds
5    from the Bay Point loan?
6       A    Yes.
7       Q    And I'd like to go down a few transactions
8    after the Bay Point loan proceeds.  On the same
9    day, 9/30, there's an online transfer to Hoplite,
10   Inc., for $1,500.  Do you see that?
11            MR. COHAN:  Fifth Amendment.  Don't
12   answer.
13   BY MS. PEURACH:
14       Q    Are you following your counsel's
15   instruction?
16       A    Yes.
17       Q    Do you know why $1,500 was transferred
18   from Hoplite Entertainment to Hoplite, Inc., on
19   September 30th?
20            MR. COHAN:  I think you misspoke, but just
21   don't answer.  Fifth Amendment.
22   BY MS. PEURACH:
23       Q    Are you following your counsel's
24   instruction?
25       A    Yes.

EXHIBIT L
PAGE 701

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 234

1       Q     The next entry is a payment to a Malia

2    Abrego, which I think is a name you testified to

3    earlier.  Who is Malia Abrego?

4             MR. COHAN:  Fifth Amendment.  Don't

5    answer.

6    BY MS. PEURACH:

7       Q     Are you following your counsel's

8    instruction?

9       A     Yes.

10      Q     Okay.  The next entry on D196 on

11   September 30th is an online transfer to Hoplite,

12   Inc., business checking ending ███ in the amount

13   of $400,000.  Do you see that?

14      A     Yes.

15      Q     What was that for?

16            MR. COHAN:  Fifth Amendment.  Don't

17   answer.

18   BY MS. PEURACH:

19      Q     Are you following your counsel's

20   instruction?

21      A     Yes.

22      Q     The next entry on September 30th is a

23   1 million withdrawal in a branch/store.  Do you see

24   that entry?

25      A     Yes.

EXHIBIT L
PAGE 702

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 235

1      Q      Who made that withdrawal?

2             MR. COHAN:   Fifth Amendment.   Don't

3      answer.

4      BY MS. PEURACH:

5      Q      Are you going to follow your counsel's

6      instruction?

7      A      Yeah.

8      Q      There's an entry on the same day,

9      September 30th, for a transfer to HLE-SPV, LLC, for

10     $150,000.   Do you see that?

11     A      Yes.

12     Q      What was that for?

13            MR. COHAN:   Fifth Amendment.   Don't

14     answer.

15     BY MS. PEURACH:

16     Q      Are you going to follow your counsel's

17     instruction?

18     A      Yes.

19     Q      There's a September 30th transfer to

20     Hoplite LBE in the amount of $30,000 to checking

21     ████.  Do you see that?

22     A      Yes.

23     Q      What was that transfer for?

24            MR. COHAN:   Fifth Amendment.   Don't

25     answer.

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 236

1    BY MS. PEURACH:

2         Q    Are you going to follow your counsel's

3    instruction?

4         A    Yes.

5         Q    On September 30th, there's an online

6    transfer to Smith J., everyday checking, in the

7    amount of $50,000.  Do you see that entry?

8         A    Yes.

9         Q    What was that transfer for?

10             MR. COHAN:  Fifth Amendment.  Don't

11   answer.

12   BY MS. PEURACH:

13        Q    Are you going to follow your counsel's

14   instruction?

15        A    Yes.

16        Q    And then on the same day, September 30th,

17   there's a withdrawal in a branch/store of $39,000.

18   Do you see that?

19        A    Yes.

20        Q    Who made that withdrawal?

21             MR. COHAN:  Fifth Amendment.  Don't

22   answer.

23   BY MS. PEURACH:

24        Q    Are you going to follow your counsel's

25   instruction?

EXHIBIT L
PAGE 704

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 237

1       A    Yes.

2       Q    Mr. Smith, this bank account of Hoplite

3    Entertainment's ending in ██, are you the only

4    individual with access to this account?

5            MR. COHAN:  Fifth Amendment.  Don't

6    answer.

7    BY MS. PEURACH:

8       Q    Are you going to follow your counsel's

9    instruction?

10      A    Yes.

11           (Exhibit 19 marked.)

12   BY MS. PEURACH:

13      Q    Okay.  Mr. Smith, I'm showing you what

14   we'll label as Exhibit 19 to your deposition.  It

15   is a document Bates labeled D218 to D225.  It

16   appears to be a printout of account checking

17   activity.  And I'll direct you to a few places on

18   the document to help orient you because the format

19   is a little funny given the printout.

20           Do you see there, it says, "Account

21   detail, Hoplite checking account, ██," do you see

22   that?

23      A    I don't see it on this screen unless I'm

24   missing something.

25      Q    We'll put the mouse towards it so you can

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 238

1    see it.

2         A    Oh, okay, that, yes.  Sorry.

3         Q    And it has a Bates label on the bottom

4    right which indicates this was a document that was

5    provided from Hoplite to Bay Point in connection

6    with the litigation.

7              It goes down to -- and there's a heading

8    activity summary, and then there's some description

9    of the summary of the account activity, it looks

10   like, as of 2/12/21.  Do you see that?

11        A    Yes.

12        Q    Okay.  So this is -- the cover page is

13   labeled D218.  And I'm going to direct your

14   attention down to D223.  And if you look at the

15   second entry, it says, "Expand 2/1/21."  Under

16   description sort in ascending order is an entry

17   with the word Big Media Holdings, LLC.  And next to

18   it, it says, deposits $2,000.  Do you see that?

19        A    Yes.

20        Q    What was the $2,000 deposit from Big Media

21   Holdings, LLC, on February 1st, 2021, for?

22        A    I honestly don't know.  And to be

23   completely honest, I didn't even see that that had

24   happened.

25        Q    Okay.  And it appears to be in the Hoplite

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 239

1    account ending ████.  Do you know what agreement or

2    show that deposit is for?

3        A    No.

4        Q    Do you know whether that deposit from Big

5    Media Holdings is pursuant to the license agreement

6    between Hoplite and Big Media that serves as

7    collateral to the Bay Point loan?

8            MR. COHAN:  Fifth Amendment.  Don't

9    answer.

10   BY MS. PEURACH:

11       Q    Are you following your counsel's

12   instruction?

13       A    Yes.

14       Q    Okay.  You can put that down.

15           Let's go back to Exhibit 13.  So we had

16   just been looking at the statement ending

17   September 30th.  I'm now going to scroll down to

18   the October 31st, 2020, statement which is D201.

19   And I'll orient you here.

20           So the Bates label on this portion of

21   Exhibit 13 begins on D201.  You can see it's for

22   the account number ending in ████ for Hoplite

23   Entertainment, LLC.  And if we go up to the top of

24   D201, it says October 31, 2020, page 1 of 5.  Do

25   you see that?

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 240

1        A     Yes.

2        Q     Okay.  If you go to page D202, so the

3    second page, there's an entry on 10/1, a withdrawal

4    in the amount of $25,000 to the Turpera Group.  Do

5    you see that?

6        A     Yes.

7        Q     What was that for?

8              MR. COHAN:  Don't answer.  Fifth

9    Amendment.

10   BY MS. PEURACH:

11       Q     Are you following your counsel's

12   instruction?

13       A     Yes.

14       Q     Okay.  If you go further down on this page

15   D202, there's a 10/1 entry that says, "Chase credit

16   card e-pay Jonathan L. Smith."

17             Do you know what that's for?

18             MR. COHAN:  Fifth Amendment.  Don't

19   answer.

20   BY MS. PEURACH:

21       Q     Are you following your counsel's

22   instruction?

23       A     Yes.

24       Q     And the next entry, 10/2, on D202, it

25   says, "FBT Mercury card payment, Jonathan L.

Jonathan Lee Smith                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 241

1    Smith."  Do you know what that payment was for?

2            MR. COHAN:  Fifth Amendment.  Don't

3    answer.

4    BY MS. PEURACH:

5        Q    Are you following your counsel's

6    instructions?

7        A    Yes.

8        Q    Okay.  One more on this exhibit.  If we

9    could go to the Bates labeled D210, which is the

10   first page of the December 31st, 2020, bank

11   statement in Exhibit 13.  Here we go.  Okay.

12           So there's the Bates label D210.  It's for

13   Hoplite Entertainment, LLC, account ending ███,

14   Wells Fargo Business Choice Checking,

15   December 31st, 2020, page 1 of 4.  Do you see that?

16       A    Yes.

17       Q    Okay.  Then let's go to page 2 of 4,

18   second page, D211.  So just bear with me one

19   second.  Okay.  Let's go towards the bottom of

20   D211.  There's a 12/21 entry, $35 insufficient fund

21   return.  And it says, "NSF return item fee for a

22   transaction received on 12/18, $46,350, AmEx CCD

23   payment, Gary Danklefsen."

24           What was that for?

25           MR. COHAN:  Fifth Amendment.  Don't

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                              Page 242

1    answer.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's advice?

4        A    Yes.

5        Q    Okay.  On 12/28, there is a reference on

6    page D211 to an NSF return item fee for a

7    transaction received on 12/24, 46,350, AmEx CCD

8    payment, and that has a reference to Gary

9    Danklefsen.  Do you see that?

10       A    Yes.

11       Q    What was that for?

12           MR. COHAN:  Fifth Amendment.  Don't

13   answer.

14   BY MS. PEURACH:

15       Q    Are you following your counsel's

16   instruction?

17       A    Yes.

18       Q    Okay.  We can put this document to the

19   side.

20           Okay.  So we're looking at Exhibit 12,

21   which is which Bates labeled D226 through D309.

22   We'll direct you to the September 30, 2020, account

23   statement for Hoplite, Inc., which is on the Bates

24   labeled D285.

25           Okay.  So there is D285.  Can you see it?

EXHIBIT L
PAGE 710

Jonathan Lee Smith                         March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 243

1   Do you need us to make this bigger?

2        A    Yes, I can see it.

3        Q    Okay.  And then do you see on the -- right

4   there -- let's stay down for a second -- it says

5   account number ending ███, Hoplite, Inc.  Do you

6   see that?

7        A    Yeah.

8        Q    And then if we go up, on the same page,

9   D285, it says September 30, 2020, page 1 of 6,

10  Hoplite, Inc.  Do you see that?

11       A    Yes.

12       Q    Okay.  I'm going to take you to page 3 of

13  6, which is labeled D287, and direct your attention

14  to September 30th entries, which is the date of the

15  Bay Point loan.

16            There's a September 30th entry that shows

17  an online transfer from Hoplite Entertainment

18  business checking ███ for $1,500.  Do you see

19  that?

20       A    Yes.

21       Q    And then that same day, there's another

22  online transfer from Hoplite Entertainment, LLC,

23  business checking ███, for $400,000.  Do you see

24  that?

25       A    Yes.

Jonathan Lee Smith                                            March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                                    Page 244

1        Q    And is it standard practice for you to

2    transfer funds among and between Hoplite bank

3    accounts?

4             MR. COHAN:  Fifth Amendment.  Don't

5    answer.

6    BY MS. PEURACH:

7        Q    Are you following your counsel's advice?

8        A    Yes.

9        Q    All right.  I'd like to look at the

10   October 31st Hoplite account statement, which is on

11   D291 of Exhibit 12.  And again, I'll orient you,

12   there's D291.  The account number says it ends in

13   ████, Hoplite, Inc.  And then if we go up to the

14   top of D291, it says October 31st, 2020, page 1 of

15   7, Hoplite Inc.  Do you see that?

16       A    Yes.

17       Q    Okay.  I'd like to take you to page 2 of

18   7, which is on the page marked D292, and an entry

19   on October 1st, which is a withdrawal of $100,000

20   which appears to go to Gary Danklefsen.  Do you see

21   that?

22       A    Yes.

23       Q    What was that for?

24             MR. COHAN:  Fifth Amendment.  Don't

25   answer.

EXHIBIT L
PAGE 712

Jonathan Lee Smith                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 245

1    BY MS. PEURACH:

2        Q    Are you following your counsel's advice?

3        A    Yes.

4        Q    The next entry on the page marked D292

5    appears to be a withdrawal to a Keybank National

6    with a reference to Porta Pellex, LLC.  Do you see

7    that?

8        A    I do.

9        Q    What was that for?

10           MR. COHAN:  Fifth Amendment.  Don't

11   answer.

12   BY MS. PEURACH:

13       Q    Are you following your counsel's advice?

14       A    Yes.

15       Q    And then if we go to the next page marked

16   D293, there's an entry about halfway down that says

17   WF return wires IN proc/org in the amount of

18   $94,960.11, and it's a deposit.  Do you see that?

19       A    I do.

20       Q    Do you know what that is?

21           MR. COHAN:  Fifth Amendment.  Don't

22   answer.

23   BY MS. PEURACH:

24       Q    Are you following your counsel's advice?

25       A    Yes.

EXHIBIT L
PAGE 713

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 246

1        Q     Okay.  On that same day, October 13,

2    there's an online transfer to Smith J. everyday

3    checking card paydown in the amount of $10,000.  Do

4    you see that?

5        A     Yes.

6        Q     What was that for?

7              MR. COHAN:  Fifth Amendment.  Don't

8    answer.

9    BY MS. PEURACH:

10       Q     Are you going to follow your counsel's

11   advice?

12       A     Yes.

13       Q     The next payment is a withdrawal of

14   $25,000 to Turpera Group.  Do you see that one?

15       A     I do.

16       Q     What was that one for?

17             MR. COHAN:  Fifth Amendment.  Don't

18   answer.

19   BY MS. PEURACH:

20       Q     Are you going to follow your counsel's

21   advice?

22       A     Yes.

23       Q     Okay.  Mr. Smith, I'm going to direct your

24   attention back to Exhibit 11.  Exhibit 11 is Bates

25   stamped D487 to D529.  It is, as you can see, an

EXHIBIT L
PAGE 714

Jonathan Lee Smith                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 247

1      account number reference of ending in ████ for

2      Hoplite LBE, Inc.  Do you see that?

3          A    I do.

4          Q    Okay.  I'd like to take you to the

5      September 30, 2020, statement for the Hoplite LBE

6      and the account which is -- begins on D509 of

7      Exhibit 11.  So there's the Bates labeled D509, the

8      account number ████, Hoplite LBE, Inc.  Do you see

9      that?

10         A    I do.

11         Q    And on the top of this page D509, we'll

12     see it says, "Wells Fargo Simple Business Checking,

13     September 30, 2020, page 1 of 5, Hoplite LBE, Inc."

14     Do you see that?

15         A    Yes.

16         Q    Okay.  I'd like to take you to page 2 of

17     5, which is on the page marked D510, to two

18     transactions on September 30th, the date the Bay

19     Point loan closed.  The first is an online transfer

20     from Hoplite Entertainment, LLC, business checking

21     ████, in the amount of $30,000.  Do you see that?

22         A    I do.

23         Q    And why did Hoplite Entertainment transfer

24     $30,000 to Hoplite LBE on September 30th?

25              MR. COHAN:  Fifth Amendment.  Don't

Jonathan Lee Smith                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 248

1    answer.

2    BY MS. PEURACH:

3        Q    Are you following your counsel's advice?

4        A    Yes.

5        Q    And the next transaction on September 30th

6    says, American Express, ACH payment, Gregory

7    Senner.  And it's a payment in the amount of

8    $27,568.14.  Do you see that?

9        A    I do.

10       Q    What was that for?

11            MR. COHAN:  Fifth Amendment.  Don't

12   answer.

13   BY MS. PEURACH:

14       Q    And are you going to follow your counsel's

15   advice?

16       A    Yes.

17       Q    Okay.  The last statement I'd like to look

18   at for Hoplite LBE is the December 31st, 2020,

19   statement, which begins on D523 of Exhibit 11.  See

20   the Bates label D523 on the bottom, the account

21   number 2949, Hoplite LBE, Inc.  Do you see that?

22       A    I do.

23       Q    Fine.  Then if you go to the top of D253

24   [sic], it states December 31st, 2020, page 1 of 4,

25   for Hoplite LBE, Inc.  Do you see that?

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 249

1      A    Yes.

2      Q    I'd like to turn your attention to the

3    second page of this December 31st, 2020, statement

4    on D254.  You'll see on December 10th, there's a

5    deposit in a branch/store, $50,000.  Do you see

6    that?

7      A    I do.

8      Q    Who made that deposit?

9           MR. COHAN:  Fifth Amendment.  Don't

10   answer.

11   BY MS. PEURACH:

12     Q    Are you following your counsel's advice?

13     A    Yes.

14     Q    That same day, on December 10th, there's a

15   $50,000 payment to NXLVE Agency, Inc.  Do you know

16   what that was for?

17          MR. COHAN:  Fifth Amendment.  Don't

18   answer.

19   BY MS. PEURACH:

20     Q    Are you going to follow your counsel's

21   advice?

22     A    Yes.

23     Q    Mr. Smith, does your accountant, your

24   outside accountant, I think it's Rusan, is that his

25   name?

EXHIBIT L
PAGE 717

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 250

 1        A     Ruslan.

 2        Q     Ruslan.  Does Ruslan have access to any of

 3   Hoplite's bank accounts?

 4        A     He has access to I believe all of them.

 5        Q     Does he have access to your personal bank

 6   account?

 7        A     He does.

 8        Q     Okay.  Does Mr. Pacitti have access to

 9   Hoplite's bank accounts?

10        A     No.

11        Q     Does he have access to your bank account,

12   your personal account?

13        A     No.

14        Q     Do any members of Hoplite's board of

15   directors have access to Hoplite's bank accounts?

16        A     Greg has access to the LBE account.

17        Q     Is that Mr. Senner?

18        A     Mr. Senner, yes.

19              Rob Lee has access to the HLE account.

20        Q     Do any of the members --

21        A     And that's --

22        Q     Yeah.  Do any of the members of Hoplite's

23   boards of directors have access to any other

24   Hoplite accounts?

25        A     Not that I'm aware of.

EXHIBIT L
PAGE 718

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 251

1        Q    Do any of the members of Hoplite's boards

2    of directors have access to your personal account?

3        A    No.

4        Q    Other than the Hoplite board of directors,

5    are there any other individuals who have access to

6    Hoplite's business accounts other than the board,

7    yourself and Ruslan?

8        A    Other than the names I've mentioned, no.

9             MS. PEURACH:  Okay.  Mr. Smith, that's all

10   I have for today.  I'd like to, for the record,

11   leave the deposition open because it's our

12   understanding of the Court's order that we were

13   supposed to receive additional documents, updated

14   documents, yesterday, March 15th, that we have not

15   yet received.

16            But despite, and putting that issue

17   between myself and your counsel to the side, we can

18   be done for today, and I thank you for your time.

19            MR. COHAN:  Just to be clear for the

20   record, it is going to be our position that -- that

21   this deposition is concluded and that you've had

22   your full and fair opportunity to examine

23   Mr. Smith.

24

25

EXHIBIT L
PAGE 719

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

                                              Page 252

1            THE VIDEOGRAPHER:  If nothing further,

2    then we are off the record at 5:09.

3            (Deposition adjourned at 5:09 p.m.)

4            (Signature not requested.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jonathan Lee Smith                               March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 253

 1        The following reporter and firm
 2   disclosures were presented by me at this proceeding
 3   for review by counsel:
 4
              REPORTER DISCLOSURES
 5
 6        The following representations and
     disclosures are made in compliance with Georgia
     Law, more specifically:
 7             Article 10 (B) of the Rules and
     Regulations of the Board of Court Reporting
 8   (disclosure forms)
               OCGA Section 9-11-28 (c) (disqualification
 9   of reporter for financial interest)
               OCGA Sections 15-14-37 (a) and (b)
10   (prohibitions against contracts except on a
     case-by-case basis).
11
     - I am a certified court reporter in the State of
12   Georgia.
     - I am a subcontractor for Veritext.
13   - I have been assigned to make a complete and
     accurate record of these proceedings.
14   - I have no relationship of interest in the matter
     on which I am about to report which would
15   disqualify me from making a verbatim record or
     maintaining my obligation of impartiality in
16   compliance with the Code of Professional Ethics.
     - I have no direct contract with any party in this
17   action, and my compensation is determined solely by
     the terms of my subcontractor agreement.
18
19
20             FIRM DISCLOSURES
21   - Veritext was contacted to provide reporting
     services by the noticing or taking attorney in this
22   matter.
     - There is no agreement in place that is prohibited
23   by OCGA 15-14-37 (a) and (b).  Any case-specific
     discounts are automatically applied to all parties,
24   at such time as any party receives a discount.
     - Transcripts:  The transcript of this proceeding
25   as produced will be a true, correct, and complete
     record of the colloquies, questions, and answers as

Veritext Legal Solutions

EXHIBIT L
PAGE 721

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 254

1   submitted by the certified court reporter.

    - Exhibits:  No changes will be made to the
2   exhibits as submitted by the reporter, attorneys,

    or witnesses.
3   - Password-Protected Access:  Transcripts and

    exhibits relating to this proceeding will be
4   uploaded to a password-protected repository, to

    which all ordering parties will have access.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT L
PAGE 722

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

Page 255

1                        CERTIFICATE
2    STATE OF GEORGIA:
     COUNTY OF FULTON:
3
4         I hereby certify that the foregoing
     transcript was taken down, as stated in the
5    caption, and the colloquies, questions and answers
     were reduced to typewriting under my direction;
6    that the transcript is a true and correct record of
     the evidence given upon said proceeding.
7         I further certify that I am not a relative
     or employee or attorney of any party, nor am I
8    financially interested in the outcome of this
     action.
9         I have no relationship of interest in this
     matter which would disqualify me from maintaining
10   my obligation of impartiality in compliance with
     the Code of Professional Ethics.
11        I have no direct contract with any party
     in this action and my compensation is based solely
12   on the terms of my subcontractor agreement.
          Nothing in the arrangements made for this
13   proceeding impacts my absolute commitment to serve
     all parties as an impartial officer of the court.
14
15                                    )21.
16
17
18   _____
19   CAROLYN M. CARBONI, RPR, RMR, CCR-B-878
20
21
22
23
24
25

EXHIBIT L
PAGE 723

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[00375 - 2020]                                                    Page 1

**0**

**00375**  1:6

**1**

**1**  2:4 11:8,10
169:9 197:4
200:11,18 201:10
206:23 207:8
219:20 231:3
234:23 239:24
241:15 243:9
244:14 247:13
248:24
**1,500**  233:10,17
243:18
**1,951,416.80.**
232:24
**10**  2:23 4:21 173:1
173:6,11 187:4
201:10,11 202:23
253:7
**10,000**  42:25
131:23 246:3
**10/1**  240:3,15
**10/2**  240:24
**100**  14:20 29:19
69:14 79:24
127:12
**100,000**  43:2 47:2
47:3 53:7 57:13
59:9 63:17 66:5
68:5 71:18 72:19
74:20 78:22 83:1
83:7 84:22 87:2
119:24 123:15
126:17 128:21
132:4 134:9
136:19 244:19
**104**  2:10
**10th**  185:14
186:18 187:6,18

188:6 249:4,14
**11**  2:4,24 5:3
176:1,10 178:4
179:5 246:24,24
247:7 248:19
**11/30/20**  2:5,11
**112**  2:13
**11:00**  1:16
**11:02**  7:3
**11:04**  7:6
**11th**  173:3
**12**  3:3 69:10 72:18
74:21 86:17
125:20,22 126:13
143:15 180:16,23
196:1 199:17
242:20 244:11
**12/18**  241:22
**12/21**  241:20
**12/24**  242:7
**12/28**  242:5
**12:45**  87:21,22
**13**  3:5 181:24
182:2 183:6,8
230:20 231:1
239:15,21 241:11
246:1
**1308**  37:6
**13614**  255:17
**139**  2:16
**14**  3:7 173:4
188:19,22 189:1
**1447**  216:5
**15**  3:9 104:14
196:22,23 198:6
198:15
**15-14-37**  253:9,23
**150,000**  43:4
235:10
**1516**  215:14 216:7

**1517**  216:20
**153**  2:17
**159**  2:19
**15th**  174:20
251:14
**16**  1:15 3:11
167:11 168:16,24
206:11,16
**160,000**  144:18
149:18
**163**  2:21 163:2
**1663**  220:15
**1664**  220:15 221:9
**1665**  220:15
**1666**  220:15
**167**  2:22
**16th**  5:3
**17**  3:13 214:24,25
215:9,13 216:4,18
**173**  2:23
**176**  2:25
**1770302949**
178:10 180:7
**18**  3:15 219:19
220:4,7,17 221:1,9
221:18
**180**  3:4
**182**  3:6
**188**  3:8
**18th**  154:22
255:15
**19**  3:16 237:11,14
**1930s**  64:12
**196**  3:10
**1:00**  87:22,24
**1:21**  1:6
**1:30**  115:16,18
**1:31**  115:18,24
**1st**  142:16,23
143:7 144:4,16
149:18,23 238:21

244:19

**2**

**2**  2:5 36:7,10,18
38:22 40:3 46:3
48:1,5 49:17 51:6
53:12 54:13 56:2
57:18 59:23 64:5
66:12 68:14 69:17
70:24 71:24 73:1
75:8 76:24 77:4
79:17 80:23 83:14
85:9 88:2,6,9,12
95:1,10 98:3,14
101:15,24 103:1,3
104:6 106:5
117:11 129:1
169:10 185:2,6,10
185:11 231:10
241:17 244:17
247:16
**2,000**  238:18,20
**2,020,895.65.**
141:16
**2/1/21**  238:15
**2/12/21**  238:10
**20**  44:12
**20,000**  216:20
**200,000**  44:12
201:17 203:21
**2013**  18:24 19:1
**2016**  18:22 19:6
154:22
**2018**  128:9 133:24
197:21
**2019**  74:17 80:22
92:7 119:14 122:6
122:10,24 136:13
154:11
**2020**  18:7 24:18
25:2,6,23 31:13
32:25 33:17 36:12

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[2020 - 52,500]**                                                    Page 2

37:4 38:1 42:13
58:20 88:4 89:6
93:1,3 103:1,3,12
103:19 104:4,21
105:3,8,14 106:18
106:19,23 112:14
112:22 115:5
117:20,21 122:8,9
122:23,25 131:19
138:19 139:4,17
141:4,5,9,14,18,19
142:14 149:1
150:18,24 151:2
152:20 155:8
183:10 184:23
185:9 186:16,18
186:22,23 187:4
187:18 188:7
192:8 193:2,20
194:19,22 195:10
195:16 199:6
201:2 207:8 209:1
209:4 226:19
231:3 239:18,24
241:10,15 242:22
243:9 244:14
247:5,13 248:18
248:24 249:3
**2021** 1:15 5:3 14:5
16:19 30:2 59:3,5
59:7 63:4 79:8
119:20 123:8,11
134:12 136:22
142:15,16,23
143:7 144:5,16
145:12 149:18,23
173:3 238:21
255:15
**2022** 52:23,25 53:2
76:17

**204** 185:6
**206** 3:12 183:7
**214** 3:14
**217** 230:22
**220** 3:15
**22nd** 155:7
**237** 3:16
**2393** 187:8
**247** 201:8
**24th** 202:8
**25** 85:22
**25,000** 240:4
246:14
**250,000** 202:25
**257** 200:20
**2570** 4:16
**265,000** 194:18
**27** 197:20
**27,568.14.** 248:8
**2949** 235:21 247:1
247:8 248:21
**2:01** 140:18,19
**2:07** 140:19,21

**3**

**3** 2:8 48:5,6,14,21
48:25 49:3,6
104:15,16 105:12
106:5,18,22
109:10 112:1
149:13 198:13
231:17,22 243:12
**30** 88:4 141:5
152:20 231:3
242:22 243:9
247:5,13
**30,000** 203:10
235:20 247:21,24
**300,000** 192:8
193:2 210:4
**3000** 4:7

**30308** 4:8
**30326** 4:17
**30th** 37:4,25 103:1
103:3,12,19 104:4
112:22 117:20,21
138:19 139:4
141:5,8,19 150:18
150:24 183:10
184:23 185:9
201:2 207:8,15
233:19 234:11,22
235:9,19 236:5,16
239:17 243:14,16
247:18,24 248:5
**31** 239:24
**31st** 104:21 105:3
105:14 106:18
139:16 141:4,14
141:18 200:11
239:18 241:10,15
244:10,14 248:18
248:24 249:3
**3340** 4:16
**35** 241:20
**3584** 179:4
**36** 2:7
**39,000** 236:17
**3:13** 190:22,23
**3:22** 190:23,25
**3:55** 215:23
**3:57** 216:1
**3rd** 154:11

**4**

**4** 2:11 105:23
112:16,17,25
115:4 116:1,4
117:10 118:6
120:9 121:3
126:24 129:10
130:24 132:11
134:25 137:8

138:18 139:5
140:11,23 141:8
185:2,7,10,11
241:15,17 248:24
**40,000** 74:14
**400,000** 234:13
243:23
**404.885.3000** 4:9
**404.891.1770** 4:18
**423** 201:16 202:20
**424** 202:20,23
203:20 204:14
**43** 177:4,8
**46,350** 241:22
242:7
**4:02** 219:25
**4:04** 220:3
**4:20** 230:13,14
**4:36** 230:14,16
**4k** 143:18
**4th** 192:8

**5**

**5** 2:14 139:14,18
140:2,11,24
141:13 153:12,19
154:1 155:15
156:10,19 157:3
157:11,23 158:7
158:16,18 164:19
201:11 239:24
247:13,17
**5,000** 204:6,14
**50** 58:7 62:2 66:20
75:22 77:22 81:20
84:7 85:19 124:11
**50,000** 236:7 249:5
249:15
**500,000** 59:10
63:18
**52,500** 231:12

Veritext Legal Solutions

800.808.4958                                          770.343.9696

**EXHIBIT L
PAGE 725**

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[55,000 - advice]**                                                    Page 3

**55,000**  215:15
  216:8,10
**5546**  189:6,18,22
**5559**  113:11 182:7
  182:11,16 183:11
  231:5 237:3 239:1
  239:22 241:13
  243:18,23 247:21
**559**  237:21
**5731**  39:3,11
  180:20 181:2,6
  199:19 200:15
  201:4 234:12
  243:5 244:13
**5:09**  252:2,3

**6**

**6**  2:17 143:15
  153:4,5,8 158:16
  158:19 202:23
  243:9,13
**6,500**  231:24
**600**  4:7
**6257**  185:18
**6725**  31:2,12,17
  181:17

**7**

**7**  2:18 3:20 155:15
  157:11 158:22
  159:7 160:10
  161:14 162:22
  200:11,18 231:3
  231:10,18,22
  244:15,18
**7/31/20**  2:8,14
**71**  184:16
**72**  15:1,10
**75**  54:25 56:13
  58:7,8 62:2,3
  64:21 118:24

**750,000**  155:24
**752**  139:21
**761**  104:23
**765**  158:25
**790,908.82.**  141:11

**8**

**8**  2:20 153:8,12
  154:1 156:10,18
  157:3 163:5,20
  164:3,20
**800,000**  209:22
**850,000**  202:10
**8546**  201:17
**878**  1:19 255:19

**9**

**9**  2:22 167:7,12
  168:17,25 169:8
  169:25 170:9,18
  171:24 172:7
**9-11-28**  253:8
**9/17**  231:11
**9/30**  231:23
  232:23 233:9
**9/30/20**  215:14
  216:8,19
**90**  128:15
**94**  113:1
**94,960.11**  245:18

**a**

**a.m.**  1:16 5:3
**able**  5:25
**abrego**  234:2,3
**abroad**  33:19
**absolute**  255:13
**access**  113:25
  114:2 186:6
  187:25 199:8
  237:4 250:2,4,5,8
  250:11,15,16,19
  250:23 251:2,5

254:3,4
**accessed**  186:14
  186:21 188:3
**account**  3:16
  38:22 39:3,4,5,9
  39:12 113:11,13
  113:15,16,17,20
  113:25 114:3
  176:21 178:9,10
  178:12 180:1,6,7,8
  180:11,20 181:2,3
  181:6,8,12 182:6
  182:11,12,15,18
  182:24 183:1,11
  185:22 186:1,7,9
  186:15,22 187:11
  187:13,17,21,23
  187:23 188:1,10
  188:11 189:6,9,10
  189:18,19,21,25
  190:13,15,17
  194:16 199:18,18
  200:15 201:3
  231:5 233:1 237:2
  237:4,16,20,21
  238:9 239:1,22
  241:13 242:22
  243:5 244:10,12
  247:1,6,8 248:20
  250:6,11,12,16,19
  251:2
**accountant**  38:6
  116:9,14 117:14
  120:18 138:22
  139:7 142:6
  249:23,24
**accounting**  132:18
**accounts**  38:18,23
  113:10 157:15
  190:3,8,12 199:9
  244:3 250:3,9,15

**250**:24 251:6
**accumulated**  40:6
**accurate**  8:13
  37:24 105:12
  253:13
**ach**  248:6
**acquisition**  2:22
  167:9 170:8
  196:14
**acting**  16:20
**action**  1:6 253:17
  255:8,11
**active**  21:3,9 22:2
  22:15 23:11,13,15
  23:25 24:4,6
  113:20
**activity**  237:17
  238:8,9
**actual**  35:13
**addition**  104:24
**additional**  119:16
  122:15 123:4
  128:12 132:1
  134:3 136:16,23
  149:25 150:9
  251:13
**address**  176:18
  178:18,18,19,20
  178:22 179:1,5,8,9
  179:17,18,24
  181:16,17 189:11
  189:12,12,14
**addressed**  146:9
**adjourned**  252:3
**advance**  184:8
**advertising**  145:5
**advice**  242:3 244:7
  245:2,13,24
  246:11,21 248:3
  248:15 249:12,21

EXHIBIT L
PAGE 726

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[adviser - answer]**                                                    Page 4

| | | | |
|---|---|---|---|
| **adviser**  19:21 | **agreements**  22:25 | 139:8 140:5 | 236:10,21 237:5 |
| **advises**  19:21 | 100:13 112:4 | 141:23 142:6 | 239:8 240:9,18 |
| **affiliated**  19:23 | 148:5,11,13 149:5 | 154:3,14,25 | 241:2,25 242:12 |
| 20:13 | 149:8,14 153:14 | 155:10 156:5,21 | 244:4,24 245:10 |
| **affiliates**  161:12 | 153:18 156:15 | 157:5,25 158:9 | 245:21 246:7,17 |
| 165:24 170:25 | 157:2,17,21 158:6 | 159:12,20 160:4 | 247:25 248:11 |
| **agency**  227:16 | 161:13 165:25 | 160:15,23 161:7 | 249:9,17 |
| 230:3 249:15 | 171:1 194:4 | 161:16,24 162:7 | **american**  48:18,21 |
| **agent**  198:14 | 213:22 214:6 | 162:15 163:14,22 | 64:8 146:9 248:6 |
| 225:2,3,14 229:8 | 232:10,11 | 164:5,14 165:1,10 | **amex**  241:22 |
| **agents**  225:12 | **aired**  196:2 | 165:19 166:2,10 | 242:7 |
| **ago**  18:5 26:2 | **al**  173:3 | 166:18 167:1,18 | **amount**  40:2 |
| 147:7 152:2 | **alex**  5:8 7:10 | 168:1,11,19 169:2 | 42:16,22 50:11 |
| **agreement**  2:17,18 | **alexandra**  4:4 | 169:19 170:2,11 | 53:8 57:11 59:6 |
| 2:20,22 89:25 | **alexandra.peurach** | 170:20 171:3,11 | 63:15 66:3 69:22 |
| 90:3,6 91:1 93:11 | 4:10 | 171:18 172:1,9,20 | 70:9,16 74:12 |
| 94:10,15 97:2,11 | **allows**  145:1 | 173:12,16,25 | 82:25 89:2 91:25 |
| 97:19 100:23 | **alpine**  107:6,14,23 | 176:23 188:14 | 92:2 109:23 |
| 108:16,25 111:7 | 108:7,17,17 109:1 | 192:1,9,19 193:3 | 119:21 123:1,13 |
| 111:16 134:16 | 208:12,17,25 | 193:12,23 194:5 | 126:15 131:23 |
| 144:22 145:9,12 | 209:3,14,14,18,23 | 194:23 197:25 | 144:15 149:21 |
| 146:25 147:18,23 | 210:2,5,9,23 211:6 | 198:7,17,23 | 203:9 204:6 |
| 147:24 148:16 | **amazon**  52:5 | 199:10 201:20 | 209:18,21,24 |
| 152:18 154:11,12 | 148:16 | 202:2,12 203:1,13 | 215:15 232:14 |
| 154:22,23 155:7,8 | **amended**  2:4 | 203:23 204:8,16 | 234:12 235:20 |
| 156:11,18,19 | **amendment**  94:5 | 205:3,12,21 206:4 | 236:7 240:4 |
| 158:16,17,23 | 94:17,20 95:15,23 | 206:25 207:9,17 | 245:17 246:3 |
| 160:1,11,21 161:5 | 96:6,14,22 97:6,14 | 208:3 210:12,16 | 247:21 248:7 |
| 161:14 162:13 | 97:23 98:8,16,24 | 210:25 211:8,15 | **amounted**  122:17 |
| 163:6 164:11 | 99:7,15,24 100:8 | 211:22 212:9,17 | **amounts**  147:8 |
| 165:7,8,17 166:24 | 100:17 101:1,10 | 213:7,15,25 214:8 | **anderson**  65:1 |
| 167:9 168:7 | 101:19 102:4,12 | 214:17 216:11,22 | **angeles**  3:10 10:20 |
| 169:25 170:8,17 | 102:20 103:22 | 217:6,13,21 218:5 | 12:14 31:3,24 |
| 171:24 172:7 | 104:8 105:17 | 218:12,20 219:3 | 40:10 151:10 |
| 193:10,19 196:14 | 107:1,9,17 108:1 | 219:12 220:19 | 181:21 196:7,12 |
| 205:20 209:9,10 | 108:11,20 109:4 | 221:2,11,20 222:3 | 196:19 197:5,18 |
| 209:13 210:8 | 109:18 110:1,9,18 | 222:11,19 223:2 | 198:15 199:6,8 |
| 211:6 213:13 | 111:2,11,20 112:2 | 223:10,18 224:1 | 201:16 202:9,11 |
| 214:16 218:4 | 112:6 113:4 | 224:10,18 233:11 | **answer**  6:17 8:25 |
| 232:6 239:1,5 | 114:14,23 137:13 | 233:21 234:4,16 | 9:6,11,16,24 13:15 |
| 253:17,22 255:12 | 137:22 138:5,13 | 235:2,13,24 | 92:6,6 94:4,21 |

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[answer - attached]                                                    Page 5

95:14,22 96:5,13
96:21 97:5,13,22
98:7,15,23 99:6,14
99:23 100:7,16,25
101:9,18 102:3,11
102:19 103:21
104:7 105:16
106:25 107:8,16
107:25 108:10,19
109:3,17,25 110:8
110:17 111:1,10
111:19 113:3
114:13,22 116:16
116:18 117:13,22
120:19 137:12,21
138:4,12,23 139:8
140:4 141:22
142:5 154:2,13,24
155:9 156:4,20
157:4,24 158:8
159:11,19 160:3
160:14,22 161:6
161:15,23 162:6
162:14 163:13,21
164:4,13,25 165:9
165:18 166:1,9,17
166:25 167:17,25
168:10,18 169:1
169:18 170:1,10
170:19 171:2,10
171:17,25 172:8
172:19 173:12,15
173:25 176:12,22
177:21 183:18
188:14 192:2,10
192:20 193:4,13
193:23 194:6,24
197:13 198:1,8,16
198:24 199:11
201:19 202:1,13
203:2,14,24 204:9

204:17 205:4,13
205:22 206:5,24
207:10,18 208:4
210:11,17,24
211:9,16,23
212:10,18 213:6
213:15,24 214:8
214:17 216:12,23
217:7,14,22 218:6
218:13,21 219:4
219:13 220:18
221:3,12,21 222:4
222:12,20 223:3
223:11,19 224:2
224:11,19 233:12
233:21 234:5,17
235:3,14,25
236:11,22 237:6
239:9 240:8,19
241:3 242:1,13
244:5,25 245:11
245:22 246:8,18
248:1,12 249:10
249:18
**answered**  177:18
**answers**  9:1,3,10
150:7 253:25
255:5
**anticipate**  34:14
63:12 145:1 148:4
161:3 165:16
**anticipated**  147:9
**anticipates**  147:4
**anticipating**  45:12
147:16,23 149:12
170:16
**anybody**  11:1
81:23 84:1 135:18
**apologies**  202:18
227:14

**apologize**  106:4
208:21 232:17
**apparently**  189:13
**appear**  106:17
**appearances**  4:1
**appearing**  12:5
**appears**  117:19
177:8 194:17
206:19 216:7
237:16 238:25
244:20 245:5
**application**  3:15
219:9 220:10,25
224:9
**applied**  253:23
**appreciate**  21:2
175:13
**approximately**
93:5 195:12
**april**  201:2 202:8
**arising**  157:16
**arrangements**
255:12
**array**  50:19
**art**  21:17
**article**  4:21 253:7
**articles**  3:9 197:3
197:16
**artwork**  41:11
**ascending**  238:16
**aside**  19:2,7 25:10
26:4 149:7 182:25
**asked**  14:8 85:4
87:13
**asking**  8:25 13:20
24:6 32:21 61:1
78:3 177:11
197:11
**assert**  94:4
**asserting**  112:5

**asset**  46:3 53:10
53:12 70:24 76:25
79:17 81:13 85:8
116:4 117:19
121:3 126:25
129:11 130:23
132:11 134:24
**assets**  2:6,9,12,15
37:3 38:14,16
40:6,6,8,22 41:1
41:20,21 47:25
51:7 59:23 61:6
64:4 75:8 83:14
88:5,7 104:20
113:10 114:19
115:4,5 116:3
117:10,11 118:5
120:10 123:23
139:15
**assigned**  253:13
**associate**  5:19
10:5
**associated**  30:4
38:23 159:3
178:20
**assume**  9:17 68:7
95:6 187:2 226:6
**assumed**  150:7
**assuming**  35:7
**assumption**
150:13
**asterisk**  98:5
**atlanta**  1:2,17 4:8
4:17 7:11
**atlantic**  41:24
42:10,19 43:14
44:4 115:10 116:4
**attach**  126:8
**attached**  147:8
229:20

Jonathan Lee Smith                                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[attempt - begun]**                                                            Page 6

**attempt** 229:7

**attention** 36:15
88:15 104:14
105:22,24 106:2,7
112:13 113:9
114:10 116:3
137:7 140:1 151:8
152:14 153:8
160:9 169:8 183:5
184:19 199:21
201:12,15 220:13
238:14 243:13
246:24 249:2

**attorney** 12:3
37:11 90:4 94:11
94:15 97:3 100:14
100:23 108:18
109:1 111:8,17
116:13 117:14
168:8 172:20
173:13,15,17
174:1 188:13
193:22 210:11,15
213:7,16,25 214:9
214:18 216:12,23
253:21 255:7

**attorney's** 94:7,23
95:17,25 96:8,16
96:24 97:8,16,25
98:10,18 99:1,9,17
100:1,10,19 101:3
101:12,21 102:6
102:14,22 103:24
104:10 118:2

**attorneys** 46:6
254:2

**australia** 35:18
194:12

**autentic** 59:19

**autistic** 71:1

**automatically**
253:23

**available** 184:9

**avoid** 9:10

**aware** 5:22 8:24
27:21 28:6,7,12,15
28:16 76:20 79:12
86:11 87:9 139:3
172:15 173:22
174:18 195:18
250:25

**b**

**b** 1:19 4:21 253:7
253:9,23 255:19

**back** 7:5 15:22
24:11 44:21 45:4
45:13,16,19 87:23
88:3 98:3 105:1
115:23,23 140:20
140:25 155:15
156:10 157:10
169:7 187:19
190:24 199:16
201:7 202:18
215:25 220:2
228:3,4 230:15,18
231:21 239:15
246:24

**background** 8:18
12:10

**bad** 17:12

**balance** 36:11
37:25 39:21,24
88:4,8 102:25
104:5 105:3 106:6
106:9,12,13,14,16
106:23 112:13,22
112:25 115:6
116:2 117:20,21
120:17 141:3,5,9
141:14 181:1

182:10

**ballers** 41:24
42:10,20 43:15
44:4 115:10 116:5

**bank** 88:22,25
89:15,19,23 90:1,9
90:19,20 91:1,5,9
98:5,14,22 99:4,13
99:21 100:5,14,23
113:15 155:20
174:12 175:22
176:21 188:23
189:25 190:3,13
190:18 194:15
199:9 219:2,11
222:2,10 233:1
237:2 241:10
244:2 250:3,5,9,11
250:15

**banking** 179:23

**based** 18:12 21:11
21:12 50:23 69:9
146:11,11,13
150:5,13 178:17
180:3 181:20
191:10 226:3
255:11

**basis** 2:7,10,13,16
17:19 18:15 25:21
37:4 104:21
117:13 139:16
190:11 226:17
227:3 253:10

**basketball** 44:23
228:6

**bates** 3:16 37:5,14
104:22 113:1
139:20 158:24
159:2 176:2
180:17 183:13
188:23 189:2

199:19,22 200:1
201:1 206:12,13
215:4,6,20 216:4
219:20 220:7
231:19,20 237:15
238:3 239:20
241:9,12 242:21
242:23 246:24
247:7 248:20

**bay** 1:4 5:10 7:12
7:21 8:2 20:10
22:14,19,22 23:2
31:16 90:11,18
91:2,6,10 93:22
94:2 95:5 97:12
100:6 103:2,20
108:6 110:25
138:19 150:16,18
150:23 151:2,8,17
151:19 152:11,14
152:19 153:21,23
156:19 157:1
158:5 159:18
163:7 167:23
173:2 192:18
193:10 205:10,19
207:16 208:2
213:1,5,14,23
214:15 216:9,19
218:3 232:7 233:5
233:8 238:5 239:7
243:15 247:18

**bear** 112:14
241:18

**beginning** 5:4 14:4
52:25 89:6 105:7
144:9

**begins** 239:21
247:6 248:19

**begun** 69:5

Veritext Legal Solutions

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[behalf - carolyn]**                                                    Page 7

| | | | |
|---|---|---|---|
| **behalf** 4:2,11 7:11 159:10 197:23 219:9 220:25 | **binding** 8:9 | **bought** 34:7 83:14 83:19,21 84:4,8,16 85:2 87:14 | 231:2 234:12 241:14 243:18,23 247:12,20 251:6 |

**behalf** 4:2,11 7:11
  159:10 197:23
  219:9 220:25
**believe** 23:12
  29:11 38:2 39:2
  39:16 43:3 52:1,5
  54:4 56:13 61:7
  66:20,21 69:15
  70:6 71:6 75:22
  76:2 77:22 81:20
  85:20 86:2 89:11
  89:16,20 90:5
  91:22 118:24
  124:11 128:9
  131:18 133:20,24
  136:13 144:8,18
  145:19 150:20
  151:25 169:14
  178:14 180:25
  182:10 187:5
  196:1 224:24
  227:20 228:6
  229:23 250:4
**bell** 20:11 45:24
**belong** 40:12,15
  40:17 230:5
**benefit** 154:10
**benefits** 8:22
**best** 44:18 228:25
  230:22
**better** 38:13 185:5
**beyond** 47:4
**big** 2:20 163:6
  164:11,23 165:6
  165:16,25 166:8
  166:16,23 214:6
  231:23 232:2,5,11
  238:17,20 239:4,6
**bigger** 153:10
  243:1

**binding** 8:9
**birth** 64:12
**bit** 8:18 12:10
  21:18 28:8 41:22
  150:16 157:10
  167:10 181:21
  185:5 189:6 200:6
  200:14 231:5,21
**bleak** 149:1
**bo** 20:9 21:3 43:7
  43:10,11,13,18
  66:23 73:15 91:16
  124:11,13 185:17
  186:2,10,15,22
  188:10 190:7
**board** 13:14,18,24
  14:8 15:22 24:12
  24:14,19,22 25:1,5
  25:9,10,23 26:5,14
  26:14,21 27:18
  109:12 114:7
  126:8 179:14
  250:14 251:4,6
  253:7
**boards** 250:23
  251:1
**bondit** 95:11,13,20
  96:3,12,20 97:3,12
  97:20 101:7,8
  217:4,5,12,20
  218:4,11,19
**books** 38:9
**borrower** 3:15
  155:25 220:10
**borrowers** 154:1
**bottom** 11:22 37:5
  37:10,11,13
  183:20,22,23
  184:2 200:2
  231:19 238:3
  241:19 248:20

**bought** 34:7 83:14
  83:19,21 84:4,8,16
  85:2 87:14
**boulevard** 31:2
  32:18 41:7 181:17
**branch** 234:23
  236:17 249:5
**brazil** 35:18 53:21
  143:19
**breach** 162:4
  166:15 171:23
**break** 9:20,23
  87:18 88:1 115:14
  117:2,4 140:15
  190:20 216:3
**briefly** 115:7
  163:9
**bringing** 152:13
**broker** 151:9
**brunch** 54:14,16
  54:17,19,24 55:1,8
  55:11,13,19,25
**bryan** 1:20
**budget** 76:12,16
  79:3 86:22,25
  87:3
**business** 2:24 3:3
  3:5 24:7 31:21
  152:10 176:7
  178:11,19,20,22
  179:1,4,7,8 180:8
  180:19 181:3,10
  182:5 183:9
  184:22 185:18,21
  185:25 186:10,12
  187:8,10,13,17
  188:1,6,10,11
  189:14,22 190:4
  191:12,14,15
  199:5 200:10
  201:2,17 202:9

231:2 234:12
  241:14 243:18,23
  247:12,20 251:6
**buyers** 50:17,18
  50:19,23,25

**c**

**c** 5:1 253:8
**calendar** 47:8
  52:21,22 63:4
  65:19 69:10 71:18
  72:18 78:21 79:5
  84:21,23 86:17
  132:4 134:7
  136:19
**california** 198:14
**call** 8:20
**called** 35:16 37:14
  118:6 217:5
  227:22
**cameras** 41:18
**camille** 229:2
**canceled** 80:8,21
**capacity** 226:9
**capital** 1:4 5:10
  7:12 91:18 92:4
  92:16,18,22,25
  93:6,11,14,22,25
  94:11,15 114:12
  137:10 154:20
  173:2 191:20
  211:21 212:16
**capitalized** 45:21
  114:20
**captan** 135:19,22
**caption** 255:5
**carboni** 1:19
  175:16 255:19
**card** 174:11
  240:16,25 246:3
**carolyn** 1:19 6:4
  255:19

**EXHIBIT L**
**PAGE 730**

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[cars - cohan]                                                      Page 8

| | | | |
|---|---|---|---|
| **cars** 57:21 | 171:1,9 172:6 | **china** 21:7 50:20 | 5:24 6:9,15,22 |
| **case** 36:12 150:12 | 187:7,14,17,25 | 73:3,9 143:18 | 10:3,7 11:15 |
| 173:3 188:12 | 188:6,11 190:8 | **chinese** 43:9 186:1 | 36:21 90:13,22 |
| 193:21 253:10,10 | 196:10,13 214:7 | **choice** 3:5 182:5 | 94:3,17,20 95:14 |
| 253:23 | **charged** 46:2,11 | 183:9 184:22 | 95:22 96:5,13,21 |
| **cases** 64:11 | 46:14,18,21,25 | 231:2 241:14 | 97:5,13,22 98:7,15 |
| **cash** 118:6 209:11 | 47:7,16,23 48:1,10 | **chris** 5:9 201:8 | 98:23 99:6,14,23 |
| **cashier's** 3:11 | 48:13,20,24 49:3,5 | **christopher** 4:5 | 100:7,16,25 101:9 |
| 206:20,21 207:7 | 49:8,12 146:10 | 204:6,7,15 | 101:18 102:3,11 |
| **categorically** 13:1 | **chart** 29:9 | **circles** 152:9 | 102:19 103:4,7,21 |
| **category** 41:20 | **chase** 240:15 | **civil** 1:6 | 104:7 105:16 |
| **ccd** 241:22 242:7 | **cheap** 146:24 | **clark** 148:19 | 106:25 107:8,16 |
| **ccr** 1:19 255:19 | **check** 3:11 206:20 | **clean** 16:10 148:1 | 107:25 108:10,19 |
| **ceasing** 181:18 | 206:21 207:7 | 230:11 | 109:3,17,25 110:8 |
| **ceo** 13:9,12 14:2 | 215:13,14 216:5,6 | **clear** 18:25 27:2 | 110:17 111:1,10 |
| 14:12 | 216:7,7,18,20,20 | 37:16 103:8 175:3 | 111:19 112:5 |
| **certain** 155:24 | 216:21 | 175:7 251:19 | 113:3 114:13,22 |
| 172:18 173:24 | **checking** 2:25 3:4 | **client** 116:9,13,14 | 115:13,19,21 |
| 175:22 | 3:6,7 38:16,17,21 | 117:14 138:22 | 116:8,12,14,17,23 |
| **certainty** 186:24 | 39:12 113:11,12 | 139:7 142:6 | 117:3,15,24 118:8 |
| **certificate** 255:1 | 113:20 176:7,18 | 172:20 173:13,15 | 125:19,23 137:12 |
| **certified** 253:11 | 178:12 180:8,19 | 173:17 174:1 | 137:21 138:4,12 |
| 254:1 | 181:3 182:5,12,15 | 188:13 193:22 | 138:21 139:6 |
| **certify** 255:4,7 | 183:9 184:23 | 210:11,15 213:7 | 140:4 141:22 |
| **cetera** 174:12,12 | 185:18,22,25 | 213:16,25 214:9 | 142:5 148:9 154:2 |
| **cfo** 28:17,22,25 | 187:8,11,13,17 | 214:18 216:12,23 | 154:13,24 155:9 |
| **chair** 26:22,24 | 188:1,6,10,11 | 227:18 | 156:4,20 157:4,24 |
| **chairs** 27:3,10,23 | 189:5,16 199:18 | **clients** 46:6 | 158:8 159:11,19 |
| **champions** 120:10 | 200:10 201:2,17 | **clip** 146:11,13 | 160:3,14,22 161:6 |
| **chance** 158:25 | 202:10 230:21 | **close** 230:12 | 161:15,23 162:6 |
| **change** 28:2,8,16 | 231:2 234:12 | **closed** 33:7 34:1 | 162:14 163:13,21 |
| 48:15,17 179:1,19 | 235:20 236:6 | 216:9,20 247:19 | 164:4,13,25 165:9 |
| 179:20 | 237:16,21 241:14 | **closer** 58:7,8 62:1 | 165:18 166:1,9,17 |
| **changed** 25:6 | 243:18,23 246:3 | 62:3 64:21 118:24 | 166:25 167:17,25 |
| 181:16 | 247:12,20 | **closing** 31:17 | 168:10,18 169:1 |
| **changes** 28:4,13 | **checkings** 38:22 | 32:17,24 33:3 | 169:18 170:1,10 |
| 254:1 | 113:10 | **code** 253:16 | 170:19 171:2,10 |
| **channel** 23:21,22 | **checks** 3:13 | 255:10 | 171:17,25 172:8 |
| 23:24 24:2,3 52:8 | **children** 71:2 | **coffee** 121:5 | 172:19 173:7,12 |
| 143:18 167:8 | **chime** 143:22 | **cohan** 4:13,14,15 | 173:16,25 174:21 |
| 168:7 170:8,17 | | 5:11,11,11,18,19 | 175:2,10,15,19 |

EXHIBIT L
PAGE 731

Jonathan Lee Smith                                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[cohan - content]                                              Page 9

| | | | |
|---|---|---|---|
| 176:8,15,22 177:3 | collateral   23:1 | 194:12 195:5 | concerns   146:21 |
| 177:8,16,22 178:5 | 89:21 90:10,21 | 197:4 225:1,18,20 | concluded   251:21 |
| 178:13 180:2,12 | 93:13,17 94:2 | 226:10,13 | concrete   45:15 |
| 181:7,13 182:17 | 96:19 99:20 100:6 | compensation | 55:7 56:24 62:16 |
| 182:22 183:2,12 | 107:22 108:8 | 253:17 255:11 | 67:6,24 125:13 |
| 183:20,21,22 | 110:14,24 157:12 | competition   77:14 | 130:14 |
| 184:5,15 185:6,11 | 157:14,19,22 | compilation | condense   219:23 |
| 188:13 192:1,9,19 | 158:7 192:25 | 230:20 | conduct   31:20 |
| 193:3,12,22 194:5 | 239:7 | complete   8:13 | 172:18 186:10 |
| 194:23 197:25 | colleague   152:5,8 | 45:6,16 47:6 | 190:4 |
| 198:7,16,23 | collect   113:22 | 56:25 65:21 67:16 | conducting   179:4 |
| 199:10 201:19 | 174:7,15 | 121:12 127:22 | 179:7 |
| 202:1,12 203:1,13 | collected   178:1 | 130:12,15 131:11 | conductor   16:24 |
| 203:23 204:8,16 | collection   113:17 | 159:1 219:9 | confirmed   22:14 |
| 205:3,12,21 206:4 | colloquies   253:25 | 220:24 253:13,25 | connection   7:20 |
| 206:24 207:9,17 | 255:5 | completed   34:11 | 12:6 26:4,13 |
| 208:3 210:11,15 | columbia   98:4,13 | 42:5,6 49:4,6 | 30:20 89:22 93:14 |
| 210:24 211:8,15 | 98:22 99:4,13,21 | 51:22,23 57:9 | 96:20 99:21 |
| 211:22 212:5,6,9 | 100:4,14,23 | 58:10 62:11 63:3 | 107:23 110:15 |
| 212:17 213:6,15 | 155:20 | 67:23 68:2 69:8 | 112:3 115:12 |
| 213:24 214:8,17 | column   112:1 | 71:9 72:8 73:23 | 116:7 167:24 |
| 215:16,20 216:11 | come   20:22 25:5 | 73:24 74:19 76:2 | 175:22 193:1 |
| 216:22 217:6,13 | 27:16 70:6 147:2 | 78:12 82:17 83:4 | 213:22 232:7 |
| 217:21 218:5,12 | 151:8 215:16 | 84:14 86:9 119:6 | 238:5 |
| 218:20 219:3,12 | comes   47:10 150:4 | 121:8 128:22 | consult   226:17 |
| 220:18 221:2,11 | comment   177:17 | 133:13 136:4 | 227:1 |
| 221:20 222:3,11 | commingled   150:5 | completely   129:16 | consultancy |
| 222:19 223:2,10 | commission   144:1 | 238:23 | 225:10,20 |
| 223:18 224:1,10 | 225:8 | completeness | consultant   225:13 |
| 224:18 233:11,20 | commitment | 167:11 | consultants   144:1 |
| 234:4,16 235:2,13 | 255:13 | completing   34:14 | 225:17 228:11 |
| 235:24 236:10,21 | committee   26:23 | completion   57:12 | consulting   21:20 |
| 237:5 239:8 240:8 | 26:25 27:4,7,10,13 | 62:17 65:24 83:11 | 225:24 226:10,13 |
| 240:18 241:2,25 | 27:17,23 28:12 | 84:20,24 | 226:18,23 227:6 |
| 242:12 244:4,24 | common   19:18 | compliance   253:6 | contacted   253:21 |
| 245:10,21 246:7 | companies   21:20 | 253:16 255:10 | contagious   146:21 |
| 246:17 247:25 | company   12:13,16 | composition   24:19 | content   21:7,15 |
| 248:11 249:9,17 | 12:19 15:20,25 | 25:6 | 22:7 28:2 30:16 |
| 251:19 | 19:17 22:5 35:12 | comprises   13:18 | 30:18,21,24 32:14 |
| cohanlawgroup.... | 35:16 40:18,21 | computer   40:7 | 32:17,24,24 33:3 |
| 4:19 | 43:9 105:15 180:4 | | 33:16,24 35:10,15 |

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[content - currently]**                                    Page 10

| | | | |
|---|---|---|---|
| 36:1,4 38:24 | 92:14 120:14 | 165:3,12,21 166:4 | **course** 29:23 |
| 142:20 145:5 | 122:18 126:14 | 166:12,20 167:3 | 74:20 122:19 |
| 146:11,13,19 | 132:21 142:24 | 167:20 168:3,13 | 123:8 |
| 148:25 149:3 | 143:3 146:22 | 168:21 169:4,21 | **court** 1:1 2:23 |
| 173:5 | 150:13 179:15 | 170:4,13,22 171:5 | 4:22,24 9:2,12 |
| **continue** 149:9 | 180:9 181:4 | 171:13,20 172:3 | 116:20 172:15 |
| **continued** 3:1 | 189:20 190:14 | 172:11,22 173:19 | 253:7,11 254:1 |
| 123:23 | 191:22 194:14 | 174:3,24 176:25 | 255:13 |
| **contract** 18:12,14 | 197:19 209:17 | 188:16 192:4,12 | **court's** 174:18 |
| 143:8,10 144:8,11 | 225:21 228:21 | 192:22 193:6,15 | 251:12 |
| 253:16 255:11 | 253:25 255:6 | 193:25 194:8 | **courtesy** 9:6 |
| **contractor** 28:19 | **correctly** 81:1 | 195:1 198:3,10,19 | **cover** 149:21 |
| 29:25 | 150:14 187:22 | 199:1,13 201:22 | 180:18 238:12 |
| **contractors** 19:14 | 210:7 | 202:4,15 203:4,16 | **covid** 29:14,16 |
| 25:19 29:13 30:4 | **correlated** 20:18 | 204:1,11,19 205:6 | 45:17 130:3,13,16 |
| 30:8 91:10,13 | **cost** 45:22 | 205:15,24 206:7 | 146:12,21 228:9 |
| 228:12,13 | **counsel** 4:1,24 5:6 | 207:2,12,20 208:6 | **cpa** 38:7,8 113:2 |
| **contracts** 148:23 | 5:13 10:20,21,24 | 210:19 211:2,11 | 140:3 226:3 |
| 150:6 174:11 | 29:6 97:20 159:4 | 211:18,25 212:12 | **create** 32:14 |
| 253:10 | 159:18 176:12 | 212:20 213:9,18 | **created** 24:9 27:17 |
| **control** 184:9 | 188:12 193:20 | 214:2,11,20 | 32:17 |
| **controls** 28:16 | 210:9 212:25 | 216:14,25 217:9 | **creating** 33:2,25 |
| **cooking** 127:1 | 251:17 253:3 | 217:16,24 218:8 | **creation** 33:11,15 |
| **coordinating** 17:1 | **counsel's** 105:19 | 218:15,23 219:6 | **credit** 174:11 |
| **copy** 3:11 32:7,11 | 107:3,11,19 108:3 | 219:15 220:21 | 240:15 |
| 37:24 105:12 | 108:13,22 109:6 | 221:5,14,23 222:6 | **creditor's** 156:18 |
| 193:18 | 109:20 110:3,11 | 222:14,22 223:5 | **creditors** 156:14 |
| **corner** 37:5,10,14 | 110:20 111:4,13 | 223:13,21 224:4 | 157:2 |
| 200:2 | 111:22 112:9 | 224:13,21 233:14 | **cross** 102:1 219:2 |
| **corporate** 19:11 | 113:6 114:16,25 | 233:23 234:7,19 | 219:10 222:1,10 |
| 29:10 32:1,4,7 | 118:11 137:15,24 | 235:5,16 236:2,13 | **culinary** 49:17,20 |
| **correct** 12:8 17:4 | 138:7,15,25 | 236:24 237:8 | 49:22,25 50:2,6,9 |
| 19:4 27:5 29:4 | 139:10 140:7 | 239:11 240:11,21 | 50:13,22 51:4 |
| 30:25 38:11 39:13 | 141:25 142:8 | 241:5 242:3,15 | 148:24 164:20 |
| 41:8 43:19 48:22 | 154:5,16 155:2,12 | 244:7 245:2,13,24 | **current** 23:7 25:9 |
| 54:12 59:16 60:13 | 156:7,23 157:7 | 246:10,20 248:3 | 38:15 39:24 88:16 |
| 61:3 66:8 67:3,21 | 158:2,11 159:14 | 248:14 249:12,20 | 92:15 96:11 |
| 67:25 68:4,10 | 159:22 160:6,17 | **county** 255:2 | 137:10 161:21 |
| 69:18 74:25 77:11 | 160:25 161:9,18 | **couple** 83:18 | 166:7 171:8 |
| 79:6 83:5,12 | 162:1,9,17 163:16 | 191:10 229:18,19 | **currently** 13:4 |
| 84:25 89:1 91:14 | 163:24 164:7,16 | | 18:10,11,18 26:8 |

Jonathan Lee Smith                                  March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[currently - deposed]**                                    Page 11

| | | | |
|---|---|---|---|
| 28:23 30:5,8,17,23 | **d201** 239:18,21,24 | **d642** 188:24 | **deal** 63:2,5,11 |
| 31:20 41:4 42:4,7 | **d202** 240:2,15,24 | **d749** 139:21 | 195:7,10,17 |
| 45:8 47:21 50:3 | **d206** 183:8,17,18 | **d750** 141:15 | **deals** 28:21 143:14 |
| 51:1 52:10 53:17 | 184:3,20 | **d756** 104:23 | 147:6,10,17 |
| 55:14 57:2 58:12 | **d207** 183:6 | **d758** 105:7,25 | **debt** 88:18 |
| 59:13 60:17,19,21 | **d210** 241:9,12 | **d762** 158:25 | **december** 31:13 |
| 60:22 62:8 63:24 | **d211** 241:18,20 | **d764** 159:9 | 32:25 33:4,16 |
| 68:25 69:19,23 | 242:6 | **d765** 160:10 | 34:1 131:18,19 |
| 71:10 72:9,20 | **d217** 182:1 | **dan** 230:6 | 241:10,15 248:18 |
| 73:19 74:3 76:18 | **d218** 237:15 | **daniels** 17:23 18:1 | 248:24 249:3,4,14 |
| 78:13 79:10 80:17 | 238:13 | 228:22 | **decide** 35:1 |
| 86:10 93:10 120:2 | **d218-225** 3:16 | **danklefsen** 13:22 | **decided** 13:14 |
| 123:18 126:18 | **d223** 238:14 | 25:4 26:10,12 | **decision** 27:19 |
| 127:23 132:6 | **d225** 237:15 | 27:1,3,22 65:1 | 226:8 |
| 133:14 134:17,18 | **d226** 180:18 | 109:10,11,11,16 | **decline** 117:13 |
| 137:2 142:17 | 199:19 242:21 | 110:7,16,23 111:8 | **declining** 117:22 |
| 143:8 165:15 | **d247** 200:23,24 | 111:17 154:10 | **default** 89:18 |
| 206:2 229:13 | 201:10 | 227:9 241:23 | 93:10 99:12 101:7 |
| 232:13 | **d252** 202:23 | 242:9 244:20 | 194:3 218:18 |
| **cv** 1:6 | **d253** 248:23 | **danny** 164:2 | **defendants** 1:9 |
| | **d254** 249:4 | **date** 18:21 63:9 | 4:11 5:12 |
| **d** | **d257** 199:22 200:1 | 71:15 74:13 84:23 | **defined** 153:13,18 |
| **d** 5:1 | 200:9,15 | 89:7 93:8 103:5,7 | 155:5 157:14 |
| **d107** 37:8 | **d285** 242:24,25 | 104:3 145:20 | **defines** 153:8 |
| **d1292** 206:12,14 | 243:9 | 150:25 187:3 | **definition** 153:13 |
| **d1293** 113:1 | **d287** 243:13 | 215:14 216:9,19 | 154:9,20 155:16 |
| **d1294** 123:24 | **d291** 244:11,12,14 | 243:14 247:18 | 156:11,12 157:11 |
| 137:8 141:9 | **d292** 244:18 245:4 | **dated** 103:1 | 157:22 158:6 |
| **d1307** 37:6,19 | **d293** 245:16 | 154:11,22 155:7 | **definitions** 155:17 |
| **d1308** 37:20 | **d309** 180:18 | 173:3 185:14,14 | **degree** 186:24 |
| **d1446** 215:5,8,12 | 199:19 242:21 | 197:20 231:23 | **deliver** 21:22 |
| 216:4,7 | **d487** 176:2,6 | **dates** 19:13 | 125:11 |
| **d1447** 215:5,9 | 177:15 178:4 | **dating** 132:23 | **delivered** 125:9 |
| 216:18 | 246:25 | **day** 15:19,19,24 | 126:10 148:19 |
| **d152** 182:1 230:21 | **d509** 247:6,7,11 | 15:24 174:20 | 164:23 |
| **d1663** 219:20 | **d510** 247:17 | 207:15 233:9 | **delivery** 74:21,22 |
| 220:8 221:9 | **d523** 248:19,20 | 235:8 236:16 | 82:24 83:2,11 |
| **d1666** 220:8 | **d529** 176:2 246:25 | 243:21 246:1 | **depending** 226:2 |
| **d194** 231:1,6 | **d570** 188:24 189:3 | 249:14 255:15 | **depends** 83:10 |
| **d195** 231:10 | 189:3 | **days** 128:15 | **deposed** 6:12 8:15 |
| **d196** 231:17,20 | | | |
| 234:10 | | | |

Veritext Legal Solutions

**EXHIBIT L
PAGE 734**

Jonathan Lee Smith                                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[deposit - draw]                                                        Page 12

| | | | |
|---|---|---|---|
| **deposit** 231:24 | 24:19,21 25:19 | **disclosure** 4:23 | **document** 11:16 |
| 232:2,5 238:20 | 34:24 35:11 50:17 | 253:8 | 11:21 36:16,18,22 |
| 239:2,4 245:18 | 60:6 64:8 117:3 | **disclosures** 253:2 | 37:2,20,22 38:4 |
| 249:5,8 | 143:11 147:8 | 253:4,6,20 | 103:9,11 104:3,19 |
| **deposition** 1:13 | 153:14 169:15 | **discount** 253:24 | 105:4,6,9,23 |
| 2:4 5:4 6:18,23 | 189:25 200:21 | **discounts** 253:23 | 112:20 139:20,23 |
| 7:17,20 10:15,19 | 229:19,25 232:14 | **discussed** 115:11 | 159:1,3,5,17 163:8 |
| 11:2,5,8,9 12:2,3,6 | 232:15 | 162:21,25 169:16 | 163:10 167:14,24 |
| 36:10 37:16 86:18 | **digitally** 32:5 | 208:24 | 173:11 176:1,5,15 |
| 104:15 139:14 | 35:11 | **discussion** 7:4 | 177:4,8,13,17,25 |
| 158:22 162:23 | **direct** 29:16 36:14 | 73:5 115:17 | 180:16 181:24 |
| 163:5 167:8 | 88:15 104:13 | 116:25 140:13 | 185:2 188:22 |
| 169:17 173:1 | 105:22,24 106:2 | 215:24 220:1 | 196:25 197:6,11 |
| 176:1 181:25 | 112:12 113:9 | **discussions** 143:16 | 206:13,19 220:7,8 |
| 188:23 196:22 | 139:25 153:7 | 161:22 166:8 | 220:14,16 237:15 |
| 206:11 219:19 | 169:8 183:5 | 171:9 | 237:18 238:4 |
| 237:14 251:11,21 | 199:21 201:12,15 | **dismantle** 135:2 | 242:18 |
| 252:3 | 220:12 237:17 | **dispute** 151:5 | **document's** |
| **deposits** 238:18 | 238:13 242:22 | **disqualification** | 104:22 |
| **depreciation** 40:7 | 243:13 246:23 | 253:8 | **documentation** |
| **description** 2:2 | 253:16 255:11 | **disqualify** 253:15 | 222:17 224:17 |
| 3:2 238:8,16 | **directing** 37:18 | 255:9 | **documents** 11:4 |
| **desert** 135:2 | 106:6 116:3 | **distribute** 195:6 | 20:23 37:13 38:10 |
| **despite** 251:16 | 184:19 | **distribution** 28:21 | 141:2,6 142:14 |
| **detail** 3:16 216:6 | **direction** 21:17 | 50:23 195:5 | 173:8,24 174:7,10 |
| 237:21 | 255:5 | **distributor** 43:21 | 174:15 215:3,4 |
| **details** 215:13 | **directly** 210:6 | 47:20 49:9 50:16 | 251:13,14 |
| 216:5 | 225:23 226:2 | 51:25 59:13,18 | **docusign** 221:19 |
| **determined** | **directors** 15:22 | 63:24 66:7 68:8 | **dogs** 169:10,15,16 |
| 253:17 | 24:13,14,19 25:6 | 70:19 71:19 72:21 | **doing** 28:1 86:18 |
| **di** 20:9 21:3 43:7 | 26:5,15 109:13 | 75:2 76:19 79:11 | 225:8 |
| 43:10,11,13,18 | 114:8 250:15,23 | 87:8,15 120:1,4 | **dollar** 147:8 |
| 66:23 73:15 91:16 | 251:2,4 | 123:17 126:19 | **dollars** 87:4 122:3 |
| 124:11,13 185:18 | **disaster** 71:25 | 129:5 130:18 | 122:12,17,18 |
| 186:2,10,15,22 | 72:7,15 | 132:5 134:19 | 133:20 141:20 |
| 188:10 190:7 | **disbarred** 46:2,7 | 137:2 148:18 | 144:23 147:2 |
| **dick** 148:18 | 46:11,15,18,21,25 | 150:6 | **domestic** 148:20 |
| **difference** 48:4 | 47:7,16,23 48:1,11 | **district** 1:1,1 | **domestically** |
| 88:17 132:16 | 48:14,20,24 49:3,6 | **divided** 13:1 | 33:18 146:6 |
| **different** 12:21,22 | 49:8,12 | **division** 1:2 180:4 | **draw** 114:10 137:7 |
| 12:23,25 17:1 | | 196:8,9 | |

EXHIBIT L
PAGE 735

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[dream - entities]**                                          Page 13

| | | | |
|---|---|---|---|
| **dream**  54:8 | **earnings**  105:8 | 205:9,18 207:16 | 178:17 180:3 |
| 224:25 225:4 | 106:1 | 218:2 | 182:6,20,25 |
| **dreams**  39:2,5 | **easier**  146:23 | **entering**  89:22 | 183:10 184:24 |
| 53:13,23 54:3 | 184:7 | 90:18 91:5 93:14 | 190:2 194:18,21 |
| **drill**  200:23 | **easiest**  219:23 | 93:22 95:5 96:20 | 195:16,20 217:4 |
| **drive**  35:1,8 179:4 | **eastern**  1:16 | 97:12 99:21 | 223:1,24 224:16 |
| **drives**  34:20,21 | **ebf**  229:15 | 107:23 110:15 | 230:21 231:4 |
| 35:6,8,13,14 36:1 | **edit**  32:14 | 153:23 167:24 | 233:18 239:23 |
| **drone**  118:14,16 | **edited**  32:16 | 232:7 | 241:13 243:17,22 |
| 118:21 119:5,7,13 | **editing**  33:3,11,25 | **entertainment**  1:8 | 247:20,23 |
| 119:17,23,25 | **effectively**  16:20 | 3:6 7:22 10:24 | **entertainment's** |
| 120:3,7 229:24 | **efficient**  190:21 | 12:18 13:1,7,10,16 | 2:11,14 17:15 |
| **drones**  118:19 | **effort**  33:6 | 13:25 14:3,12,21 | 113:12 116:2 |
| **due**  45:17 55:5 | **efforts**  27:21 | 14:24 15:3,11,18 | 117:20 118:20 |
| 56:18 65:3 89:7 | 30:20 143:24 | 15:23 16:8 17:8 | 120:17 123:4 |
| 89:10 93:8 99:5 | 174:15 | 18:23 19:1,12,18 | 124:5 127:2 |
| 124:22 130:3,13 | **eidl**  102:9 | 19:24 21:11,12,23 | 129:13,18 131:1 |
| 130:16 142:19 | **eight**  20:6 111:25 | 21:24 22:7,10 | 132:24 135:3 |
| 228:9 | 160:10 | 27:4 112:13,23 | 140:3 141:13 |
| **duly**  6:12 | **either**  19:11,19 | 113:19 119:8,13 | 142:13 182:10,15 |
| **duncan**  227:9 | 188:10 | 119:16,22 120:6 | 223:17 224:8 |
| | **electronic**  90:7 | 120:20,24 121:12 | 237:3 |
| **e** | **emailed**  184:8 | 121:17,25 122:5 | **entire**  20:17 |
| **e**  5:1,1 240:16 | **emily**  4:14 5:19 | 122:12,16 123:10 | **entirety**  173:5 |
| **eagles**  129:10,11 | **employee**  18:17 | 123:19 125:1,5,15 | **entities**  8:2 12:11 |
| 129:14,22 130:1,6 | 255:7 | 126:6,12,21 127:5 | 16:4,5,12 18:10,14 |
| 130:11,15,17,21 | **employees**  17:20 | 128:1,7,11,18 | 19:22 20:1,14 |
| **eang**  191:6 203:21 | 17:22 18:2,9,11,14 | 129:1,7,21 130:7 | 24:13 25:11,12,15 |
| 204:5 | 19:2,7,13 | 130:10,20 131:13 | 26:4,13,20 27:11 |
| **ear**  191:7,16,16,19 | **ended**  39:7 | 131:16,25 132:7 | 27:14,24 28:14,22 |
| 191:24 192:7,17 | **ends**  244:12 | 133:4,17,23 134:2 | 28:25 29:7,10,13 |
| 193:1,11,19 194:4 | **enlarge**  184:3,13 | 134:21 135:6 | 30:1,5,9,20,23 |
| 203:21 204:5 | **enter**  89:25 151:7 | 136:6,11,15,21 | 31:1,7,11,16,25 |
| **earlier**  6:7 109:12 | **entered**  89:5 90:11 | 137:4 139:4,15 | 32:6,10,12,16,23 |
| 116:6 180:25 | 91:4 92:3 93:21 | 141:3,4,19 144:4 | 33:2,16 34:1,17 |
| 182:9 194:11 | 95:20 98:21 100:6 | 149:22 150:1,10 | 35:15,25 38:6,9 |
| 199:17 208:22 | 103:2 108:6 | 150:17,23 151:1 | 40:13 43:11 61:5 |
| 212:24 224:25 | 110:25 144:11 | 152:19 154:21 | 86:3 106:11 |
| 228:7,11 230:19 | 150:17,23 151:2 | 160:12 163:7 | 124:18 129:3 |
| 234:3 | 152:20 172:16 | 164:12 165:15 | 142:21 150:3,8 |
| **early**  29:22 136:13 | 192:17 193:9 | 172:18 173:23 | 204:25 |
| 172:16 | | | |

Veritext Legal Solutions

**EXHIBIT L
PAGE 736**

Jonathan Lee Smith                                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[entitled - expected]                                                Page 14

**entitled** 41:20
175:4,8
**entity** 14:22 23:20
23:24 24:3 43:8
60:10,16 61:12
128:24 179:21
205:1 217:4 230:2
**entries** 38:13 61:5
132:13,17 142:4
185:14 203:7,8,19
243:14
**entrust** 154:9
**entry** 39:14 45:21
47:25 64:4 77:4
77:12 81:7 83:13
101:15 102:2
114:19 120:9
137:19 138:2,3,10
141:10,15 187:6
201:12,16 202:8
202:23 204:5
231:11,23 232:23
234:1,10,22,24
235:8 236:7
238:15,16 240:3
240:15,24 241:20
243:16 244:18
245:4,16
**episodes** 46:16
**equipment** 34:18
41:18
**equity** 2:7,10,13
2:16 37:3 88:13
103:16 104:21
139:16
**escapes** 49:17,20
49:23,25 50:2,6,9
50:13,22 51:4
148:24 164:21
**esport** 148:18
208:18 209:1,15

209:20 210:2
**esports** 81:13,15
82:3,9,17,19,23
83:8 85:6 208:19
208:22
**esquire** 4:4,5,13
4:14
**essentially** 22:5
**estimate** 44:9,18
53:4 57:10 59:2,6
65:16 66:3 68:5
70:15 122:20
186:23
**estimating** 74:22
76:15
**et** 173:3 174:12,12
**ethics** 253:16
255:10
**etiquette** 79:17,18
79:19 80:1,6,9,13
80:16,19
**event** 78:23 86:19
134:10 136:20
**everybody** 17:24
18:12 149:2
**everyday** 3:7
189:4,16 236:6
246:2
**evidence** 255:6
**exact** 30:10 62:4
92:2 145:20
150:25 209:21
232:14
**exactly** 17:9
**examination** 3:18
3:19 7:7
**examine** 251:22
**examined** 6:12
**excuse** 6:19
143:13

**executed** 63:5
148:1
**executive** 26:22,24
27:3,7,10,13,16,23
28:12 226:16
**exhibit** 2:2,4,5,8
2:11,14,17,18,20
2:22,23,24 3:2,3,5
3:7,9,11,13,15,16
11:8,10 36:7,10,18
38:22 40:3 46:3
48:1 49:17 51:6
53:12 54:13 56:2
57:18 59:23 64:5
66:12 68:14 70:24
71:24 73:1 75:8
76:24 77:4 79:17
80:23 83:14 85:9
88:2,6,9,12 95:1
95:10 98:3,14
101:15,24 103:1,3
103:8 104:6,15,16
105:12 106:5,18
106:22 109:10
112:1,16,17,25
115:4 116:1,4
117:10,11 118:6
120:9 121:3
126:24 129:10
130:24 132:11
134:25 137:8
138:18 139:5,14
139:18 140:2,11
141:8,13 153:4,5,8
153:12,19 154:1
155:15 156:10,19
157:2,3,11,23
158:7,16,16,18,19
158:22 159:7
160:10 161:14
162:20,22,22,24

163:2,5,20 164:3
164:20 167:7,12
168:17,25 169:8
169:25 170:9,18
171:24 172:7
173:1,6,11 176:1
176:10 178:4
179:5 180:16,23
181:24 182:2
183:6,8 184:16
188:19,22,25
196:22,23 198:6
198:15 199:17
206:11,16 214:23
214:25 215:9,12
216:4,17 219:19
219:23 220:4,7,17
221:1,9,18 230:19
230:20 231:1
237:11,14 239:15
239:21 241:8,11
242:20 244:11
246:24,24 247:7
248:19
**exhibits** 2:1 3:1
140:23 184:7
254:1,2,3
**exist** 125:11
187:15 190:9
**existed** 24:14 95:4
**existence** 153:22
**existing** 142:20
**expand** 238:15
**expect** 8:19 57:11
63:16,20 65:25
66:4 67:22 71:16
80:12 83:4 126:16
**expectation** 83:6
150:8
**expected** 42:20
57:7 62:10 69:8

Jonathan Lee Smith                                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[expected - fight]                                                    Page 15

70:12 82:16,22,25
84:13
**expecting**   42:22
46:20,24 47:6,15
50:12 52:15 53:5
54:7 58:22 59:7
65:13,17 67:11
70:13 72:14 73:22
73:24 74:19 76:9
78:19 79:4 84:19
86:16,25 119:22
123:4,9,14 125:5
126:3,7,12 128:11
128:19 134:2,11
136:15,21 144:20
145:11 147:2
148:12 150:1,3
**expects**   48:24 50:8
55:18 68:3 119:16
125:15 130:10
131:25
**expenses**   105:8
106:1
**experts**   146:18
**expired**   31:15
**explain**   21:18 35:5
**express**   248:6
**extend**   9:6
**extent**   117:19
162:21
**extreme**   101:16
**eyes**   201:14

**f**

**facility**   35:13
40:10,12,25 41:4
**fair**   8:3 9:7,13,18
11:18 16:8 17:3
251:22
**fall**   24:17,18 25:2
25:6,23

**familiar**   95:13
98:13 102:2,10,18
118:7,16 137:11
137:20 138:3,11
139:22 153:17
154:12,23 155:8
156:3,17 157:21
185:21 187:10
191:5 227:21
230:2
**far**   22:16 87:3
230:4
**fargo**   2:24 3:3,5,7
3:13 39:11,12
113:12 138:10
176:7,17 178:11
178:25 180:1,7,19
181:2,6 182:5,12
182:15 183:9
184:22 185:25
186:6,9 189:4,18
189:25 190:15
200:10 201:1
223:9 231:2
241:14 247:12
**farther**   200:14
**fashion**   195:21
**fbt**   240:25
**fcw**   2:22 3:10 52:5
52:7 120:10 196:6
196:12,18,19
197:5,18 198:14
199:6,8 201:16
202:9,11
**fcw's**   196:8,9
**february**   14:4,5
16:18 145:19
172:16 173:3
192:8 193:2,20
238:21

**fee**   227:2,4 241:21
242:6
**feel**   20:24
**fees**   74:9,10,11,12
74:16 114:20
**ferre**   13:23 25:4
26:17,18,19,19
27:2,22
**ffc**   51:7,12,18,20
52:9,13,16 53:5
120:10,12,24
**fifth**   88:21,25
89:15,19,22 90:1,9
90:19,20 91:1,5,8
94:5,17,20 95:14
95:22 96:5,13,21
97:5,13,22 98:7,15
98:23 99:6,14,23
100:7,16,25 101:9
101:18 102:3,11
102:19 103:21
104:7 105:16
106:25 107:8,16
107:25 108:10,19
109:3,17,25 110:8
110:17 111:1,10
111:19 112:2,6
113:3 114:13,22
137:12,21 138:4
138:12 139:7
140:4 141:22
142:5 154:2,13,24
155:9 156:4,20
157:4,24 158:8
159:11,19 160:3
160:14,22 161:6
161:15,23 162:6
162:14 163:13,21
164:4,13,25 165:9
165:18 166:1,9,17
166:25 167:17,25

168:10,18 169:1
169:18 170:1,10
170:19 171:2,10
171:17,25 172:8
172:19 173:12,16
173:25 176:22
188:14 192:1,9,19
193:3,12,23 194:5
194:23 197:25
198:7,17,23
199:10 201:19
202:1,12 203:1,13
203:23 204:8,16
205:3,12,21 206:4
206:24 207:9,17
208:3 210:12,16
210:24 211:8,15
211:22 212:9,17
213:6,15,24 214:8
214:17 216:11,22
217:6,13,21 218:5
218:12,20 219:3
219:12 220:18
221:2,11,20 222:3
222:11,19 223:2
223:10,18 224:1
224:10,18 233:11
233:21 234:4,16
235:2,13,24
236:10,21 237:5
239:8 240:8,18
241:2,25 242:12
244:4,24 245:10
245:21 246:7,17
247:25 248:11
249:9,17
**fight**   51:9,10,13,21
52:8,9,13,16 53:5
167:8 168:7 170:7
170:17 171:1,9
172:6 196:10,13

Veritext Legal Solutions

Jonathan Lee Smith                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[fight - fourth]                                                    Page 16

| | | | |
|---|---|---|---|
| 214:7 | 74:21 86:23 88:5 | 96:24 97:8,16,25 | 210:19 211:2,11 |
| **filed** 7:20 197:20 | 88:20,21 93:2 | 98:10,18 99:1,9,17 | 211:18,25 213:9 |
| **files** 31:25 32:1,4,7 | 95:10 102:1 103:4 | 100:1,10,19 101:3 | 213:18 214:2,11 |
| 32:11 90:7 | 103:7 104:25,25 | 101:12,21 102:6 | 214:20 216:14,25 |
| **final** 79:2 134:16 | 105:25 107:6 | 102:14,22 103:24 | 217:9,16,24 218:8 |
| **finalized** 134:16 | 116:4 122:7,9 | 104:10 105:19 | 218:15,23 220:21 |
| 136:24 147:10,17 | 123:10 137:9 | 107:3,11,19 108:3 | 221:5,14,23 |
| 147:23,25 148:4 | 152:1,21,24 | 108:13,22 109:6 | 233:14,23 234:7 |
| 148:11 149:4,15 | 164:19 169:7 | 109:20 110:3,11 | 234:19 239:11 |
| **finally** 9:20 | 176:5 177:10,12 | 110:20 111:4,22 | 240:11,21 241:5 |
| **finance** 28:9,17 | 177:18 178:3 | 112:9 113:6 | 242:3,15 244:7 |
| 151:9 209:9,15,19 | 179:5 182:4 | 114:16,25 118:2 | 245:2,13,24 248:3 |
| 210:2 | 185:17 186:25 | 118:11 137:15,24 | 249:12 253:1,5 |
| **financial** 105:13 | 188:25 190:18 | 138:7,15,25 | **follows** 6:13 |
| 142:14 253:9 | 197:7 206:13 | 139:10 140:7 | **food** 73:3,9 |
| **financially** 255:8 | 215:6 216:6 | 141:25 142:8 | **footage** 146:15,17 |
| **financing** 28:16 | 230:25 231:20 | 154:5,16 155:2,12 | **footprint** 146:23 |
| 53:24 77:2 126:9 | 241:10 247:19 | 156:7,23 157:7 | **foregoing** 255:4 |
| 227:25 228:2 | **fits** 16:25 | 158:2,11 159:14 | **form** 3:15 6:16 |
| **find** 28:20 | **five** 15:15 122:19 | 159:22 160:6,17 | 66:1 90:22 125:19 |
| **fine** 6:7 20:22 | 152:2 229:25 | 160:25 161:9,18 | 125:23 148:9 |
| 140:16 248:23 | **fix** 7:2 | 162:1,9,17 163:16 | 176:8 178:5,13 |
| **finish** 9:5 53:24 | **fixed** 40:6,8,22 | 163:24 164:7,16 | 180:2,12 181:7,13 |
| 55:8 62:22,24 | 114:19 | 165:3,12,21 166:4 | 182:17,22 183:2 |
| 82:11 126:9 | **floor** 118:7 | 166:12,20 167:3 | 183:12 193:23 |
| 209:12 | **florida** 178:18 | 167:20 168:3,13 | 205:19 211:6 |
| **finished** 46:16,22 | **focus** 146:11 | 168:21 169:4,10 | 220:10 |
| 50:1 55:3,20 | **focuses** 64:11 | 169:21 170:4,13 | **format** 8:25 77:18 |
| 63:22 65:18 67:13 | **focusing** 146:18 | 170:22 171:5,13 | 78:1,4,7,8 134:14 |
| 82:10 149:2 | **follow** 111:13 | 171:20 172:3,11 | 149:1 237:18 |
| **finishing** 34:3 69:3 | 205:6 208:6 | 172:22 173:19 | **forms** 253:8 |
| 209:6 | 212:12,20 219:6 | 174:3,13,24 | **formula** 39:2,5 |
| **firm** 7:10 38:7,8 | 219:15 222:6,14 | 176:25 188:16 | 53:13,23 54:3,8 |
| 113:2 140:3 | 222:22 223:5,13 | 192:4,12,22 193:6 | **four** 13:19 15:17 |
| 227:11,12 253:1 | 223:21 224:4,13 | 193:15,25 194:8 | 30:11 122:19 |
| 253:20 | 224:21 235:5,16 | 195:1 198:3,10,19 | 139:22 152:2 |
| **first** 6:12,18,22 | 236:2,13,24 237:8 | 199:1,13 201:22 | 153:14,17 156:14 |
| 9:24 25:25 36:16 | 246:10,20 248:14 | 202:4,15 203:4,16 | 189:24 220:8,12 |
| 37:18 38:15,21 | 249:20 | 204:1,11,19 | 220:14 |
| 41:23 42:12,14 | **following** 94:7,23 | 205:15,24 206:7 | **fourth** 118:6 155:5 |
| 47:9 59:2 69:16 | 95:17,25 96:8,16 | 207:2,12,20 | |

Veritext Legal Solutions

EXHIBIT L
PAGE 739

Jonathan Lee Smith                                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[fox - going]                                                              Page 17

**fox**  23:14
**foxy**  121:2,3,6,10
  121:18,24 122:5
  122:16,21 123:5
  123:11,16 148:17
  229:23
**fratto**  86:6 229:17
**frederick**  54:14,16
  54:19,24 55:1,8,11
  55:13,19,25 56:3,6
  56:22 57:1,3,6,7
  57:15
**free**  20:24
**frog**  232:17
**front**  8:10 152:17
**fulfill**  209:10
**full**  8:12 18:2,17
  19:2,7 209:10,23
  251:22
**fully**  9:12 28:6,11
  63:5
**fulton**  255:2
**fun**  54:18
**function**  23:13
**fund**  60:4 91:19
  92:4,16,18,22,25
  93:6,11,15,22,25
  94:11,15 124:17
  211:21 212:16
  241:20
**funded**  28:11
**funding**  137:10
**funds**  69:3 160:20
  165:6,16 170:7
  194:20 209:3
  244:2
**funny**  237:19
**furlough**  29:25
  229:1
**furloughed**  18:3,4
  29:13 30:5 45:5

**228**:20,24 229:4,9
  229:13
**furloughs**  29:15
  29:17
**furniture**  41:5,6
  41:11
**further**  101:15,24
  137:8 240:14
  252:1 255:7
**future**  45:13 54:8
  57:8 58:23 126:7
  161:3 170:16

**g**

**g**  5:1
**game**  44:22 45:4
  45:13,16,19
  132:23 228:3,4
**gary**  13:22 25:3
  26:9 27:1 65:1
  109:10 154:10
  227:9 241:23
  242:8 244:20
**gathering**  174:10
**gauge**  47:4
**geared**  57:18,18
  57:22 58:4,9,11,15
  58:18,23 59:8,12
  59:21 76:25 77:1
  77:3,4,9,10 195:7
  195:17,20 229:25
  230:1
**gears**  142:15
  150:15 212:24
**general**  10:20,21
  10:23 25:15,18,18
  29:6 39:3 181:8
  182:18,25 212:25
**generally**  150:11
**generate**  57:4,8
  80:10 126:10
  133:22 149:10

**generated**  45:10
  63:8 67:7 72:11
  74:7 84:16 86:12
  119:7 121:24
  126:13 127:25
  130:6 131:12
  133:16 136:5
**generating**  42:7
  45:8 50:2 52:10
  55:14 58:11 69:19
  69:23 71:10 72:9
  74:3 76:3 78:13
  86:10 127:23
  133:14
**geographic**  50:23
**georgia**  1:1,17 4:8
  4:17,22 190:13
  253:6,12 255:2
**german**  59:17
**germany**  59:14
**getting**  39:8
  214:23
**gh**  59:24 60:6,10
  60:19,22,25 77:8
**give**  8:12,17 9:9
  31:16 36:12 62:23
  112:19 158:25
  192:25 199:22
  219:24
**given**  8:19 54:6
  68:7 237:19 255:6
**giving**  9:1,11
**global**  227:10
  229:12
**go**  8:20,21 9:24
  11:20 24:11 44:12
  88:12 103:15
  104:14,24 105:1,2
  115:15,22 167:10
  176:14 189:3,5
  200:9,14,23,23

**201**:3,7,11 202:7
  202:22 203:7,19
  204:4 215:2,19,22
  220:11 230:10,18
  230:25 231:4,17
  231:21 233:7
  239:15,23 240:2
  240:14 241:9,11
  241:17,19 243:8
  244:13,20 245:15
  248:23
**goes**  63:11 169:15
  238:7
**going**  5:25 8:20
  9:16 11:7 15:22
  36:9 60:4,24
  87:19 88:2 94:3,4
  104:14 111:13
  115:6 116:20
  117:13 139:13
  140:25 153:7
  157:10 158:22
  163:4 167:6 169:7
  169:8 180:15,16
  181:23,24 183:5
  199:16 200:18
  201:11,12,15
  202:18 205:6
  206:10 208:6
  212:12,20 219:6
  219:15,18,22
  220:6 222:6,14,22
  223:5,13,21 224:4
  224:13,21 230:23
  231:8,9 235:5,16
  236:2,13,24 237:8
  238:13 239:17
  243:12 246:10,20
  246:23 248:14
  249:20 251:20

Veritext Legal Solutions

Jonathan Lee Smith                                         March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[good - hoplite]                                                          Page 18

**good** 5:8,14 6:4
7:9 10:16 87:18
229:7
**gosh** 20:8
**grandfathered**
148:22
**greenberger** 230:6
**greg** 13:22 25:4,11
33:21 35:17
179:12,18 250:16
**gregory** 248:6
**gretchen** 179:4
**ground** 8:21
**group** 4:15 5:12
51:18 135:1
153:25 154:9
227:25 240:4
246:14
**groups** 143:11,16
**guess** 20:15 32:25
44:17 80:20 196:8
**guesstimate** 30:11
**guests** 124:2
**guides** 124:1
**guitar** 34:8 60:2,6
60:11,14,16,20
61:1,12,13,15 62:7
62:13,17,18 63:3,8
63:13,16,21,23
64:2 77:8
**guitars** 61:17
**guy** 44:20
**guys** 61:16 140:14

**h**

**half** 26:2 42:13,13
42:15 47:9 59:3
93:3 106:8 122:8
122:9 128:5
129:20 133:20
136:9 152:21,24
153:2 187:1,2

**halfway** 115:3
231:10 245:16
**halves** 93:4
**hamilton** 4:6
**hampered** 117:6
**hand** 37:14
**handling** 184:6
**hands** 28:18
**happen** 29:20 79:4
**happened** 23:23
53:22 238:24
**happy** 17:12 36:19
104:18 183:19
184:3 197:1,13
200:2
**hard** 32:7,11
34:20,21 35:1,6,8
35:8,13,14 36:1
44:8 201:14
208:22
**head** 9:10 13:4
16:3,11,20 34:7
36:2 41:13 50:20
52:4 58:5 62:6
64:24 66:19 75:17
75:25 77:24 86:7
88:11 93:20 95:8
119:1,4 121:16,23
127:19 128:4
133:10 143:14
146:3 195:13
228:17 229:12,16
229:23 230:4
**header** 105:25
**heading** 38:15
40:5 101:25 115:3
220:9 238:7
**heads** 146:15
**hear** 6:7,20 94:18
103:6 175:12,17
177:7 183:21

197:10 210:14
213:3
**heard** 6:19 118:15
175:13
**hears** 175:16
**held** 25:22
**help** 25:20 33:1
60:4 197:13
237:18
**helping** 27:12
174:11
**hero** 62:18
**high** 220:11
**history** 185:3,13
**hle** 20:9 22:1,4,9
113:16 190:12
235:9 250:19
**hold** 22:6 25:25
29:21 62:14,15
73:21 115:13
173:7 215:16
**holding** 22:5
**holdings** 2:21
163:6 164:24
231:24 232:3,5,12
238:17,21 239:5
**hollygold** 144:12
144:14
**hollywood** 64:5,5
64:11,12,13,17,23
65:2,8,11,14,21,25
66:6,10 189:12
230:8
**home** 31:22 32:1
34:22 35:2 72:1,3
72:3 179:18
189:12 230:8
**homes** 33:9 34:25
35:12
**honest** 238:23

**honestly** 85:23
232:9 238:22
**hop** 20:10 22:14
**hope** 147:25
**hopefully** 8:21
47:17 50:10 86:17
230:12
**hoping** 12:9 50:14
69:9
**hoplite** 1:7,7 2:5,8
2:11,14,25 3:4,6
7:21,21 8:2 10:24
10:24 12:11,12,18
12:25,25 13:3,6,10
13:10,13,16,18,25
14:3,3,12,12,15,18
14:21,24 15:2,11
15:18,23,23 16:4,5
16:7,7,12 17:7,8
17:15,15,20,22
18:2,9,10,14,18,21
18:22,23 19:1,6,11
19:12,23,23 20:9,9
20:14 21:3,8,10
22:7,9 23:1,20,24
24:3,13 25:11,12
26:4,13,20 27:4,4
27:10,14,24 28:9
28:10,14,22,25
29:6,10,12 30:1,4
30:9,20,23 31:1,7
31:11,16,21,25
32:6,10,11,16,23
33:2,16,25 34:17
35:15,25 36:5,11
37:2,25 38:6,8
39:12,17,19 40:13
40:21 41:2,3
42:22 43:8,10,11
43:13,18 44:3
45:18,25 46:10,17

Jonathan Lee Smith                                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[hoplite - hunting]**                                              Page 19

46:20,24 47:6,15
47:22 48:19,23
49:11 50:5,8,11
51:3 52:10,12,15
53:9,22 54:2,6,7
54:10 55:10,14,18
55:24 57:4,8,11,14
58:14,18,22 59:7
59:20 60:18 61:21
62:16 63:9,12,16
63:20 64:1,17
65:10,13,17,25
66:4,9,18 67:8,10
67:16 68:2,11
69:14,25 70:8,13
70:21 71:11,13,16
71:21 72:5,12,14
72:23 74:8,13,15
74:19,22 75:4,13
75:19 76:3,5,21
78:10,15,16,19
79:13,25 80:10,12
80:18 82:2,20
84:3,17,19 85:1,5
86:13,15,20,25
87:10 88:25 89:12
89:18,21,25 90:9
90:19,21 91:4,13
91:16 92:3,12,18
92:21,24 93:6,10
93:13,21,25 96:19
99:12,20 100:4
101:7 103:2,17,18
104:4,19 105:13
106:19 107:14,22
108:6,9 110:6,14
110:23 112:13,22
113:12,18 114:7
115:12 116:2,7
117:19,21 118:20
119:8,12,15,21

120:6,13,16,16,20
120:20,23,24
121:12,17,25
122:4,11,16 123:3
123:9,19 124:5
125:1,4,15 126:6
126:12,21 127:2,5
128:1,7,11,18
129:7,13,18,21
130:7,10,20 131:1
131:13,16,25
132:7,24 133:1,4
133:17,22 134:2
134:21 135:3,6
136:6,11,15,21
137:4,19 139:4,15
140:2 141:3,4,13
141:19 142:13,13
142:21 143:6
144:3,3,16,20
145:11,21 147:1,4
147:16,22 148:3
149:12,19,22
150:1,10,11,17,17
150:22,23 151:1,1
152:19,19 154:10
155:6 158:24
160:2,12,20 161:3
161:12 162:13
163:7 164:12
165:6,15,24 168:7
170:7,16,25
172:17,18 173:2
173:23,23 176:6
178:10,11,16,25
179:3,13,16,17,25
180:6,19 181:5,10
181:16 182:5,10
182:14,20,25
183:10 184:23
185:18 186:4,10

186:15,22 187:7
187:17,19,22,25
188:6,10,11
189:22 190:1,1,2,4
190:7,8 191:21,25
192:7,15,16,25
193:9,19 194:3,16
194:17,18,21,21
195:9,15,20 196:3
196:15 199:5,17
200:11 201:3
204:25 205:9,18
206:2 207:16,23
207:24 208:1,16
208:25 209:3,14
210:6,9,22 211:5
212:3,7,15 213:14
213:23 214:15
216:18 217:3
218:2,11,18 219:1
219:10 220:25
222:1,9 223:1,8,16
223:24 224:7,8,16
226:19 227:19
228:14 229:20
230:20 231:3,15
232:6,11 233:9,18
233:18 234:11
235:20 237:2,21
238:5,25 239:6,22
241:13 242:23
243:5,10,17,22
244:2,10,13,15
247:2,5,8,13,20,23
247:24 248:18,21
248:25 250:24
251:4

**hoplite's** 42:1 43:6
43:23 44:24 46:8
48:10 49:19 51:12
53:5,15 54:18,23

56:5 57:22 58:3
61:18 64:13 66:16
69:11 71:3 72:2
73:10 75:10 76:9
77:16 78:24 79:20
81:16 83:6,20
85:11 88:3,8
89:14 100:13
106:22 108:16
109:12 113:2,23
115:5 121:9,9
124:3 142:15,25
181:1 208:14
217:19 250:3,9,14
250:15,22 251:1,6
**hoplites** 56:11
**horseracing**
130:25
**hot** 66:12,13,14,22
66:24 67:5,7,11,17
67:22 68:2,11
**hours** 145:6
**house** 35:9 40:25
62:22,25 179:10
179:11
**huh** 9:11,11 26:11
147:20
**hunter** 60:7,11,14
60:16,20 61:1,12
61:13,15 62:7,13
62:18 63:3,8,13,16
63:21,23 64:2
77:8
**hunters** 34:8 60:3
126:25 127:3,20
127:21,25 128:8
128:12,19,25
129:4,8 164:21
**hunting** 61:16

Veritext Legal Solutions

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[ideally - instructions]                                              Page 20

| i |
|---|

**ideally** 35:10
**ideas** 8:19
**identified** 109:11
214:15 228:10
**identify** 5:6
**ii** 1:4
**impacts** 255:13
**impartial** 255:13
**impartiality**
253:15 255:10
**important** 9:9
**inactive** 60:22
**inc.'s** 2:5,8 37:25
39:12 103:18
117:21 142:13
178:11 179:25
180:6 181:5,10
**inception** 18:16,20
18:21 19:5,13
29:8
**include** 153:14
**included** 104:24
**includes** 106:9,14
**including** 229:25
**income** 42:7,9,16
42:19 45:8,10,12
46:17,20,24 47:15
48:20,24 50:2,5,9
50:11 52:10,12,15
53:4 54:2,4,7
55:10,14,18 57:4,8
57:11 58:12,14,18
58:22 59:6 63:9
63:12,15,21 65:10
65:13,17 66:1,4
67:7,11 68:3
69:20,22,25 70:8
70:12 71:10,13,17
72:9,11,14 74:4,8
74:19 76:3,5,9

78:14,16,19,25
80:10,12 82:20,22
82:25 84:17,19
86:10,12,16,21,25
119:8,13,16,21
121:24 122:5,12
122:16,21 123:5
123:10,13 125:2,5
125:16 126:3,7
127:23,25 128:7
128:12,18 130:7
130:11 131:12,16
131:21 132:1
133:14,16,22
134:3,11 136:6,11
136:16,22 144:4,7
144:15 147:3,10
148:4,5 195:9
208:25
**incoming** 202:10
**incomplete** 125:17
**incorporation**
3:10 197:17
**indebted** 206:2
211:5
**indebtedness**
89:12 192:16
205:11
**indefinitely** 228:9
**independent** 19:14
28:19 29:13,25
30:4,8 91:10,13
**index** 2:1 3:1,18
**indicated** 162:12
166:23 172:6
**indicates** 238:4
**individual** 44:20
127:17 205:1
226:9 228:1 237:4
**individual's** 35:2

**individuals** 13:19
13:24 15:17,19,24
17:5,22 24:12
25:3 33:24 86:3
179:13 191:6
227:7 251:5
**industry** 146:14
**ineo** 35:23
**ineomedia** 35:22
**inform** 153:21
**initial** 32:25
125:24
**initially** 187:21
**initials** 221:8,10
**initiate** 25:8 188:5
**initiated** 16:18
186:18
**ink** 68:14,19 69:11
69:19 70:1,8,12,18
70:21
**installment** 195:21
**instruct** 94:3
**instructed** 173:22
**instructing** 116:15
116:17 177:20
210:16
**instruction** 94:8
94:24 95:18 96:1
96:9,17,25 97:9,17
98:1,11,19 99:2,10
99:18 100:2,11,20
101:4,13,22 102:7
102:15,23 103:25
105:20 107:4,12
107:20 108:4,14
108:23 109:7,21
110:4,12,21 111:5
111:14,23 112:10
113:7 114:17
115:1 118:12
137:16,25 138:8

138:16 139:1,11
140:8 142:1,9
154:6,17 155:3
156:8,24 157:8
158:3,12 159:15
159:23 160:7,18
161:1,10 162:10
163:17 169:22
174:25 188:17
192:5,13,23 193:7
193:16 198:4,11
198:20 199:14
201:23 204:12
213:10 214:3
216:15 217:1,10
217:17 221:15
233:15,24 234:8
234:20 235:6,17
236:3,14,25 237:9
239:12 240:12,22
242:16
**instructions**
104:11 117:16,25
118:3,9 155:13
161:19 162:2,18
163:25 164:8,17
165:4,13,22 166:5
166:13,21 167:4
167:21 168:4,14
168:22 169:5
170:5,14,23 171:6
171:14,21 172:4
172:12,23 173:20
174:4,22 177:1
194:1,9 195:2
199:2 202:5,16
203:5,17 204:2,20
205:7,16,25 206:8
207:3,13,21 208:7
210:20 211:3,12
211:19 212:1,13

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[instructions - know]                                             Page 21

212:21 213:19
214:12,21 217:25
218:9,16,24 219:7
219:16 220:22
221:6,24 222:7,15
222:23 223:6,14
223:22 224:5,14
224:22 241:6
**instructs** 176:13
**instruments** 88:18
**insufficient** 241:20
**intends** 67:16
**intent** 162:12
166:23 172:6
**intention** 112:2
**interest** 44:6 54:10
85:15 90:10,20
100:5 110:24
114:11 127:9
253:9,14 255:9
**interested** 255:8
**interests** 43:23
44:3 45:19 47:22
49:11 51:3 53:9
55:24 57:14 59:20
64:1 66:9 68:11
70:21 71:21 72:23
75:4 76:21 79:13
80:18 85:2,5
87:10 94:1 108:8
120:7 123:20
126:22 129:8
130:21 132:8
134:22 137:5
**intermittently**
122:10
**internationally**
148:21,23
**interruption** 73:4
191:1

**interviews** 146:18
**introducing**
151:19
**inverleigh** 33:21
33:22 35:17 45:3
63:1,11 81:22
82:7 83:25 129:17
129:25 194:11,17
194:21
**involved** 17:6,13
17:17 27:19 30:1
33:2,15 45:25
51:15 80:3 124:18
146:5 212:25
213:12,21 214:5
214:14 225:4
226:8 227:5,7
**involvement** 42:1
44:24 46:8 48:10
49:19 51:12 53:15
53:18 54:18 56:5
57:22 61:18 64:13
66:16 69:11 71:3
72:2 73:10 75:10
77:16 79:20 81:16
83:20 85:11
118:21 121:10
124:3,5 127:2
129:14 131:2
132:25 135:3
213:4
**issue** 35:3,6
251:16
**item** 241:21 242:6

**j**

**j** 4:5 236:6 246:2
**james** 3:14 10:22
10:23 212:24
**january** 30:2
142:16,23 143:7
144:4,9,16 145:19

149:18,23
**jean** 229:11
**jelly** 41:24 42:10
42:20 43:14 44:4
115:10 116:5
**jellyman** 41:24
42:10,20 43:14
44:4 115:10 116:5
**jellymen** 148:24
**jenna** 15:4 24:24
**johnny** 86:6
229:17
**joining** 25:22
**jointly** 43:18
**jon** 39:15 102:17
138:2 141:10,15
141:21 142:3
**jonathan** 1:8,14
3:8 5:5 6:11 7:15
15:5,7,8 24:24
189:5 207:6
240:16,25
**josten** 151:11,14
**js** 221:9
**julie** 17:23 18:1
228:22
**july** 104:21 105:3
105:8,14 106:12
106:14,18 139:16
141:4,14,18
154:11
**jump** 7:1
**jury** 8:10

**k**

**keep** 32:4
**keeping** 28:19
61:9 179:23
**kelleher** 4:5 5:9
140:12
**keybank** 245:5

**kick** 148:14
**kind** 5:22 86:4
124:14,16 146:19
178:7
**kito** 146:8
**knew** 152:9
**know** 6:1 9:16,21
19:20 20:24 22:16
28:20 30:7,10,12
34:6 35:7 36:20
38:3 39:24 40:4
42:24 43:5,25
44:10,19 47:1,3
49:5 50:8,11,19,25
51:7 52:2 53:25
55:21 58:3,5
59:17 61:4 62:4
63:15 64:22,25
66:19,22 70:4,9,11
75:15,21,23 77:23
81:21 85:4,18,21
85:24 87:5,13
91:17 95:3,7
96:11 98:6,21
99:4,12 114:20
115:4 116:6,19
117:4 118:25
119:2 120:15,19
121:15,22 127:18
132:16 143:13
146:16 147:21
150:22 151:22
175:5,11 177:22
184:8,14 186:18
186:25 187:3
200:19 201:25
215:21 219:21
229:16,23 232:16
232:20 233:17
238:22 239:1,4
240:17 241:1

Veritext Legal Solutions

EXHIBIT L
PAGE 744

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[know - litigation]**                                              Page 22

245:20 249:15
**knowledge** 112:4
  116:9,13 138:22
  139:7 143:24
**kyle** 65:1

**l**

**l** 189:5 240:16,25
**la** 196:8,9
**label** 37:5,13
  201:1 206:13
  237:14 238:3
  239:20 241:12
  248:20
**labeled** 37:2 38:15
  104:19 113:1
  158:24 160:9
  167:8 176:2
  181:25 183:9
  184:20,22 197:2
  199:19,22 200:1
  206:12 215:5
  216:4 219:20
  231:23 237:15
  238:13 241:9
  242:21,24 243:13
  247:7
**labels** 37:14
  180:18 215:6
**lack** 116:8,11,12
  138:21 139:6
**ladies** 121:2,4,6,10
  121:18,24 122:5
  122:17,22 123:5
  123:11,16 148:17
  229:23
**lambo** 146:8
**landlord** 230:7
**large** 183:25
**larger** 28:20
**larson** 204:6,7,15

**late** 73:9
**latest** 29:24
**law** 3:14 4:15 5:11
  7:10 227:11,12
  253:6
**lawsuit** 7:20,24
**lawyer** 8:18
**layout** 7:2
**lbe** 2:25 20:9 21:8
  21:10 176:6
  178:10,11,16,21
  179:3,16,17,25
  180:6 190:1
  235:20 247:2,5,8
  247:13,24 248:18
  248:21,25 250:16
**lcohan** 4:19
**lead** 46:9 51:14
  56:7 64:15
**lease** 31:15 181:18
**leased** 31:5,6
**leasing** 31:7,11
**leave** 251:11
**lee** 1:8,14 5:5 6:11
  7:15 13:22 15:4,4
  24:24 26:3 114:6
  250:19
**left** 207:5
**legal** 48:18,21 64:5
  64:6,8,14,17,23
  65:2,8,11,14,21,25
  66:6,10 146:9
**lender** 88:22,22
  155:16,19,25
**lending** 202:24
  211:14 212:4,8
**length** 88:18
**level** 136:22
  220:11 227:15
**levina** 33:21
  143:25 225:17,20

225:22
**liabilities** 2:6,9,12
  2:15 37:3 88:13
  88:16 101:25,25
  103:16,17,19
  104:4,20 106:3,7
  137:9,10,18
  138:18 139:3,16
**liability** 101:16
  137:9,11 197:3
**liberty** 190:18
**libraries** 12:22,25
**library** 17:7,15
  22:8 113:18,18,23
  150:5 225:6,15
  226:22
**license** 2:18,20
  22:25 120:3
  147:18,24 148:6
  149:19 158:23
  160:1,11,21 161:4
  161:14 162:13
  163:6 164:11
  165:7,8,17 166:24
  168:6 232:6,10
  239:5
**licensed** 43:20
  47:19 49:9 50:15
  50:17,18,22,25
  51:25 52:5 59:12
  63:24 66:7 68:8
  70:18 71:19 72:20
  75:1 76:18 79:10
  87:7,14 119:25
  123:16 126:19
  129:4 130:17
  132:5 134:18
  137:1 144:9 147:1
**licensing** 144:21
  145:12 147:11

**licensor** 159:10
**lifeng** 3:12 203:9
  205:1,11,20 206:3
  206:23 207:8
  208:2
**light** 226:12,15
  227:8
**limited** 154:21
  197:3
**line** 114:11
**lines** 114:11 202:8
**liquid** 43:24
**list** 38:17 44:11
  103:17 135:25
  137:9
**listed** 46:3 49:16
  53:12 54:13 56:2
  57:17 61:5 66:12
  68:14 70:24 71:24
  75:7 76:25 80:23
  85:8 88:5,8 95:1
  98:14 113:11,15
  116:3 117:9,10,11
  118:14 120:15,16
  121:3 126:25
  130:23 132:10,11
  134:24 137:9
  138:20 157:22
  162:24 197:23
**lists** 157:16 160:10
  164:20 198:14
**litigation** 7:25 8:1
  8:1 37:12,13 90:4
  94:12,16 97:4,21
  100:15,24 104:23
  108:18 109:2
  111:9,18 159:4,18
  168:9 172:16
  173:24 174:7,16
  175:23 177:13
  180:17 193:21

EXHIBIT L
PAGE 745

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[litigation - manager]                                             Page 23

194:17 199:20
210:10 215:4
224:9 238:6
**little** 8:18 12:10
21:18 28:8 41:22
150:16 153:10
157:10 167:9
181:21 184:10
189:6 200:6,14
212:24 231:5,21
237:19
**live** 21:24
**living** 81:1 91:22
**llc** 19:18,19 20:13
20:17 21:4 22:14
22:14,18 23:10,11
24:6 43:14 95:2
95:11 107:7,15
113:16 155:6
158:24 182:6
183:10 184:24
185:18 190:12
197:5 202:9,24
227:21 229:15
231:4,11,24 235:9
238:17,21 239:23
241:13 243:22
245:6 247:20
**llcs** 20:2,4
**llp** 4:6
**loan** 2:17 19:15,16
19:17 23:1 39:14
39:18,22,25 88:21
88:21,23,24 89:3
89:14,19,22,25
90:3,6,11,18 91:2
91:4,5,8,15,15,18
91:18,19,20 92:1,4
92:10,16,19,22
93:8,11,14,21,22
94:10 95:1,2,4,5

95:13,21 96:3,12
96:20 97:2,12
100:6,13 101:7,8
102:1,9,10,17
103:2,20 106:9
107:7,14,23 108:6
108:16 109:9,15
109:24 110:6,15
110:25 111:7
112:4 114:20
137:19,20 138:2
138:10,11,20
141:10,20 150:16
150:18,23 151:2,8
152:11,14,18
153:14,17,18,23
153:25 154:8,8,9
154:11,12,19,20
154:20,21,23
155:5,7,8,16,23,24
156:3,19 158:15
158:17 167:24
174:10 192:7,18
193:1,9,18 194:3
205:1,10,18
207:16,23,24
208:2 210:22
211:6 212:3,7,15
213:1,5,13,23
214:16 216:9,19
217:4,19 218:2,11
218:18 219:2,10
222:1,9,18 223:1,8
223:17,25 224:9
224:17 225:11,18
227:22 232:8
233:5,8 239:7
243:15 247:19
**loans** 39:16 88:16
88:20 95:9 98:14
98:21 99:5,13,22

106:12,21 111:25
141:15 153:9,13
153:22 155:6
191:20,24 214:14
214:15
**lobo** 143:19
**localized** 78:7
**locate** 224:8
**located** 40:8
**location** 21:11,12
31:18 178:17
180:3 181:19
**locations** 34:23
**lol** 70:25 71:3,8,10
71:14,17,19,21
81:1,2,6 91:23
92:12
**long** 15:10 18:13
24:13 27:13 29:7
36:23 101:25
135:25 137:18
148:2,2 177:4,9
**longer** 24:23 53:22
54:6,10 167:10
181:22
**look** 40:5 44:21
88:20 112:20
118:5 137:18
164:19 175:15
178:2,2 197:4
207:5 238:14
244:9 248:17
**looked** 103:16
106:13 115:4
140:24 189:24
194:15 230:19
**looking** 88:2 98:3
116:1 138:18
147:14 149:2
155:15 176:5
180:25 182:4,9

183:8 202:20
215:12 216:4,6,17
239:16 242:20
**looks** 183:13 238:9
**loosely** 145:3
**lord** 15:4 24:25
**los** 3:10 10:20
12:13 31:3,24
40:10 151:9
181:21 196:6,12
196:19 197:5,18
198:14 199:6,8
201:16 202:9,11
**lot** 20:6,8 75:18
77:25 85:17 115:5
148:24 199:23
**loud** 81:1 91:22
**louis** 4:13 5:11,20
10:16 117:1 177:6
184:1 210:14
**low** 5:22
**lp** 1:4
**lucid** 129:1 224:25
225:4

---

**m**

**m** 1:19 255:19
**ma'am** 197:10
**magidov** 38:5
**maintain** 31:2
**maintaining**
253:15 255:9
**majority** 58:6
61:21 64:21
118:24 121:14
**making** 5:25 6:1
32:23 195:15
253:15
**malia** 234:1,3
**manager** 25:15,18
229:3

Jonathan Lee Smith                                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[managers - name]**                                           Page 24

managers 25:18
march 1:15 5:3
  29:21,22 115:6
  145:12,16 155:7
  251:14 255:15
marched 88:5
mark 11:7 36:10
  104:15 112:15
  139:14 158:22
  163:5 172:25
  175:25 180:16
  181:24 188:22
  196:21 206:11
  219:19
marked 11:10
  36:7 104:16
  112:17 123:24
  139:18 141:9,14
  153:5 159:7,9
  163:2 167:7,12
  173:6 176:6,10
  177:15 178:4
  180:23 182:2
  183:6,17 188:19
  196:23 202:23
  206:16 214:25
  220:4,7 230:25
  237:11 244:18
  245:4,15 247:17
married 191:10
martine 229:11
master 71:25 72:7
  72:15
matter 253:14,22
  255:9
max 151:22 152:1
mbo 227:22
mean 12:15 16:22
  19:16 21:13 22:22
  35:5 47:12 52:23
  58:20 78:1 79:7

124:15 142:18
  155:20,23 209:8
meaning 12:22
means 43:17 78:6
mechanisms 36:3
media 2:18,20
  21:16,23,25 30:16
  32:24 33:3,22
  79:19 129:1
  158:23 160:1,12
  160:21 161:4,13
  161:22 162:5,12
  163:6 164:11,24
  165:7,16,25 166:8
  166:16,23 194:11
  195:4,10,15,19
  214:6,7 225:10,14
  225:19,23,25
  226:12,15 227:8
  231:11,14,23
  232:2,5,11 238:17
  238:20 239:5,6
meet 152:1
member 25:10
  26:5,14,21 109:12
  114:7
members 24:21
  27:6 143:23
  250:14,20,22
  251:1
memory 20:25
mentioned 7:9
  15:17 22:13,13
  23:10 26:17 29:3
  29:12 147:16,18
  229:18 251:8
mercury 240:25
merged 61:9,11
mess 86:4
messed 106:4

met 151:17,17
microphone 5:21
middle 18:24
  58:19 68:24
  183:24
midnight 34:8
  73:1,2,8,13,16
  74:3,7,18,23 75:1
  75:4
million 44:12
  50:14 119:11
  122:3,12,17,18
  128:5 133:20
  136:9 141:20
  144:23 147:2
  149:13 206:23
  207:8 234:23
mind 5:23 11:23
  34:10 140:14
  200:6
minorites 81:24
minorities 54:22
  56:10
minority 58:2
  69:16 71:7
minute 147:7
  219:22,24
misguide 124:2
misguided 123:22
  123:24 124:6,19
  124:21 125:2,5,11
  125:16 126:2,3,6
  126:18
missing 237:24
mission 225:19
missionary 225:10
  225:19,23,25
misspoke 233:20
mlb 1:6
model 28:19

moment 115:22
money 187:22
  209:7 210:1,5
  227:18
month 93:5
  174:20 196:1
monthly 196:4
  227:2,4
months 18:5 34:16
  50:10,12 52:20
  63:22 69:10 70:5
  70:7,14 72:18
  74:1,2,21,23 82:18
  83:3,7 84:15
  86:18 123:12
  125:20,22 126:13
  144:24 147:5,15
  149:12 150:2,4
  188:4
morning 5:8,14
  7:9
mountain 77:15
mouse 237:25
move 177:16
  183:19
moved 184:2
moves 179:21
multiple 34:23
  134:13
music 16:24
musina 151:22
  152:1,7,10,13
mysteries 146:17

**n**

n 5:1
nail 125:17
name 7:10,13 15:6
  20:3,20 23:17
  26:9 40:19 45:24
  51:19 56:14 59:17
  86:6 146:7 169:15

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[name - okay]**                                                      Page 25

198:14 229:18
234:2 249:25
**named** 191:6
205:1
**names** 13:20 20:17
33:20 52:2 64:22
64:25 75:15,23
77:23 82:1 85:24
86:2 117:10
121:22 127:18
135:17 136:1
146:4 251:8
**national** 245:5
**nature** 191:15
**need** 5:14 6:1,3
34:18 36:22
115:13 153:10
176:2 183:17
184:3,13 197:8,12
200:3 243:1
**needed** 197:1
**needs** 55:3 78:24
86:19,22
**negi** 33:21 143:25
225:17,22
**negi's** 225:20
**neglected** 101:6
**negotiated** 89:16
143:9 148:25
149:8
**negotiating** 62:21
213:13
**negotiations**
134:13,16
**network** 196:14
**networks** 145:6
**never** 20:19 24:2
**new** 16:13,16
30:24 32:23,24
33:3 142:22

**night** 73:9
**night's** 10:16
**nondisturbance**
214:6
**normal** 181:22
**north** 87:2 149:13
**northern** 1:1
**northwest** 227:22
**note** 102:25 107:6
109:9 196:25
**notes** 88:17 95:10
98:4 106:9,14,17
112:1
**notice** 2:4 11:8
12:2,6 31:17
162:4 166:15
171:23 189:11
**noticing** 253:21
**notified** 178:25
**november** 36:12
37:4,25 88:4
103:1,12,19 104:3
106:8,13,15,19,23
112:14,22 115:5
117:20,21 138:19
139:4 141:5,8,19
154:22 183:10
184:23 185:9,14
186:18 187:4,6,18
188:6
**nsf** 241:21 242:6
**number** 30:10
74:14 106:14
178:9 180:7,20
182:6 183:11,13
189:6 197:4
200:15 201:3
215:14 216:7
231:5 239:22
243:5 244:12
247:1,8 248:21

**numbering** 106:4
**numbers** 159:2
189:25 215:20
**nxlve** 230:2
249:15

**o**

**o** 5:1
**oath** 8:6,8
**object** 90:22
125:19,23 148:9
178:5,13 180:2,12
181:7,13 182:17
182:22 183:2,12
**objection** 5:25 6:1
6:20 36:21 94:19
103:6 138:21
139:6 176:8
193:23 198:16
**objections** 6:16
116:8,12 117:15
117:24 118:8
174:21 210:14
**obligation** 253:15
255:10
**obtain** 193:10
204:24,25 205:19
207:7 217:4 218:3
219:1,10 223:1,8
**obtained** 212:3,7
212:15
**obtaining** 213:21
214:5 222:18
224:17
**obviously** 35:7
**occupies** 13:12
**occupy** 13:24
**occur** 86:20
**ocga** 253:8,9,23
**october** 239:18,24
244:10,14,19
246:1

**offhand** 42:24
56:16
**office** 3:14 31:2,10
31:12,17 32:18,25
33:4,7 34:1 41:7
41:10,17 179:21
179:22,22 181:18
**officer** 255:13
**oh** 37:8 185:6
196:6 200:19
225:7 228:20
238:2
**okay** 10:1,11,14
10:18,21 11:1
12:9 17:5 18:1,25
19:5,10 20:7 22:1
36:9,24 37:17,22
38:3 43:10,13,20
44:21 49:16 57:17
60:6 63:8 68:1
73:7 79:16 81:10
83:6,13 85:24
88:1 95:9 98:3
103:15 117:2
124:25 141:8
143:12 149:4
150:15 153:1
155:19 167:6
168:6 175:19
181:23 185:13
188:9 189:14
190:19 191:4,19
197:15 199:4,16
199:25 200:8,18
200:23,25 201:6
203:19 204:22
205:9 206:18
209:18 210:19
212:23 213:4,12
214:23 215:12
216:17 217:3

Jonathan Lee Smith                                               March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[okay - pages]                                                          Page 26

219:1 220:6
222:25 225:7,7,19
226:25 228:10,22
229:6 230:6,10
231:8 232:19
234:10 237:13
238:2,12,25
239:14 240:2,14
241:8,11,17,19
242:5,18,20,25
243:3,12 244:17
246:1,23 247:4,16
248:17 250:8
251:9
**old** 144:9,21
145:13 147:1,11
147:18,24 148:6
149:20
**older** 113:18,23
**once** 24:9 29:20
65:18 67:12
**ones** 145:25
**ongoing** 82:13
84:10
**ongoingly** 148:14
**online** 185:17
186:19 187:7,16
188:5 201:16
202:9 233:9
234:11 236:5
243:17,22 246:2
247:19
**open** 187:23
251:11
**opened** 187:21
190:10
**operating** 181:8
182:18 183:1
**operation** 15:20
**operational**
178:23

**operations** 15:25
25:20
**opportunity**
112:19 150:21
151:7 251:22
**order** 2:23 78:24
86:20 172:16
173:1,22 174:18
206:22 238:16
251:12
**ordering** 254:4
**org** 29:9 245:17
**organization**
197:3,24
**organize** 190:20
**orient** 230:22
237:18 239:19
244:11
**original** 39:21
79:2
**originally** 23:22
60:3 77:1 80:25
187:14,23
**orsat** 171:16
198:22
**outcome** 255:8
**outs** 19:15
**outside** 113:2
140:3 143:18
249:24
**outstanding**
205:10
**overseas** 146:6
**oversee** 21:15
25:20
**overseeing** 16:13
16:16 17:6,14
28:17
**owe** 210:5
**owed** 39:17 227:18

**owes** 209:7
**owned** 31:5
**owner** 26:6 46:9
46:10 56:7 64:17
66:17 69:14 72:5
73:12 75:19 81:18
85:13 118:22
121:13 127:5
133:2 135:6
**owners** 49:22
54:21 56:8 57:25
64:25 66:22 71:5
73:13 75:24 77:23
79:22 81:21 85:17
85:25 118:25
121:15 131:8
135:10
**ownership** 42:3
54:23 56:11 58:3
62:1,4,23 77:19,20
79:23 81:25 84:3
84:6 85:14 86:3
118:23 124:8,10
127:8 129:19
**owns** 75:21 121:11
129:15 133:1
**oze** 91:18 92:4,15
92:18,21,25 93:6
93:11,14,21,25
94:11,15 202:24
211:14,21 212:3,8
212:15

| p |
|---|

**p** 5:1
**p.m.** 87:22 115:18
140:19 190:23
230:14 252:3
**pacitti** 3:14 10:22
10:23 29:3 212:25
213:12,21 214:5
214:14 216:8,19

**owes** 209:7
**pacitti's** 213:4
227:12
**page** 2:2 3:2,19
37:18,19 88:6,12
103:15 105:23
106:2,5,8 123:23
123:24 137:8
141:9,14 152:21
152:24 153:2,8,12
154:1 155:15
156:10,18 157:3
157:11 159:9
160:9 163:19
164:19 168:16,24
169:7 176:5 177:5
177:10,12,15,19
178:3,3 179:5
182:4 183:6,8,14
183:17,18,23
184:16,20,20
185:1,2,10 188:25
196:25 199:22
200:1,10,11,15,18
200:20 201:7,10
201:11 202:19,22
202:23 206:12
215:8,9,12 216:17
220:8 221:17
230:25 231:3,9,10
231:17,22,22
238:12 239:24
240:2,3,14 241:10
241:15,17,18
242:6 243:8,9,12
244:14,17,18
245:4,15 247:11
247:13,16,17
248:24 249:3
**pages** 105:1
139:22 167:10,11

Jonathan Lee Smith                                                March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[pages - peurach]                                                Page 27

173:4 177:4,9
215:3 220:12,15
221:9
**paid**  19:19 106:18
106:23 107:14
145:8,17 194:17
194:20 195:20
196:3,3 209:23
210:1 226:1 227:3
**pandemic**  29:14
29:18,21 55:6
56:18 62:12 65:3
67:2 68:22 124:22
142:19 181:21
**paranormal**  56:3
56:4,6,9,12,17,22
57:1,3,7,15 75:9
81:8
**pardon**  33:13
51:23 144:13
**parentheses**  88:22
**park**  21:23
**parks**  21:14,16,16
**part**  19:12 175:6
196:18
**partially**  75:20
**participation**
81:25
**particular**  38:23
**parties**  127:11,13
127:15 253:23
254:4 255:13
**partner**  43:6
151:25 186:1
208:13
**partnered**  208:17
**partners**  1:4 5:10
7:12 95:2 173:2
229:15
**party**  38:7 40:18
40:21 127:11

153:9,13,18,22
154:8,19 155:5
156:11 196:14
214:15 253:16,24
255:7,11
**passed**  93:8
**password**  254:3,4
**paused**  55:5 65:3,4
65:5 67:1 68:21
124:22,23
**pay**  141:19 145:18
206:22 207:7
209:19 225:22,23
226:9,10,25 227:1
240:16
**payable**  88:16,17
88:20 91:15 95:9
95:10 98:4 102:1
106:10,12,15,17
106:21 107:6
109:9 112:1
138:11
**payables**  106:9
**paycheck**  220:9,24
**paydown**  246:3
**paying**  187:19
225:22 226:3
**payment**  92:25
93:6 144:25
145:11,14 157:15
170:16 201:25
202:11,25 203:9
203:12,21 204:5
204:14 227:2,4
234:1 240:25
241:1,23 242:8
246:13 248:6,7
249:15
**payments**  92:21
161:4 195:15,19
209:12 231:13

**payroll**  88:24 91:9
91:9,12,12 101:16
**pays**  225:25
**peachtree**  4:7,16
**pearl**  114:11
137:10
**pedro**  13:23 25:4
26:17
**peg**  44:13
**pellex**  155:6 245:6
**pending**  9:23
147:6
**people**  17:18,20
19:17 29:19 33:18
135:1
**people's**  33:9
34:24 35:11
**pepper**  4:6 5:9
7:11
**percent**  15:10 58:7
58:7 62:2,2 69:14
77:22 85:19,22
124:11 127:12
**percentage**  14:18
14:24 54:23 56:11
58:3 62:1,4 64:20
66:18 75:21 79:23
81:19 84:6 85:14
118:23 127:8
129:19
**perform**  24:7
**period**  28:11
119:22 122:11
125:18 186:23
196:1
**periods**  122:15
**perkins**  15:5,8
24:24
**person's**  35:9
**personal**  116:9,13
138:21 139:6

189:10,19,21
191:12 250:5,12
251:2
**peurach**  3:20 4:4
5:8,9,14 6:25 7:8
7:10 10:10 11:11
11:17 15:9 20:21
36:8,25 73:6
87:17,25 90:15,17
90:24 92:9 94:6
94:22 95:16,24
96:7,15,23 97:7,15
97:24 98:9,17,25
99:8,16,25 100:9
100:18 101:2,11
101:20 102:5,13
102:21 103:10,23
104:9,17 105:18
107:2,10,18 108:2
108:12,21 109:5
109:19 110:2,10
110:19 111:3,12
111:21 112:8,18
113:5 114:15,24
115:20,25 116:15
116:22 117:1,7,8
117:17 118:1,10
125:21,25 135:23
137:14,23 138:6
138:14,24 139:9
139:19 140:6,10
140:16,22 141:24
142:7 148:10
153:6 154:4,15
155:1,11 156:6,22
157:6 158:1,10,14
158:20 159:8,13
159:21 160:5,16
160:24 161:8,17
161:25 162:8,16
163:3,15,23 164:6

EXHIBIT L
PAGE 750

Jonathan Lee Smith                                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[peurach - ppp]                                                              Page 28

164:15 165:2,11
165:20 166:3,11
166:19 167:2,13
167:19 168:2,12
168:20 169:3,20
170:3,12,21 171:4
171:12,19 172:2
172:10,21 173:9
173:18 174:2,23
175:13,20 176:11
176:19,24 177:6
177:11,20,24
178:8,15 180:5,14
180:24 181:9,15
182:3,19,23 183:4
183:16,21,25
184:12,18 185:8
185:12 188:15,20
190:19 191:3
192:3,11,21 193:5
193:14,24 194:7
194:25 196:24
198:2,9,18,25
199:12 201:7,9,21
202:3,14 203:3,15
203:25 204:10,18
205:5,14,23 206:6
206:17 207:1,11
207:19 208:5
210:13,18 211:1
211:10,17,24
212:11,19 213:8
213:17 214:1,10
214:19 215:1,18
215:22 216:2,13
216:24 217:8,15
217:23 218:7,14
218:22 219:5,14
219:21 220:5,20
221:4,13,22 222:5
222:13,21 223:4

223:12,20 224:3
224:12,20 230:10
230:17 233:13,22
234:6,18 235:4,15
236:1,12,23 237:7
237:12 239:10
240:10,20 241:4
242:2,14 244:6
245:1,12,23 246:9
246:19 248:2,13
249:11,19 251:9
**physical** 16:13
**physically** 124:16
**piece** 62:23 105:6
  146:5 183:18
  184:3,13
**pieces** 17:1 220:13
**pinpoint** 230:23
**place** 27:14 28:23
  29:1,18 33:6
  34:24 45:15 77:14
  78:24 134:13
  149:9 253:22
**places** 220:13
  237:17
**plaintiff** 1:5 2:3
  4:2
**plan** 65:21 134:24
  135:11 136:2,5,12
  136:16 137:1,5
**planes** 135:2
**plans** 45:15 55:7
  56:24 62:16,20
  65:7 67:4,15,24
  80:15 82:11 120:3
  125:11,16 126:5
  126:11 130:14
**play** 152:13
**playing** 60:19
**plead** 112:2

**please** 5:6 7:13 9:4
  9:15 13:21 16:6
  32:14 48:8 90:14
  92:17 175:4,11
  176:14 184:14
  219:24
**plug** 23:8
**pluto** 143:18
**pocket** 132:10,14
  132:14,22 133:12
  133:22 134:3,11
  134:22
**point** 1:4 5:10 7:12
  7:21 8:2 16:8
  22:20,22 23:2
  29:24 31:16 48:23
  49:2 55:17 58:17
  60:12 65:16,24
  66:3 67:10,18,20
  68:1 70:11 76:8
  76:14 78:21,23
  79:1,5 83:3 86:15
  90:12,18 91:2,6,10
  93:23 94:2 95:5
  97:12 100:6 103:2
  103:20 108:7
  110:25 119:15
  122:20 123:3
  125:4,14 128:6,10
  130:9 131:15,24
  133:21 134:1
  136:10,14 138:19
  150:17,18,24
  151:2,8,18,20
  152:11,14,19
  153:21,23 156:19
  157:1 158:5
  159:18 163:7
  167:23 173:2
  177:23 192:18
  193:10 205:10,19

207:16 208:2
213:1,5,14,23
214:16 216:9,19
218:3 232:7 233:5
233:8 238:5 239:7
243:15 247:19
**points** 145:2,8
**porta** 155:6 245:6
**portion** 11:16
  36:21 207:24
  208:1 239:20
**portions** 36:15
**position** 26:1 29:7
  45:18 77:18,20
  251:20
**possible** 47:17
  184:15
**possibly** 122:9
**post** 47:11,12
  56:19 66:25 82:10
  226:24
**posted** 215:14
**postponed** 56:18
  130:3,4 228:9
**postproduction**
  34:4,11,15 47:13
  55:4,5,8 56:20,25
  62:9,15,17,22,25
  63:2 65:4 67:1,5
  68:20,21,24 69:2,5
  69:7 73:17,18,21
  82:13,16 84:9,10
  84:13,20,24
  124:23
**potential** 152:14
**potentially** 62:23
**ppp** 3:15 102:1
  138:10 219:1,10
  222:1,9,18 223:1,8
  223:17,24 224:8
  224:17

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[practical - provide]                                                    Page 29

| | | | |
|---|---|---|---|
| **practical** 184:17 | 139:7 142:6 | 177:13 180:17 | 174:19 181:25 |
| **practice** 244:1 | 172:20 173:13,15 | 194:16 199:20 | 194:12 208:13 |
| **prank** 85:10 | 173:17 174:1 | 206:20 215:4,21 | 209:6 215:18 |
| **preexisting** 143:1 | 188:13 193:22 | 253:25 | 224:9,25 226:24 |
| 148:13 | 210:12,15 213:7 | **producer** 45:1,2 | 228:17 229:3,12 |
| **premiere** 33:12,14 | 213:16,25 214:9 | 46:9 53:20,21 | **productions** 35:18 |
| **prepaid** 114:11 | 214:18 216:12,23 | 54:7 56:7 61:21 | 35:19 107:7,15,24 |
| **preparation** 10:19 | **probably** 8:24 | 64:15 75:12,13 | 108:7,17,17 109:1 |
| 11:2,5 | 18:5 | 85:13 118:22 | 142:20,22 143:1,6 |
| **prepare** 10:15 | **problem** 9:21 | 124:7 133:7 | 148:19 190:10 |
| 38:9 | 200:7 | 228:23 229:19,21 | 208:12,17 209:1,4 |
| **prepared** 38:3 | **proc** 245:17 | **producers** 51:14 | 209:14,15,19,23 |
| 105:14 113:1 | **proceed** 117:2,5 | 51:15 56:8,15 | 210:2,5,9,23 211:7 |
| 140:2 | **proceeding** 4:25 | 57:25 64:22 75:16 | **professional** |
| **preproduction** | 253:2,24 254:3 | 79:22,25 80:4 | 151:15,16 152:9 |
| 48:16 124:24,25 | 255:6,13 | 83:22,24 86:5 | 253:16 255:10 |
| 130:5 | **proceedings** | 119:2 120:21,24 | **program** 220:9,25 |
| **present** 4:24 5:6 | 253:13 | 121:20 127:17 | **programs** 160:10 |
| 142:16 144:5,17 | **proceeds** 113:22 | 129:24 131:4 | 160:11 162:24,25 |
| 149:19,23 | 207:24 208:2 | 135:13 226:16 | 164:20,23 |
| **presented** 253:2 | 222:9 223:9,25 | **produces** 21:7 | **prohibited** 253:22 |
| **president** 13:9,12 | 233:4,8 | **producing** 23:14 | **prohibitions** |
| 14:2,13 | **process** 34:12 | 53:19,23 60:16 | 253:10 |
| **previous** 53:18 | 62:21 198:13 | **production** 12:13 | **project** 17:24,25 |
| **previously** 24:22 | **procure** 174:11 | 12:15,19 13:5 | 25:21 30:6,6,7,7 |
| 30:21 31:1 140:24 | **produce** 82:7 90:4 | 16:3,12,13,16,17 | **projects** 16:14,16 |
| **primarily** 27:12 | 92:12 94:11,16 | 16:21 17:6,14 | 16:18,21 25:16 |
| **principal** 89:2 | 97:3,20 100:15,24 | 20:2,4,13 21:4,22 | 28:10,10 30:12 |
| 91:25 109:23 | 108:18 109:1 | 21:25 22:18 23:11 | **proof** 75:7,11,19 |
| 155:24 195:4,10 | 111:8,17 127:4 | 23:18 30:15,17,24 | 75:24 76:1,6,9,15 |
| 195:14,19 217:19 | 129:21 159:18 | 34:18 42:3,4,5 | 76:18,22 81:9,11 |
| 231:11,14 | 168:8 173:24 | 43:14 45:6,16,21 | **property** 31:5,8 |
| **printout** 206:20 | 174:7,15 175:22 | 45:25 49:2,5 54:4 | **protected** 254:3,4 |
| 237:16,19 | 188:12 193:21 | 56:25 60:11,20 | **protection** 220:9 |
| **prior** 16:18 24:18 | 210:10 | 62:10,14 67:16,22 | 220:24 |
| 25:24 91:5 93:22 | **produced** 30:21 | 68:2 74:6,11,12,18 | **provide** 57:10 |
| 95:5 152:4,11 | 36:5,11 43:17 | 78:8 82:3 83:4 | 90:3 94:10,14 |
| 153:22 | 57:24 61:20 82:6 | 121:18 124:12,17 | 97:2,19 100:13,22 |
| **privilege** 94:5 | 82:19 104:23 | 124:19 126:1,5 | 108:16,25 111:7 |
| 112:6 116:9,13,14 | 105:3 131:3 133:6 | 133:5 145:22 | 111:16 157:1 |
| 117:14 138:22 | 135:5 175:10 | 146:22 149:2 | 158:5 159:17 |

Veritext Legal Solutions

EXHIBIT L
PAGE 752

Jonathan Lee Smith                                              March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[provide - record]**                                                    Page 30

167:23 177:14
178:1 188:9
193:18 210:8
222:17 224:16
226:18,22 253:21
**provided** 37:12
108:9 159:3 163:7
168:6 199:24
232:7 238:5
**provider** 28:11
**providing** 21:15
225:14
**pull** 140:10
**pulled** 23:8 177:12
**purchase** 22:10
**purchased** 128:24
**purely** 16:6
**purpose** 22:11,17
22:17 23:25 77:2
109:15 113:16
159:25 164:10
169:24 179:25
181:5 182:14,24
194:20 223:16
**purposes** 7:17
19:19 180:10
181:12
**pursuant** 4:21
144:21 154:11,21
155:7 160:21
161:4 165:7,8,17
170:8,17 195:21
211:6 239:5
**put** 29:17 39:16
62:14,15 88:2
89:21 93:13 96:19
99:20 107:22
110:14 140:25
187:22 204:22
208:11 222:25
237:25 239:14

242:18
**putting** 188:21
251:16

**q**

**q1** 122:24
**q2** 42:21,23
145:15
**q4** 18:6 122:23,23
122:24
**quarter** 145:17,18
**quarterly** 145:10
196:5 231:13
**question** 6:17 8:25
9:5,15,16,22,24
16:10 17:9 24:6
32:20 33:1 36:17
43:25 47:5 70:3
73:20 78:3 92:17
101:6 103:18
115:7,21 120:18
120:22 125:24
132:18 147:13
148:1 177:18,22
183:18 197:13
212:5 216:10
230:24
**questions** 9:1,2
112:3,7 117:22
158:17 230:12
253:25 255:5
**quick** 11:19 24:11
141:1 190:20
201:8
**quickly** 8:23 173:4
**quite** 87:19

**r**

**r** 4:13 5:1
**ran** 209:11
**range** 139:20

**rawdin** 229:2
**reach** 101:16
**ready** 115:19
**real** 11:19 24:11
141:1 184:6 201:8
**realistically** 59:4
**realize** 152:20
201:13
**really** 176:9 227:4
229:7
**reason** 8:12 9:3
14:11 19:20
134:10 195:14
**recall** 23:15,17
29:24 39:18,21
42:16 56:14 74:15
89:2 91:25 92:3
93:2,5 95:4,20
96:3 123:1 129:18
131:21 133:9
195:12 228:4
**receivable** 39:15
157:15
**receive** 50:9 54:2
55:18 58:22 59:7
63:16,21 65:13,17
66:1 67:11 68:3
69:25 70:8,13
71:13,16 74:19
76:9 78:19,25
80:12 83:7 86:25
97:11 119:16
123:4 130:11
144:20 145:2
195:9 208:25
209:3 222:1 225:8
251:13
**received** 35:17
42:9,17 46:17
48:20 50:5 52:12
55:10 58:14,18

65:10 74:13,15
76:5 78:16 90:11
90:21 119:13
122:5,12,16,21
125:1 128:7
131:16,22 136:11
144:4,16 149:19
149:22 160:20
162:4 165:6
166:15 170:7
171:23 175:4,9,24
209:5 210:22
222:10 241:22
242:7 251:15
**receives** 53:6
253:24
**receiving** 63:12
86:20 123:10
147:4,19 165:16
**recess** 87:22
115:18 140:19
190:23 230:14
**recipe** 126:25
127:3,20,21,25
128:8,12,19,25
129:4,8 164:21
**recognize** 36:17
37:22 105:4,9
112:21 153:1
159:5 163:10
167:14 178:3
215:7 220:16
**recollection** 20:24
**record** 5:2,7 7:1,3
7:4,5,14 9:25
11:15 16:11 27:2
37:16 41:16 73:5
87:20,24 115:15
115:16,17,23,23
116:25 140:13,18
140:20 158:15,18

Veritext Legal Solutions

EXHIBIT L
PAGE 753

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[record - revenue]                                                      Page 31

175:2 177:3
181:17 183:13
190:22,25 215:19
215:22,23,24
216:1 219:22,24
219:25 220:1,3
230:11,13,15
251:10,20 252:2
253:13,15,25
255:6
**records** 38:9
**recouped** 76:12,15
86:23
**recoupment** 79:2
86:24 87:3
**reduced** 255:5
**reduces** 146:20,22
**refer** 7:24 16:5
45:22
**reference** 101:17
114:12,21 196:6
204:5,15 242:5,8
245:6 247:1
**referenced** 142:3
147:7 156:18
157:2 158:6 190:7
**references** 154:19
156:14
**referred** 158:18
**referring** 8:1 16:7
149:6 152:22
158:15 184:4
231:14
**reflect** 77:4 176:20
179:18
**reflected** 38:22
40:3 60:25 61:12
88:8,21 102:25
103:3,20 104:5
106:15,21,22
109:9,10 139:5

154:1 161:14
162:20,22 177:14
179:5 221:1,8
**reflects** 29:9 88:13
129:10 186:17
**refresh** 20:23
**regard** 175:24
**regarding** 112:3
143:17 158:17
**regards** 12:3
**regulations** 4:22
253:7
**related** 29:14
31:21 38:10
113:18 150:8
186:10 189:22
190:4 195:20
232:6
**relates** 91:2
232:20
**relating** 254:3
**relation** 196:13
**relationship** 25:12
40:20 151:13,16
152:3 171:16
191:13 196:17
198:22 226:14
253:14 255:9
**relative** 255:7
**remainder** 206:19
**remaining** 210:1
230:11
**remember** 20:5,16
20:19 21:1 33:20
34:6,9 40:19
42:12 51:19 70:2
80:25 82:1 85:16
85:23 86:2 89:5,7
89:24 92:2 93:20
128:4,6 131:7
135:17,18,24,25

145:20 146:3
150:25 187:22
188:8 195:25
199:7 208:23
209:21 210:3,7
227:17,20 229:22
232:4,9,13
**remitter** 207:6
**remodeling** 72:1,3
**remote** 1:13 33:15
**remotely** 33:9,11
**renting** 40:23 41:1
**repaid** 89:12
92:18 110:6
218:11
**repay** 208:2
**repeat** 115:21
125:24 135:20
**rephrase** 17:12
32:19 43:25 73:20
92:17 120:22
147:13
**report** 25:20
253:14
**reporter** 4:24 5:17
6:3,6,19,24 9:2,12
15:6 92:5,8 94:18
103:6 116:11,21
135:20 173:14
175:6,17 253:1,4,9
253:11 254:1,2
**reporting** 4:22
253:7,21
**repository** 254:4
**representations**
253:5
**represented** 176:4
**request** 90:9,19
93:25 100:4 108:7
110:23

**requested** 252:4
**requires** 174:19
**reserve** 6:15,16
**resign** 14:2,7
**resignation** 14:11
**resigned** 13:20
**respect** 16:17
26:20
**respective** 19:13
226:5
**responsibilities**
16:3,11 25:17
27:9
**responsiveness**
6:17
**rest** 123:8
**restate** 90:15
210:13
**restrained** 172:17
**restructure** 14:9
27:23
**restructuring** 25:7
25:8 27:12 28:13
**result** 29:16,18
128:19 144:17
195:10,16
**resume** 55:7 56:24
62:17 65:7 67:4
**retained** 105:8
106:1
**return** 241:21,21
242:6 245:17
**rev** 127:10
**revenue** 76:13
81:24 126:10,12
126:15 127:13,16
142:16,25 144:20
145:1,4 147:16,19
147:22 148:12,14
149:10,11,17,21
149:25 150:3

EXHIBIT L
PAGE 754

Jonathan Lee Smith                                      March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[revenues - secretary]**                                            Page 32

| | | | |
|---|---|---|---|
| **revenues** 105:7 106:1 | **ring** 20:11 45:24 120:10 | 136:23,24 142:17 142:18 143:1,17 | 155:17 158:23 160:1,12,20 161:4 |
| **review** 11:4 253:3 | **river** 102:1 219:2 219:10 222:2,10 | 143:21,23,24 145:5 225:2,3,11 | 161:13,22 162:5 162:12 185:9 |
| **revive** 80:15 | **rmr** 1:19 255:19 | 225:14,17 226:7 | 188:21 189:1 |
| **reyes** 15:4 24:24 | **road** 4:16 | 226:24 229:8 | 214:6 215:2 |
| **right** 5:20 6:9 8:5 | **rob** 250:19 | **salesperson** 47:4 | 237:23 |
| 8:17 9:25 10:2,3 | **robert** 13:22 15:4 | **sanders** 4:6 | **screw** 46:6 |
| 12:7 19:2,8 20:16 | 26:3 114:6 | **sarah** 17:23 18:1 | **scroll** 11:19,22 |
| 24:11 30:5,24 | **robinson** 1:20 | 228:10,13 | 36:19 104:18 |
| 35:21 37:5,11,14 | **role** 13:3,4,6,12 | **savings** 38:16,17 | 105:9 139:21 |
| 39:5,14 41:1 43:8 | 15:19,24 16:17 | 38:21,23 113:10 | 163:9 173:4 176:3 |
| 43:18 47:14 48:7 | 25:22 26:12,19 | **saw** 37:1 77:7 | 184:21 206:18 |
| 49:14,16 52:3 | 53:23 60:19 82:2 | 106:19 | 239:17 |
| 54:11 55:15,16,22 | 82:5 121:17 133:5 | **says** 39:14 101:16 | **scrolling** 173:8 |
| 55:23 58:20 60:2 | 151:19 152:13 | 102:17 155:23 | 185:1 |
| 61:14 63:6,7 | 196:19 226:5 | 169:9 176:9,17 | **se2** 46:2,15,18,21 |
| 65:20,23 66:1,8 | 228:16 | 178:9 185:3,9 | 46:25 47:7,16,23 |
| 67:17,20,24 68:9 | **roles** 124:12 | 189:4 197:4 | 48:4,11 68:15 |
| 74:24 78:25 80:5 | **room** 10:2,8,11 | 201:10 203:21 | **se3** 48:1,4,6,11 |
| 81:11 83:8,11 | **rpm** 76:25 | 206:22 207:5 | **season** 48:5,5,5,6 |
| 85:1,8 87:17 | **rpr** 1:19 255:19 | 231:5 237:20 | 48:14,21,25 49:3,6 |
| 104:13,25 105:23 | **rugby** 129:12 | 238:15,18 239:24 | 49:8,12 68:17,18 |
| 114:8 115:16 | **rules** 4:21 8:21 | 240:15,25 241:21 | 69:16,17 146:10 |
| 117:23 132:20 | 253:7 | 243:4,9 244:12,14 | 169:10 |
| 139:25 142:21,23 | **run** 180:3 | 245:16 247:12 | **seattle** 121:5 |
| 144:19 147:19 | **runner** 16:21,23 | 248:6 | 191:11 |
| 149:5 150:19 | **running** 17:2 | **sba** 102:9 155:16 | **second** 36:13 |
| 151:3 153:1,7,12 | **runs** 225:17 | 155:16,19,23,25 | 37:19 42:13 47:9 |
| 173:10 179:6,14 | **rusan** 249:24 | 156:3 | 59:3 68:17,18 |
| 180:15 181:3 | **ruslan** 38:5 61:7 | **schedule** 47:11 | 83:13 93:3 103:15 |
| 182:12 184:19,21 | 226:3 250:1,2,2 | 195:22 | 105:6 115:13 |
| 189:19 194:13 | 251:7 | **scott** 227:9 | 122:8 146:10 |
| 196:12 202:7,18 | | **screaming** 129:10 | 154:8 173:7 187:1 |
| 209:16 212:23 | **s** | 129:11,14,22 | 187:2 199:23 |
| 223:8 225:1,9 | **s** 4:4 5:1 | 130:1,6,11,15,17 | 202:19 215:9 |
| 228:18,20 229:11 | **s1** 132:14 | 130:21 | 221:17 238:15 |
| 230:18 238:4 | **safe** 35:10 | **screen** 2:18 7:2 | 240:3 241:18,19 |
| 243:3 244:9 | **sale** 128:17,19,22 | 11:12 36:13 37:1 | 243:4 249:3 |
| **rights** 78:8 150:5 | 129:2 | 88:3 112:15 | **secretary** 3:9 |
| 157:15,16 | **sales** 30:14,19 | 140:25 152:18 | 197:2,16 |
| | 44:20 69:9 70:2 | | |

Veritext Legal Solutions

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[section - sheet]**                                    Page 33

**section**  38:15
  106:7,12 164:19
  169:9 198:13
  253:8
**sections**  253:9
**security**  2:17
  90:10,20 94:1
  100:5 110:24
  152:18
**see**  11:13,16 37:6
  37:8,9,20 38:18
  47:15 48:24 50:12
  52:15 54:14 83:15
  88:13 95:11 103:4
  103:7,8,12,13,14
  104:22 105:1
  116:19,20,20,22
  132:11,13 136:21
  141:2,6,7,11,12,16
  152:21,23,24
  153:9,11,15
  155:16,21 156:1
  156:12,15 157:11
  157:12,17 158:25
  159:1 163:9
  164:21 169:12
  173:5 176:7,17
  177:9 178:6,6,7
  180:21 182:7
  183:11,13,17,20
  183:22,23,24
  184:1,4,10,16,17
  184:24 185:2,4,9
  185:15,19 187:8
  189:2,7 196:6
  197:2,21,24
  198:15 200:1,2,11
  200:16 201:4,13
  201:17 203:10
  206:14,18,22,23
  215:9,15,20

230:24 231:1,6,18
231:22,25 232:24
233:1,10 234:13
234:23 235:10,21
236:7,18 237:20
237:21,23 238:1
238:10,18,23
239:21,25 240:5
241:15 242:9,25
243:2,3,6,10,18,23
244:15,20 245:6
245:18 246:4,14
246:25 247:2,8,12
247:14,21 248:8
248:19,21,25
249:4,5
**seeing**  16:15
  146:17,18 185:6
**seeking**  14:11
**seen**  11:21 20:10
  23:20 173:10
  197:6,11,14
**sees**  177:11
**sell**  30:21 44:3
  45:18 47:22 49:11
  51:3 53:9 55:24
  57:14 59:20 62:24
  64:1 66:9 68:11
  70:21 71:21 72:23
  75:4 76:21 79:13
  80:18 85:1,5
  87:10 120:6
  123:19 126:21
  129:7 130:20
  132:7 134:21
  137:4 225:5,14
**selling**  142:20
  148:20,21
**senner**  13:22 25:4
  25:11 33:21 35:17
  179:12 248:7

250:17,18
**senner's**  179:18
**sense**  61:10
**separate**  23:5
  60:10 61:4,5,8,9
  157:17
**september**  103:3
  150:18,24 152:20
  197:20 207:8,15
  231:3 233:19
  234:11,22 235:9
  235:19 236:5,16
  239:17 242:22
  243:9,14,16 247:5
  247:13,18,24
  248:5
**series**  20:18,20
  39:7 41:25 42:2,4
  44:23 46:4,5
  49:18 51:9,10,13
  51:21 52:9,13,16
  53:6,14,16,23 54:3
  54:8,17 57:19
  59:25 60:1,4
  61:16,19 64:7
  66:14 68:16 69:4
  71:1 72:1 73:3,8
  75:9 77:2,14,17,19
  77:21 79:19,21
  81:8,15,17 82:6
  83:18 85:10,12
  86:22 91:20,21
  92:11 118:19
  121:11,13 125:9
  125:12 127:1
  129:12,15 130:12
  130:15,25 133:6
  134:14 135:1,5,7
  145:22 148:17,18
  169:9,10,16 195:7
  208:18,23 209:1

209:10,15,20
210:2 227:1 228:6
229:20,21
**serve**  255:13
**served**  12:2 22:25
**serves**  239:6
**service**  12:13,15
  12:19 21:17 28:11
  198:13
**services**  21:20
  226:18,23 253:21
**serving**  25:10 26:5
  26:14,20
**set**  22:19,21 23:22
  24:2 60:3 81:5
  187:14
**sets**  12:23,24
**settle**  89:17
**seven**  38:17 81:7
**seventy**  183:15
**shain**  191:6
**shakes**  41:13 95:8
**shaking**  9:10
**share**  76:13
  124:12 127:10,12
  127:15
**shared**  124:11
**shareholder**  14:15
  14:22 15:11 39:15
  102:17 138:2
  141:10,15,20
**shareholders**  15:2
  15:18
**shares**  14:18
**sheet**  36:11 37:25
  88:4,8 102:25
  104:5 105:3 106:6
  106:9,12,13,14,16
  106:23 112:14,22
  112:25 115:6
  116:2 117:21

EXHIBIT L
PAGE 756

Jonathan Lee Smith                                          March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[sheet - small]                                                    Page 34

141:3,5,9,14
180:18 181:1
182:10
**sheets** 120:17
**shift** 142:14
**shoot** 200:19
**shooting** 65:6,7
**shoots** 146:12
**shop** 121:5
**short** 115:14 163:8
**shortly** 82:24
**shot** 126:9 146:6
**show** 11:7,18
16:21,22 17:18,18
23:14,17 36:9
37:6 39:3 41:21
42:10,20,23 43:6
43:15,20,23 44:4
44:13,21,22,25
45:6,13,22,24 46:2
46:8 47:19,23,25
48:3 49:16 50:15
50:22 51:4,6,6,21
53:10,12,25 54:11
54:13,14,16,19,24
55:2,8,11,13,19,25
56:2,3,4,6,9,12,17
56:22 57:1,3,7,15
57:17,23 58:1,9,11
58:15 59:8,12,12
59:21,23 60:11,14
60:17,25 61:1,6,6
61:12,15,22 62:5
62:13 63:13,21,23
63:23 64:2,4,18
65:18,21,25 66:6
66:10,12,16 68:7
68:12,14 70:18,22
70:24 71:19,22,24
72:3,15,20,24 73:1
73:11 75:7,8

76:12,24 77:5
78:9,20,25 79:14
79:16 80:1,3,7,9
80:13,16,19,23
81:1,2,13 83:13,21
85:2,6,8,25 86:16
86:21 87:1,4,7,11
87:14 88:5,7
91:23 92:13 93:18
103:9 115:4,5,9,11
115:11 116:3,4,6
117:9,11,19 118:5
118:7,14,16 119:5
119:7,25 120:4,7,9
120:11,15,21,25
121:3,7,10 122:22
123:5,11,16,20,22
123:23,25 124:1
126:9,18,22,24,25
127:4,6,12 128:8
128:12 129:4,8,11
129:14 130:2,11
130:21,23 132:5,8
132:10,11,20,22
132:23 133:1,5,12
133:22 134:4,18
134:22,24 135:4
135:11 136:3,5,12
136:16 137:1,5
139:13 140:23
146:16 158:21
163:4 167:6
175:25 178:9
180:15 181:23
184:21 188:25
189:4 190:10,10
196:2 200:19,21
200:22,24 206:10
206:13 209:7
215:6 220:6,12,14
225:3 226:4,5,17

226:17 227:3,3
228:1,2,8 231:18
231:19 232:20
239:2
**showed** 199:17
**showing** 172:25
177:5 184:11
196:21 219:18
237:13
**shows** 12:17,20,23
12:24 17:7,14
22:23,24 23:4,5,7
34:3,5,12 36:4
38:23 41:22 44:11
46:22 47:7 115:8
117:9,12,23
143:11,12,15,17
144:9,21 145:13
145:22 146:5,8,24
147:1,11,18,24
148:6,23 149:20
162:20,22 186:11
226:21 227:5
229:25 232:15
243:16
**sic** 153:12 248:24
**side** 77:15 140:12
140:12,25 141:1
204:22 222:25
242:19 251:17
**signature** 159:10
163:19 164:2
168:16,24 198:6
221:17,18 252:4
255:17
**signed** 144:8 149:7
209:9
**signer** 197:23
**signifies** 48:5
**simple** 2:24 3:3
176:7,18 178:11

180:19 200:10
201:2 247:12
**simply** 115:8
147:25
**single** 77:2 196:25
200:9
**siri** 73:4
**sit** 65:20 82:13
84:10 125:17
209:24
**sits** 25:1
**sitting** 8:9 18:10
23:25 52:2 67:19
128:10 130:9,14
131:24 134:1
135:18 136:14
144:19 147:14,21
148:3 149:11
211:5
**situation** 77:9
81:10
**six** 38:21 52:20
63:22 70:4,7,14
74:2,23 82:18
83:3,7 84:15
123:12 144:23
147:4,15 149:12
150:1,4 188:4
**sixth** 202:24
**sixty** 183:14
**slap** 77:12,17 78:5
78:11,13,17 79:10
**slate** 22:19,21,23
**sleep** 10:17
**slice** 184:10
**slope** 77:12,16
78:4,11,13,17
79:10
**slow** 105:2 209:12
**small** 11:16 58:2
69:15 71:7 74:14

Veritext Legal Solutions

EXHIBIT L
PAGE 757

Jonathan Lee Smith    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[small - status]**    Page 35

131:23 215:8

**smith**  1:8,14 3:8
5:5 6:11 7:9,15,16
10:14 12:9 36:15
37:1 88:1 92:6
94:4 98:4 103:13
104:13 106:5
111:25 112:5,12
112:21 116:1,17
117:9 137:7
139:13 140:23
142:12 150:15
152:17 157:10
158:21 163:4
167:6,14 169:7
172:15,25 173:10
174:6 175:21
177:25 180:15
181:23 183:19
184:1,13 188:21
189:5,24 191:5
196:21 199:16
202:19 204:24
206:10 207:6
208:11 212:23
214:23 215:3
216:3 217:3 219:1
219:18 220:6
224:24 230:18
236:6 237:2,13
240:16 241:1
246:2,23 249:23
251:9,23

**smoothly**  8:22
17:2

**snack**  34:8 73:2,2
73:8,14,16 74:3,7
74:18,23 75:1,5

**snow**  17:23 18:1
228:10,13

**social**  79:17,18,19
80:1,6,9,13,15,19

**software**  33:10

**sold**  28:3 143:6

**sole**  46:10 133:2,7

**solely**  253:17
255:11

**soon**  47:17

**sorry**  5:23 6:25
35:19 37:7 41:15
73:20 92:5 116:11
116:12 122:24
135:20 158:14
173:14 177:6
184:5 185:7 191:2
197:9 225:16
238:2

**sort**  6:2 33:10
144:25 195:21
238:16

**sounds**  54:18

**source**  142:25
150:10

**sources**  142:15
144:7 147:3,9,15
147:22 148:4,5

**space**  31:10,12
35:3,5 181:18

**speak**  5:23 6:8 9:4
11:1 37:15

**speaking**  6:7

**speaks**  176:15
177:17

**special**  22:10,10

**specific**  199:22
253:23

**specifically**  195:25
253:6

**specified**  23:1
157:12,14,19,22
158:7

**specify**  125:15

**spectrum**  44:14

**spoke**  10:16

**spots**  66:13,13,14
66:22,24 67:5,7,11
67:17,22 68:2,12

**spv**  20:9,10 22:1,4
22:9,14 51:7
53:13 59:24 60:3
60:6,10,19,22,25
76:25 77:8,10
80:24 81:5,5,7,11
113:16 190:12
235:9

**stable**  20:17 23:10
23:19 130:23,24
131:2,10,12,16
132:1,8 148:17,24

**stacking**  35:9

**stage**  39:2,9 80:24
130:4

**stake**  84:3 124:8
124:10

**stamp**  189:2
231:19,20

**stamped**  104:22
188:23 220:8
246:25

**stamps**  159:2

**stand**  22:9 115:23

**standard**  1:16
244:1

**standby**  156:14,17
157:1

**standpoint**  28:18

**start**  9:5 12:10
38:14 41:23 86:20
103:11 105:24
142:19,22 183:7

**started**  65:5
181:20 184:2

**starting**  50:4

**state**  3:9 7:13 98:5
98:14,22 99:4,13
99:21 100:4,14,23
155:20 158:18
197:2,16 253:11
255:2

**stated**  223:16
255:4

**statement**  2:5,8,12
2:15 4:23 37:3
104:20 105:2,7,25
139:15 200:21
239:16,18 241:11
242:23 244:10
247:5 248:17,19
249:3

**statements**  105:13
174:12,12 175:22
188:9,23 194:16
199:18,23 230:21

**states**  1:1 50:21
61:17 141:10
143:19,20 144:10
145:7 148:21
155:19 176:6
180:18 182:4
196:2 202:8
215:13 231:2
248:24

**status**  23:7 45:4
46:14 48:8,13
49:25 51:20 53:25
55:1 56:17 58:9
62:7 65:2 66:24
68:7,18 69:2 71:8
72:7 73:16,18
76:1 78:11 80:6
82:9 84:8 86:8
89:14 92:15 96:11
119:5 121:6

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[status - testified]**                                                    Page 36

124:21 127:21
130:1 131:10
133:11 135:9
136:2 161:21
166:7 171:8 228:8
**stay** 243:4
**steps** 174:6
**stop** 31:11
**stopped** 126:2
**storage** 40:9,10,12
40:25
**store** 31:25 32:5,6
36:4 234:23
236:17 249:5
**stored** 32:3,11
34:18,21,23 35:2
35:11
**storing** 35:13,14
36:1 40:21 41:3
**story** 35:18,19
**streamline** 16:6
**street** 4:7
**strike** 32:15 35:4
38:20 48:8 49:4
56:22 57:6 60:15
64:16 67:15 74:6
78:10 82:12 90:16
91:11 104:2
106:20 124:3
125:10 127:20
129:3 133:25
135:9 140:1
150:21 157:19
158:14 162:21,23
174:13 176:4
177:16 178:1
179:16 187:24
189:16 191:23
192:15 200:20
204:24 207:23,25
224:7 228:12

**structure** 19:11
29:10 144:25
145:4 227:2,5
**structures** 144:2
**struggle** 184:6
**studios** 21:21
137:19
**stuff** 149:7,7
**subcontractor**
253:12,17 255:12
**subject** 22:25
23:18 160:11
**submitted** 4:23
254:1,2
**subordinate** 90:10
90:19 94:1 100:5
108:8 110:24
**subordination**
91:1 94:14 97:11
97:19 100:22
108:25 111:16
156:11 193:10
205:19 213:22
218:3
**suite** 4:7,16
**summary** 238:8,9
**sunset** 31:2,12,18
32:17 41:6 181:17
**suntrust** 233:1
**super** 120:10
**superstars** 51:7,13
51:20 52:9,13,16
53:5 120:12
**supplement**
174:19
**support** 222:18
224:17
**supposed** 209:6,19
251:13
**sure** 11:24 16:24
17:2,11,11 19:10

32:22 44:2 45:23
47:10 49:13 50:7
52:19 67:14 73:21
78:2 90:15 115:20
126:1 147:14
150:9 152:22
200:5,7
**surviving** 61:11
**swear** 5:15
**switching** 150:15
212:23
**sworn** 6:12
**syndicated** 145:6

**t**

**t** 39:2,9 80:24
**tab** 104:14
**take** 9:20,23 44:17
48:19 55:13 78:24
87:18 112:19
115:14 117:1
140:14 142:11
149:1 172:14
190:19 199:4
219:22 231:8,9
243:12 244:17
247:4,16
**taken** 33:6 77:8
174:6 255:4
**takes** 77:14
**talaat** 135:19,22
**talent** 80:2,3
**talk** 10:18 118:15
150:11,16
**talked** 106:11
115:9 116:6
120:13 145:23
146:25 147:11
149:15 150:2
169:14 194:11
208:22 212:24

**talking** 83:3
146:15
**tangible** 227:10
**tattoos** 68:16
**tax** 2:7,10,13,16
19:19,20 37:3
38:10 104:21
139:16
**team** 70:3 129:12
143:21,23,25
**telephone** 191:1
**television** 12:17,20
22:23,24 23:14
44:8 46:4,5 53:14
53:16 57:19 64:7
66:14 68:16 71:1
72:1 73:8 75:9
85:10 91:20,21
92:11
**tell** 14:10 20:3
36:22 63:18,20
67:19 69:2 122:7
148:15 209:8
230:24
**telling** 12:12 117:5
143:4
**temporarily**
172:17
**term** 101:25
137:18
**terminate** 162:13
166:24 172:7
**terms** 60:10 87:4
213:13 253:17
255:12
**territories** 232:15
**territory** 232:21
**test** 20:25
**testified** 148:7
150:11 182:11
189:17 208:21

Veritext Legal Solutions

**EXHIBIT L
PAGE 759**

Jonathan Lee Smith                                    March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[testified - troutman.com]                                              Page 37

234:2
testimony   8:13
  9:12 179:3
thank   5:13 6:9,24
  12:9 92:8 140:16
  175:14,18 204:23
  251:18
thanks   115:20
theme   21:14,16,16
theoretically
  49:14,15 80:20
therapy   68:15,19
  69:12,19 70:1,9,12
  70:18,22 169:10
  169:14,16
thing   9:22 11:19
  60:9 61:2 81:4
  104:25 105:10
  152:23 163:10
things   8:21 215:8
think   26:9 35:21
  41:12 42:14 52:4
  86:7 87:17 88:10
  101:6 126:13
  146:7 175:3,8
  183:24 191:6
  203:8 227:17
  228:10 229:24,24
  233:20 234:2
  249:24
third   38:7 40:18
  40:21 88:21,25
  89:15,19,22 90:1,9
  90:19,20 91:1,5,8
  127:11,11,13,15
  146:10 153:9,13
  153:18,22 154:8
  154:19,19 155:5
  156:11 177:9,12
  183:20,23 214:15
  231:23

three   25:3 34:9,12
  74:1 95:10 151:17
  157:16,21 158:5
  203:8 204:4
throat   232:18
time   1:16 5:3 9:21
  18:2,17 19:2,7,12
  25:9 29:20,24
  48:23 49:2 55:17
  58:17 60:8,12
  61:7 65:16,24
  67:10 68:1 69:7
  70:11 73:22 76:8
  76:14 79:1 83:3
  86:15,19 87:18
  92:24 119:12,15
  119:22 122:4,11
  122:15,21 123:3
  125:4,14,17 128:6
  128:11 130:10
  131:15,25 133:21
  134:2 136:10,15
  143:15 145:2,8
  174:14 179:23
  184:11 186:14,21
  186:23 188:3
  190:25 192:17
  193:9 200:20
  205:9,18 218:2
  251:18 253:24
times   226:1
  229:18
timing   83:10
title   48:15,17
  169:11 226:23
titles   44:20
today   7:17,24 8:6
  8:13,20 10:15
  11:2,5,9 12:3,6
  18:10,11 20:23
  23:25 24:20,23

25:1 65:20 67:19
  82:14 84:11
  118:15 125:17
  128:10 130:9,15
  131:24 134:1
  136:14 144:19
  145:23 147:14,21
  148:3 149:11
  162:23,25 169:15
  169:17 209:24
  211:5 229:19
  251:10,18
told   21:1 78:4
  126:1,3 149:17
  181:1 224:24
  227:15
tony   15:4 24:24
top   34:7 36:2
  38:14 41:23 50:20
  52:4 58:5 62:6
  64:24 66:19 75:17
  75:25 77:24 86:7
  88:10 93:20
  103:11 104:19
  106:7 119:1,4
  121:16,23 127:19
  128:4 133:10
  143:13 146:3
  152:21,24 153:1
  165:7 176:14
  184:2 185:2,3,8
  189:3 195:13
  200:9 207:5
  229:16,22 230:4
  231:22 239:23
  244:14 247:11
  248:23
total   167:11
  200:20 229:24
totally   60:5

touched   228:7
tour   124:1
tourism   126:8
tours   123:22,24
  124:6,19,21 125:2
  125:6,12,16 126:2
  126:4,6,18
track   37:15
traditionally   32:8
  32:10
transaction   185:3
  185:13 186:17
  202:21 241:22
  242:7 248:5
transactions
  230:23 233:7
  247:18
transcript   253:24
  255:4,6
transcripts   253:24
  254:3
transfer   185:17
  186:19 187:7,16
  188:5 201:16
  202:9,10 203:20
  233:9 234:11
  235:9,19,23 236:6
  236:9 243:17,22
  244:2 246:2
  247:19,23
transferred
  233:17
trigger   78:24
triggering   134:10
  136:20
trip   129:1
troutman   4:6 5:9
  7:11
troutman.com
  4:10

Veritext Legal Solutions

Jonathan Lee Smith                                     March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

**[true - we've]**                                              Page 38

---

**true** 37:24 105:12
253:25 255:6
**try** 9:4 25:20
225:5,14 230:11
**trying** 28:2,8,9,13
28:15,20 32:22
40:24 44:2 78:5
120:23 126:8
146:11 147:15
183:25 209:11
228:25
**turkey** 128:17,20
128:24
**turn** 249:2
**turning** 76:24
156:10 159:9
160:9
**turpera** 153:25
240:4 246:14
**tv** 17:6,14 21:25
40:7 41:25 42:2,4
49:18 59:25 60:1
81:15 83:18
143:18
**tvs** 41:11
**two** 3:13 12:22,22
15:13 24:13 29:12
61:4,5 65:19,22
67:12,23 98:4,13
98:21 104:25
117:15,24 129:3
132:13 185:14
203:8,19 204:4
215:3,3 216:5
247:17
**typewriting** 255:5
**typically** 225:25

---
**u**
---

**u.s.** 129:12 229:8
**uh** 9:11,11 26:11
147:20

**unable** 142:22
**underneath** 60:2
143:25
**understand** 7:16
7:19,25 8:5,8 9:15
9:17 12:1 16:6
17:9 19:10 24:5
30:3 32:9,19,20,22
37:7 38:13 40:24
41:22 44:1,2
67:14 78:2,5
117:5,18 120:23
147:15 150:14
175:21 176:20
233:4
**understanding**
159:25 164:10
169:24 251:12
**understood** 43:13
117:7
**undertaking** 27:22
**undertook** 174:14
**united** 1:1 61:17
143:19,20 144:10
145:7 148:20
196:2
**universal** 21:21
**unknown** 130:13
130:16
**unscripted** 44:11
**unsolved** 146:17
**unsure** 49:1 53:1,3
53:7 59:11 60:23
62:12 63:19 69:24
88:19
**update** 179:22
**updated** 251:13
**uploaded** 254:4
**use** 6:18,22 36:4
186:9 189:21
190:3 207:23,24

208:1 222:9
**uses** 38:9
**usually** 20:18
146:4 226:2
**utilizes** 91:10,13

---
**v**
---

**value** 44:6,13
**values** 44:11
**var** 45:22
**various** 36:15
145:2 190:10
**vegte** 229:6
**vehicle** 22:10,11
77:2
**ventures** 2:19
158:24 160:13
**verbally** 9:10
**verbatim** 253:15
**veritext** 253:12,21
**versa** 191:17,18
**version** 78:7
**versus** 173:2
**vice** 191:17,18
**victoria** 229:6
**video** 5:4 116:21
**videoconference**
1:13 4:3,12
**videographer** 1:20
5:2,13,16,20 6:4
7:3,5 87:20,23
115:15,22 140:18
140:20 190:22,24
215:23,25 219:25
220:2 230:13,15
252:1
**videotaped** 1:13
**vineyard** 34:7
83:14,19,21 84:4,8
84:16 85:2 87:14
**visible** 36:22

**vs** 1:6

---
**w**
---

**waiting** 69:3
**walk** 36:16 38:12
41:21 175:23
**walla** 35:16
143:19
**walter** 151:11,13
**walter's** 151:25
**wang** 3:12 203:9
205:2,11,20 206:3
206:23 207:8
208:2
**want** 9:20 24:11
28:4 38:12 41:21
103:9 116:5 117:1
139:25 147:21
150:16 152:22
175:2,7,23 200:21
230:18
**wanted** 150:9
**wars** 20:17 23:10
23:19 118:14,16
118:21 119:5,7,13
119:17,23,25
120:4,7 130:23,24
131:2,10,12,17
132:1,8 148:17,24
229:24
**waste** 200:20
**watching** 146:16
**way** 13:1 28:2,4,9
37:16 61:9 95:7
177:4 184:6,17
190:21 206:2
**we've** 87:18
142:12 145:22
162:21 169:14,16
175:24 189:24
208:23 229:18

---

Veritext Legal Solutions

Jonathan Lee Smith March 16, 2021
Bay Point Capital Partners II, LP Vs. Hoplite, Inc. Et Al.

[weeks - zovko's] Page 39

**weeks** 151:17
174:17
**wells** 2:24 3:3,5,7
3:13 39:11,12
113:12 138:10
176:6,17 178:11
178:25 180:1,7,19
181:2,6 182:5,12
182:15 183:9
184:22 185:25
186:6,9 189:4,18
189:25 190:15
200:10 201:1
223:9 231:2
241:14 247:12
**went** 81:5,8
**west** 31:2,12,18
181:17 189:11
230:8
**wf** 113:11 245:17
**wilk** 164:2
**wind** 148:2
**wires** 245:17
**withdrawal**
202:25 234:23
235:1 236:17,20
240:3 244:19
245:5 246:13
**witness** 5:15 15:8
41:13 92:7 95:8
116:24 135:22
140:14 210:16
**witnesses** 254:2
**word** 238:17
**words** 90:25
177:18
**work** 126:11 144:1
152:4,6,8 228:25
**worked** 152:8
**working** 28:10
30:8,12,15 33:25

145:21 169:11
191:20
**works** 28:20
228:14
**world** 52:8 66:15
167:8 168:7
196:10,13
**wray** 191:6,16,19
191:24 192:7,17
193:1,11,19 194:4
**wrecking** 134:24
135:10 136:2,5,12
136:16 137:1,5
**written** 3:11,13
4:23

**x**

**xxiii** 154:20

**y**

**y'all** 219:21
**yeah** 9:14 11:25
20:15 21:24 41:17
43:1 77:7 81:12
104:24 150:15
152:25 178:7
184:15 200:5
212:7 235:7 243:7
250:22
**year** 18:6 24:17
26:2 27:15 29:14
29:15,23 33:4
34:2 42:11,21
47:8,18 52:21,22
58:19 59:1 63:4
71:18 73:25 78:21
79:5 84:21,23
131:18 132:4
134:7 136:19
**years** 15:12,13,15
20:6 65:19,22
67:12,23 122:19

148:13 152:2
**yell** 6:2
**yesterday** 251:14

**z**

**zero** 18:11
**zoom** 178:2
184:20 185:4
189:1 197:1,7,7,12
199:25 200:2,4
201:13 206:21
215:7
**zovko** 171:16
198:22
**zovko's** 168:24

Veritext Legal Solutions

EXHIBIT L
PAGE 762

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

**EXHIBIT L
PAGE 763**

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

**EXHIBIT L**
**PAGE 764**