RICHARD T. BAUM
State Bar No. 80889
11500 West Olympic Boulevard
Suite 400
Los Angeles, California 90064-1525
Tel:   (310) 277-2040
Fax:   (310) 286-9525

[Proposed] Attorney for Debtor and
Debtor-in-Possession HOPLITE, INC. and
Attorney for Debtor and Debtor-in-Possession
HOPLITE ENTERTAINMENT, INC.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>HOPLITE, INC.,<br><br>           Debtor.<br>_____<br>In re<br><br>HOPLITE ENTERTAINMENT, INC.<br><br>           Debtor<br>_____<br>☐    Affects Both Debtors.<br><br>☐    Affects Hoplite, Inc.<br><br>■    Affects Hoplite Entertainment, Inc.<br>_____ | No.   2:21-bk-12663 ER<br><br>Chapter 11<br><br>No. 2:21-bk-12546 ER<br><br>Chapter 11<br><br>**OPPOSITION OF DEBTOR HOPLITE ENTERTAINMENT, INC. TO MOTION TO CONVERT CASE TO CHAPTER 7 OR TO APPOINT CHAPTER 11 TRUSTEE; DECLARATION OF RICHARD T. BAUM**<br><br>DATE:    June 2, 2021<br>TIME:    10:00 AM<br>CTRM:    1568 |

**TO THE HONORABLE ERNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE:**

Debtor HOPLITE ENTERTAINMENT, INC. opposes the Motion of secured creditor

---

**OPPOSITION TO MOTION TO CONVERT CASE OR APPOINT CHAPTER 11 TRUSTEE**

XXIII Capital Limited, joined by Bay Point Capital Partners II, LP, to convert this case to Chapter 7 or to appoint a Chapter 11 Trustee on the grounds that the Debtor has taken steps, and is taking steps, which will ameliorate the dangers of which the motion complains. By seeking court approval for employment of a Chief Restructuring Officer, the Debtor installs in the positions of leadership and power the figures which the motion asks the court to appoint. Debtor hired a Chief Restructuring Officer who will control the Debtor's operations and direct its path through Chapter11. The Debtor has located an investment advisor to liquidate the library of television shows and series, and will seek to approve its retention. The case is moving forward.

**FACTUAL BACKGROUND**

The Debtor is an Emmy-winning reality television producer which owns a library of the television shows and series it produced. Its sister company, Hoplite, Inc., is in the same business, maintains a separate library and is also a debtor in this court. Both largely control all rights to the shows. Both have Jonathan Smith as their principal and the creative force behind the productions. The business of both is the licensing of shows in many markets throughout the world, but chiefly not in the United States or the United Kingdom, and the development and production of new scripted or unscripted reality television shows and series. The COVID-19 pandemic cratered their production businesses, and the financial failure of their biggest customer in eastern Europe further crushed their finances. Hoplite, Inc. also has substantial secured debt, and has substantially more unsecured debt than this Debtor. Some creditors have debt secured by properties of both debtors.

When the cases were filed, the plan was to sell the rights to the libraries. An appraisal dated May 2020 valued the joint libraries at over $77-million, but that was before the pandemic destroyed the financial projections and assumptions, and the insolvency of a large customer in eastern Europe. Current valuations are substantially less.

## THE DEBTOR REORGANIZES ITSELF

The Debtor is very cognizant of the serious allegations contained in XXIII Capital's motion and has taken steps to address them. The US Trustee appointed an Unsecured Creditors Committee in Hoplite, Inc., and the joint administration of the cases invited the participation of the committee into this case. The committee's counsel is Jeffrey Golden, a Chapter 7 trustee on the Santa Ana panel. The Debtor consulted with him frequently since his appointment, and it reached out to movant and to a number of secured creditors with some success. Together, the Debtor and the Committee agreed that the Debtor should retain Howard Grobstein as Chief Restructuring Officer for the Debtor. He will take over all business activities of the Debtor. Mr Grobstein is a Chapter 7 Trustee for the Central District of California, Riverside Division, and has experience as trustee and as an estate-retained financial or restructuring officer with a debtor involved in the television production business. It is expected that an application to approve his employment will be filed within days of this opposition.

Jon Smith, Debtor's principal, produced the TV shows and series which form the basis of the Debtor's library. He knows them intimately as to their content, the rights that have been given, the markets where they have been shown, and where the papers are. Smith will be removed from decision making and from participation of any kind except as requested by Mr Grobstein, but his assistance with technical details will be necessary to maximize value.

As indicated, the plan is to liquidate the Debtors' library of reality shows and series. To that end, the Debtors will be filing applications to employ Sierra Constellation partners as their broker/investment banker to determine the best methods of liquidating the libraries. Sierra Constellation was chosen after interviews with another broker/investment banker candidate, and with the recommendation of both Mr Golden and Mr Grobstein who had worked with this company. The liquidation may include outright sales, and some titles may be licensed with the proceeds flowing back to the Debtors for distribution to creditors. This

is an evaluation which Sierra Constellation will conduct, will report to Mr Grobstein, and he will approve.

## THE COURT HAS DISCRETION TO EVALUATE THE CAUSE
## NEEDED TO CONVERT A CASE

Bankruptcy Code Section 1112(b) generally governs the dismissal or conversion to Chapter 7 of Chapter 11 cases. It provides:

> "(1) ..., on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

The key consideration is the element of "cause" which is defined, for purposes of this subsection, as including:

> "(A)  substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B)  gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E)  failure to comply with an order of the court;
> (F)  unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H)  failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

Case 2:21-bk-12663-ER    Doc 46    Filed 05/19/21    Entered 05/19/21 18:13:46    Desc
Main Document    Page 5 of 12

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;

(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition."

While other factors may be cause for conversion or dismissal, the court maintains wide discretion whether to impose that relief, In re Greenfield Drive Storage Park, 207 BR 913 (Bankr 9th 1997); In re Justus Hospitality Properties, Ltd., 86 BR 261 (Bankr MD Fla 1988) (existence of one or more grounds for dismissal enumerated in 11 USC 1112 does not compel conversion or dismissal; the court must make the ultimate decision in exercise of sound discretion).  See also Gates v. Santee Trolley Square 991, LP (In re Karma Capital, Inc.), 19cv1070-LAB (KSC) (S.D. Cal. Sep. 27, 2019).

Examination of the motion shows that it relies on some of the cause factors enumerated above, specifically (A), (B), and (C).  However, the steps taken by the Debtor blunt the force of those factors.  Subsection (A) is based on a substantial or continuing loss or diminution of the estate.  The Debtor's estate is the library which has a market value. Except for counsel fees and US Trustee fees, there are no expenses of the estate at this time.  Thus, the estate is not losing value.  The hiring of Mr Grobstein promises to keep the party who Movant has labeled the fox out of the hen house, thereby ensuring that there will be no loss to the estate.

Subsection (B) deals with gross mismanagement of the estate.  The motion does not specifically point to any particular act of mismanagement; rather it labels Debtor's

**OPPOSITION TO MOTION TO CONVERT CASE OR APPOINT CHAPTER 11 TRUSTEE**

- 5 -

1 principal as untrustworthy. By removing Mr Smith from the controls of the Debtor, the risk
2 of mismanagement falls upon Mr Grobstein whose competence and integrity is not
3 questioned. The steps taken before Grobstein's hiring were all designed to find buyers for
4 the libraries and locate a broker/investment banker to assist. Efforts were made to enlist
5 the participation of creditors in the endeavor. That is not mismanagement.

6 XXIII Capital notes that typical first day motions were not filed. Unfortunately, there
7 was virtually no cash (less than $100) for which to seek use as cash collateral. No
8 employees were awaiting paychecks, and no vendors were so critical that continuing
9 operations were imperilled. There was no need for first day motions.

10 Subsection (C)presents an issue. The shows and series are stored on two places:
11 hard drives of various servers, most of which are in Smith's possession, and on vimeo.com
12 ("an American video hosting, sharing, and services platform headquartered in New York
13 City. Vimeo focuses on the delivery of high-definition video across a range of devices",
14 Wikipedia). Insurance lapsed prior to the petition date, and there were insufficient funds
15 to procure a policy. However, on May 17, 2021, an agreement was reached with Buffalo
16 8 Media, an affiliate of secured creditor Bond It, whereby the hard drives containing the
17 television material were delivered to Buffalo 8 for storage and will be covered by its
18 insurance once verification of the content of the servers is established. This delivery was
19 delayed because Mr Smith was largely in Florida for most of the post-petition period. It is
20 expected that appropriate certificates of insurance will be delivered to the Debtor shortly,
21 who will forward to the court, the US Trustee, and the secured creditors.

22

### CONVERSION IS NOT IN THE BEST INTEREST OF CREDITORS

24 Finally, if it is determined that cause exists, the court must then determine if
25 conversion or appointment of a Chapter 11 Trustee is in the best interest of creditors and
26 the estate, In re Superior Siding & Windows, Inc., 14 F3d 240 (4th Cir 1994); In re Red
27 Door Lounge, Inc., 559 BR 728 (Bankr D Mont. 2016); Sullivan v. Harnisch (In re
28

Sullivan), 522 BR 604 (BAP 9th Cir. 2014).  With the alterations in structure and the hiring of steady professionals, the continuation of the Chapter 11 with the Debtor in possession of its estate is the best option.  Costs to the estate are reduced.  A more flexible plan can be confirmed that will allow for more alternatives to a straight sale of the libraries; licensing can bring in a revenue stream that can be received by a trust and distributed to creditors over time, for example.

A chapter 7 trustee must qualify, hire counsel, gain approval of counsel, evaluate the library of TV shows, and find a broker/investment banker, all of which have already been done here.  The difference here is that the Debtor-in-Possession is moving forward now, and can be ready with a stalking-horse bid and set a hearing within a short period of time.  The date of payment to creditors is much shorter with the Debtor in possession of its estate.  This clearly is in the best interest of creditors and the estate.

**CONCLUSION**

The motion certainly paints a dark picture of Mr Smith regarding his pre-petition conduct.  This Opposition is not designed to refute those allegations: little will be gained in a he-said she-said confrontation.  It shows that the removal of Mr Smith from power and control allows the Debtor to execute its fiduciary duties without taint of his alleged misconduct.  Top rate professionals have been retained to guide the Debtors to the promised land of full distribution to their creditors.  The court should exercise its discretion and allow the case to proceed with a Chief Restructuring Officer in place, thereby safeguarding the Debtor, its estate, and its creditors.

DATED: May 19, 2021

/s/ Richard T. Baum

RICHARD T. BAUM, Attorney for Debtor and Debtor-in-Possession HOPLITE ENTERTAINMENT, INC.

## DECLARATION OF RICHARD T. BAUM

I, RICHARD T. BAUM, declare:

1. I am an attorney duly licensed to practice law in the State of California and am admitted to practice before the United States Courts for the Central District of California. I have personal knowledge or have been advised and believe the truth of the facts set forth herein and if called as a witness I could testify competently thereto.  I am attorney for Debtor and Debtor-in-Possession HOPLITE ENTERTAINMENT, INC. and proposed attorney for Debtor and Debtor-in-Possession HOPLITE. INC.

2. The Debtor is an Emmy-winning reality television producer which owns a library of television shows and series which it produced. Its sister company, Hoplite, Inc., is in the same business, maintains a separate library and is also a debtor in this court. Both largely control all rights to the shows.  The business of both is the licensing of shows in many markets throughout the world, but chiefly not in the United States or the United Kingdom, and the development and production of new scripted or unscripted reality television shows and series.  The COVID-19 pandemic cratered their production businesses, and the financial failure of their biggest customer in Europe further crushed their finances. Hoplite, Inc. also has substantial secured debt, and has substantially more unsecured debt than this Debtor.  Some creditors have debt secured by properties of both debtors.

3. When the cases were filed, the plan was to sell the rights to the libraries.  An appraisal dated May 2020 valued the joint libraries at over $77-million, but that was before the pandemic destroyed a number of financial projections and assumptions, and the insolvency of the large customer in eastern Europe.  Current estimates of value are substantially less. However, Jon Smith, Debtors' principal, actively sought interest among a number of contacts in the entertainment industry.  I reached out to a number of secured creditors, many of whom lend in the entertainment industry, to seek contacts.  A director

is exploring sales in the Middle East, all of which are designed to cultivate interest.

4. On the Petition Date, neither Debtor had a cash that called for its use as cash collateral. Neither Debtor had employees that needed to be paid in order to keep them working. Neither Debtor had vendors awaiting payment whose continued services were required for on-going business. In short, there was little or no need for the first-day motions typical in most Chapter 11 cases.

5. On April 29, 2021, The United States Trustee appointed a creditors committee in the Hoplite, Inc. case which retained Jeffrey Golden as its counsel. Mr Golden is a Chapter 7 Trustee in the Santa Ana Division of this Court. We spoke within a day or two, and established mutually beneficial relations. After receipt and review of the Motion to Convert to Appoint a Chapter 11 Trustee herein, Mr Golden agreed with Mr Smith's and my thinking that it was best to separate Smith from the operations of the Debtor, to bring in a professional with the skills and competence to guide the Debtor through the bankruptcy and obtain a favorable sale of Debtor's assets. To that end, Mr Golden suggested Howard Grobstein. After review of Mr Grobstein's background and speaking with him, I suggested to Mr Smith that he authorize the hiring of him. Smith agreed. A copy of the CV forwarded to me by Mr Grobstein is attached as Exhibit 1. I expect to file an application to employ him as Chief Restructuring Officer at the time that this Opposition in filed. From this point on, Mr Smith will not have operational control of either Debtor.

6. Mr Smith advised that the insurance on the businesses lapsed in April 2020 and was not renewed. In December 2020, the lease of their business premises ended and the companies vacated. The servers which contained the hard drives with the digital images of the shows and series were taken to Mr Smith's home or were in one of two labs for post production work. On May 17, an agreement was struck with Buffalo 8 Media to deliver the server to Buffalo 8, for Buffalo 8 to do post-production work, and to provide insurance coverage under its policies, naming Hoplite and Hoplite Entertainment as additional insureds. Most servers or hard drives were delivered the next day, and the remainder are

1 to be delivered during the week.

2     7. Prior to these event, the Debtors investigated SC&H as the broker/investment banker for the Debtors to advise and find a buyer for their libraries. An extensive review of its experience and background yielded a positive view of its investment abilities but we were discouraged by the lack of prior experience in liquidating television or film properties. After telephonically meeting with Mr Golden and Mr Grobstein, we shared SC&H's presentation and had discussions with them. We kept looking because we felt that that lack of experience in entertainment properties was too much of a negative. Mr Grobstein suggested Sierra Constellation Partners. We met on Zoom with two of their partners who gave us a presentation of their abilities and the experience with dealing with cinematic properties. Sierra Constellation had liquidated the vast movie library of Lakeshore Entertainment which included Best Picture Oscar winner Million Dollar Baby. Granted that none of the Debtors' libraries are in that class, it was decided that Sierra Constellation had the proper mix of experience, expertise and contacts to proceed. They will evaluate the libraries, review the financial data concerning licensing revenue and any co-ownership issues, and come up with a plan for liquidation which may include outright sales as well as licensing which will feed an income stream. That income may be directed into a liquidation trust to be distributed to creditors on a basis to be determined. This will depend upon the shape of the Chapter 11 Plan which will be conceived, proposed, and hopefully confirmed. The decision was made to pursue retention and approval of Sierra Constellation. A copy of the proposed agreement for their services is attached as Exhibit 2.

    8. The 7-Day requirements of the US Trustee have largely been met except for the 90-Day Projection of Income and Expense. This was largely due to the fact that there was no cash, no expected income, and unknown expenses. Insurance verification will be supplied when the Certificates of Insurance are received from Buffalo 8. Since the case was filed in March, first quarter US Trustee fees were due, and these fees were paid on May 14, 2021 by cashiers check mailed to the US Trustee's payment address. The

1  Monthly Operating Report for March was filed, and it is expected that the MOR for April will
2  be filed within a few days.

3      9. This Chapter 11 case is proceeding forward with progress being made in terms
4  of the hiring of a Chief Restructuring Officer, the removal of Jon Smith from positions of
5  authority, and the expected retention of a broker/investment banker to liquidate the
6  libraries. Many of the hiccups in the case have been addressed. With these safeguards
7  in place, the Motion to Convert is not likely to produce a better result. On behalf of the
8  Debtors, I ask that the court deny the motion.

9      I declare under penalty of perjury under the laws of the United States that the
10 foregoing is true and correct. Executed this 19th day of May 2021, at Los Angeles,
11 California.

12
13                                                               /s/ Richard T. Baum
14                                                               RICHARD T. BAUM

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11500 West Olympic Boulevard, Suite 400, Los Angeles, California 90064-1525.

A true and correct copy of the foregoing document described as OPPOSITION OF DEBTOR HOPLITE ENTERTAINMENT, INC. TO MOTION TO CONVERT CASE TO CHAPTER 7 OR TO APPOINT CHAPTER 11 TRUSTEE; DECLARATION OF RICHARD T. BAUM will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On May 19, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Richard T Baum    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
Luke N Eaton    eatonl@pepperlaw.com    Philip A Gasteier    pag@lnbrb.com    David M. Guess    guessd@gtlaw.com
Eve H Karasik    ehk@lnbyb.com    Kevin P Montee    kmontee@monteefirm.com
Kelly L Morrison    kelly.l.morrison@usdoj.gov
Aditi Paranjpye    aparanjpye@cairncross.com, gglosser@cairncross.com;AParanjpye@ecf.courtdrive.com
Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;lbracken@wgllp.com
United States Trustee    ustpregion16.la.ecf@usdoj.gov    Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

This list is inclusive of all parties listed on CM/ECF docket for both Hoplite Entertainment, Inc. and Hoplite, Inc.
☐ Service information continued on attached page

II. SERVED BY U.S. MAIL)**:**
On May 19, 2021, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| Ari Newman | TROUTMAN PEPPER | TROUTMAN PEPPER |
|---|---|---|
| GREENBERG TRAURIG | Attn: Harris B. Winsberg | Attn: Luke N. Eaton |
| 333 S.E. 2nd Avenue | 600 Peachtree Street NE | 350 S. Grand Avenue |
| Ste 4400 | Suite 3000 | Suite 3400 |
| Miami, FL 33131 | Atlanta, GA 30308 | Los Angeles, CA 90071 |

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 19, 2021 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 19, 2021 | RICHARD T. BAUM | /s/ Richard T. Baum |
|---|---|---|
| *Date* | *Type Name* | *Signature* |