# EXHIBIT 1

# Howard B. Grobstein, CPA, CFE, CFF
**Partner**

## Area of Expertise

Mr. Grobstein's practice focuses on the following key areas:

- **Fiduciary Positions** – Mr. Grobstein is a Chapter 7 and Chapter 11 bankruptcy trustee, liquidating trustee, and has acted as an assignee for the benefit of creditors, receiver, partition referee, independent board member, chief restructuring officer (CRO), fractional/interim CFO, and responsible officer.

- **Fractional CFO/Controller** – Mr. Grobstein frequently acts as a fractional/interim CFO and controller for companies and organizations in need of temporary or long-term, part time assistance with financial and strategic oversight.

- **Fraud Investigations** – Representations of fiduciaries and private parties in numerous and complex fraud cases with alleged losses ranging from $25,000 to approximately $1 billion.  Representations include court appointed receivers, monitors, special masters, and private parties in regulatory, equity, and international matters.

- **Forensic Reconstructions** – Regularly acts as forensic accountant in litigation and insolvency matters, reconstructing records related to disputes, litigation, fraudulent conveyances, solvency analyses, and other situations.

- **Litigation Consulting** – Regularly acts as a consulting and/or expert witness in litigation cases and has testified at arbitration, deposition, and in federal and state courts.

- **Insolvency and Dispute Matters** – Member of the Panel of Bankruptcy Trustees in the Central District of California and has been appointed and acted as a Chapter 11 and Chapter 7 trustee, and Chapter 11 examiner and receiver in several cases; represents bankruptcy trustees, debtors, creditors, creditor committees, receivers, special masters, assignees, and attorneys in insolvency cases.  Mr. Grobstein has been involved in numerous cases, most of which involved complex forensic or fraud related issues.

- **Neutral Accountant and Court's Own Expert –** Has acted as the court appointed neutral accountant to resolve complicated accounting and financial disputes in state court actions.  Has been appointed as the court's own expert as directed by federal bankruptcy judges in bankruptcy matters.

- ***See "Examples of Experience" Appendix for specific examples of Mr. Grobstein's experience.***

## Certifications and Licenses

- Certified Public Accountant
- Certified Fraud Examiner
- Certified Financial Forensics (AICPA)

## Education

- Bachelor of Science; Business Administration, Emphasis in Accounting
  California State University, Northridge, 1994

www.gtllp.com
© Copyright 2020 Grobstein Teeple LLP



**Professional Affiliations**

- Past Co-Chairperson of the California Receivers Forum (Los Angeles & Orange County); current member
- Past President of Los Angeles Bankruptcy Forum; current member
- Past member of AICPA Task Force for Drafting Questions for the Certified in Financial Forensics Designation
- Member of Association of Certified Fraud Examiners
- Past Member of the Board of Directors and Past Treasurer of Turnaround Management Association
- Member of California Society of CPA's
- Member of American Institute of CPA's

**Speaking Engagements**

- Participated in seminar for Association of Certified Fraud Examiners on the topic of *Fraud Related to COVID 19*
- Participated in seminar at California Receivers Forum on the topic *The Accountant for the Court-Appointed Receiver*.
- Presented a seminar to the Trustee Administrator's Group on searching for hidden assets in Chapter 7 proceedings.
- Participated in a seminar at California Receivers Forum on SEC Receiverships.
- Participated in a seminar at California Receivers Forum on Complex Receiverships.

**Publications**

- *Fraud Casebook:  Lessons from the Bad Side of Business,* July 2007. Co-authored chapter.
- *Reviving the Financially Distressed Business.* February 2019.  Authored chapter.

**Civic and Community Activities**

- Member of the Board of Directors, Treasurer, and Chairman of the Finance Committee of Heart of Los Angeles (HOLA), a non-profit organization providing after school programs and tutoring to inner-city youth.

**Community Awards**

- 40 Under 40 Award; San Fernando Valley Business Journal

© Copyright 2020 Grobstein Teeple LLP



**Howard B. Grobstein Examples of Experience**

<u>**Fiduciary Services (Receiver, Bankruptcy Trustee, Assignee for the Benefit of Creditors, Examiner, etc.)**</u>

**Highlights of Trustee and Fiduciary Appointments**

- Verity Health System (VHS Liquidating Trust) – Appointed as the Liquidating Trustee for VHS Liquidating Trust. Verity Health System owned and operated several hospitals in California and is the second largest hospital bankruptcy ever filed in the United States. Acting as President and Trustee to transition hospitals from Debtor to purchasers. Prosecuting litigation claims against failed buyer for breach of contract. Prosecuting claims against former management company for fraudulent transfer. Negotiated and sold captive insurance company. Resolving avoidance actions with gross of over $500 million. Addressing litigation related to hospitals including over 150 medical malpractice, employee and general liability claims. Work closely with trust advisory board, hospital board and other constituents to effectively manage the terms of the plan of reorganization. Addressing dissolution of hospital entities, related foundations and benefit plans. Evaluating and preparing final tax returns for the entities and benefit plans.

- MUFG Union Bank v. NMA, et al. – Appointed by the Superior Court of California as the *Receiver* of National Merchants Association, a significant credit card processing company, and other related entities (approximately $800,000 in processed transactions per day). Operated business for approximately one year. Negotiated agreements with boarding bank, negotiated settlement between Plaintiff, Defendant and receivership to resolve dispute issues and provide payment to the bank. Prepared forensic accounting regarding improper transactions alleged by Plaintiff MUFG Union Bank asserted against Defendant NMA. *(Bond Posted)*

- MBMJ Capital LLC v. Sabemos Beverages, LLC, et al. – Appointed by the Superior Court of California as the *Receiver* of Sabemos Beverages, LLC, a liquor distributor. Wound down operations, negotiated transactions with warehouses regarding unpaid rent. Prepared forensic accounting related to alleged improper transactions by officers and directors. *(Bond Posted)*

- William Jordan Investments, Inc. et. Al. – Retained as *Chief Restructuring Officer ("CRO")* to run, oversee operations of and wind down 26 entities in chapter 11. Businesses involved real estate holdings in numerous states throughout the country, deeds of trust, investments in operating businesses, and entitlement of raw land. Reconstructed books and records in order to determine amounts invested or loaned by creditors and members, monetized numerous assets in various states and stages including REO properties, commercial properties, notes receivable, and others.

- Kendall Frozen Fruit – Appointed as *Chapter 11 Trustee* to operate frozen berry distributor. Managed complete operations for approximately one year and a half. Negotiated exit of one shareholder; oversaw ordering, sales, employees, and all operations. Prepared monthly operating reports to report to the OUST, prepared corporate tax returns, negotiated terms of plan and disclosure statement, successfully reorganized case with projected 100% payout to unsecured creditors. *(Bond Posted)*

- Irontrac – Appointed as Chapter 7 Trustee to wind down and liquidate heavy equipment owner/lessor. Took possession of inventory of heavy equipment and conducted auction through Ritchie Brothers. Prepared forensic reconstruction of transactions between the Debtor and related entities/individuals. Reconstructed accounts receivable and commenced litigation as necessary. Performed avoidance action analysis and commenced litigation against appropriate parties. Prepared necessary tax filings

© Copyright 2019 Grobstein Teeple LLP



- New Meatco Liquidating Trust – Appointed as *Liquidating Trustee*.  Entity was a mass wholesale distributor of meat and seafood products. Prosecuted D&O claims and recovered in excess of $7 million.  Prosecuted preference and insider claims in excess of $1 million.

- Gospel Light Liquidating Trust – Appointed as *Liquidating Trustee*.  Entity was a publisher of religious books.  Case involved analysis of financial records to determine potential actions against insiders and potential preference recipients.

- LFI Liquidating Trust – Appointed as *Liquidating Trustee*.  Prior to the trust being formed, the entities were the subject of a regulatory receivership entitled SEC v. Carver.  The trust was created to preserve potential value in highly speculative investments in biotech firms.  As trustee, liquidated millions in stock for the benefit of creditors.

- Meteor Games, LLC – Appointed as *Chapter 7 Trustee*.  Entity developed video game applications for use on smartphones and other devices.  Reconstructed financial records in order to identify and trace the fraudulent use of company capital and assets for the benefit of principles and insiders.  Commenced litigation against insiders and ultimately settled claims for the benefit of creditors.

- Diamond Decisions, Inc. – Appointed as *Chapter 11 Trustee* for an apparel manufacturing and distribution company.  Discovered potential fraudulent investment scheme involving approximately $40 million.  Performing forensic reconstruction of financial records for purposes of analyzing potential fraudulent conveyances, potential preferential transfers, and other causes of action. *(Bond Posted)*

- Welded Fixtures – Appointed as *Chapter 11 Trustee* for manufacturing company.  Operated business for several months, prepared projections and budget to actual analyses on regular basis in order to maintain operations.  Negotiated settlement with principal which resulted in payment in full to all creditors.  Case was subsequently dismissed. *(Bond Posted)*

- DIVA Systems Corporation – Appointed as *Chapter 11 Trustee* of company which held a significant library of intellectual property related to video on demand and interactive program guide.  Pursued litigation against proposed purchaser of assets who backed out of transaction immediately prior to plan confirmation. Negotiated a settlement with the defendant wherein the estate received $39.5 million (approximately 1.5 million more than lawsuit).  Sold intellectual property and other assets. Successfully confirmed a plan of liquidation and was appointed as Liquidating Agent. *(Bond Posted)*

- EonXchange, LLC – Appointed as *Chapter 11 Trustee* of an emissions credits brokerage and optimal transaction software creator.  The case involved an entity, its three wholly owned subsidiaries and their managing member.  Successfully substantively consolidated three related subsidiaries into the bankruptcy estate and succeeded by stipulation to entirely substantively consolidate the managing member (an individual) into the Debtor's estate.  Negotiated the liquidation of two multi-million-dollar pieces of real estate.  Performed extensive fraud and forensic investigation used for litigation and prosecution by U.S. Attorney.  Referred fraudulent activity to US Attorney resulting in indictment and guilty plea of managing member. *(Bond Posted)*

- Namco Capital Group, Inc. – Acted as *Chief Restructuring Officer* at the direction of the Official Committee of Unsecured Creditors.  Analyzed and liquidated a portion of $2 billion in real estate holdings through approximately 100 different entities.  Prepared bankruptcy schedules and Statement of Financial Affairs.  Prepared monthly operating reports and met other court reporting requirements.  Analyzed numerous real property assets in order to determine whether to liquidate, return to lender, or hold. Performed forensic investigation and financial activity of entities.

www.gtllp.com
© Copyright 2019 Grobstein Teeple LLP



- Nationwide Beverage Bottling, Inc. – Acted as *Chief Restructuring Officer* for a water bottling plant in a chapter 11 proceeding.  Increased production and sales by 300%, reduced costs and renegotiated certain expenses, restructured employee composition and related salaries, negotiated sale of substantially all assets; investigated financial activity of debtor and insiders.

- Examiner – Appointed as *Chapter 11 Examiner* for medical practice.  Evaluated operations of the debtor including a review of the assets, liabilities, revenues and expenses for several year period of activity.  Evaluated transactions between the debtor and related parties and provided a report to the United States Trustee and the Bankruptcy Court.

- Examiner – Appointed as *Chapter 11 Examiner* in a case involving a garbage disposal company.  Conducted forensic analysis in an extremely short period of time and provided report to United States Trustee recommending appointment of a trustee.

- Examiner – Appointed as Chapter 11 Examiner in the matter of ChineseInvestors.com.  The case involved a company that raised funds from investors and lenders to build an investment website requiring subscriptions.  The Debtor maintained operations in the US and China.  Investigated transactions related to loans, investments, disbursements and transfers.  Required extensive translation of documents from Mandarin Chinese to English.  Drafted report and recommended the appointment of a trustee.  The Court concurred and a trustee was appointed.

**Court Appointed/Stipulated Positions**

- Neutral Accountant in State Court Dispute – Appointed by Superior Court Judge as neutral accountant to resolve business dispute between two shareholders of computer component company.  Issues included alleged diversion of corporate assets, diversion of corporate opportunity, reconstruction of allegedly destroyed accounting records, analysis of tax implications of transactions, and analysis of business operations.  Neutral accountant prepared an extensive report on findings and testified at multi-day trial.

- Assignee for the Benefit of Creditors – Acted as the assignee for the benefit for creditors for a meat distribution company.  Obtained valuation of assets, conducted auction of all personal property, negotiated settlements with insiders, litigated receivables and other actions with third parties, prepared tax returns

- Assignee for the Benefit of Creditors – Acting as assignee for the benefit of creditors for an advertising company.  Obtained valuation of assets, negotiated settlement of insider claims, conducted claims process, liquidating real property out of state, addressing tax issues related to assignment, collecting receivables.

- Neutral Accountant in State Court Dispute – Selected and Appointed by State Court Judge to act as neutral accountant to resolve business dispute between a medical practitioner and management company.  Reconstructed financial records for several years.  Analyzed alleged embezzlement of funds for personal use by a management company.  Analyzed transactions and related them to management contract to identify potential improprieties.  Traced financial activities through accounting records and banking information.  Prepared extensive and detailed report on findings.

- Neutral Accountant in State Court Dispute – Stipulated neutral accountant to resolve dispute between partners involving several real estate companies holding numerous commercial real estate properties.  Reconstructed and evaluated receipts, disbursements, distributions, tax implications and other matters related to approximately 13 properties covering a 13 year period of time.

© Copyright 2019 Grobstein Teeple LLP



- Partition Referee – Acted as Court appointed partition referee in dispute involving family members who commonly owned a commercial property.  Negotiated a settlement among the parties involving the liquidation of the asset and allocation of proceeds.

- Successor Trustee – Designated as successor trustee in estate by three feuding siblings.  Marketed and sold large commercial retail property in Texas.  Prepared required court and tax documents for trust and distributed funds.

- Modern VideoFilm – Acting as Independent sole board member to wind down 401(k) and oversee litigation related to insiders and lenders.

- Scoobeez – Acting as member of board of directors for "last mile" deliver service provider to Amazon.  Along with Court appointed CRO, oversaw litigation with Amazon.

- E-Styles – *Disbursing Agent* retained jointly by Debtor and Creditor Committee of a company that sold baby and child development toys and products.  Worked with administrator to reconcile bifurcation of pre- and post-petition accounts payable. Reconciled true-up amounts related to sale of assets pursuant to bankruptcy order. Reconstructed financial activity to prepare income, sales, and payroll tax returns.  Preparation of avoidance action analyses.  Appointed as post-confirmation disbursing agent.

## Fractional CFO/Controller Positions

- California State University, Dominguez Hills – Retained and acted as the fractional CFO for the California State University, Dominguez Hills for approximately one year.  Acted as the entire accounting function for the university's foundation which is responsible for almost all financial aspects of the university including, but not limited to, the Dignity Health Center (former home to the Galaxy and Chargers), student union, book stores, parking, Philanthropic Foundation, and food services.  Prepared departmental budgets, budget-to-actual analyses, maintained general ledgers and monthly reporting, analyzed specific contemplated development projects, reconstructed and analyzed philanthropic activities going back 10 years, participated in university board meetings to provide updates on activities, assisted with retention of permanent accounting department, prepared and presented closing report.

- Infinity Capital – Retained as the fractional controller for hard money lender for approximately one year.  Analyzed all existing loans, managed day-to-day operations, oversaw management of firm, collections, accounts payable, bank reconciliations, new loan transactions and assisted with negotiations of disposition of business.

- Youth Policy Institute – Provided fractional CFO services to non-profit organization to assist with wind down of operations.  Managed daily operations, general ledger, communications with lenders and ultimate filing of bankruptcy.

- Confidential Non-Profit – Acted as fractional CFO for legal services non-profit firm due to sudden departure of CFO with no notice.  Maintained daily operations including, donations, accounts payable, general ledger, fundraising, and payroll.  Met daily with executive director to provide operational updates.  Participated in board meetings to provide financial reports and updates.  Assisted with retention of permanent CFO.

- Confidential Non-Profit – Acting as fractional CFO to youth services non-profit organization.  Assisting with high-level strategic planning issues.  Participate in finance committee meetings and board meetings to assist with financial reporting.

www.gtllp.com
© Copyright 2019 Grobstein Teeple LLP



**Services Provided to Fiduciaries (Receivers, Trustees, Special Masters, Monitors, and Provisional Directors)**

- Schrage v. Schrage - Shareholder Dispute. Accountant and operational managers to receiver in dispute involving the operation, wind down and sale of four large car dealerships with annual revenues in excess of $300 million per year. Evaluated operations, closed unprofitable business centers, operated the daily operations until sales took place, negotiated with auto manufacturers, secured and unsecured creditors, auto finance companies, evaluated flooring issues, prepared monthly financial reports, addressed customer purchase issues and evaluated insurance matters. Additionally, determined tax implications of sales of dealerships and real property, managed numerous tax audits and negotiated settlements with taxing authorities. Worked with Department of Labor on 401(k) wind down and resolutions.

- SEC Regulatory Case – Accountant to court appointed receiver in federal regulatory action. Reconstructed financial records for approximately 70 bank accounts covering an eight year period of time to identify assets for liquidation by the receiver, potential fraudulent activity, sources of funds and investor identities, determine uses of funds and potential fraudulent transfers, and analyze tax implications of potential fraud scheme. Assisting various federal agencies with investigation into activities of defendants.

- SEC Regulatory Case – Accountant to court appointed receiver in federal regulatory action. Reconstructed financial books and records to demonstrate existence of a fraud scheme committed against unsuspecting investors. Created relational database to report financial activities of investors including approximately 35,000 banking transactions. Prepared reports reflecting funds traced in and out of bank accounts in order for Receiver and counsel to pursue claims. Resolved complex tax issues and assisted with negotiation of resolution to tax claims filed against receivership estate.

- SEC Regulatory Case – Accountant to court appointed receiver in federal regulatory action. Reconstructing financial records related to potential fraudulent investment scheme with multiple locations throughout the United States. Traced funds through numerous bank accounts and prepared relational database to generate custom reports reflecting sources and uses of funds and analyzing potential domestic and international fraudulent transfers.

- Mattel v. MGA – Forensic Accountant to court appointed Monitor. Retained to assist the monitor with analyzing monthly net income reporting and inventory balances on a global basis. Analyzed stand-alone accounting offices in numerous locations worldwide including throughout Europe and parts of Asia. Analyzed internal controls and reliability of financial reporting and provided reports on findings to court appointed Monitor. Evaluated monthly reporting and conducted testing for accuracy. Provided consulting to court appointed Monitor on disputed accounting issues.

- Lehman Brothers Bank FSB v. Beverly Hills Estates Funding et al. – Forensic accountant to equity receiver to reconstruct books and records related to fraud against lenders in mortgage borrowing scheme wherein defendants provided inflated values of home sales/purchases in order to obtain inflated loans. Created databases and custom reports containing thousands of data lines to reflect incoming and outgoing sources of funds. Traced flow of funds in convoluted scheme involving over 40 entities and individuals and over 350 different bank accounts covering a four-year period of time. Prepared detailed flow charts and narrative analyses tracing flow of funds. Successfully traced lender's funds to the fraudulent acquisition of numerous assets including homes, vehicles, aircraft, artwork and wine.

www.gtllp.com
© Copyright 2019 Grobstein Teeple LLP



- Wickes Furniture & Master Design, Inc. – Accountant to court appointed equity receiver of the parent company of a large, nationwide furniture retailer and sister company. Reconstructed significant international transactions involving related party companies in Taiwan, Cayman Islands and China, including inter-company loans and transfers of funds in excess of $46 million. Assisted with operations of affiliated entities. Negotiations of forbearance agreements for secured creditors involved. Provided extensive accounting and tax consultation to the receiver, attorneys and investment bankers with regard to the sales of two large companies with total transaction values exceeding $200 million. Coordinated financial statement audit of affiliates and consolidated US Parent Corporation. Prepared consolidated group tax returns for federal and multi-state filings for several years. Identified and recovered tax refunds previously unidentified by big 4 accounting firm exceeding $11 million.

- State of California v. Daniel Gossai – Forensic accountant retained by receiver in a regulatory action to recover and reconstruct books and records related to an alleged fraud against the People of the State of California involving a false high school diploma program preying on foreign immigrants. Reviewed financial records, traced sources and uses of funds and provided relevant information to receiver and the Office of the Attorney General. A database was created in order to maintain all transactions and generate information-specific custom reports.

- Indymac Bancorp – Accountant to Chapter 7 Trustee to conduct forensic analysis and manage tax issues. Reconstructed financial activity between debtor and FDIC seized subsidiary – Indymac Bank N.A. Compiled financial information on potential insider and preferential payment transactions. Managed preparation of complex tax returns including carryback claims. Managed tax issues including analysis of worthless stock deduction, IRS audits and dispute with FDIC regarding substantial refunds.

- Marion "Suge" Knight / Death Row Records – Accountant to Chapter 11 trustee in the Knight case and special accountant to the Chapter 11 Trustee in the Death Row Records case. Conducted royalty audits to determine whether amounts were due to bankruptcy estates for both cases. Reviewed initial recording and other contracts and prepared damage analyses. Assisted with complex tax issues and negotiations of settlement of IRS claims. Assisted with preparation of avoidance action analysis.

- Smith & Sons, Inc. (APT Ambulance & APT Medical) – Accountant to Chapter 11 trustee for operating ambulance companies. Successfully testified as expert witness on behalf of trustee on the issue of substantively consolidating non-debtor corporations into bankruptcy estate. Created accounting system to accurately report results of operations. Prepared cash flow projections with continuous updates for purpose of assisting trustee with preparation of plan of reorganization. Analyzed tax effects of plan of reorganization.

- Powerlift Corporation – Accountant to Chapter 11 trustee and then Chapter 11 liquidating trustee as forensic accountant in bankruptcy proceeding involving large commercial equipment leasing company. Engagement involved preparing cash flow projections, evaluating operations, analyzing leasing agreements with customers, negotiating settlements of outstanding leases, preparing tax returns, and analyzing unusual transactions between company and insiders.

- Brea Community Hospital – Accountant and Financial Advisor to Chapter 7 Trustee for liquidating hospital. Reconstructed incomplete accounting records to provide accounting, tax and litigation support services to trustee and counsel. Analyzed fraudulent conveyance of multi-million dollar real property and assisted counsel with solvency and litigation support issues. Reconstructed general ledgers to prepare estate income tax returns. Analyzed insider and preference payments and assisted counsel with ordinary course and new value issues.

© Copyright 2019 Grobstein Teeple LLP



- Century City Doctors Hospital – Accountant and Financial Advisor to Chapter 7 Trustee for liquidating hospital. Removed, managed, and maintained four server towers containing commingled financial and patient medical records for two years.  Established protocol for security and privacy of medical information. Responded to subpoenas and requests for medical records. Conducted investigation into potential insider and preferential payments.  Prepared solvency and fraudulent conveyance analyses. Prepared officer compensation study. Completed tax returns on an annual basis and issued K-1s to approximately 400 members.

- APX Holdings, LLC et al.  – Accountant and Financial Advisor to Chapter 7 Trustee for liquidating logistics and shipping company.  Prepared potential preference analysis involving gross preferences totaling approximately $165 million.  Prepared tax returns involving approximately 15 related companies filing tax returns in 20 different states.

- Granada Hills Community Hospital – Accountant to Chapter 11 and Chapter 7 Trustee for liquidating hospital. Prepared cash flow projections to determine viability of operation. Prepared financial wind down plan in order to cease operations.  Prepared analysis of use of loan proceeds as part of fraud investigation.  Prepared analysis related to factored receivables involving dispute with secured creditor.  Prepared weekly budget to actual analysis for use of cash collateral.

**<u>Litigation Matters</u>**

- SunCal Management – Retained by bankruptcy trustee to analyze alter-ego issues.  Debtor was a substantial land and property developer.  The trustee alleges that millions of dollars passed between the management company and related single purpose entities.  Reconstructed financial records, traced funds between entities and prepared expert report.  Depositions and trial are pending.

- Divorce Proceeding – Retained to conduct forensic accounting and valuations of businesses (mortgage and lending businesses) owned by community and separately.  Prepared forensic tracing.  Valued several businesses. Determined monthly income, expenses and prepared declarations regarding spousal and child support.

- Divorce Proceeding - Retained to conduct forensic accounting and valuations of businesses (Coffee manufacturing, wholesale and retail businesses) owned by community and separately.  Prepared forensic tracing.  Valued several businesses. Determined monthly income, expenses and prepared declarations regarding spousal and child support.

- Engaged by Private university to investigate diversion of grant funds for unauthorized purposes and administration of same.  Traced receipt and disbursement of funds, reviewed administrative rolls related to management of funds, calculated damages as a result of the misappropriations, prepared report on findings regarding source and use of funds and mismanagement pursuant to terms of contracts.

- Retained by a major film and television studio to investigate alleged improper diversion of funds by retained management company.  Reconstructed multiple years of financial activity and calculated damages due to management company's embezzlements.  Testified at deposition on findings.

- Engaged by apparel company to determine damages related to a breach of contract by foreign supplier. Reviewed contractual agreements between supplier and client, identified time of breach of contract and prepared damage calculations based on a determination of sales that likely would have occurred had the contract not been breached.  Case settled.

www.gtllp.com

© Copyright 2019 Grobstein Teeple LLP



- Engaged by multi-billion-dollar real estate fund to evaluate terms of contract with venture partner. Evaluated transactions related to approximately seven commercial rental buildings. Project included identifying improper transactions and preparing a report on damages resulting from improper reporting of certain expenses.

- Engaged by bank to investigate alleged improper inter-account transfers and embezzled transactions involving 80 different bank accounts under numerous different account names controlled by one person. Reconstructed the activity using source documentation including banking records. Created a tracing analysis and reports identifying particular transactions as requested by counsel. Testified at deposition.

- Engaged by escrow insurer to analyze activity involving the alleged illicit activity taking place in escrow accounts. Prepared a reconstruction and generated reports identifying the disposition of funds.

- Forensic Accountant to Secured Creditor Regarding Lender/Borrower Dispute – Retained by secured creditor to analyze rent rolls and expenses for a shopping mall in order to determine whether the borrower was misappropriating funds or mismanaging the property which resulted in a default on the loan.

- Forensic Accountant to Secured Creditor Regarding Lender/Borrower Dispute – Retained by secured creditors with loan in excess of $500 million to trace proceeds of loan to determine whether borrower properly utilized cash collateral for property. Traced funds for numerous multi-million dollar advances from lender through ledgers and banking information to determine disposition of funds. Reported findings to lender.

- Zengen, Inc. v. Comerica Bank – Provided forensic consulting on behalf of bank related to monies that were allegedly fraudulently withdrawn or transferred by an officer of the plaintiff's corporation. Analyzed source documents including bank statements, canceled checks, wire notices and other transactions. Traced receipts and disbursements and ultimate disposition of alleged misappropriated funds and reported findings to counsel.

- Forensic Accountant for Non-Profit Organization (Confidential) – Engaged to identify and quantify embezzlement of approximately $1.7 million by accounts receivable clerk. Conducted a fraud investigation. Prepared a custom database and analyzed daily transactions in order to quantify defalcation. Prepared detailed report on findings for insurance purposes, which resulted in maximum recovery of insurance proceeds on policy. Suspect was sentenced to ten years in prison and deportation.

- I-Haeng Huh v. California Bank & Trust – Retained by counsel for the bank to reconstruct financial activity in 35 bank accounts held at the Defendant in order to determine whether such funds were misappropriated. Traced deposits from foreign accounts to the local bank accounts, reconstructed disbursement activity utilizing source documentation, and prepared detailed reports summarizing findings.

- AT&T Wireless Services, Inc. – Employed for the purpose of conducting agreed-upon procedures to determine violation of dealer contract terms. Services involved evaluation of contracts entered into between AT&T and major distributors and identifying breaches of the agreement and quantify damages. Determined inventory sold by client to dealers who allegedly disposed of inventory in a manner inconsistent with contract terms. Prepared damage calculations and reports on findings. Testified at Deposition.

- Ameriquest Financial, Inc. – Engaged by counsel for lender to analyze financial effects of loan made to borrower and foreclosure on property. Analyzed loan history of borrower consisting of nine different loans. Prepared expert report and exhibits.

© Copyright 2019 Grobstein Teeple LLP



- Easy Riders, Inc. – Engaged by liquidating trustee to analyze potential preference and fraudulent conveyance transactions. Utilized tracing techniques related to transfers of funds from related entities. Analyzed ordinary course of business between debtor and creditor. Analyzed accounting and tax treatment of debt as it related to issues pertaining to the potential fraudulent conveyance. Prepared expert report and testified in U.S. Bankruptcy Court.

- Markley v. Stearns – Engaged by Court-Appointed Special Master in a dispute involving several members of related LLCs with worldwide real estate holdings. Evaluated the relationship of the accountant to the LLCs for alleged improper activity and prepared report on findings. Testified at deposition.

- Special Litigation Accountant to White Collar Criminal Attorney - Reconstructed financial books and records for individual and related corporations for eight years in order for defendant to properly report financial activities to taxing authorities. Involved the analysis and reconstruction of thousands of transactions. Worked closely with criminal counsel to determine reporting requirements of authorities.

- Warner-Chappel Music – Employed by creditor as expert witness to evaluate and adjust balance sheet provided by debtor to creditor in order to obtain credit of almost $4 million. Analyzed balance sheet, prepared adjustments based on analysis of documents. Testified in U.S. Bankruptcy Court regarding material misstatements identified.

**Creditor & Debtor Representations**

- FirstFederal Financial Corp. – Accountant and Financial Advisor to Debtor, the parent company of a community bank seized by the FDIC. Managing preparation of complex tax returns including carryback claims. Managed tax issues including analysis of worthless stock deduction, IRS audits and dispute with FDIC regarding substantial refunds.

- Harrington West Financial Group, Inc. – Accountant and Financial Advisor to Debtor, the parent company of a community bank seized by the FDIC. Managing preparation of complex tax returns including carryback claims. Managed tax issues including analysis of worthless stock deduction, IRS audits and dispute with FDIC regarding substantial refunds.

- PPA Holdings, LLC – Performed financial advisory services for the Official Committee of Unsecured Creditors. Prepared massive cash flow projections for numerous entities holding income generating real estate, working closely with committee and counsel to analyze Debtor expenses on a monthly basis.

- Fatburger – Retained by the Official Committee of Unsecured Creditors to perform forensic analyses pertaining to the Debtor's pre- and post-petition operations of the owner of numerous fast food burger outlets.

- Custom Food Products, Inc. – Engaged by the Unsecured Creditors Committee and Bondholders Committee to analyze officer compensation, debt and equity restructuring and preferential payments. Provided in-depth industry study on comparable officer compensation. Worked with debtor-in-possession and financial advisors to evaluate proposals for debt and equity restructuring totaling in excess of $100 million. Performed potential preference analysis with total payments exceeding $26 million.

- Franchise Pictures, Inc. – Accountant to Debtor-in-Possession & Unsecured Creditor Committee for Film Production Company. Engaged as forensic accountant to evaluate transactions between numerous related parties. Extracted data from computer system and analyzed transactions. Evaluated film and production related costs as part of film library valuation.

© Copyright 2019 Grobstein Teeple LLP



### Summary of Testifying Experience

- Smith & Sons, Inc. – United States Bankruptcy Court - Testified as expert witness in the Central District of California on behalf of a Chapter 11 trustee on the issue of substantively consolidating non-debtor corporations into the bankruptcy estate.  Prepared analyses indicating that the finances of the Debtor and those of the two non-Debtor entities were so entangled that to untangle them would have been impossible or cost prohibitive.

- Warner-Chappel Music v. Stephen Call – United States Bankruptcy Court – Engaged by creditor to prepare expert report on evaluation of a balance sheet prepared by Debtor, which was used to obtain credit of approximately $4 million.  Reconstructed balance sheet of individual and prepared all required adjustments.  Testified in the Northern Division of the Central District of California on findings.

- Markley v. Stearns – Superior Court of California, Los Angeles – Engaged by Special Master to evaluate transactions between a group of related LLCs and their accountant. Testified at deposition regarding multi-million dollar loan transactions and the related interest charges between the accountant and his clients.

- AT&T Wireless Services, Inc. v. Worldwide Wireless, Inc. – Superior Court of California, San Diego – Engaged by corporation to identify fraudulent use and transfer of inventory in order to benefit from incentive program. Testified at arbitration on findings.

- Easy Riders, Inc. – United States Bankruptcy Court – Engaged by liquidating trustee to analyze certain aspects of potential preference and fraudulent conveyance transactions. Employed tracing techniques related to transfers of funds from related entities.  Analyzed ordinary course of business between debtor and creditor.  Analyzed accounting and tax treatment of debt as it related to issues pertaining to the potential fraudulent conveyance.  Prepared expert report and testified at deposition in U.S. Bankruptcy Court.

- Federal Grand Jury Testimony (July 2006) – Engaged by Office of the United States Attorney as summary witness in real estate fraud action.  Reconstructed financial records, traced use of funds, and identified assets and specific transactions associated with illegal activity.

- Federal Grand Jury Testimony (March 2007) – Engaged by Office of the United States Attorney as summary witness in real estate fraud action.  Reconstructed financial records, traced use of funds, and identified assets and specific transactions associated with illegal activity.

- United States of America v. Joseph Babajian et al. (July 2009) – Testified at Federal trial as summary witness on behalf of the United States of America.  Reconstructed financial records, traced use of funds, and identified assets and specific transactions associated with illegal activity.

- Lavian v. Boodaie – Superior Court of California, Los Angeles (June 2010) – Testified as percipient witness regarding the existence of a potential Ponzi scheme in a large real estate investment company.

- Conrad Asher v. Rhinox – Superior Court of California, Los Angeles (February 2012) – Testified as arbitration hearing regarding damages related to contractual dispute and corporate opportunity involving licensing of products.

- Chalant II, LLC v. The Restful Group LP et al. – United States Bankruptcy Court (May 2013) – Testified as an expert witness for Creditors regarding reconstruction of financial activity and tracing of funds related to investments made, transfers between related parties, and disposition of funds.

- James H. Donell as Permanent Receiver for NewPoint Financial Services, Inc. v. Nixon Peabody LLP- Testified as

© Copyright 2019 Grobstein Teeple LLP



percipient witness regarding reconstruction of financial records previously prepared.

- United States Bankruptcy Court, San Jose (May, 2014) – Testified as an expert witness in the Northern District of California on behalf of a Debtor in a fraudulent transfer dispute with the Trustee. Reviewed documents provided and prepared analysis of the transfers. Testified at trial on the findings of the analysis.

- Superior Court of California, Los Angeles, (June 2014) – Engaged by financial institution as expert witness in embezzlement action. Reconstructed financial records, traced use of funds, and identified assets and specific transactions associated with illegal activity. Testified at deposition.

- LA Micro v. Frankel, Superior Court of California, Los Angeles, (November 2014 and December 2014) – Engaged at direction of Court as Neutral Accountant to resolve issues between parties involved in dispute associated with dissolution of business.  Testified as Neutral Accountant over multiple days based on report on findings.

- Shim v. Min, Superior Court of California, Los Angeles, (June 2015) – Engaged by a court-appointed Receiver to evaluate the records of several entities to determine ownership percentages which were subject of dispute in a divorce proceeding. Testified as to the gross cash flows available for spousal support based upon outside valuations and cash flows of the various entities.

- Chanaz v. Chanaz, Superior Court of California, Los Angeles, (January 2016) – Engaged by Defendant as an expert witness in a partnership dispute involving multiple commercial buildings.  Involved reconstructing income, expenses, contributions and distributions to partners.  Traced funds between business and personal bank accounts.  Prepared expert report and testified at deposition.

- Third Street Partners, United States Bankruptcy Court, Los Angeles, (June 2016) – Acting as Chapter 7 Bankruptcy Trustee and testified as a percipient witness in a case brought by a creditor against the Debtor's principal.

- Dorothy Hamilburg, United States Bankruptcy Court, Santa Barbara, (April, 2016 Deposition; July, 2016 Trial) – Engaged as expert witness for Debtor-in-possession to testify on matters related to remainder estate valuation and life estate issues as they relate to alleged damages asserted by a creditor.  Testified at deposition.

- United States Bankruptcy Court, Santa Ana, (June 2016) – Engaged by Chapter 7 Trustee and subpoenaed by the Office of the United States Trustee to testify on issues related to the OUST objection to discharge of Debtor. Reconstructed shipping and receiving information, inventory balances and wire transfers between the Debtor and alleged overseas vendors.   Testified at deposition.

- L. Scott Apparel, United States Bankruptcy Court, Los Angeles, (August 2016) – Acting as Liquidating Trustee and testified at trial as a percipient witness in action against former member of Debtor for fraudulent transfer.

- Irvin v. Kelley, Superior Court of California, Los Angeles, (November 2016) – Engaged as expert witness by Plaintiff in shareholder dispute and corporate dissolution action.  Reconstructed financial records related to embezzlement and theft of corporate opportunity by shareholders.  Testified at deposition.

- Brittani Newman v. Knit Creations, Inc., Superior Court of California, Los Angeles (February 2018) – Engaged as expert witness by Plaintiff in dispute regarding alleged unpaid commissions by wholesale apparel manufacturer. Testified as to damages which included unpaid commissions, bonuses, travel and show expenses.

- [Confidential] Superior Court of California, Los Angeles (August 2018) – Engaged as expert witness by Defendant to opine on the net worth of an insurance company and its parent company.

© Copyright 2019 Grobstein Teeple LLP



- Oren Cohen vs. Avraham Hassid, et al., Superior Court of California, Los Angeles (August 2018 Deposition, September 2018 Deposition, September - October 2018 trial) – Engaged as expert witness by Defendant/Cross Complainant to analyze accounting records, trace funds, evaluate potential embezzlement, quantify potential theft of corporate opportunity, and calculate damages related to a partnership dispute involving real estate.

- Alona Hassid v. Eyal Cohen-Bashi, Superior Court of California, Los Angeles (January 2019 deposition) - Engaged as expert witness by Defendant/Cross Complainant to analyze accounting records, trace funds, evaluate potential embezzlement, quantify potential theft of corporate opportunity, and calculate damages related to a partnership dispute related to real estate.

- Tal Hassid v. Eyal Cohen-Bashi, Superior Court of California, Los Angeles (March 2019 and February 2020) – Engaged as expert witness by Defendant/Cross Complainant to analyze accounting records, trace funds, evaluate potential embezzlement, and quantify potential theft of corporate opportunity, and calculate damages related to partnership dispute involving garage door company.

- Seror v. Muennichow, United States Bankruptcy Court, San Fernando Valley Division (August 2019 trial) – Engaged as an expert witness for Chapter 7 trustee to analyze potential fraudulent transfers by Debtor.  Testified at trial.

- Rho v. Bank of Hope, Superior Court of California, Los Angeles (August 2019) – Engaged as an expert witness by Defendant to testify on bank's obligations pursuant to trust agreement related to a visa scam perpetrated by a third party.

- Millennium Park Partners v, AvalonBay Communities, Superior Court of California, San Jose (November 2020) - Retained by Defendant to determine fund flow through waterfall calculation related to a development of apartments, condominiums, office building, infrastructure and backbone.  Testified at deposition.  Case settled.

- BGM Pasadena LLC v. Pasadena Apts-7, LLC Superior Court of California, Los Angeles) – Testified at deposition and arbitration hearing on breach of agreement related to promissory notes.

- Riverside Christian School, US Bankruptcy Court, Riverside (January 2021) – Testified at deposition for the plaintiff on issues related to fraudulent transfer, breach of fiduciary duties and deepening insolvency.  The Debtor was a Christian private school.  The chapter 7 trustee commenced litigation against several insiders related to loans made and payments received by directors of the board directors.

© Copyright 2019 Grobstein Teeple LLP

# EXHIBIT 2



May [    ], 2021


Hoplite Entertainment, Inc. &
Hoplite, Inc.
506 N. Croft Avenue
Los Angeles, CA 90048-2511


Re:  Terms of Engagement of SierraConstellation Partners LLC to Provide Asset Disposition or
Monetization Services

Dear Mr. _____:

This letter sets forth the agreement between Hoplite Entertainment, Inc. and Hoplite, Inc. and its
subsidiaries (collectively, the "Company" or "you" or "Debtors") and SierraConstellation Partners
LLC ("SCP" and "we"). This letter (the "Engagement Letter") together with the Standard Terms and
Conditions (the "Standard Terms") annexed hereto and incorporated by reference (collectively, the
"Agreement") sets forth the terms of our engagement.[1]

We understand that the Company filed a voluntary petition (the "Bankruptcy Case") for relief under
Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on March 30, 2021 in the United
States Bankruptcy Court for the Central District of California, Los Angeles Division(the "Bankruptcy
Court") and that the Company is continuing to operate its business, manage its financial affairs and
operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the
Bankruptcy Code.

You shall, by executing this letter, engage SCP for the purposes of providing the asset disposition or
monetization services (defined below) to the Company.  On or about the Effective Date (as defined
in the Standard Terms), SCP shall provide the following services ("Services"):

- Review and analyze the assets of the Company, and

- Identify and execute on asset disposition (sale) or monetization, sale, distribution,
  transfer or other disposition of assets or equity interests in volving all or part of the
  business, assets or equity interest of the Company and/or any of its subsidiaries or
  affiliates or any right to option to acquire any of the foregoing in one or more
  transactions (an or all of the preceding a "Transaction").  Any Transaction will be
  done on a best efforts basis, and this Agreement does not represent a commitment
  of capital by SCP in any form to the Company.  To the extent that any potential
  Transaction will require a chapter 11 filing by the Company to effectuate execution,
  SCP would propose a comprehensive scope for the required services to achieve
  such objective.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Standard Terms.



SCP shall provide such other services as may be agreed to by SCP and the Company in writing based on discussions with you as the engagement progresses and additional information is obtained during the course of the engagement and approved by the Bankruptcy Court.

SCP's fees for the Services will be(a) a flat fee of $300,000 (the "Flat Fee"), plus (b) six percent (6.0%) of the aggregate gross proceeds from the sale or monetization of the assets above $5,000,000 (the "Success Fee") and together with the Flat Fee, the "Fees").  All Fees will be an administrative priority expense of the Debtors' bankruptcy estate and paid from and carved out of any proceeds of the sale transaction prior to payment of any kind to the secured lenders, if any, with claims on the assets.  In addition to the Fees, Debtors shall pay all Reimbursable Expenses, as and when due, to SCP, regardless of whether or not a sale transaction occurs.  Such Reimbursable Expenses shall be administrative expense priorities of the Debtors' bankruptcy estates.

SCP will provide the following personnel to the Company]:

- Winston Mar, Partner and Managing Director
- Miles Staglik, Senior Director and Engagement Lead

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it to me; or if you have any questions, please call me at 563-858-2200. By signing this letter, you represent and warrant that the Client has the authority to enter into this engagement letter on behalf of itself and its subsidiaries. We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

SierraConstellation Partners LLC


By:    _____
       **Winston Mar, Partner and
       Managing Director**


Agreed and Accepted by:
**Hoplite Entertainment, Inc. and Hoplite, Inc.**

By:    _____

Name:  _____

Title: _____

Date:  _____

SIERRACONSTELLATION
PARTNERS

Hoplite Entertainment, Inc. and Hoplite, Inc.
May [  ], 2021

Standard Terms & Conditions

The terms and conditions set forth below (the "Standard Terms") are incorporated by reference into that certain Engagement Letter by and between SierraConstellation Partners, LLC ("SCP") and Hoplite Entertainment, Inc. and Hoplite, Inc. (the "Company") dated as of [_____], 2021 (the "Engagement Letter" and together with the Standard Terms, the "Agreement").

EFFECTIVE DATE, FEES AND EXPENSES

1.    Effective Date.  As used in the Agreement, the term "Effective Date" shall mean the date upon which: (a) SCP receives the Engagement Letter signed by a person at the Company with the authority to enter into the Agreement and bind the Company, including, as applicable, confirmation that the necessary resolutions of the Company's board of directors or officers appointing SCP..

2.    Invoices.  SCP will provide an invoice for Reimbursable Expenses on a monthly basis and an invoice for the Flat Fee or the Success Fee prior to the closing of a relevant sale transaction or transactions.

3.    Payment of Invoices and Replenishment of Retainer.  Payment of each Invoice is due upon receipt by Company.  .  If an Invoice is not replenished in full when due, you agree that SCP has the rights and options, in its discretion: (i) to suspend or terminate Services and/or (ii) withhold delivery of Services, testimony, Deliverables (as defined herein), reports or data (written or oral); in which event you agree that SCP will not be liable for any resulting losses, damages or expenses in connection with or resulting from such suspension, withholding or termination of Services or any delay in completion of or performance of the Services or compliance with any deadlines or timelines related to the Services.

4.    Reimbursable Expenses.  SCP will be reimbursed timely by you for any and all reasonable, actual out-of-pocket expenses incurred in connection with or related to the Services, including but not limited to the fees and expenses of counsel retained by SCP to advise SCP on Services that concern the Company, airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs (colletively, the "Reimbursable Expenses").

5.    Taxes.  Company shall be responsible for any taxes imposed on the Services or on the Engagement, other than taxes imposed by employment withholding for SCP Personnel or on SCP income or property.

INFORMATION, ASSISTANCE AND DELIVERABLES

6.    Information, Access to Information.  The Company shall use all reasonable efforts to: (i) provide SCP Personnel with access to Company management and other representatives of the Company; and (ii) furnish all data, material, and other information concerning the business, assets, liabities, operations, cash flows, properties, financial condition and prospects of the Company that SCP Personnel request in connection with and in furtherance of their performance of the Services.  SCP Personnel shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished to SCP and SCP Personnel by or on behalf of the Company and otherwise reviewed by SCP Personnel in connection with the Services.  Company acknowledges and agrees that SCP Personnel are not responsible for the accurary or completeness of such information and shall not be responsible to Company or any third party for any inaccuracies or omissions therein.  SCP is under no obligation to update data submitted to SCP or to review any other areas of the Company's business or operations unless specifically set forth in the Engagement Letter or as mutually agreed by and between Company and SCP in writing.  The source of such information, whether the Company  management or other third party, as the case may be, shall be responsible for any and all financial information provided to SCP pursuant to this Agreement.  Furthermore, unless specifically retained to do so, SCP will not independently examine, compile or verify any financial information provided to SCP by the Company and/or Company management, as the case may be.  You shall use reasonable skill, care and attention to ensure that all information and documentation we may reasonably require is provided to us on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You shall also notify us promptly  if you subsequently learn that the information provide is outdated, incorrect or inaccurate or otherwise should not be relied upon; and, in addition, you may not rely upon any Deliverable that contains outdated, incorrect or inaccurate information which you know or have reason to believe is outdated, incorrect or inaccurate.

7.    Cooperation and Responsiblities.  Company shall cooperate with SCP in the performance of the Services.  The Company shall be responsible for, among other things (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to SCP for purposes of the performance of the Services, (c) designating a competent, responsible person to oversee the Services  (d) evaluating the adequacy and results of the Services, (e) accepting responsibility for the results of the Services, and (f) establishing and maintaining internal controls, including monitoring ongoing activities.  SCP's performance is dependent upon the timely and effective satisfaction of Company's responsibilities hereunder and timely decisions and approvals of Company in connection with the Services.



8.    <u>Forward Looking Statements</u>.  You understand that the Services may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and statements.  Moreover, SCP will be relying upon information provided by the Company in the preparation of those projections and other forward-looking statements.

9.    <u>Deliverables</u>.  The tangible items specified as deliverables or work product in the Engagement Letter (the "<u>Deliverables</u>") are complete only when presented in their entirety and only for the purpose stated therein.  Furthermore, (i) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (ii) SCP will not provide any legal advice or address any questions of law; and (iii) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants ("<u>AICPA</u>"), the Public Company Accounting Oversight Board (the "<u>PCAOB</u>"), or other state or federal professional or regulatory body.  Upon full payment to SCP hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified in the Deliverables shall become the property of Company..

LIMITATIONS ON SERVICES

10.    <u>Use and Purpose of Advice and Deliverables</u>.  Any advice given, communication (oral or written), report or Deliverable issued by SCP is provided solely for the use and benefit of Company and only in connection with the Services.  Unless required by law or with the prior consent of SCP, Company shall not share or disclose any advice given, communication, report or Deliverable to any third party (a "<u>Third Party</u>") or refer to the Services.  Neither the Services nor any Deliverables are intended for the express or implied benefit of any Third Party.  Unless otherwise agreed to in writing by SCP, no Third Party is entitled to rely in any manner or for any purpose on the Services or Deliverables.  Regardless of whether consent has been provided by SCP or disclosure is mandated as a matter of law or disclosure is made in violation of the Standard Terms, under no circumstances shall SCP assume any responsibility to any Third Party to whom any such advice, communication, report or Deliverable is disclosed or otherwise made available. The Services and this Engagement do not create privity between SCP and any Third Party.

11.    <u>No Audit, Review or Compilation</u>. Company acknowledges and agrees that SCP is not being retained to, and SCP Personnel are not being requested to, perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of AICPA, the SEC or other state or federal professional or regulatory body.

12.    <u>No Assurances</u>.  The Services will not result in the issuance of any written or oral communications by SCP to Company or any Third Party expressing any opinion, conclusion, or any other form of assurance with respect to, among other things, accounting policies, financial data, financial statements and related footnotes, appropriate application of generally accepted accounting principles, disclosure, operating or internal controls, compliance with the rules and regulations of the SEC or the PCAOB, compliance with the Sarbanes-Oxley Act of 2002 and related rules and regulations, or any other matters our services cannot be relied upon to disclose errors or fraud should they exist. The Services to be provided by SCP will <u>**not**</u> include any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt.  Company expressly acknowledges that SCP does not guarantee, warrant, or otherwise provide any assurances regarding the outcome of any of Company's strategies or objectives as set forth in this Agreement

13.    <u>No Assessment of Other Professionals Work</u>.  The Services may include access to the work of other professional advisors or to financial statements or financial information or data reported on by such other professional advisors.  Company agrees that such access is not for the purpose of affirming or evaluating the procedures or professional standards used by such other professional advisors.  In this regard, we call your attention to the possibility that other professional advisors may perform procedures concerning the same information or data, and perhaps the same accounts and records, and reach different observations than SCP for a variety of reasons, including the possibilities that additional or different information or data might be provided to them that was not provided to SCP, that they might perform different procedures from SCP, or that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

14.    <u>Strategic Decisions</u>.  Neither SCP nor any SCP Personnel, assume any responsibility for the Company's decision to pursue, or not pursue any businss strategy, or to effect, or not to effect any transaction.  SCP and SCP Personnel shall be responsible for implementation only of the Services and only to the extent and in the manner directed and authorized by Company.

15.    <u>Limitations on Warranties</u>.  This is a services engagement.  SCP warrants that it shall perform the Services in good faith and with due professional care.  SCP DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

16.    <u>Limitations on Damages</u>.  SCP, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Company for any claims, liabilities, or expenses relating to this Engagement ("<u>Company Claims</u>") for an aggregate amount in excess of the fees paid to SCP pursuant to this Engagement, except to the extent resulting from the gross negligence, bad faith or intentional misconduct of SCP or its subcontractors.  In no event shall SCP, its subsidiaries or subcontractors, or their respective personnel be liable to Company for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a



direct Company Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement. In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, you agree that the aggregate liability of SCP, its subsidiaries and subcontractors, and their respective personnel for any Company Claim shall not exceed an amount that is proportional to the relative fault that the conduct of SCP and its subcontractors bears to all other conduct giving rise to such Company Claim.

17. <u>Expert Witness Services</u>. Unless specifically included in the description of Services contained in the Engagement Letter. It is understood that the engagement of SCP and/or SCP Personnel to provide services as an expert witness, with respect to written reports, testimony or otherwise, in connection with or related to any administrative or judicial proceeding, or perform any level of related investigation (collectively, "<u>Expert Witness Services</u>"), is excluded from the definition of Services in this Agreement.

18. <u>No Expert Advice on Securities Matters</u>. SCP is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any Company filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

19. <u>No Improper Purposes</u>. Under no circumstances will SCP or SCP Personnel abide by, assist or aid, directly or indirectly, any request by Company to violate or aid any violation of any state or federal statute, securities law, common law or regulatory rule or the terms and conditions of any loan agreement, security agreement or similar agreement to which the Company is a party. No person on behalf of the Company may take any action to impede SCP or SCP Personnel from communicating with Company or appropriate authorities regarding a possible violation of a state or federal statute, securities law, common law or regulatory rule or the terms and conditions of any loan agreement, security agreement or similar agreement, including enforcing, or threatening to enforce, any confidentiality agreement, the confidentiality provisions of the Standard Terms or termination of this Agreement with respect to such communications if SCP determines, in its discretion, that any such request exposes SCP to any potential liability or harm to its professional reputation..

INDEMNIFICATION

20. <u>Indemnification, Generally</u>. As part of the consideration for SCP's agreement to furnish the Services, Company agrees to indemnify and hold harmless all SCP Personnel and SCP and it's owners, partners, members, managers, officers, directors, agents, employees, consultants, attorneys and agents and any successors or assigns thereof (each, an "<u>SCP Indemnified Party</u>") to the fullest extent lawful from any and all claims, liabilities losses, damages, debts, judgments and/or expenses or actions (collectively, "<u>Indemnified Claims</u>") in respect thereof, incurred, related to or arising out of or in connection with the Services, the Engagement and/or this Agreement, including without limitation, any and all such SCP Indemnified Parties' reasonable costs, fees and expenses incurred in connection with investigating, preparing, defending, or settling any Indemnified Claim arising from or relating to such liabilities, including all of such SCP Indemnified Parties' reasonable legal fees and expenses; provided, however, that the Company shall not be responsible for any Indemnified Claim to the extent, and only to the extent, that it is finally and judicially determined by a final, non-appealable Court Order, that such Indemnified Claim was caused primarily due to such SCP Indemnified Party's bad faith, willful misconduct or gross negligence. The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to SCP at common law or otherwise, (ii) shall survive the completion of the Engagement, as amended, modified or extended, and/or the termination of this Agreement, (iii) shall apply to any modification of this Agreement or revisions to the Services, and (iv) shall be binding on any successor or assign of Company and its successors or assigns.

RELATIONSHIP OF THE PARTIES

21. <u>Independent Contractor</u>. SCP is an independent contractor under this Agreement . This Agreement is not intended to create and does not create an employment agreement. No one on behalf of SCP, nor any members, managers, directors, employees, agents, independent consultants or contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of Company unless expressly agreed to by SCP. As an independent contractor, SCP will have exclusive control over the management and operation of SCP, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in the Agreement, SCP and the SCP Personnel that provide services hereunder may also provide services to other past, present or future SCP clients in connection with unrelated matters. In addition, SCP may utilize the services of its own employees or services of qualified independent contractors to perform this Agreement in addition to the SCP Personnel.

22. <u>No Fiduciary Relationship</u> Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between the Company, including without limitation, the Company's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand; and SCP, affiliated, consultants, members, control persons, shareholders, employees, representatives, attorneys, agents, successors or assigns, on the other hand.

23. <u>No Agency Relationship</u>. Except as set forth in this Agreement, the Services are not intended to and do not create an agency relationship between Company and SCP.



24.  No Tenancy Created.  If SCP is provided with access to or use of Company's facilities for the purpose of performing the Services, such facilities may not be dedicated solely for SCP's use and SCP will not be deemed a tenant of Company with respect to such facilities.

25.  Non-Exclusivity.  SCP may (i) provide any services to any person or entity in matters or engagements unrelated to this Engagement, and (ii) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, SCP complies with its obligations of confidentiality set forth hereunder.

CONFLICTS

26.  Future Conflicts.  SCP is retained by new clients in the ordinary course of its business.  As a result, SCP cannot assure that, following the completion of our internal conflict search in connection with the Engagement, a new engagement for or involving one of the Company's creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by SCP or its affiliates.  Should any potential conflict come to the attention of SCP, we will endeavor to resolve such potential conflict and will determine what action needs to be taken.  You agree that you will inform us of the parties-in-interest to this matter or of additions to, or name changes for, those parties-in-interest whose names you provided.  SCP's determination of conflicts is based on the substance of the work to be performed on an engagement as opposed to the parties involved.  It is possible that some of SCP's past, present or future clients will have disputes with and other matters relating to Company, during the course of and subsequent to this Engagement.  As a condition of this Engagement, Company agrees that SCP may be engaged by parties with interests that are adverse to and may not be consistent with the interests of Company.  SCP reserves the right to accept engagement with other parties consistent with its internal, prior practices without objection by Company.

CONFIDENTIALITY

27.  Duty to Maintain Confidentiality. SCP shall keep as confidential all non-public information received in conjunction with the Engagement, except: (i) as requested by subpoena or equivalent judicial process by the Company or its legal counsel or any successor in interest to the Company, including, but not limited to a chapter 11 trustee, a chapter 7 trustee, a liquidating trustee under a plan of reorganization or liquidation, a receiver, the assignee under an assignment for the benefit of creditors, the acquiror of the Company's assets, or a committee appointed in any bankruptcy case of the Company ; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this Engagement to such disclosure is (a) reasonably determined by the SCP to be in furtherance of its duties to Company and not otherwise in contravention of applicable disclosure rules and/or an express direction of the Company or (B) with a person that has agreed to be bound by confidentiality.  All obligations as to non-disclosure shall cease to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.  To the extent documents are requested pursuant to (i) or (ii) above, SCP shall produce any and all documents that are responsive to a subpoena or demand for production of documents without regard to any type of privilege or confidentiality.  It is the express duty of the Company, and not SCP, to object to a subpoena or demand for production of documents if the Company wishes to maintain any documents confidential or otherwise prevent the production of the same.

28.  Disclosure.  To the extent that, in connection with this Engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care.  The disclosing party hereby consents to the receiving party disclosing such information: (i) to subcontractors, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this Clause; (ii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iii) to the extent such information (a) is or becomes publicly available other than as the result of a disclosure in breach hereof, (b) becomes available to the receiving party on a non-confidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder.  Nothing in this Clause shall alter Company's obligations under any other Clause.  SCP, however, may use and disclose any knowledge and ideas acquired in connection with the Services, to the extent they are retained in the unaided memory of its personnel.  Further, SCP and its affiliates and related entities shall have the right to use Company's name as part of a general Company listing and as a specific citation in proposals or similar directed marketing efforts.

29.  Subject Tax Planning Advice.  No term of this Agreement is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice").  Notwithstanding anything herein to the contrary, no provision of the Agreement shall cause any limitation on Company's disclosure of any Subject Tax Planning Advice.  In the event of any unauthorized reliance on any Subject Tax Planning Advice by a Third Party, Company agrees to indemnify and hold harmless SCP, its subcontractors, and their respective personnel from any and all claims of a Third-Party, liabilities, costs, and expenses including attorneys' fees and expenses as provided for in the "Indemnification" Section of the Standard Terms.



TERMINATION

30.  <u>Termination with Notice</u>.  Any party to this Engagement may terminate the Engagement upon thirty (30) days' prior written notice to the other party(ies).  Upon receipt by the non-terminating party of such written notice, SCP will stop all work immediately.  Upon any termination of this Engagement, SCP shall be entitled to all incurred and unpaid fees for Services, other fees and expenses described in the Agreement .

31.  <u>Termination at Completion of Engagement</u>.  Unless terminated sooner as set forth herein, this Agreement shall terminate upon (i) the completion of the Services and the Engagement and (ii) the payment in full of all outstanding Invoices.

32.  <u>Return of Company Data/SCP Data Destruction Policy</u>.  Upon conclusion of the Engagement, Company may request to retrieve its confidential information, data, information and documents provided to, prepared by or otherwise in the possession of SCP (collectively, the "<u>Company Data</u>") from SCP at no additional charge to Company, Alternatively, Company Data can re returned in a mutually agreed format at a scope and price to be agreed.  Regardless, SCP will maintain a copy of Company Data for no more than six (6) months following termination of this Engagement, after which any Company Data not retrieved will be destroyed, subject to applicable law and SCP's internal data retention policy.

MISCELLANEOUS

33.  <u>Collection Costs/Enforcement Action</u>.  If an action or proceeding is commenced by SCP – whether during the Engaement or subsequent to termination – to collect or defend any objection to any Invoice, fee, Reimbursable Expense or cost or enforce any other obligation of Company under this Agreement whether commenced during or after termination of this Agreement (an "<u>Enforcement Action</u>"), Company agrees to pay and reimburse SCP for all reasonable SCP Personnel time, administration costs and expenses, including, attorneys' fees, costs and expenses incurred in connection with such Enforcement Action.

34.  <u>Misc. Fees, Expenses & Costs (Including Discovery Requests)</u>.  SCP will be compensated for any SCP Personnel time and expenses, including, attorneys' fees, costs and expenses, that SCP may incur in connection with the Services (whether during the Engagement or after termination of this Agreement) with respect to the responding to discovery requests, subpoenas or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this Engagement) as a result of, related to or in connection with the Services, the Engagement or this Agreement.

35.  <u>Non-Solicitation</u>. During the period commencing on the Effective Date and ending one year following termination, the Company shall not, without SCP's prior written consent, directly or indirectly; (i) solicit or encourage any person to leave the employment or other service of SCP or its affiliates; or (ii) hire, on behalf of the Company or any other person or entity, any person who has left the employment within the one year period following the termination of that person's employment with SCP or its affiliates. During the period commencing on the date hereof through and ending one year following termination, the Company will not, whether for its own account or for the account of any other person, intentionally interfere with the relationship of SCP or its affiliates with, or endeavor to entice away from SCP, any person who during the term of the Agreement is, or during the preceding one-year period, was an employee or independent contractor of SCP or its affiliates.

36.  <u>Survival and Interpretation</u>.  All provisions which are intended by their nature to survive performance of the Services and/or the termination of this Agreement, shall survive such performance, or the expiration or termination of this Agreement and remain an independent obligation of Company and of SCP.  Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, common law, or otherwise, notwithstanding the failure of the essential purpose of any remedy.  Any references herein to the term "including" shall be deemed to be followed by "without limitation".

37.  <u>Assignment</u>.  Except as provided in this Agreement, neither party may assign any of its rights or obligations hereunder (including interests, Claims or Company Claims) without the prior written consent of the other party.

38.  <u>Severability</u>.  If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions shall remain in effect.

39.  <u>Successors and Assigns</u>.  This Agreement shall be binding upon SCP and Company together with their respective heirs, successors, and assignees and any heir, successor, or assignee of a substantial portion of its businesses and/or assets.

40.  <u>Entire Agreement; Bankruptcy Court Order</u>.  Subject to the terms of any order entered by the Bankruptcy Court in the Bankruptcy Case pertaining to SCP and the Engagment or the Services, this Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the parties.  This Agreement replaces and supersedes any previous proposal, draft letter of engagement, communication (oral or written), undertaking, representation, or correspondence – whether written or oral, regarding the Services.

41.  <u>Limited Disclosure of Engagement</u>.  Notwithstanding anything herein to the contrary, SCP may reference or list the Company's name and/or logo and /or a general description of the Services in SCP's marketing materials, media, social media , website or in any disclosure to a court of law as appropriate.



42.  <u>Force Majeure</u>.   No party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

43.  <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.  This Agreement may be executed by facsimile signatures or signatures forwarded by email.

44.  <u>No Waiver</u>.  No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a direct or indirect waiver thereof.

45.  <u>Waiver of Trial by Jury</u>.   THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT AND THE SERVICES.

46.  <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California (without giving effect to the choice of law principles thereof).  Any action based upon or arising out of this Agreement shall be brought and maintained exclusively in any state or federal court, in each case located in Los Angeles County, the State of California.  Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.

47.  <mark><u>Bankruptcy Court Approval of this Engagement.</u> The</mark> Company shall apply promptly to the presiding Bankruptcy Court pursuant to the Bankruptcy Code, applicable rules and procedural orders of the Bankruptcy Court and procedural guidelines for approval of this Agreement, nunc pro tunc to the commencement date of such proceedings, and shall use its best efforts to obtain such Bankruptcy Court approval and authorization.   The Company shall supply SCP and its counsel with a draft of such application and proposed order authorizing SCP's retention sufficiently in advance of the filing of such application and proposed order to enable SCP and its counsel to review and comment thereon.  After the commencement of such Chapter 11 proceedings, SCP shall have no obligation to provide any services under this Agreement unless SCP's retention under the terms of this Agreement is approved in the manner set forth above by order of the Bankruptcy Court and such order is acceptable to SCP in all materials respects.  SCP acknowledges and accepts that in the event that the Bankruptcy Court approves its retention by the Company, payment of SCP's fees and expenses shall be subject to  (i) the jurisdiction and approval of the Bankruptcy Court and the Bankruptcy Code, (ii) any applicable fee and expense guidelines and/or order and (iii) any requirements governing interim and final fee applications imposed in the Bankruptcy Case. The Company agrees that SCP's fees and expenses post-filing, will be priority administrative expenses and that appropriate "Carve-outs" will be obtained from any debtor-in-possession financing to cover all such fees and expense.  The Company shall consult with SCP as to the amount of "carve-out " for SCP's fees and Reimbursable Expenses.  In the context of a bankruptcy filing, "Reimbursable Expenses" shall include include any and all SCP Professional time, attorneys' fees, costs and expenses incurred by SCP in reviewing retention applications, interim and final fee applications and any related or appropriate bankruptcy court pleading of bankruptcy

[Remainder of page left blank intentionally]