David M. Guess, Esq. (SBN 238241)
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: (949) 732-6500
Facsimile: (949) 732-6501
Email: guessd@gtlaw.com

Ari Newman, Esq. (admitted *pro hac vice*)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0868
Facsimile: (305) 579-0717
Email: newmanar@gtlaw.com

*Attorneys for Creditor XXIII Capital Limited*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>HOPLITE, INC., *et. al.*,<br><br>    Debtors and Debtors-in-Possession.<br><br>In re:<br><br>HOPLITE ENTERTAINMENT, INC.,<br><br>    Debtor and Debtor-in-Possession.<br><br>Affects:<br><br>☐ ALL DEBTORS<br><br>☐ HOPLITE, INC.<br><br>☒ HOPLITE ENTERTAINMENT, INC. | Lead Case No. 2:21-bk-12663-ER<br><br>Chapter 11<br><br>(Jointly Administered with:<br>Case No. 2:21-bk-12546-ER)<br><br>**OMNIBUS REPLY OF XXIII CAPITAL LIMITED IN SUPPORT OF MOTION FOR AN ORDER (I) CONVERTING THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, OR, IN THE ALTERNATIVE, (II) APPOINTING A CHAPTER 11 TRUSTEE**<br><br><u>Hearing</u><br>Date:    June 2, 2021<br>Time:    10:00 a.m.<br>Place:    Courtroom 1568<br>           255 E. Temple Street<br>           Los Angeles, CA 90012 |

Secured creditor, XXIII Capital Limited ("**23 Capital**"), respectfully files this Reply (A) in support of its motion [Dkt. No. 39] (the "**Motion**")[1] seeking entry of an order (i) converting the Chapter 11 case of Hoplite Entertainment, Inc. (the "**Debtor**" or "**Hoplite Entertainment**") to a case under Chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"), or, in the alternative, (ii) appointing a Chapter 11 trustee, and (B) in response to the (i) *Request for Continuance of the Hearing on, or in the Alternative, Opposition to the Motion* [Dkt. No. 43] filed by the Official Committee of Unsecured Creditors of Hoplite, Inc. (the "**Committee Opposition**"); (ii) *Opposition of the Debtor Hoplite Entertainment, Inc. to the Motion* [Dkt. No. 46] (the "**Debtor Opposition**," and together with the Committee Opposition, the "**Oppositions**"); and (iii) *One Light Media Capital LLC's Response to Motion* [Dkt. No. 44] (the "**One Light Response**").

## REPLY

The Oppositions advocate for an approach—the appointment of a CRO over the Debtors and the retention of various other estate professionals—that they claim resolves the concerns raised in the Motion. It does not. The approach advanced by the Debtors and the Committee will bury the estates in chapter 11 professional fees, leaves an established fraudster—Mr. Smith—with a continued role with the Debtors, and does not remove the Debtors' directors (the "**Directors**")—potential litigation targets who were in place while the fraud was being perpetrated. Simply put, the Debtors and Committee seek to pursue a path that may be well intentioned, but is not in the best interest of the estates and their creditors.

With no operations, no cash, no revenue, no employees, no prospect of reorganization, a conflicted board and unrebutted fraud committed by the Debtors' principal, these cases belong in Chapter 7. This is not the view of 23 Capital alone, but is the position shared by the overwhelming majority of the creditors of Hoplite Entertainment and the largest creditors of Hoplite, Inc.[2]

Opting not to rebut any of the factual allegations in the Motion (because they cannot), the Oppositions seek to deflect and distract with misleading and unsupported statements. For example, the

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.
[2] *See* the Joinders to the Motion filed by Bay Point [Dkt. No. 42] and Columbia State Bank [Dkt. No. 59]. Collectively, the scheduled claims of 23 Capital, Bay Point and Columbia State Bank comprise 98% of the claims by dollar amount listed by Hoplite Entertainment.

Debtors argue that remaining in possession will "reduce costs" (Debtor Opposition, at p. 7) and that they "can be ready with a stalking-horse bid...within a short period of time." (*Id*.). These positions are unsupported and lack credibility, especially as the Debtors propose to retain multiple professionals at great expense to the estates, do not yet appear to have retained their proposed "broker/investment banker" and have provided no evidence that they have commenced marketing their assets in earnest.

The Committee Opposition suffers from similar frailties and is replete with conclusory statements. For example, without providing any meaningful explanation, the Committee concludes that "the appointment of a chapter 7 trustee will [not] maximize value of the Assets for the benefit of creditors." (Committee Opposition, at p. 4). 23 Capital, however, has every confidence that upon conversion of these cases to Chapter 7 the United States Trustee will select an appropriate candidate to marshal, market and sell the assets in a manner that is not only efficient, but value-maximizing. There is nothing preventing an experienced Chapter 7 trustee—of which there are many in this Division—from retaining equally or even more competent professionals to assist in liquidating the assets of the Debtors effectively without many of the costs associated with the Debtors remaining in Chapter 11.

A Chapter 7 trustee also creates a clean break from Mr. Smith and the Directors by inserting a statutory fiduciary with clearly defined powers and duties, obviating the need to incur further expense negotiating or litigating over the parameters surrounding a CRO appointment, the Debtors' existing management and a proposed financial advisor that will represent both the Debtors and Committee. Immediate conversion to Chapter 7 is not only a simple solution given the Debtors' misconduct, lack of operations and lack of capital, but it is the correct one under the plain facts of these cases and where delay of the relief sought in the Motion will only incur needless expense.

I.    **A Chapter 7 Trustee Will Resolve 23 Capital's Corporate Governance Problem**

The CRO structure being advanced by the Debtors and the Committee does not adequately resolve the corporate governance problem raised in the Motion. First, it purports to leave Mr. Smith with a continued role with the Debtors. Given the fraud perpetrated by Mr. Smith, and lack of visibility into the scope and duration of the fraud, leaving Mr. Smith with any continued control of or involvement with the Debtors is unconscionable. Second, as the controlling shareholder of the Debtors, the contemplated agreement by Mr. Smith to "yield control" of the Debtors and their sale process to a

CRO is insufficient. As proposed, Mr. Smith could attempt to reverse course and fire and replace the CRO or otherwise still assert or exert direct or indirect control over the bankruptcy and sale processes in any number of ways. Third, the appointment of a CRO does not displace the Directors that are beholden to Mr. Smith nor resolve the corporate governance concerns surrounding those Directors. The Debtors purport to each have a board of directors (Messrs. Ferre, Senner and Lee for Hoplite Entertainment and Mr. Ferre for Hoplite, Inc.) inserted by Mr. Smith. As set forth in the Motion, the Directors (and/or their affiliates) were the recipients of transfers within the relevant preference periods, were board members while Mr. Smith was actively defrauding multiple lenders, and failed to remove Mr. Smith from control of the Debtors after his fraud was exposed in the Bay Point Litigation. Under California corporate law, the CRO is required to take direction from the Directors and cannot act unilaterally. The Directors can, therefore, potentially wreak havoc to the bankruptcy and sale processes by, among other things, firing (or even just threatening to fire) the CRO or by vetoing sales of assets the CRO wishes to pursue.

Even if some of these concerns could be mitigated through negotiations between the Debtors, Committee, 23 Capital and the other creditors, the cost of protracted negotiations and litigation surrounding the terms and scope of the CRO appointment and the Debtors' corporate governance can be easily avoided by the conversion of these cases to Chapter 7 and the appointment of a trustee that will take full control of the Debtor and will have defined statutory powers and duties. Not only does "cause" under Section 1112 of the Bankruptcy Code support conversion, but common sense dictates the result as well.

## II.     Efficiencies and Cost Considerations Support Conversion to Chapter 7

Proceeding in Chapter 7—where the costs of administration of the estates will be significantly lower, multiple sets of estate professionals will not be required, an independent trustee can oversee both estates to maximize value for all constituents—will increase efficiencies and reduce costs. More specifically, by remaining in Chapter 11 the Debtors' estates will (i) incur the cost of professionals for both the Debtors and the Committee, (ii) have quarterly obligations to the United States Trustee, (iii) have monthly reporting obligations, (iv) have the expense of a Plan process, (v) have a misalignment of interests with a Committee that is only appointed in one of the Debtors' cases and that can be expected to advance the interests of the estate of Hoplite, Inc. over the estate of the Debtor

(including in the allocation of sale proceeds) without any estate professional representing only the Debtor to counterbalance that, and (vi) result in increased litigation between creditors of the Debtor and the Committee to block the Committee's overreaches.[3]  These additional and unnecessary expenses would result in continuing loss to an estate that has no cash, no operations and no revenue, which establishes the requisite "for cause" to convert these cases to Chapter 7.  *See* 11 U.S.C. § 1112(b)(1).[4]  In contrast, conversion of these cases to Chapter 7 would eliminate the Committee and attendant expenses, would avoid the other expenses identified above and would streamline these cases.

Finally, 23 Capital understands that the Debtors and Committee propose to retain jointly the firm of Grobstein Teeple, LLP to provide financial advisory services for the estates (even though they also propose to jointly retain at the same time another financial advisory firm, SierraConstellation Partners). Given Mr. Grobstein's proposed position as CRO of the Debtors, however, the joint retention of his firm as a professional for both the Debtors and Committee creates an incurable conflict of interest, given that the Committee has been appointed in only in the Hoplite, Inc. case and has the incentive to advance the interests of the Hoplite, Inc. estate over the interests of the Debtor's estate.  While 23 Capital holds the Grobstein Teeple firm in high regard and does not *per se* oppose attempts to create efficiencies, 23 Capital raises this concern to further highlight the issues surrounding the ill-advised approach advanced by the Debtors and Committee.  Conversely, conversion to Chapter 7 resolves these retention and corporate governances issues without the need for further negotiation, litigation and expense.

### III.    A Chapter 7 Trustee Can Retain Equally Competent Professionals

While not explicit in the Oppositions, a common undercurrent is that a Chapter 7 trustee would not retain equally competent professionals to run a sale process for the TV Library and would not be capable, experienced or competent enough to marshal the Debtors' assets and maximize value for creditors.  This position is undercut by the fact that Messrs. Grobstein and Golden themselves are both

---

[3] The Debtors' existing management and professionals are not an adequate counterbalance to the Committee.  The Debtors acknowledge that they retained or are seeking to retain a CRO over the Debtors and new professionals to be employed by the Debtors that were proposed by the Committee.

[4] Many cases have found continuing loss to, or diminution of, the estate through mounting professional fees.  *See, e.g.*, *In re Sterling Bluff Investors, LLC*, 515 B.R. 902, 919-20 (Bankr. S.D. Ga. 2014); *In re Brutsche*, 476 B.R. 298, 305 (Bankr. D.N.M. 2012); *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009).

panel Chapter 7 trustees and they and their firms stand to play prominent roles if these cases remain in Chapter 11.  Surely they recognize that a Chapter 7 trustee could seek to retain professionals equally competent to those being proposed and could run a robust sale process in a Chapter 7 case.

The Debtors are not operating and there is no going concern business to be sold; running a more costly Chapter 11 sale process here is unwarranted.  Instead, a Chapter 7 trustee—with the assistance of capable professionals—can run a similarly comprehensive and competitive Section 363 sale process in Chapter 7, but without the significant overhead costs associated with a Chapter 11 case.  Nor is there any reason to believe a Chapter 7 trustee would conduct a quick fire sale of the assets, as opposed to marketing them for sale in much the same manner as a CRO would.  In fact, because the Bankruptcy Code compensates a Chapter 7 trustee on a commission basis, it can be imagined that a Chapter 7 trustee may work even longer and harder to maximize the value of estate assets than the Debtors.

IV.   **The Debtors' Estates Continue to be Grossly Mismanaged**

The gross mismanagement of the Debtors pre-petition is well documented—the fraud findings made by the District Court being chief among them—but that mismanagement has persisted post-petition and even following the appointment of the Committee and the retention of Committee counsel.  For example, counsel for various parties, including 23 Capital, alerted the Debtors to material deficiencies in the Schedules and SOFAs of each of the Debtors.[5]  Despite repeated assurances from the Debtors that the Schedules and SOFAs would be timely corrected, no corrected documents have been filed.

The Debtors also brush aside the gross mismanagement associated with failing to have insured the TV Library for the past 13 months.  The acute lapse of judgment exercised by the Debtors' management both before bankruptcy and during the pendency of these cases cannot be ignored.[6]

---

[5] It is startling that the Debtors filed such materially inaccurate Schedules and SOFAs in the first instance, let alone that they have still failed to correct them several weeks following the Debtor's Section 341(a) Meeting of Creditors on April 29, 2021 and weeks after the filing of the Motion.

[6] After creditors complained for weeks that it was untenable that the TV Library was uninsured, the Debtors entered into an agreement dated May 17, 2021 with Buffalo 8, an affiliate of BondIt (a creditor of the Debtors), to transfer the TV Library to Buffalo 8's secure storage facility. The Debtors have only just sought Court approval of that agreement after one of the Debtors' creditors complained that Court approval should have first been sought and obtained. [See Dkt. No. 63]. By the time approval was sought, however, the agreement had already been entered into and the TV Library had already been

An independent and experienced Chapter 7 trustee taking full control of the Debtors and their assets upon conversion of these cases to Chapter 7 will by his or her very appointment resolve the Debtors' pervasive mismanagement and is appropriate under 11 U.S.C. § 1112(b)(1) & (4)(B).

## V. The Committee's Request for a Continuance Should be Denied

The Committee's request for a continuance should also be denied. The Committee seeks the continuance to secure the retention of the various professionals it has recommended to the Debtors and advance the approach advocated for in the Oppositions before the Court takes up the Motion, in the hope that with each passing day the likelihood the Motion will be granted will decrease as the Committee-recommended professionals further embed themselves in these cases. The more efficient and less expensive route would be to convert the Chapter 11 cases now without delay so that the Chapter 7 trustee may select his or her own professionals and move with alacrity toward a sale. Doing so will avoid the possibility of the Committee-recommended professionals moving forward in a direction that may be scrapped by the Chapter 7 trustee once he or she is appointed after the Motion is ultimately granted. A continuance, therefore, will only burden the Debtors' estates with increased administrative expenses for cases that do not belong in Chapter 11.

In support for its request for a continuance, the Committee Opposition also claims that the Committee is in "serious and substantive discussions with 23 Capital regarding the relief sought in the Motion." (Committee Opposition, at p. 2). That representation is exaggerated. While counsel for 23 Capital conferred on more than one occasion with counsel for the Committee, and even made a proposal to the Committee that was not accepted, those discussions and negotiations have ceased given the significant daylight between the positions of the parties. Accordingly, the Committee's purported communications with 23 Capital, which never included a settlement proposal or proposed resolution from the Committee beyond the position set forth in the Oppositions, do not favor a continuance.

---

delivered to Buffalo 8. While 23 Capital is supportive of efforts to secure and insure the TV Library, the Debtors' after-the-fact attempt at obtaining retroactive Court approval for a transfer of their most valuable assets to an affiliate of one of their creditors on terms not previously approved by this Court further evidences the continued gross mismanagement of the Debtors.

## VI. The One Light Response Misses the Mark

The One Light Response acknowledges the need for independence and a change in management of the Debtors, but advocates only for the appointment a Chapter 11 trustee and not conversion. The One Light Response suffers from the same false belief that a Chapter 7 trustee is incapable of running an effective and value-maximizing sale process. That view, as addressed above, is wrong. The One Light Response also suggests that a Chapter 11 trustee is preferable because "multiple lenders" might willing to provide the Debtor with debtor-in-possession financing ("**DIP Financing**"). (One Light Response, at p. 3). This statement is also conjecture, and fails to apprehend that nothing in the Bankruptcy Code prevents a Chapter 7 trustee, if he or she believes it would be advantageous, from seeking DIP Financing. Finally, the One Light Response also asserts that the value of the TV Library "could exceed $15 million," but provides no credible evidence to support that lay opinion of value. (One Light Response, at p. 3).

## VII. A Chapter 11 Trustee Is Preferred to the Debtors Remaining in Possession

If the Court is inclined not to convert these Chapter 11 cases to cases under Chapter 7, then the Court should order the appointment of a Chapter 11 trustee rather than permitting the Debtors to remain in possession. As discussed above, the appointment of an independent trustee will obviate the need to sort through various corporate governance concerns, will ensure a complete and clean break from the Debtors' management and will serve to advance the interests of creditors of both estates.

WHEREFORE, 23 Capital respectfully requests entry of an Order (i) (a) converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, or, in the alternative, (b) appointing a Chapter 11 trustee; and (ii) granting such other and further relief as is just and proper.

DATED: May 26, 2021                              GREENBERG TRAURIG, LLP

By: /s/ David M. Guess
DAVID M. GUESS
ARI NEWMAN (admitted *pro hac vice*)
*Attorneys for Creditor XXIII Capital Limited*

ACTIVE 57752528v3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1840 Century Park East, Suite 1900, Los Angeles, CA 90067-2121

A true and correct copy of the foregoing document entitled: **OMNIBUS REPLY OF XXIII CAPITAL LIMITED IN SUPPORT OF MOTION FOR AN ORDER (I) CONVERTING THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, OR, IN THE ALTERNATIVE, (II) APPOINTING A CHAPTER 11 TRUSTEE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 26, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Richard T Baum     rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
- Tanya Behnam     tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- Luke N Eaton     eatonl@pepperlaw.com, jacqueline.sims@troutman.com
- Philip A Gasteier     pag@lnbrb.com
- Jeffrey I Golden     jgolden@wgllp.com, kadele@ecf.courtdrive.com;vrosales@wgllp.com;cbmeeker@gmail.com;lbracken@wgllp.com
- Eve H Karasik     ehk@lnbyb.com
- Kevin P Montee     kmontee@monteefirm.com
- Kelly L Morrison     kelly.l.morrison@usdoj.gov
- Aditi Paranjpye     aparanjpye@cairncross.com, gglosser@cairncross.com;AParanjpye@ecf.courtdrive.com
- Hamid R Rafatjoo     hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Faye C Rasch     frasch@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;lbracken@wgllp.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Hatty K Yip     hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On May 26, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
*ACTIVE 57803925v1*

**F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 26, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| **VIA EMAIL**<br>Richard T Baum<br>rickbaum@hotmail.com<br><br>*Attorneys for the Debtors* | **VIA EMAIL**<br>Jeffrey Ian Golden<br>jgolden@wgllp.com<br>Reem J. Bello<br>rbello@wgllp.com<br>Sonja Hourany<br>shourany@wgllp.com<br><br>*Proposed Attorneys for the Official Committee of General Unsecured Creditors* | **VIA EMAIL**<br>Hatty K Yip<br>hatty.yip@usdoj.gov<br>Kelly L Morrison<br>kelly.l.morrison@usdoj.gov<br><br>*Attorneys for the U.S. Trustee* |
| **VIA EMAIL**<br>Luke N. Eaton<br>luke.eaton@troutman.com<br>Harris B. Winsberg<br>harris.winsberg@troutman.com<br>Alexandra S. Peurach<br>Alexandra.Peurach@troutman.com<br>Nathan T. DeLoatch<br>nathan.deloatch@troutman.com<br><br>*Attorneys for*<br>*Bay Point Capital Partners II, LP* | **VIA EMAIL**<br>EVE H. KARASIK<br>EHK@LNBYB.COM<br>PHILIP A. GASTEIER<br>PAG@lnbyb.com<br><br>*Attorneys for Kyle Anderson* | **VIA EMAIL**<br>Randye B. Soref<br>rsoref@polsinelli.com<br>Tanya Behnam<br>tbehnam@polsinelli.com<br><br>*Attorneys for Columbia State Bank* |
| **VIA EMAIL**<br>ADITI N. PARANJPYE<br>aparanjpye@cairncross.com<br>JOHN R. RIZZARDI<br>jrizzardi@cairncross.com<br><br>*Attorneys for*<br>*One Light Media Capital, LLC* | **VIA EMAIL**<br>Hamid Rafatjoo<br>hrafatjoo@raineslaw.com<br><br>*Attorneys for Great Point Media* | **VIA EMAIL**<br>Faye C Rasch<br>frasch@wgllp.com<br><br>Courtesy NEF |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 26, 2021 | Kathy Lai | /s/ Kathy Lai |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
ACTIVE 57803925v1

**F 9013-3.1.PROOF.SERVICE**